Kelley v. Microsoft Corporation Doc. 12

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY, Plaintiff, v. MICROSOFT CORPORATION, a Washington corporation, Defendant. | No. C 07-475 MJP<br>MICROSOFT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br>**Note on Motion Calendar:** June 22, 2007<br>***Oral Argument Requested*** |

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Dockets.Justia.com

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. LEGAL ANALYSIS .......... 6

A. Because Ms. Kelley Has Not Alleged the Existence of a "Written Warranty," She Has Not Stated a Claim under the Magnuson-Moss Warranty Act. .......... 6

B. Ms. Kelley Has Not Alleged Facts Sufficient to Show the Formation of a Contract with Microsoft. .......... 9

1. A Marketing Campaign Does Not Create a Binding Offer. .......... 10

2. Ms. Kelley Has Not Alleged That She Provided Consideration for the Alleged Contract. .......... 11

C. Plaintiff Has Not Properly Alleged a Causal Link Between the Claimed Deceptive Conduct by Microsoft and a Cognizable CPA Injury. .......... 13

1. To State a CPA Claim, Ms. Kelley Must Allege That the Claimed Deceptive Conduct Caused Her to Suffer Injury. .......... 13

2. Ms. Kelley Has Not Alleged Any Causal Link between Microsoft's Alleged Deceptive Conduct and Her Injury. .......... 15

3. Ms. Kelley's Allegations of an "Omission" Do Not Excuse Her Obligation to Plead CPA Causation. .......... 17

4. Alleged Price Elevation Is Not a Cognizable CPA Injury .......... 18

D. Because Plaintiff Has Not Alleged That She Conferred a Benefit on Microsoft, She Has Not Alleged an Unjust Enrichment Claim. .......... 20

E. Plaintiff Lacks Standing to Assert Any Claim Challenging the Express Upgrade Program. .......... 23

IV. CONCLUSION .......... 24

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) .......... 18

*Alter v. DBLKM, Inc.*, 840 F. Supp. 799 (D. Colo. 1993) .......... 17

*Ass'n of Washington Pub. Hosp. Dists. v. Phillip Morris, Inc.*, 241 F.3d 696 (9th Cir. 2001) .......... 13

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066 (U.S. May 21, 2007) .......... 4, 6, 9

*Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749 (11th Cir. 1984) .......... 17

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .......... 6

*Goodman v. Perlstein*, Civ. A. No. 86-2144, 1989 WL 83452 (E.D. Pa. July 21, 1989) .......... 9

*In re Sears Roebuck & Co.*, No. MDL-1703, 05C4742, 05C2623, 2006 WL 1443737 (N.D. Ill. May 17, 2006) .......... 9

*In re Smith*, 289 F.3d 1155 (9th Cir. 2002) .......... 14

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......... 4

*North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) .......... 6

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) .......... 4

*Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433 (5th Cir. 2000) .......... 14

*Reeves v. Teuscher*, 881 F.2d 1495 (9th Cir. 1988) .......... 17

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Roe v. Unocal Corp.*,
70 F. Supp. 2d 1073 (C.D. Cal. 1999) .......... 6

*Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*,
629 F. Supp. 1030 (M.D. Ga. 1986) .......... 9

*Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
482 F.2d 880 (5th Cir. 1973) .......... 17, 21-22

*Skelton v. General Motors Corp.*,
660 F.2d 311 (7th Cir. 1981) .......... 8

*States v. BFG Electroplating & Mfg. Co., Inc.*,
Civ. A. No. 87-1421, 1989 WL 222722 (W.D. Pa. Oct. 18, 1989) .......... 8

*Turner v. Beneficial Corp.*,
242 F.3d 1023 (11th Cir. 2001) .......... 14

*United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*,
290 F.3d 1199 (9th Cir. 2002) .......... 22

*Vasquez v. Los Angeles County*,
__ F.3d __, No. 04-56973, 2007 WL 1412671 (9th Cir. May 15, 2007) .......... 6

**STATE CASES**

*Andrus v. State*,
128 Wn. App. 895, 117 P.3d 1152 (2005) .......... 11

*Anhold v. Daniels*,
94 Wn.2d 40, 614 P.2d 184 (1980) .......... 16

*Bailie Commc'n, Ltd. v. Trend Bus. Sys., Inc.*,
61 Wn. App. 151, 810 P.2d 12 (1991) .......... 21

*Brader v. Minute Muffler Installation, Ltd.*,
81 Wn. App. 532, 914 P.2d 1220 (1996) .......... 21

*Chandler v. Wash. Toll Bridge Auth.*,
17 Wn.2d 591, 137 P.2d 97 (1943) .......... 22

*Crane & Crane, Inc. v. C&D Elec., Inc.*,
37 Wn. App. 560, 683 P.2d 1103 (1984) .......... 14

*Fidelity Mort. Corp. v. Seattle Times Co.*,
131Wn. App. 462, 128 P.3d 621 (2005) .......... 13

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Fink v. Ricoh Corp.*, 839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .... 19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986) .... 13

*Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 785 P.2d 815 (1990) .... 13

*Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn.2d 178, 35 P.3d 351 (2001) .... 14

*Johnson v. Star Iron & Steel Co.*, 9 Wn. App. 202, 511 P.2d 1370 (1973) .... 11

*Johnston v. Beneficial Mgmt. Corp. of Am.*, 85 Wn.2d 637, 538 P.2d 510 (1975) .... 24

*Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 94 P.3d 945 (2004) .... 9-10

*King v. Riveland*, 125 Wn.2d 500, 886 P.2d 160 (1994) .... 13

*Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004) .... 11

*Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 776 P. 2d 681 (1989) .... 21

*MacDonald v. Hayner*, 43 Wn. App. 81, 715 P.2d 519 (1986) .... 22

*Morris v. International Yogurt Co.*, 107 Wn.2d 314, 729 P.2d 33 (1986) .... 17

*Multicare Med. Ctr. v. State*, 114 Wn.2d 572, 790 P.2d 124 (1990) .... 11

*Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 840 P.2d 851 (1992) .... 11

*Nuttall v. Dowell*, 31 Wn. App. 98, 639 P.2d 832 (1982) .... 14

*Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002) .... 18-19

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Robinson v. Avis Rent-a-Car System, Inc.*, 106 Wn. App. 104, 22 P.3d 818 (2001) .......... 14-15, 20

*Schmidt v. Cornerstone Invests., Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990) .......... 16

*Schreib v. Walt Disney Co.*, No. 1-05-0094, 2006 WL 573008 (Ill. App. Feb. 1, 2006) .......... 8

*Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213 (Ill. 2004) .......... 19

*Sheldon v. Am. States Preferred Ins. Co.*, 123 Wn. App. 12, 95 P.3d 391 (2004) .......... 20

*Thomas v. Micro Center*, No. 88298, 2007 WL 1219282 (Ohio App. Apr. 26, 2007) .......... 9

*Timberlane Homeowners Ass'n, Inc. v. Brame*, 79 Wn. App. 303, 901 P.2d 1074 (1995) .......... 23

*Travis v. Washington Horse Breeders' Ass'n*, 111 Wn.2d 396, 759 P.2d 418 (1988) .......... 16

*Vehicle/Vessel LLC v. Whitman County*, 122 Wn. App. 770, 95 P.3d 394 (2004) .......... 11

*Washington State Physician Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993) .......... 17

*Weinberg v. Sun Co., Inc.*, 777 A.2d 442 (Pa. 2001) .......... 19

**FEDERAL STATUTES**

15 U.S.C. § 1640(a)(1) .......... 14

15 U.S.C. § 2301(6) .......... 7

15 U.S.C. § 2301(6)(A) .......... 7-8

15 U.S.C. § 2301(6)(B) .......... 7

**STATE STATUTES**

RCW 19.86.090 .......... 13

RCW 19.100.030(2) .......... 17

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

RCW 19.100.030(4)(a) .......... 17

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 1, 6

**REGULATIONS**

16 C.F.R. § 700.3 .......... 8

**OTHER AUTHORITIES**

1 Richard A. Lord, WILLISTON ON CONTRACTS § 4:7 (4th ed. 1990) .......... 10

25 DeWolf *et al.*, WASH. PRAC.: CONTRACT LAW AND PRACTICE § 2.12 (1998) .......... 10

25 DeWolf, *et al.*, WASH. PRAC.: CONTRACT LAW AND PRACTICE § 2.23 (1998) .......... 12

E. Allan Farnsworth, CONTRACTS § 2.10 (3d ed. 1999) .......... 12

RESTATEMENT (SECOND) OF CONTRACTS § 23 (1981) .......... 12

RESTATEMENT (SECOND) OF CONTRACTS § 26 (1981) .......... 10

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

# I. INTRODUCTION

Plaintiff Dianne Kelley's First Amended Complaint (the "Complaint") attempts to challenge two aspects of Microsoft's marketing of its new Windows Vista operating system—(1) the "Windows Vista Capable" program and (2) the "Express Upgrade" program—on behalf of a proposed nationwide class of personal computer ("PC") purchasers. Under the "Windows Vista Capable" program, Microsoft authorized PC manufacturers, known as original equipment manufacturers or "OEMs," to place "Windows Vista Capable" stickers on qualifying PCs sold before Microsoft released Windows Vista to the public on January 30, 2007. In the "Express Upgrade" program, Microsoft allowed OEMs to offer future free or reduced-price upgrades to the new operating system to customers who bought PCs with Windows XP installed before the release of Windows Vista.

Microsoft moves the Court to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) because none of Ms. Kelley's four causes of action states a claim.

***First,*** Ms. Kelley does not state a claim under the Magnuson-Moss Warranty Act because Microsoft did not make a "written warranty," as defined in that statute. She asserts that a sticker affixed to her computer saying "Windows Vista Capable" was a written warranty, but that sticker on its face does not meet the elements of the Act's definition of a written warranty, in that it did not promise that (a) her computer would be free from defects in material or workmanship; (b) Microsoft would take any remedial action with respect to her computer; or (c) her computer would achieve some specified level of performance for a "specified period of time." Thus, as a matter of law, the "Windows Vista Capable" sticker does not rise to the level of a "written warranty" and cannot be the basis of a Magnuson-Moss Warranty Act claim.

***Second,*** Ms. Kelley's breach of contract claim rests on broad allegations concerning Microsoft's marketing activities. Under settled law, however, Microsoft's advertisements and marketing activities do not amount to contractual offers. Even if Microsoft's advertising

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

could be deemed to be enforceable offers, Ms. Kelley has not alleged that she "performed" in response to those offers with the intent of creating a binding contractual relationship with Microsoft or that she furnished bargained-for consideration. In the absence of an offer, acceptance, and consideration, Ms. Kelly cannot state a claim for breach of contract.

***Third,*** although Ms. Kelley alleges that she bought a PC bearing a "Windows Vista Capable" sticker, she does ***not*** allege that she saw the sticker before she purchased her PC, that (if she saw it) the sticker meant anything to her, that she knew of (much less expected to run) the features of a Windows Vista premium edition that she might (or might not) purchase in the future, or that she was ignorant of the disclosures that OEMs, retailers, and Microsoft made to educate consumers about the different Windows Vista editions and the hardware needed to run their features. As a result, Ms. Kelley has not alleged that Microsoft's conduct caused her injury, as required to state a claim under the Consumer Protection Act ("CPA").

***Fourth,*** Ms. Kelley's unjust enrichment claim rests on the amorphous allegation that Microsoft has been "unjustly enriched … from payment for licenses sold for Windows XP in PCs certified by Microsoft as 'Windows Vista Capable,' and upgrades from Vista Basic to Vista Premium." Am. Compl. ¶ 9.2. But Ms. Kelley does not allege that she paid Microsoft for a Windows XP license or for an upgrade to a Windows Vista premium edition. Thus, she has not alleged that she enriched Microsoft at all, much less that any enrichment was unjust.

***Finally,*** Ms. Kelley does not allege that she participated in, much less suffered injury from, the Express Upgrade program. Accordingly, she lacks standing to make a claim challenging that program, and her Express Upgrade claims asserted under all four causes of action should be dismissed.

## II. FACTUAL BACKGROUND

According to the Complaint, Dianne Kelley purchased a PC in November 2006 from an unidentified seller. Am. Compl. ¶ 2.1. The Complaint alleges that Ms. Kelley bought a computer with a "Windows Vista Capable" sticker affixed, but acknowledges that the

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

computer "was not designated as 'Premium Ready.'" *Id.* It does not say whether Ms. Kelley saw or understood the "Premium Ready" designation on other PCs.

Although Ms. Kelley's Complaint acknowledges that ***all*** Windows Vista Capable PCs will run some edition of Windows Vista, as the sticker indicates, she complains that PCs meeting minimum hardware requirements will provide only the features of the Windows Vista Home Basic edition. Am. Compl. ¶¶ 4.3-4.4. To obtain additional features, including "enhanced graphics, media center and remote control," a consumer must have a Windows Vista premium edition—and a PC with sufficient capacity to run those features. *Id.* ¶¶ 1.2, 4.4. The Complaint explains Ms. Kelley's understanding of these distinctions:

> There are four editions of Vista: Basic, Premium, Business and Ultimate. Central to Microsoft's deceptive practices was its failure to indicate on "Windows Vista Capable" stickers that a PC certified as "Windows Vista Capable," but lacking the designation "Premium Ready," could run only Vista Basic, which provides none of the features that are unique to Vista and make Vista attractive to consumers. As stated by Jim Wong, Senior Vice President of Acer, a leading OEM, "Premium is the real Vista." Microsoft touted Vista's unique features and capabilities, but then certified PCs as "Windows Vista Capable" that were incapable of running those features and capabilities.

*Id.* ¶ 4.4. In other words, as the Complaint makes clear, OEMs could label as "Premium Ready" certain (usually more expensive) PCs, so consumers could distinguish between those PCs capable of providing only Windows Vista Home Basic features and those capable of providing additional Windows Vista premium features. *Id.* ¶ 4.4. The OEM that labeled Ms. Kelley's PC did ***not*** affix a "Premium Ready" sticker. *Id.* ¶ 2.1.

Ms. Kelley's Complaint also addresses the "Express Upgrade Program." Beginning in October 2006, buyers of "Windows Vista Capable" PCs could get free or reduced-price upgrades from the Windows XP operating system to Windows Vista after Windows Vista's release to the public, which was then only a few months away. The Complaint alleges:

> In October 2006, Microsoft embarked on a supplemental marketing strategy designed to further boost holiday sales of

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

> PCs bearing the soon-to-be-replaced Windows XP operating system. Pursuant to Microsoft's "Express Upgrade Guarantee Program," consumers purchasing "Windows Vista Capable" PCs would receive upgrades to "Vista" for little or no cost. In fact, the upgrade for many of these consumers is to Vista Basic, which offers none of the new and unique features that Microsoft marketed as and calls "Vista."

*Id.* ¶ 4.5.

In asserting that an upgrade to Windows Vista Home Basic had little value, Ms. Kelley relies on an October 2006 public posting from "a product manager on Microsoft's Vista launch team." *Id.* ¶ 4.6. That posting advised readers as follows:

> Consider looking for "Windows Vista Capable" PCs designated as "Premium Ready," as these PCs are designed to deliver the core Windows Vista experience. PCs carrying only the "Windows Vista Capable" logo may be eligible for the program, but the offer may vary from manufacturer to manufacturer. Go here for more information about Windows Vista Capable and Premium Ready PCs.

Declaration of Khiota Therrien ("Therrien Dec."), Ex. A.[1] The posting also cautioned readers "to take into account the upgrade path of the [model] you purchase." *Id.* The posting quoted in the Complaint contained a link that took readers to another Web page, which informed them of the very facts Plaintiff alleges were missing from the "Windows Vista Capable" sticker:

---

[1] The Court may consider the full text of the posting quoted in the Complaint under the incorporation by reference doctrine. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."). "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material. Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Earlier this week the United States Supreme Court applied this principle on a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, at *13, n.13 (U.S. May 21, 2007) ("[T]he District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn.").

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

> A new PC that carries the Windows Vista Capable PC logo can run Windows Vista. All editions of Windows Vista will deliver core experiences such as innovations in organizing and finding information, security, and reliability. All Windows Vista Capable PCs will run these core experiences at a minimum. Some features available in the premium editions of Windows Vista—like the new Windows Aero user experience—may require advanced or additional hardware.

Therrien Dec., Ex. B. Although Ms. Kelley bought her computer in the month following this posting, the Complaint does not indicate whether she knew of this advice when she bought a PC that did not have a "Premium Ready" sticker.

Based on these allegations, Ms. Kelley's Complaint purports to assert four claims. The First Cause of Action alleges that the "Windows Vista Capable" designation constituted a deceptive "written warranty" in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* The Second Cause of Action alleges that Microsoft "contractually promised" to upgrade her to "'Vista' at a price not exceeding any cost of an upgrade to Vista Basic," and that Microsoft breached this alleged contract by allowing a PC to be labeled "Windows Vista Capable" when it could provide only the features of Windows Vista Home Basic. Am. Compl. ¶ 7.2. The Third Cause of Action alleges that Microsoft engaged in unfair or deceptive business practices in violation of the CPA (or alternatively the fifty states' consumer protection laws) by "instructing and then authorizing OEMs to affix to PCs a Microsoft designed and trademarked certification that the PCs were 'Windows Vista Capable'" and then "fail[ing] to advise class members that they would be required to make a further expenditure of money, above any cost of a Vista Basic upgrade," to run any edition of the new operating system but Windows Vista Home Basic. *Id.* ¶ 8.3. The Fourth Cause of Action alleges that Microsoft was unjustly enriched "from payment for licenses sold for Windows XP in PCs certified by Microsoft as 'Windows Vista Capable' and upgrades from Vista Basic to Vista Premium." *Id.* ¶ 9.2.

On each claim, Ms. Kelley seeks to represent a nationwide class defined as follows:

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

> All persons and entities residing in the United States who purchased a personal computer certified by Microsoft as "Windows Vista Capable" and not also bearing the "Premium Ready" designation, and/or all persons and entities residing in the United States who purchased a PC with an "Express Upgrade" to Vista Basic.

*Id.* ¶ 5.1. Microsoft now asks the Court to dismiss Ms. Kelley's claims.

## III. LEGAL ANALYSIS

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (affirming dismissal); *Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073, 1082 (C.D. Cal. 1999) (granting motion to dismiss). Although the Court must accept as true the Complaint's well-pleaded factual allegations, the Ninth Circuit has "consistently emphasized … that conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. Los Angeles County*, __ F.3d __, No. 04-56973, 2007 WL 1412671, at *2 (9th Cir. May 15, 2007) (affirming dismissal) (citation omitted). In particular, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The United States Supreme Court made clear earlier this week that "a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, at *8 (U.S. May 21, 2007) (internal quotations omitted). Under this standard, Ms. Kelley has not stated a claim.

### A. Because Ms. Kelley Has Not Alleged the Existence of a "Written Warranty," She Has Not Stated a Claim under the Magnuson-Moss Warranty Act.

The Complaint alleges that "Microsoft's 'Windows Vista Capable' certification constitutes a deceptive warranty in violation of the Magnuson-Moss Warranty Act, 15 U.S.C.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

§ 2301, *et seq.*" Am. Compl. ¶ 6.2. Specifically, Ms. Kelley alleges that "Microsoft's written certification on PCs pre-installed with its Windows XP operating system as 'Windows Vista Capable' constituted a 'written warranty'" under the statute. *Id.* ¶ 6.6. But the small sticker that Microsoft authorized OEMs to place on qualifying PCs does ***not*** fit within the limited definition of "written warranty" under the Magnuson-Moss Act and, as such, cannot be the basis for any claim under the statute.

The statute defines a "written warranty" as follows:

> **(A)** any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> **(B)** any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

The sticker at issue here, which allegedly consists of only three printed words—"Windows Vista Capable"—does not affirm or promise that any material or workmanship is "defect free," nor does it promise to refund, repair or take ***any*** remedial action. In fact, the sticker says nothing about refunds or replacements of any kind. Consequently, on its face, the "Windows Vista Capable" sticker cannot be a "written warranty" under the first prong of Section 2301(6)(A) ("defect free") or under Section 2301(6)(B) ("undertaking in writing … to refund, repair, replace, or take other remedial action").

Likewise, the sticker by its plain language does not relate to any "specified period of time" and therefore cannot be a "written warranty" under the second prong of Section

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

2301(6)(A) ("meet a specified level of performance over a specified period of time"). As Federal Trade Commission regulations interpreting the Act state:

> Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code. However, these disclosures alone are not written warranties under the Act. … ***A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty.***

16 C.F.R. § 700.3 (emphasis added). Relying on this regulation, the Seventh Circuit in *Skelton v. General Motors Corp.*, 660 F.2d 311, 316 n.1 (7th Cir. 1981), affirmed that GM's "brochures, manuals, consumer advertising and other forms of communications to the public," which stated that certain GM cars would contain THM 350 transmissions or "transmissions of similar quality and performance … and that (such transmissions) would meet a specified level of performance," were not written warranties under the Act because they "did not affirm that the transmission would 'meet a specified level of performance over a specified period of time.'" Other courts similarly have found that without a "specified period of time," a written warranty does not exist. *See Schreib v. Walt Disney Co.,* No. 1-05-0094, 2006 WL 573008, at *4 (Ill. App. Feb. 1, 2006) (holding in a putative class action seeking damages for consumers' purchase of "Gold Collection" and "Masterpiece Collection" movies that those product names and the related marketing strategy did "not constitute a written warranty that the videotapes would last for generations"); *States v. BFG Electroplating & Mfg. Co., Inc.,* Civ. A. No. 87-1421, 1989 WL 222722, at *10 (W.D. Pa. Oct. 18, 1989) (holding that an advertisement reading "450 used 8-inch cement blocks" was not a written warranty under the Act because there was no "specified level of performance over a specified period of time").

Here, the product information disclosure—designating the PC as "Windows Vista Capable"—does not refer to any specific time period. Consequently, it does not meet the

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

criterion under the Act that a "written warranty" promise that a "specified level of performance" occur "over a specified period of time." 15 U.S.C. § 2301(6)(A).[2]

Because the sticker placed on plaintiff's PC does not meet the definition of a written warranty under the Magnuson-Moss Act, the Court should dismiss this claim.

**B. Ms. Kelley Has Not Alleged Facts Sufficient to Show the Formation of a Contract with Microsoft.**

Ms. Kelley's Complaint does not allege the existence of a contract with Microsoft. Instead, she relies on an abstract and indefinite allegation that "Microsoft ***contractually promised*** to provide plaintiff ... software and services ... that provided 'Vista' at a price not exceeding any cost of any upgrade to Vista Basic." Am. Compl. ¶ 7.2 (emphasis added). "[For] a contract to form," however, "the parties must objectively manifest their mutual assent." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178, 94 P.3d 945 (2004). Further, to survive a motion to dismiss, a Complaint based on an alleged agreement must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, at *8. Here, the "factual matter" set forth in

[2] Nor does the sticker promise a "specified level of performance." Federal courts repeatedly have found that product information disclosures such as this do not amount to written warranties under the Act. *See In re Sears Roebuck & Co.*, No. MDL-1703, 05C4742, 05C2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (holding that phrase "Made in USA" does not constitute a written warranty under the Act because "it does not affirm or promise that the material or workmanship ... will perform at a specified level over a specified time"); *Goodman v. Perlstein*, Civ. A. No. 86-2144, 1989 WL 83452, at *2 (E.D. Pa. July 21, 1989) (holding that jeweler's "appraisal certificate" in connection with the sale of diamonds to plaintiff was not a written warranty under the Act because appraisals "do not promise that 'such material or workmanship ... will meet a specified level of performance over a specified period of time"); *Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*, 629 F. Supp. 1030, 1032 (M.D. Ga. 1986) (holding that "nothing" in the defendant car dealership's invoice "comes within the Magnuson-Moss definition of 'written warranty,' including the designation of the car as 'new'"); *Thomas v. Micro Center*, No. 88298, 2007 WL 1219282, at *4 (Ohio Ct. App. Apr. 26, 2007) (holding that receipt for laptop that said "notebook/laptop computers may be returned or exchanged within 7 days of purchase" was not written warranty under the Act because it "did not contain any written information relating to the performance or workmanship of the computer").

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

the Complaint negates the existence of an agreement and shows that neither party assented to be bound.

**1. A Marketing Campaign Does Not Create a Binding Offer.**

A contract cannot arise without an offer of performance and acceptance of that offer. *Keystone,* 152 Wn.2d at 178, 94 P.3d 945 (finding no enforceable contract where plaintiff failed to identify offer and acceptance). Ms. Kelley, however, does ***not*** allege that she bought her PC (or any software) directly from Microsoft, or that she engaged in ***any*** direct dealings with Microsoft. Instead, Ms. Kelley declares as a legal conclusion that Microsoft "contractually promised" to provide "software and services … that provided 'Vista' at a price not exceeding any cost of an upgrade to Vista Basic." Am Compl. ¶ 7.2. According to the Complaint, this so-called "contractual promise" derives entirely from Microsoft's advertising of the Express Upgrade program, *Id.* ¶ 7.2, including Microsoft's so-called "supplemental marketing strategy" for this program. *Id.* ¶ 4.5.

As a matter of law, however, advertisements and marketing campaigns do ***not*** constitute binding offers to contract. RESTATEMENT (SECOND) OF CONTRACTS § 26, cmt. b (1981) ("Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell."); 1 Richard A. Lord, WILLISTON ON CONTRACTS § 4:7, at 285-88 (4th ed. 1990) ("Courts routinely hold that … advertisements or other expressions of intention are invitations to solicit offers or to enter into a bargain, rather than offers themselves."). This holds true even where an advertisement includes specific prices. 25 DeWolf *et al.*, WASH. PRAC.: CONTRACT LAW AND PRACTICE § 2.12 (1998) ("Prices quoted in an advertising circular or other advertisement ordinarily are not offers.").

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Thus, because Ms. Kelley alleged only that Microsoft engaged in a marketing campaign, which did not amount to an enforceable offer that could confer contractual rights, the Court should dismiss her contract claim as a matter of law.[3]

**2. Ms. Kelley Has Not Alleged That She Provided Consideration for the Alleged Contract.**

Ms. Kelley also has not alleged that she provided consideration to Microsoft sufficient to establish a contract. "Whether a contract is supported by consideration is a question of law," *Nationwide Mut. Fire Ins. Co. v. Watson,* 120 Wn.2d 178, 195, 840 P.2d 851 (1992), which this Court can address on a motion to dismiss.

If Washington law were to treat Microsoft's marketing campaign as a binding offer, Ms. Kelley would have to allege the existence of a "unilateral contract," which "consists of a promise on the part of the offeror and performance of the requisite terms by the offeree. ... In a unilateral contract, the offer or promise of the one party does not become binding or enforcible until there is performance by the other party." *Multicare Med. Ctr. v. State,* 114 Wn.2d 572, 584, 790 P.2d 124 (1990) (quotation omitted) (superseded by statute on other grounds). "Consideration for a unilateral contract consists of the offeree's performance of the required terms." *Vehicle/Vessel LLC v. Whitman County,* 122 Wn. App. 770, 777, 95 P.3d

[3] Although the Court need not consider the "terms" of the marketing campaign to decide this motion, Ms. Kelley's Complaint itself refutes the notion of a sufficiently definite offer to create an enforceable contract. "An enforceable contract requires, among other things, an offer with ***reasonably certain*** terms." *Andrus v. State,* 128 Wn. App. 895, 898, 117 P.3d 1152 (2005) (emphasis added); *see also Johnson v. Star Iron & Steel Co.,* 9 Wn. App. 202, 205, 511 P.2d 1370 (1973) (offer "must be definite enough so that when it is coupled with the acceptance it can be determined, with at least a reasonable degree of certainty, what the nature and extent of the obligation is which the proposer has assumed"). Here, Ms. Kelley urges that Microsoft's marketing suffered from the flaw of not being definite enough, in that it allegedly did not specify the version of Windows Vista a consumer would receive through the upgrade program. Am. Compl. ¶ 4.5. That being the case, even if Microsoft's alleged marketing campaign ***could*** be construed as an offer (which it could not), it would not be sufficiently definite to be enforceable—by Ms. Kelley's own admission.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

394 (2004). "There is no contract until the bargained-for act is performed." *Id.* (finding no consideration for unilateral contract where promisee failed to perform).

Further, because a contractual relationship depends on mutual consent, it will arise only when both parties intend that result. "Consideration is a ***bargained-for*** exchange of promises." *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004) (refusing to enforce non-compete agreement for lack of consideration) (emphasis added). For that reason, where the alleged promisee does not know of the promisor's offer, the parties have ***not*** exchanged consideration and made a bargain. As Professor Farnsworth explains:

> [T]he promisee's ***purpose*** must be to take advantage of the proposed exchange. In practice, the principal effect of this requirement is to ***deny enforcement of the promise if the promisee takes the action sought by the promisor without knowledge of the promise.***

E. Allan Farnsworth, CONTRACTS § 2.10, at 67 (3d ed. 1999) (emphasis added); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 23 (1981) ("It is essential to a bargain that each party manifest assent with reference to the manifestations of the other."); 25 DeWolf, *et al.*, WASH. PRAC. § 2.23 (1998) ("The promise must ***induce*** the detriment. In effect, ***the promisee must know of the offer and intend to accept it.***") (emphasis added). Thus, offers of rewards for the return of lost property do not constitute binding contracts where a person returns the property without knowing of the offer of reward. RESTATEMENT (SECOND) OF CONTRACTS § 23, cmt. c. ill. 2. Similarly, identical offers that cross in the mail do not create binding contracts where the parties did not know the terms of the others' offer. *Id.*, cmt. d. ill. 4.

Thus, to plead a contract, Ms. Kelley would need to allege that she performed (in Farnsworth's words) with the "purpose" of "tak[ing] advantage of the proposed exchange" and that she thereby accepted the terms of Microsoft's supposed "offer," creating a binding obligation. But Ms. Kelley has not done anything close to that. To the contrary, she has ***not*** alleged that she bought her PC or otherwise took any action ***because of*** anything Microsoft did, said, or offered, much less that she did so with the intent of creating a contract with

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Microsoft. The most that can be drawn from the Complaint is that (a) Microsoft engaged in various forms of advertising, including Web postings, *see* Therrien Dec., Ex. A, and (b) Ms. Kelley purchased a computer. She does not allege any connection between the two.

Because a contract "must be supported by a consideration to be enforceable," *King v. Riveland,* 125 Wn.2d 500, 505, 886 P.2d 160 (1994), Ms. Kelley's failure to allege that Microsoft's offer induced her performance means that she has not stated a contract claim.

**C. Plaintiff Has Not Properly Alleged a Causal Link Between the Claimed Deceptive Conduct by Microsoft and a Cognizable CPA Injury.**

Just as the Complaint does not allege that Ms. Kelley acted in response to Microsoft's supposed offer, it does not allege ***any*** causal link between Microsoft's allegedly deceptive marketing programs and Ms. Kelley's supposed injury (the nature of which she does not describe). Because Ms. Kelley has not alleged that she purchased her PC or took any other action because of anything Microsoft said or did, or failed to say or do, she has not stated a claim under the CPA.

**1. To State a CPA Claim, Ms. Kelley Must Allege That the Claimed Deceptive Conduct Caused Her to Suffer Injury.**

The CPA affords a private right of action ***only*** to a "person who is injured in his or her business or property ***by*** a violation" of the statutory prohibition against deceptive practices. RCW 19.86.090 (emphasis added). Such a person may sue to recover "***actual damages***." *Id.* (emphasis added). The Washington Supreme Court has held that the highlighted language requires private plaintiffs to show "a causal link … between the unfair or deceptive acts and the injury" they allege. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 792-93, 719 P.2d 531 (1986). Accordingly, causation is one of the five elements of a CPA claim. *Id.* If a complaint fails to plead causation, a court must dismiss it. *See Ass'n of Washington Pub. Hosp. Dists. v. Phillip Morris, Inc.,* 241 F.3d 696, 706 (9th Cir. 2001) (affirming dismissal of CPA claim for failure to plead causation); *Howell v. Spokane & Inland Empire Blood Bank,* 114 Wn.2d 42, 57, 785 P.2d 815 (1990) (affirming summary

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

judgment against CPA plaintiff for lack of causation); *Fidelity Mort. Corp. v. Seattle Times Co.,* 131 Wn. App. 462, 470-71, 128 P.3d 621 (2005) (same).

Where alleged deception lies at the heart of a CPA claim, as it does here, a plaintiff must allege (and ultimately prove) that the deceptive practice caused the plaintiff to part with money that otherwise would have stayed in his or her pocket. "The causation element is met where the defendant 'induced' the plaintiff to act or refrain from acting." *Robinson v. Avis Rent-a-Car System, Inc.,* 106 Wn. App. 104, 113, 22 P.3d 818 (2001). Thus, for example, in *Crane & Crane, Inc. v. C&D Elec., Inc.,* 37 Wn. App. 560, 683 P.2d 1103 (1984), the court held that Crane & Crane failed to show causation as a matter of law where it hired the defendant ***not*** as a result of its misleading statements, but instead "because that was the electrical shop usually called." 37 Wn. App. at 563. In *Nuttall v. Dowell,* 31 Wn. App. 98, 639 P.2d 832 (1982), the court affirmed a judgment against a CPA plaintiff where the plaintiff independently investigated a disputed property line and therefore did not rely on the defendant's misrepresentations about its location. The court held that "a party has not established a causal relationship with a misrepresentation of fact where he does not convince the trier of fact that he relied upon it." 31 Wn. App. at 111, *cited with approval in Pickett v. Holland Am. Line-Westours, Inc.,* 145 Wn.2d 178, 196-97, 35 P.3d 351 (2001) (calling *Nuttall* the "only Washington authority directly on point," but declining to decide "debatable question" of whether proof of causation requires proof of reliance).[4] Finally, in *Robinson*, the

[4] Although the Washington Supreme Court has not yet firmly held that "causation" in a CPA case alleging deception requires proof of reliance, the federal courts have required reliance as an element under similarly-phrased federal consumer protection statutes. For example, the federal Truth in Lending Act ("TILA") requires disclosures in credit transactions and, like the CPA, includes a private remedy allowing recovery of "actual damage sustained" for violations. 15 U.S.C. § 1640(a)(1). Construing this language, "[m]ost courts that have addressed the issue have held that detrimental reliance is an element in a TILA claim for actual damages," *Turner v. Beneficial Corp.,* 242 F.3d 1023, 1026 (11th Cir. 2001) (citing First, Fifth, Sixth and Eighth Circuits), including the Ninth Circuit. *In re Smith,* 289 F.3d 1155, 1157 (9th Cir. 2002). The Fifth Circuit has explained that a plaintiff may not recover "actual damage sustained" absent proof "that, had he been properly informed, [the consumer] would have engaged in a different or less-expensive transaction." *Perrone v. General Motors*

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

court affirmed summary judgment against a plaintiff who could not show causation because the defendant had disclosed the allegedly deceptive fees. 106 Wn. App. at 119.

**2. Ms. Kelley Has Not Alleged Any Causal Link between Microsoft's Alleged Deceptive Conduct and Her Injury.**

Here, Ms. Kelley does not allege any causal link between any action by Microsoft and any cognizable injury. Despite her re-pleading, the allegations specific to Ms. Kelley still consist of a grand total of two sentences in her 17-page Amended Complaint:

> In November 2006, she purchased a PC to which a 'Windows Vista Capable' sticker is [sic] affixed. The PC she purchased was not designated as "Premium Ready."

Am. Compl. ¶ 2.1. Ms. Kelley does ***not*** claim that she saw the "Windows Vista Capable" sticker before making her purchase or that she had an understanding of what that sticker meant, much less that she bought the PC because of it. She does ***not*** allege that she misunderstood the "Windows Vista Capable" designation or that she would have purchased a different (and more expensive) machine if she had known that the PC she purchased would provide the features of only Windows Vista Home Basic. She does ***not*** allege that she saw advertisements for Windows Vista (in any of its editions), that she was aware of or desired any of the premium Windows Vista features before deciding which PC to buy, or that she even saw the marketing efforts described in the Complaint, much less that they induced her to purchase her PC. In short, Ms. Kelley alleges only that she bought a PC that could support Windows Vista Home Basic, not a Windows Vista premium edition, and that Microsoft (not surprisingly) engaged in a marketing campaign concerning Windows Vista—with no link between the two.

---

*Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000). Although Microsoft believes the CPA requires the same allegation and the same proof, the deficiencies in Ms. Kelley's Complaint are so fundamental that the Court can dismiss it without deciding whether the Washington Supreme Court would construe the CPA as the federal courts have construed statutes using the same words and animated by the same policy.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Ms. Kelley's insufficient allegations contrast starkly with the fact patterns in those Washington cases in which plaintiffs have been found to satisfy the CPA's causation element. In *Schmidt v. Cornerstone Invests., Inc.*, 115 Wn.2d 148, 168, 795 P.2d 1143 (1990), for example, the court sustained a CPA claim where plaintiffs were induced to invest in a development project because they were shown a fraudulently inflated appraisal; plaintiffs testified that "had they not been shown the inflated appraisal, they never would have made the investment which led to the injury now complained of." *See also Anhold v. Daniels,* 94 Wn.2d 40, 46-47, 614 P.2d 184 (1980) (misrepresentation induced investment). Similarly, in *Travis v. Washington Horse Breeders' Ass'n,* 111 Wn.2d 396, 407, 759 P.2d 418 (1988), the defendant made misrepresentations that "induced" plaintiff to buy a racehorse. These cases share essential allegations missing from Ms. Kelley's Complaint: plaintiffs alleged that they formed an erroneous understanding based on the deception, and that they took action as a result. Ms. Kelley, however, does not allege that she believed or did ***anything*** because of Microsoft's alleged conduct.

Ms. Kelley's undifferentiated allegations concerning supposed injuries to the putative class highlight the inadequacy of her individual complaint. For example, Ms. Kelley broadly alleges that ***some*** putative class members were injured by "having to purchase RAM and/or other hardware if they wish to run 'the real Vista.'" Am. Compl. ¶ 8.5. (Even these allegations do not suffice in the absence of an allegation that Microsoft's alleged deception induced some action that led to the injury.) But Ms. Kelley does not allege that ***she*** purchased additional RAM or hardware to run a Windows Vista premium edition. Nor does Ms. Kelley allege that she bought "Vista Basic through the Express Upgrade program" or that she "paid additional money to obtain 'the real Vista.'" *Id.*

Thus, whatever Microsoft may have said (or failed to say) about Express Upgrade and Windows Vista premium editions, Ms. Kelley has not alleged that its statements or conduct caused her to suffer any cognizable CPA injury so as to give rise to a private right of action.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

### 3. Ms. Kelley's Allegations of an "Omission" Do Not Excuse Her Obligation to Plead CPA Causation.

Microsoft's alleged omission in "fail[ing] to advise Class members that they would be required to make a further expenditure of money, above any cost of a Vista Basic upgrade, in order to utilize … 'the real Vista,'" Am. Compl. ¶ 8.3, does not excuse Ms. Kelley from her obligation to allege a causal link between the allegedly deceptive conduct and her injury.

Where a CPA claim rests on a defendant's alleged failure to disclose material facts, the plaintiff still must allege and prove that she would have acted differently had she timely received the information. *See Washington State Physician Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 314-15, 858 P.2d 1054 (1993) (plaintiff physician offered corroborated testimony that he would not have prescribed drug if he had known information withheld by drug manufacturer); *Reeves v. Teuscher*, 881 F.2d 1495, 1502 (9th Cir. 1988) (plaintiffs testified that misrepresentations induced them to invest in a partnership; "had they known the truth they would not have invested"). In some circumstances, courts may adopt a rebuttable presumption of reliance on omitted facts. In *Morris v. International Yogurt Co.*, 107 Wn.2d 314, 327-28, 729 P.2d 33 (1986), for example, the Washington Supreme Court presumed reliance on omissions because plaintiffs showed that (1) the defendant franchisor had a statutory duty to disclose specific facts to prospective franchisees, *see* RCW 19.100.030(4)(a), and (2) the franchisees had relied on affirmative statements in a franchise agreement and offering circular. But courts will ***not*** presume reliance (or causation) unless (1) the plaintiff saw and relied on statements from which the information is said to have been omitted, and (2) the defendant had a duty to the plaintiff to disclose the omitted facts. *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 884 (5th Cir. 1973).[5]

---

[5] *See also Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984) ("to be entitled to a … presumption of reliance … plaintiffs must demonstrate that they ***generally relied upon the defendant***") (emphasis added); *Alter v. DBLKM, Inc.*, 840 F. Supp. 799, 807 (D. Colo. 1993) (presumption would apply to information allegedly omitted from offering document only "if there was actual reliance" on that offering document).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Ms. Kelley has not made any such allegation here. She has not alleged that she read or relied on ***any*** statements made by Microsoft concerning the meaning of the "Windows Vista Capable" sticker; for that reason, she has not alleged any basis for presuming reliance on facts supposedly omitted from those statements. Nor has Ms. Kelley alleged a special relationship with Microsoft giving rise to an independent duty to disclose. *See, e.g., Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 154 (1972) (duty to disclose arose from fiduciary relationship created when a bank had physical possession of plaintiffs' stock certificates). Indeed, Ms. Kelley does not allege any dealings with Microsoft at all, much less the sort of special relationship that would give rise to a duty to disclose.

Thus, even if one regards Ms. Kelley's claim as turning on a pure omission (rather than on the allegedly deceptive "Windows Vista Capable" sticker), she has not alleged causation.

**4. Alleged Price Elevation Is Not a Cognizable CPA Injury**

In a transparent effort to avoid her obligation to allege causation and injury, the Complaint asserts that Ms. Kelley paid an inflated price for the PC she purchased because Microsoft's "unfair or deceptive acts or practices … created artificial demand for PCs at an artificially inflated price." Am. Compl. ¶ 8.5. Courts in other states have rejected this "price inflation" theory as insufficient to satisfy the proximate cause requirement of those states' consumer protection statutes. Because the Washington Supreme Court would likely take the same approach, this Court should reject that theory here.

The leading case is *Oliveira v. Amoco Oil Co.,* 776 N.E.2d 151 (Ill. 2002), in which a consumer brought a putative class action against Amoco under the Illinois Consumer Fraud and Deceptive Business Practices Act, alleging that the company engaged in a deceptive advertising campaign for its premium gasoline. According to the plaintiff, putative class members suffered damage if they purchased Amoco premium gasoline, regardless of whether they saw the allegedly deceptive advertisements. Like Ms. Kelley, plaintiff theorized that

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Amoco's advertisements increased consumer demand for premium gasoline which, in turn, permitted Amoco to charge an inflated price, thereby causing actual damage to ***all*** purchasers.

The Illinois Supreme Court rejected plaintiff's "price inflation" theory of causation. The court first observed that, "[u]nder plaintiffs 'market theory' of causation, purchasers of defendant's premium gasoline who saw the ads but never believed them, i.e., those who 'knew the truth,' nevertheless [would] have valid claims under" the Illinois consumer fraud act. *Id.* at 164. The court squarely rejected this expansion of the statute and held that to properly "plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived" by the "defendant's advertisements." *Id.* Oliveira had not done so:

> Plaintiff does not allege that he was, in any manner, deceived by defendant's advertisements. Plaintiff does not allege that he received anything other than what he expected to receive when he purchased defendant's gasoline, i.e., a certain amount of gasoline, with a certain octane level, for the price listed on the pump. Indeed, plaintiff could not allege that defendant's advertisements deceived him or misled him as to what he was receiving when he made his purchase.

*Id*; *see also Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) (rejecting plaintiff's "market theory" of proximate causation under Illinois consumer fraud act).

Other courts have reached the same conclusion. For example, in a case virtually identical to *Oliviera* (and this one), when the plaintiff herself had not been influenced or deceived by the advertisements in question, the Pennsylvania Supreme Court held: "[T]here is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement ***might*** deceive members of the audience and influence a purchasing decision ***when the plaintiff was neither deceived nor influenced***." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) (emphasis added); *see also Fink v. Ricoh Corp.*, 839 A.2d 942, 959-60 (N.J. Super. Ct. Law Div. 2003) (following *Oliveira* and *Weinberg*). Nothing in the Washington cases suggests that our Supreme Court would take a different approach. *See, e.g.,*

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Sheldon v. Am. States Preferred Ins. Co.*, 123 Wn. App. 12, 16-18, 95 P.3d 391 (2004) (installment fee could not be the basis of CPA claim where it was fully disclosed and plaintiff voluntarily paid), *rev. denied,* 153 Wn.2d 1030, 110 P.3d 756 (2005); *Robinson v. Avis Rent-a-Car System, Inc.*, 106 Wn. App. at 119, 22 P.3d 818 (alleged deceptive fee could not be the basis of a CPA claim where it was disclosed to plaintiff).

Here, Ms. Kelley does ***not*** allege that Microsoft's conduct deceived her into buying a PC that she would not otherwise have purchased, or that she received anything other than what she expected to receive—a low-end PC with the "Windows Vista Capable" sticker, which was ***in fact*** "capable" of running Windows Vista Home Basic. She does not allege that the sticker played any part in her decision to purchase that PC, or that she had any expectation that she would be able to run something more than Windows Vista Home Basic—an expectation that would have contradicted the blog she quotes in her Complaint. *See* Am. Compl. ¶ 2.1 (Kelley purchased non-"Premium Ready" PC in November 2006), ¶ 4.6 (October 2006 blog posting concerning limitations on non-"Premium Ready" PCs); Therrien Dec., Exs. A & B. She does not allege that she was ignorant of the disclosures that retailers, OEMs, and Microsoft made to educate the public about the differences between different editions of Windows Vista. In fact, she does not allege that she saw ***any*** advertisement or disclosure about Windows Vista. Ms. Kelley alleges ***only*** that she paid an "artificially inflated price," Am. Compl. ¶ 8.5, even though it was the price she chose to pay. She has not stated a CPA claim.

### D. Because Plaintiff Has Not Alleged That She Conferred a Benefit on Microsoft, She Has Not Alleged an Unjust Enrichment Claim.

Ms. Kelley's Complaint also does not properly plead that she unjustly enriched Microsoft, a company with which she concedes that she had no direct relationship. A claim for unjust enrichment requires the allegation and proof of three elements: (1) "A benefit conferred on the defendant by the plaintiff"; (2) "an appreciation or knowledge by the

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

defendant of the benefit"; and (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Bailie Commc'n, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991).

The Complaint does not satisfy the first element. Once again resorting to abstraction, Ms. Kelley's claim for unjust enrichment rests on the broad allegation that Microsoft has been unjustly enriched "from payment for licenses sold for Windows XP in PCs certified by Microsoft as 'Windows Vista Capable,' and upgrades from Vista Basic to Vista Premium." Am. Compl. ¶ 9.2. But Ms. Kelley does not allege that ***she*** made any such payment to Microsoft for either license. She does not allege that she purchased an upgrade from Windows Vista Basic to a Windows Vista premium edition, and thus does not allege that she conferred a benefit on Microsoft in the form of the payment for that upgrade. Nor has she alleged that she bought a license for Windows XP ***from Microsoft***, as distinct from a license purchased from an OEM. In short, Ms. Kelley has not alleged that she conferred a benefit on Microsoft that would support an unjust enrichment claim. *See Brader v. Minute Muffler Installation, Ltd.*, 81 Wn. App. 532, 537, 914 P.2d 1220 (1996) ("A party is entitled to restitution only to the extent that he or she has conferred a benefit to the other party through performance or reliance.").

But even assuming the Complaint can be construed to allege that Ms. Kelley actually paid an OEM for a Windows XP license and that the OEM paid Microsoft, she has not alleged any facts showing that it would be unjust for Microsoft to retain what the OEM paid to Microsoft. "[T]he mere fact that a person benefits another is not sufficient to require the other to make restitution." *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165, 776 P. 2d 681 (1989). Enrichment is "unjust" and restitution appropriate only where "money or property has been placed in a party's possession such that in equity and good conscience the party should not retain it." *Id.* at 166. Thus, in *Lynch* the Supreme Court held that there could be

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

no unjust enrichment where the defendant hospital received nothing more than what it was owed for the medical services it had provided to the plaintiff patient. *Id.* ("Ms. Tenney had incurred a debt; Deaconness is entitled to full compensation").

Here, Ms. Kelley apparently received a Windows XP operating system pre-installed in her "Windows Vista Capable" computer (which Microsoft believes she purchased from an OEM, not from Microsoft). She does not claim that Windows XP (or the license) fell short in any respect. Nor does she allege that her license for Windows XP cost more than the going price for that license, or that Microsoft received an excessive payment from the OEM. Indeed, Ms. Kelley does not allege that she paid more for her Windows XP license than she would have paid if Windows Vista had never existed. That being the case, she has not alleged that she unjustly enriched Microsoft, even if Microsoft did receive some indirect payment for the Windows XP license on her new computer.

Further, even if Ms. Kelley could allege that she paid Microsoft directly for the XP license (which Microsoft does not believe was the case), that would in turn mean that Ms. Kelley had a license agreement with Microsoft. The existence of such an agreement would bar Ms. Kelley's unjust enrichment claim for yet another reason: Washington courts long have held that a plaintiff may not pursue an unjust enrichment claim in derogation of a valid contract:

> A party to a valid express contract is bound by the provisions of that contract and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.

*Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943); *see also United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) (affirming dismissal of unjust enrichment claim in face of valid contract under Washington law); *MacDonald v. Hayner,* 43 Wn. App. 81, 85-86, 715 P.2d 519 (1986) (same). Likewise, if Ms. Kelley were to buy a "license" to upgrade from Windows Vista Home Basic to a

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Windows Vista premium edition, *see* Am. Compl. ¶ 9.2, she would then have an express contract with Microsoft, which would bar her unjust enrichment claim as a matter of law.

Allowing this claim to survive would stand the concept of unjust enrichment on its head. At bottom, Ms. Kelley claims that she should receive "for little or no cost" an upgrade to "radical improvements over previous operating systems" that Microsoft spent "between $5 billion and $6 billion over five years to develop." Am. Compl. ¶¶ 1.2, 4.1, 4.5. Equity will not support such a result.

**E. Plaintiff Lacks Standing to Assert Any Claim Challenging the Express Upgrade Program.**

"[A] party has standing if it demonstrates 'a real interest in the subject matter of the lawsuit, that is, a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and the party must show that a benefit will accrue it by the relief granted.'" *Timberlane Homeowners Ass'n, Inc. v. Brame,* 79 Wn. App. 303, 307-08, 901 P.2d 1074 (1995) (internal citation omitted) (denying standing to homeowners association seeking to enforce members' easement rights; granting partial summary judgment for defendant). Likewise, "[t]he doctrine of standing generally prohibits a party from asserting another person's legal right." *Id.* at 307.

Here, Ms. Kelley purports to assert claims stemming from the purchase of a "PC with an 'Express Upgrade' to Vista Basic." Am. Compl. ¶ 5.1 (proposed class definition). Specifically, the Complaint alleges that (1) some consumers were "falsely led to believe" that with the "Express Upgrade" program, they would be upgraded to a Windows Vista premium edition, not Windows Vista Home Basic; (2) some putative class members had to "purchase RAM and/or other hardware" or "pay additional money to obtain 'the real Vista'"; and (3) "unjust enrichment has resulted from payment for licenses sold for … upgrades from Vista Basic to Vista Premium." Am. Compl. ¶¶ 4.5, 8.5 & 9.2.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Ms. Kelley does not allege, however, that ***she*** purchased a PC with an Express Upgrade or that she participated in any way in Microsoft's "Express Upgrade" program. Consequently, Ms. Kelley has no "present, substantial interest" in allegations related to the Express Upgrade program. Those claims therefore should be dismissed because of her lack of standing.[6]

## IV. CONCLUSION

For all these reasons, Microsoft requests that the Court dismiss plaintiff's Complaint in its entirety for failure to state any claim upon which relief can be granted.

DATED this 25th day of May, 2007.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation

By /s/ Stephen M. Rummage
Stephen M. Rummage, WSBA #11168
Cassandra Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688
Telephone: (206) 622-3150
Fax: (206) 628-7699
E-mail: steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Of Counsel:

Charles B. Casper
Patrick T. Ryan
Montgomery, McCracken,
Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215) 772-1500

[6] Because Ms. Kelley lacks standing to assert any claim concerning the "Express Upgrade" program, she cannot represent any putative class asserting such claims. *Johnston v. Beneficial Mgmt. Corp. of Am.*, 85 Wn.2d 637, 645, 538 P.2d 510 (1975) ("A party who lacks standing himself cannot represent a class of which he is not a party.").

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2007, I electronically filed the foregoing Microsoft's Motion to Dismiss Plaintiff's First Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey I. Tilden: | jtilden@gmtlaw.com |
| Jeffrey M. Thomas: | jthomas@gmtlaw.com |
| Michael Rosenberger: | mrosenberger@gmtlaw.com |
| Mark A. Wilner: | mwilner@gmtlaw.com |
| William C. Smart: | wsmart@kellerrohrback@dwt.com |
| Mark A. Griffin: | mgriffin@kellerrohrback@dwt.com |
| Ian S. Birk: | ibirk@kellerrohrback@dwt.com |

DATED this 25th day of May, 2007.

Davis Wright Tremaine LLP
Attorneys for Defendant

By */s/ Stephen M. Rummage*

Stephen M. Rummage, WSBA #11168
Davis Wright Tremaine LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688
Telephone: (206) 628-7513
Fax: (206) 628-7699
E-mail: steverummage@dwt.com

MOTION TO DISMISS (NO. C07-475 MJP) – 25
SEA 2000284v13 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699