1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DIANNE L. KELLEY,

          Plaintiff,

     v.

MICROSOFT CORPORATION, a Washington
Corporation,

          Defendant.

NO.  C07-0475 MJP

PLAINTIFF'S OPPOSITION TO
MICROSOFT'S MOTION TO
DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

Noted on Motion Calendar:
June 22, 2007

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..........................1

II.     STATEMENT OF FACTS ..........................................................1

III.    ARGUMENT AND AUTHORITIES...........................................................2

        A.      MS. KELLEY'S COMPLAINT SATISFIES RULE
                12(B)(6)...............................................................................................2

        B.      PLAINTIFF HAS STATED A CLAIM FOR BREACH
                OF CONTRACT. ..............................................................................3

                1.      Plaintiff and the Proposed Class Have License
                        Agreements with Microsoft. .................................................3

                2.      Contract, Breach, and Damages Were Pleaded. .................4

                3.      A Contract Was Formed Notwithstanding Any
                        Marketing Campaign. ..........................................................5

                4.      Microsoft's Actions Clearly Indicate Assent......................6

                5.      Ms. Kelley Gave Consideration:  She Paid
                        Money. ..............................................................................7

        C.      MS. KELLEY'S ALLEGATIONS SUFFICIENTLY
                PLEAD CPA CAUSATION.............................................................8

                1.      Reliance is Not a Required Element of the
                        Washington CPA ..................................................................9

                        a.      Washington Case Law Rejects Reliance
                                In Favor of Proximate Cause. ...................................9

                        b.      A Reliance Element Would Frustrate the
                                Purpose of the CPA.................................................11

                        c.      Reliance Would be Inconsistent With
                                Other CPA Elements...............................................12

                        d.      Requiring Reliance Would be
                                Inconsistent with Overwhelming

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - i
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Majority View of Similar CPA Statutes
in Other States.........................................................13

2.    Plaintiff Has Met the Pleading Requirements
Under Governing Law and Any Additional,
Specific Theory of CPA Causation....................................14

3.    The 12(b)(6) Case Cited by Microsoft in Which
a CPA Claim Was Dismissed Confirms the
Sufficiency of Ms. Kelley's Allegations.............................14

4.    Ms. Kelley's Allegation of Having to Pay More
for Her Mislabeled PC Is Merely an Additional
Theory of CPA Injury, Not Causation. ...............................15

D.    PLAINTIFF HAS ADEQUATELY PLED UNJUST
ENRICHMENT. ...........................................................................16

E.    MICROSOFT'S "WINDOWS VISTA CAPABLE"
CERTIFICATION IS A WRITTEN WARRANTY
UNDER THE MAGNUSON-MOSS ACT.....................................19

1.    Microsoft Warranted a Specified Level of
Performance .....................................................................20

2.    The Warranty Relates to a Specified Period of
Time .................................................................................21

F.    PLAINTIFF HAS STANDING TO REPRESENT
THE CLASS HARMED BY MICROSOFT'S
EXPRESS UPGRADE PROGRAM...............................................23

IV.    CONCLUSION........................................................................................24

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - ii
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## TABLE OF AUTHORITIES

**Cases**

Adam v. Silicon Valley Bancshares, 1994 U.S. Dist. LEXIS 21717 (N.D. Cal.

    April 18, 1994)........................................................................................................ 23

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972)......................................... 13

Andrus v. Dept. of Transp., 128 Wn. App. 895, 117 P.3d 1152 (2005) .......................................... 6

Anhold v. Daniels, 94 Wn.2d 40, 614 P.2d 184 (1980).................................................................... 9

Appleyard v. Wallace, 754 F.2d 955 (11th Cir. 1985) .................................................................... 24

Ass'n of Wash. Pub. Hosp. Dists. v. Phillip Morris, Inc., 241 F.3d 696 (9th Cir. 2001).............. 15

Bailie Communications Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 810 P.2d 12

    (1991)..................................................................................................................... 16

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007)............................................. 2

Brader v. Minute Muffler Installation, Ltd., 81 Wn. App. 532, 914 P.2d 1220 (1996)................ 18

Brower v. Gateway 2000, Inc., 246 A.D.2d 246, 676 N.Y.S.2d 569 (1998).................................. 5

Browning v. Johnson, 70 Wn.2d 145, 422 P.2d 314 (1967)............................................................ 7

Conley v. Gibson, 355 U.S. 41 (1957)............................................................................................. 2

Crull v. Gem Ins. Co., 58 F.3d 1386 (9th Cir. 1995)....................................................................... 8

Dukes v. Wal-Mart, Inc., 474 F.3d 1214 (9th Cir. 2007) ............................................................. 24

Farwest Steel Corp. v. Mainline Metal Works, 48 Wn. App. 719, 741 P.2d 58 (1987)............... 17

Goodman v. Perlstein, 1989 U.S. Dist. LEXIS 8420 (E.D. Pa. July 21, 1989)...................... 20, 21

Griffith v. Centex Real Estate Corp., 93 Wn. App. 202, 969 P.2d 486 (1998) ............................ 12

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - iii
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 719

P.2d 531 (1986)..................................................................................................... 9, 10, 11

Higgins v. State, 70 Wn.2d 323, 422 P.2d 836 (1967) ....................................................... 4

In re Sears Roebuck & Co., No. MDL-1703, 05C4742, 05C2623, 2006 WL 1443737

(N.D. Ill. May 17, 2006) .................................................................................................. 20

Johnson v. Star Iron & Steel, 9 Wn. App. 202, 511 P.2d 1370 (1973).......................................... 6

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) ......................................................... 1, 2

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000).............................................................................. 2

Lynch v. Deaconess Med. Center, 113 Wn.2d 162, 775 P.2d 681 (1989)...................................... 19

M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wn.2d 568, 998 P.2d 305

(2000)................................................................................................................................... 5

Manning v. Microsoft Corp, 914 S.W.2d 602 (Tx. Ct. App. 1995)............................................... 18

McRae v. Bolstad, 101 Wn.2d 161, 676 P.2d 496 (1984) ............................................................ 13

MDCM Holdings, Inc. v. Credit Suisse First Boston Corp., 216 F. Supp. 2d 251

(S.D.N.Y. 2002) .................................................................................................................. 16

Milicevic v. Fletcher Jones & Mercedes-Benz, 402 F.3d 912 (9th Cir. 2005)........................ 22, 23

Mill & Logging Supply Co. v. West Tenino Lumber Co., 44 Wn.2d 102, 265 P.2d 807

(1954)................................................................................................................................... 17

Morris v. Int'l Yogurt Co., 107 Wn.2d 314, 729 P.2d 33 (1986).................................................. 13

MultiCare Med. Ctr. v. State, 114 Wn.2d 572, 70 P.3d 124 (1990) ............................................... 8

Nuttall v. Dowell, 31 Wn. App. 98, 639 P.2d 832 (1982) ............................................................ 10

Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1998) ....................................................................... 1

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - iv
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Pickett v. Holland Am. Line-Westours, Inc., 101 Wn. App. 901, 6 P.3d 63 (2000),

    rev'd on other grounds, 145 Wn.2d 178 (2002) .......................................................... 11

Pickett v. Holland America Line-Westours, Inc., 145 Wn.2d 178, 35 P.3d 351 (2001) .............. 11

Pierce v. Novastar Mortgage, Inc., 238 F.R.D. 624 (W.D. Wash. 2006) ................................. 9, 12

Robinson v. Avis Rent a Car System, Inc., 106 Wn. App. 13, 22 P.3d 818....................................11

Schmidt v. Cornerstone Invests., Inc., 115 Wn.2d 148, 795 P.2d 1143 (1990)............................ 10

Simmons v. Taylor Childre Chevrolet-Pontiac, 629 F. Supp. 1030 (M.D. Ga. 1986) ................. 20

Skelton v. General Motors Corp., 660 F.2d 311 (7th Cir. 1981)................................................... 22

State v. Ralph Williams' N. W. Chrysler Plymouth, 87 Wn.2d 298, 553 P.2d 423 (1976).......... 12

Stephens v. Omni Ins. Co., 2007 Wn. App. LEXIS 801 (Apr. 23 2007)....................................... 11

Thomas v. Micro Center, 2007 WL 1219282 (Ohio Ct. App. April 26, 2007) ............................ 21

Timberlane Homeowners Assn. v. Brame, 79 Wn. App. 303, 901 P.2d 1074 (1995)................... 24

Washington State Physicians Ins. Exch. v. Fisons, 122 Wn.2d 299, 858 P.2d 1054 (1993).. 10, 13

**Statutes & Administrative Codes**

15 U.S.C. § 2301(6) ..................................................................................................................... 20

16 C.F.R. § 700.3 .......................................................................................................................... 22

RCW § 19.86 ................................................................................................................................... 9

RCW § 19.86.920 .......................................................................................................................... 11

RCW § 62A.2-201(3)........................................................................................................................5

RCW § 62A.2-204 ............................................................................................................................5

UCC § 1-201(3) ................................................................................................................................5

UCC § 2-204.....................................................................................................................................5

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - v
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**Other**

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 2

National Consumer Law Center, Unfair and Deceptive Acts and Practices, §§ 4.2.12.3.1-2

    (6th Ed. 2005 and Supp. 2007) ........................................................................... 13

Victor E. Schwartz & Cary Silverman, <u>Common-Sense Construction of Consumer Protection</u>

    <u>Acts</u>, 54 U. Kan. L. Rev. 1, 18 .......................................................................... 13

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - vi
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Ms. Kelley has alleged facts that describe how Microsoft used its "Windows Vista Capable" program to increase its software sales prior to the launch of its new Vista operating system. It did so by palming off an artificial version of Vista—one that bore few, if any, of the features unique to Vista that Microsoft touted as five years and $5 billion in development, as a meaningful version of the "real Vista." Through its deceptive conduct, Microsoft was able to increase the sales of its soon-to-be-replaced Windows XP operating system by certifying soon-to-be-obsolete computers as "Vista Capable" when, in truth, such computers were incapable of running the "real Vista."

In its motion, Microsoft attempts to convert the "short and plain" pleading requirement of the civil rules into a challenge—without evidence—of plaintiff's theories of the case. It also cites authorities for propositions of black letter law peripheral to either the holding of the case or any issue in this one. These authorities, however, favor Ms. Kelley, not Microsoft.

## II.    STATEMENT OF FACTS

The facts relevant to this motion are alleged in Plaintiff's First Amended Complaint ("Complaint"). Dkt. No. 8-2. Usually, review of a motion to dismiss is limited to such allegations. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider a document, where authenticity is not contested, and upon which the complaint necessarily relies. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Microsoft invoked this rule to submit a document linked on the Internet to one referred to in the Complaint. Ms. Kelley's reference was solely in support of an allegation that Vista Basic is not "the real Vista."

Although not explicitly identified, one of the documents upon which Ms. Kelley's Complaint does rely is the End-User License Agreement for Windows XP ("EULA"), to which

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 1
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Microsoft requires all XP users to agree. A copy of that EULA, as obtained from Microsoft's web site, is attached to the Declaration of Jeffrey M. Thomas as Exhibit A ("EULA").

## III.  ARGUMENT AND AUTHORITIES

### A.  MS. KELLEY'S COMPLAINT SATISFIES RULE 12(b)(6).

Microsoft repeatedly overstates Ms. Kelley's pleading obligations. Her Complaint contains either direct or inferential allegations supporting all material elements of each of her causes of action. That is all that is required to overcome a Rule 12(b)(6) motion to dismiss. The Court surely is more familiar with these rules than are the lawyers. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to "give the defendant fair notice of what the . . . claim is, and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In Bell Atlantic, cited by Microsoft, the United States Supreme Court did not alter this longstanding formulation of a plaintiff's obligation: "in practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at __ (citations omitted; emphasis in original).

When reviewing a motion under Rule 12(b)(6), the court accepts all material allegations in the complaint as true and liberally construes them in the light most favorable to the plaintiff. Lee, 250 F.3d at 688. In the event the Court determines that Ms. Kelley has not made the requisite showing, she requests leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc) (leave to amend should be granted unless pleading could not possibly be cured by the allegation of other facts).

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 2
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## B.    PLAINTIFF HAS STATED A CLAIM FOR BREACH OF CONTRACT.

Microsoft's analysis of Ms. Kelley's contract claim is limited to three easily disproved

propositions. First, Microsoft denies that "an agreement was made," Dkt. No. 12 at 9:13, even

though Microsoft entered into a contract with Plaintiff and each proposed class member, which

Microsoft drafted, and which Microsoft described as "a legal agreement between you . . . and

Microsoft . . . ." See EULA, Preamble.   Second, Microsoft asserts that it cannot be held to

promises made in a "marketing campaign." Dkt. No. 12 at 10:3.   That assertion:  (a) is not an

accurate statement of the law (a promised manufacturer's rebate, for example, can be part of a

marketing campaign, but still enforceable); and (b) overlooks that Microsoft required Ms. Kelley

and each proposed class member to agree to Microsoft's terms governing upgrades before their

XP operating systems, with which their "Vista Capable" PCs came installed, would operate. See

EULA, Preamble; ¶ 9. Third, Microsoft asserts that Ms. Kelley has not alleged "consideration,"

Dkt. No. 12 at 11:4, although she paid for precisely what Microsoft promoted through its

Windows Vista Capable program—a PC with Microsoft's XP operating system that Microsoft

certified as upgradeable to Vista. Dkt. No. 8-2, ¶ 2.1

### 1.    Plaintiff and the Proposed Class Have License Agreements with Microsoft.

In its motion, Microsoft makes the curious assertion that "if Ms. Kelley could allege that

she paid Microsoft directly for the XP license . . . , that would in turn mean that Ms. Kelley had a

license agreement with Microsoft." Dkt. No. 12 at 22:13-15. Surely Microsoft does not contend

that only those consumers who purchase software directly from Microsoft are bound by its

license.  To the contrary, in order to use Microsoft's software on any PC, the end-use consumer

must agree with Microsoft to be bound by its license terms, which is exactly what Ms. Kelley

and every other member of the proposed class did. See EULA, Preamble, ¶ 1.1, 1.2.

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 3
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

### 2.    Contract, Breach, and Damages Were Pleaded.

To state a claim for breach of contract, a party need only allege: (1) the existence of a

contract; (2) breach thereof; and (3) damages. See Higgins v. State, 70 Wn.2d 323, 325, 422

P.2d 836 (1967). Ms. Kelley has alleged that she purchased a computer that was certified as

"Vista Capable" with Microsoft's authorization. Dkt. No. 8-2, ¶ 2.1. In doing so, she also

entered into a contractual relationship with Microsoft through the EULA, governing her right to

use the Microsoft software that accompanied it, EULA ¶ 1.1, and agreement to which was

required to participate in future upgrades, EULA ¶ 9. The manner in which Microsoft sells its

operating system to consumers, i.e., via PC manufacturers, was explained by the court in

findings of fact in United States v. Microsoft, No. 98-1232 (TPJ) (D.D.C. Nov. 5, 1999) (see

Thomas Decl., Ex. B, at ¶ 10), and is shown by the following chart:



Ms. Kelley has alleged the existence of a contract because, as a result of the "Vista

Capable" certification and EULA, Microsoft promised to provide "Vista" at a price not

exceeding that of the upgrade to Vista Basic. Dkt. No. 8-2, ¶¶ 4.3, 7.2. That was part of the

basis of the bargain that Ms. Kelley and the members of the proposed class received when they

purchased their "Vista Capable" PCs. The contract with Microsoft was formalized through the

Microsoft EULA, which, among other things, expressly required being licensed under its terms

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 4
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

as a condition for participation in future upgrades, as the "Vista Capable" certification

anticipated. EULA, ¶ 9. Ms. Kelley has alleged breach and damages because the "Vista"

Microsoft later provided was not truly "Vista" as promised. Dkt. No. 8-2, ¶ 4.6.

The Washington Supreme Court has recognized "layered contracts" in the context of

software. In M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wn.2d 568, 580, 998

P.2d 305 (2000), the court enforced the terms of a "shrinkwrap" software license found inside

the software packaging. The court cited Brower v. Gateway 2000, Inc., 246 A.D.2d 246, 250-51,

676 N.Y.S.2d 569 (1998), for the proposition that a "shrinkwrap" license is not treated as a

proposed addition to a contract already formed, but rather as part of the original agreement

between the parties, Mortenson, 140 Wn.2d at 583, and then concluded that UCC § 2-204 (RCW

62A.2-204) "allows the formation of 'layered contracts.'" Id. at 584. The sticker certification is

evidence that Microsoft agreed to provide "Vista capability" as part of the sale of the XP

computer under the definition of "agreement" applied in Mortenson, which was "'the bargain of

the parties in fact as found in their language or by implication from other circumstances

including course of dealing or usage of trade or course of performance.'" Mortenson, 140 Wn.2d

at 584-85 (quoting UCC § 1-201(3) (RCW 62A.2-201(3))). The existence of Microsoft's

promise to provide Vista, and that it was breached and caused damage, have been pleaded.

### 3.    A Contract Was Formed Notwithstanding Any Marketing Campaign.

Microsoft cites hornbooks and the Restatement for the familiar principle that an

advertisement, without more, is generally considered merely an invitation to deal rather than an

offer capable of acceptance. However, that principle has no application to this case where, as

alleged by Ms. Kelley, Microsoft specifically certified Vista capability to, and entered into an

agreement with, each individual purchaser of a PC certified as "Windows Vista Capable." Dkt.

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 5
No. C07-0475 MJP

No. 8-2, ¶¶ 4.3, 7.2. The fact that Microsoft's Windows Vista Capable and Express Upgrade Guarantee programs were part of a marketing campaign designed to promote the sale of PCs running Windows XP prior to the launch of Vista, is equally irrelevant. These programs were substantively different in every respect from the very general, impersonal advertising techniques contemplated in Microsoft's hornbook and Restatement citations.

The issue, therefore, is, "What was Ms. Kelley contractually entitled to receive for her money?" Microsoft's authorities speak to cases in which the terms were not sufficiently definite to form a contract. Andrus v. Dept. of Transp., 128 Wn. App. 895, 898-99, 117 P.3d 1152 (2005), is an at-will employment case that held only that an oral job offer without starting date, salary, benefits, or job details was subject to later withdrawal due to unsatisfactory references. In Johnson v. Star Iron & Steel, 9 Wn. App. 202, 205, 511 P.2d 1370 (1973), a case involving a contract to provide financial assistance to a steel manufacturer, the court held principally that "an expression of assent that changes the terms of an offer in any material respect may operate as a counter offer, but is not an acceptance." These cases have no relevance here, where Ms. Kelley did enter into a contract with Microsoft, under which she was promised upgrade capability to Vista when it was released. Dkt. No. 8-2, ¶¶ 4.3, 7.2. Nowhere in its motion does Microsoft argue that the term "Windows Vista Capable" is mere puffery, vague as to meaning, or that it was not a promise to provide "Vista" capability to purchasers of "Vista Capable" PCs. The issue, therefore, is not whether that promise was made, but whether Microsoft breached its promise by not providing upgrade capability to the "real Vista." Id. ¶ 4.6.

### 4. Microsoft's Actions Clearly Indicate Assent.

Microsoft argues that Ms. Kelley did not allege "enough factual matter (taken as true)" to "objectively manifest [the parties'] mutual assent." Dkt. No. 12 at 9-10. This bald assertion

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 6
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

ignores Ms. Kelley's allegations that:

- "The Windows Vista Capable certification sticker was designed by Microsoft to reassure consumers that they would be buying a product that had been certified by Microsoft as upgradeable to Vista." Dkt. No. 8.2, ¶ 4.3;

- "Pursuant to Microsoft's "Express Upgrade Guarantee Program," consumers purchasing "Windows Vista Capable" PCs would receive upgrades to "Vista" for little or no cost." Dkt. No. 8.2, ¶ 4.5; and

- "In November 2006, [Ms. Kelley] purchased a PC to which a "Windows Vista Capable" sticker is affixed." Dkt. No. 8.2, ¶ 1.2.

Microsoft's "certification" of Vista capability and "guarantee" of upgrade, together with Ms. Kelley's purchase of a "Vista Capable" PC, are more than "enough factual matter" to "objectively manifest [the parties'] mutual assent" to bind Microsoft to its promise of Vista capability. After all, Microsoft cannot seriously be arguing that its "Windows Vista Capable" and "Express Upgrade Guarantee" programs were merely hollow marketing gimmicks under which it felt no obligation to actually deliver Vista capability.

### 5.    Ms. Kelley Gave Consideration: She Paid Money.

The payment of money, indeed, "any detriment" suffered by the promisee at the promisor's request is sufficient consideration. Browning v. Johnson, 70 Wn.2d 145, 148, 422 P.2d 314 (1967). Microsoft complains that Ms. Kelley did not provide consideration directly to Microsoft, but that has never been required. Id. (quoting Williston, Contracts § 102). Microsoft's method of "indirect" sales of its operating system is widely known, and adequately alleged in the Complaint. In addition to alleging that she purchased a Windows XP computer, Dkt. No. 8-2, ¶ 2.1, Ms. Kelley has alleged that Microsoft received what she believes to be millions of dollars from sales of Windows XP computers thanks to the "Vista Capable" program. Id. ¶ 9.2. These are sufficient allegations of consideration to survive dismissal under

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 7
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

CR 12(b)(6). In the end, however, all that matters is that Microsoft made a business decision to develop and implement its Windows Vista Capable program in order to stimulate sales of PCs running Windows XP prior to the launch of Vista. Id. ¶¶ 1.2, 4.2-4.3, 4.5. Ms. Kelley performed in precisely the manner in which Microsoft wanted her and other consumers to—she purchased a "Vista Capable" PC prior to the launch of Vista.

The weakness of Microsoft's argument is illustrated by its analysis of MultiCare Med. Ctr. v. State, 114 Wn.2d 572, 584, 70 P.3d 124 (1990). Microsoft starts by proposing the straw man that Ms. Kelley "would have to allege the existence of a 'unilateral contract.'" Dkt. No. 12 at 11:9-10. Actually, there is no such pleading requirement because a plaintiff need not plead legal theories at all. Crull v. Gem Ins. Co., 58 F.3d 1386, 1391 (9th Cir. 1995). More importantly, MultiCare was an appeal of detailed findings and conclusions after trial, not a dismissal at the pleading stage. In this respect, it strongly supports Ms. Kelley. Finally, Ms. Kelley has alleged each element of a unilateral contract, namely: (1) a promise on Microsoft's part; and (2) performance of the requisite terms on Ms. Kelley's part, MultiCare, 114 Wn.2d at 583, even though Ms. Kelley did not expressly refer to "unilateral contract" in the Complaint. Although Microsoft cites several cases for the unremarkable proposition that a unilateral contract does not become binding until there is performance by the offeree, Dkt. No. 12 at 11:9-12:2, it never explains how Ms. Kelley failed to perform, why her purchase of a "Vista Capable" PC did not constitute full performance, or what more she was required to do to fully perform.

## C.    MS. KELLEY'S ALLEGATIONS SUFFICIENTLY PLEAD CPA CAUSATION.

Microsoft erroneously asserts that Ms. Kelley failed to plead causation, contending that reliance is a requirement of causation under Washington consumer protection law. Dkt. No. 12 at 21-22. Washington courts, however, do not require a plaintiff to allege (or prove) reliance,

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 8
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

rather they follow the familiar proximate cause analysis. Even if Ms. Kelley <u>were</u> required to allege reliance, she has done so.

### 1. Reliance is Not a Required Element of the Washington CPA

There is no "reliance" element under Washington CPA law. <u>See</u> <u>Pierce v. Novastar Mortgage, Inc.</u>, 238 F.R.D. 624 (W.D. Wash. 2006) (granting class certification and holding that "proof of reliance is not necessary in order to satisfy the CPA's causation element"). Moreover:

- Reliance is not mentioned in the text of the statute, Ch. 19.86 R.C.W.;

- Imposing a reliance element would be inconsistent with the CPA case law development in Washington;

- Imposing a reliance element would be inconsistent with the express legislative directive to interpret the CPA liberally to effectuate its remedial purpose of protecting consumers;

- Imposing a reliance element would be inconsistent with other CPA elements;

- Imposing a reliance element would be inconsistent with the law of the overwhelming majority of other states; and

- There is no such element in the applicable jury instructions, WPI 5th 310.01, 320.07.

#### a. Washington Case Law Rejects Reliance In Favor of Proximate Cause.

The CPA case law that has developed over decades in Washington decidedly trends <u>away</u> from imposing a reliance requirement. Before <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 719 P.2d 531(1986)</u>, Washington courts had held that to establish the "public interest" proof requirement for private suits under the CPA, a plaintiff must show that the unfair or deceptive acts or practices were relied upon by the plaintiff to his or her detriment. <u>E.g.</u>, <u>Anhold v. Daniels</u>, 94 Wn.2d 40, 47, 614 P.2d 184 (1980) (deceptive acts must "induce" plaintiff's conduct and result in damage). This requirement later would be referred to as part of

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 9
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

the "inducement-damage-repetition" test. <u>Hangman Ridge</u>, 105 Wn.2d at 789. <u>See also</u> <u>Nuttall</u>

<u>v. Dowell</u>, 31 Wn. App. 98, 111, 639 P.2d 832 (1982) (plaintiff must prove reliance as part of

causation on the facts of that case).

    <u>Hangman Ridge</u> substantially altered the approach to private litigation of CPA claims,

and effectively eliminated any <u>Anhold</u>-<u>Nuttall</u> reliance requirement. In <u>Hangman Ridge</u>, the

Washington Supreme Court recognized that its CPA jurisprudence had been confusing and

needed clarification. 105 Wn.2d at 783-784. To eliminate this confusion, the court formulated a

new test for establishing liability in private CPA actions:

> [T]o prevail in a private CPA action . . . , a plaintiff must establish five distinct
> elements: (1) unfair or deceptive act or practice; (2) occurring in trade or
> commerce; (3) public interest impact; (4) injury to plaintiff in his or her business
> or property; (5) causation.

<u>Id.</u> at 780. The <u>Hangman Ridge</u> court rejected the "inducement-damage-repetition" test

developed in <u>Anhold</u> as "not the best vehicle for showing that the public was or will be affected

by the act in question." <u>Id.</u> at 789. The court's new analysis did not carry forward an

inducement/reliance component. <u>Id.</u> at 790-91. Nor did the court impose a reliance requirement

for establishing causation. <u>Id.</u> When determining causation, the court applied a straightforward

"proximate cause" analysis, <u>id.</u> at 795, now embodied in the Washington Pattern Jury

Instructions. <u>See</u> WPI 5th 310.07.

    Since <u>Hangman Ridge</u> was published over 20 years ago, the Washington Supreme Court

never has reversed course and held that consumers must prove reliance in order to establish

causation, but consistently has applied a proximate cause analysis. <u>See</u> <u>Washington State</u>

<u>Physicians Ins. Exch. v. Fisons</u>, 122 Wn.2d 299, 314, 858 P.2d 1054 (1993); <u>Schmidt v.</u>

<u>Cornerstone Invests., Inc.</u>, 115 Wn.2d 148, 167-68, 795 P.2d 1143 (1990). Contrary to

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 10
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Microsoft's mischaracterization, see Dkt. No. 12 at 14:14-19, Pickett v. Holland America Line-Westours, Inc., 145 Wn.2d 178, 197, 35 P.3d 351 (2001), did not cite Nuttall "with approval" or otherwise alter the status quo on causation.  In Pickett, whether reliance was a required element of plaintiff's CPA claim had been litigated on certification, but because review was of a settlement class, the Washington Supreme Court believed it was "enough to say" that the matter was "debatable" and supported the  settlement.  Pickett, 145 Wn.2d at 197.  The court did not analyze the issue or reverse the Court of Appeals' holding that reliance was not required.  Id.

Indeed, post-Hangman Ridge Court of Appeals cases have rejected a reliance requirement (on the merits) on three separate occasions, including one less than two months ago.  In Pickett v. Holland Am. Line-Westours, Inc., 101 Wn. App. 901, 915-20, 6 P.3d 63 (2000), rev'd on other grounds, 145 Wn.2d 178 (2002), a unanimous panel rejected the reliance argument and held that causation inhered in the plaintiff's purchase of cruise tickets.  Pickett, 101 Wn. App. at 920.  See also Robinson v. Avis Rent a Car System, Inc., 106 Wn. App. 113-114, 22 P.3d 818 ("injury and causation are established if the plaintiff loses money because of unlawful conduct"); Stephens v. Omni Ins. Co., 2007 Wn. App. LEXIS 801 at *14 (Apr. 23, 2007) (rejecting that CPA requires plaintiffs to be "actually induced").

### b.    A Reliance Element Would Frustrate the Purpose of the CPA.

The Washington State Legislature expressed the very purpose of the CPA in RCW 19.86.920, namely, "to protect the public and foster fair and honest competition."  See also Hangman Ridge, 105 Wn.2d at 783-84.  To this end, the Legislature has directed courts to "liberally construe[]" the CPA to ensure that its beneficial purposes are carried out.  RCW 19.86.920.  Courts thus should refrain from interpreting the CPA in ways that would impair consumers' ability to bring private CPA actions as doing so would undermine the dual

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 11
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

enforcement scheme the Legislature intended and the efficacy of the CPA as a means to foster a fair and honest marketplace. Requiring consumers to prove actual reliance on defendants' deceptive acts or practices would be fatal in many cases where the unfair or deceptive conduct is hidden from consumers.

### c.    Reliance Would be Inconsistent With Other CPA Elements.

As discussed, Washington law does not require a CPA plaintiff to prove actual deception. See State v. Ralph Williams' N. W. Chrysler Plymouth, 87 Wn.2d 298, 317, 553 P.2d 423 (1976). It would be a strange state of affairs if that same CPA plaintiff who need not prove that he or she was "actually deceived" by a defendant's conduct/misrepresentation, at the same time, was required to prove that he or she "actually relied" on such conduct/misrepresentation.

Moreover, CPA claims (as here) may be premised on the alleged failure to disclose material facts. See, e.g., Griffith v. Centex Real Estate Corp., 93 Wn. App. 202, 213-14, 969 P.2d 486 (1998). It likewise would be a strange state of affairs were the law to require that a plaintiff prove he or she "relied" on a defendant's nondisclosure. See also Pierce, 238 F.R.D. at 632-33 ("[i]t is difficult to conceive of how a plaintiff may be expected to affirmatively show reliance on an omission" and noting the court was not aware of any Washington authority requiring proof of reliance).

Even were it not an oxymoron to "rely" on a representation that a defendant failed to provide, Ms. Kelley alleges that she and the class of consumers she seeks to represent were subjected to unfair and deceptive omissions by Microsoft. For example:

- Microsoft's "failure to indicate on its 'Windows Vista Capable' stickers that a PC certified as 'Windows Vista Capable,' but lacking the designation 'Premium Ready,' could run only Vista Basic, which provides none of the features that are unique to Vista and make Vista attractive to consumers" [id., ¶ 4.4]; and

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 12
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

- Microsoft's "fail[ure] to apprise consumers that a purported upgrade to Vista was, for them, to an operating system that Microsoft knew was "Vista" in name only" [id., ¶ 4.5].

The cases cited by Microsoft are not to the contrary. They stand only for the unremarkable proposition that: (a) a plaintiff must still establish "proximate causation" in CPA cases involving nondisclosure, see Fisons, 122 Wn.2d at 314-15; and (b) in non-CPA cases involving securities or common-law fraud, the reliance element may be presumed given the practical impossibility of a plaintiff having "to show that he believed the opposite of the omitted fact," see Morris v. Int'l Yogurt Co., 107 Wn.2d 314, 328, 729 P.2d 33 (1986); Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972).

### d. Requiring Reliance Would be Inconsistent with Overwhelming Majority View of Similar CPA Statutes in Other States.

Three states contain a reliance requirement explicitly in the text of their respective CPA statutes. See Victor E. Schwartz & Cary Silverman, Common-Sense Construction of Consumer Protection Acts, 54 U. Kan. L. Rev. 1, 18 & n. 86 (2005). "Courts in most other jurisdictions do not require a showing of reliance." Id. at 19. Of the "small minority" of jurisdictions where proof of reliance has been imposed, the rationale of the opinions has been characterized as "strained" and improperly based on assumptions and common-law fraud doctrine. See Nat'l Consumer Law Center, Unfair and Deceptive Acts and Practices §§ 4.2.12.3.1-.2 (6th ed. 2005 & Supp. 2007). Such a rationale would not survive here, where there is a legislative mandate to liberally construe the CPA and the Washington Supreme Court holds that the CPA is broader than restrictive common-law doctrines based on fraud or deceit that require proof of reliance. See, e.g., McRae v. Bolstad, 101 Wn.2d 161, 167, 676 P.2d 496 (1984).

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 13
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## 2.    Plaintiff Has Met the Pleading Requirements Under Governing Law and Any Additional, Specific Theory of CPA Causation.

Ms. Kelley unambiguously pled "proximate cause" in her Complaint:

> Plaintiff and Class members were <u>directly and proximately injured</u> by Microsoft's conduct, including but not limited to having to purchase RAM and/or other hardware in order to run "the real Vista," and by requiring consumers receiving Vista Basic through the Express Upgrade program to pay additional money to obtain "the real Vista."

Dkt. No. 8-2 ¶ 8.5 (emphasis added).  <u>See</u> WPI 5th 310.07 (instructs that plaintiff has the burden of proving that the defendant's unfair or deceptive conduct was a proximate cause of the plaintiff's injury).

Even if some heightened, more specific level of causation were required, such as "inducement" or "reliance"—which it is not—Ms. Kelley made allegations in her complaint regarding causation.  For example, Ms. Kelly alleges that she is part of a class of consumers who were subjected to a "bait and switch" scheme (Dkt. No. 8-2, ¶ 1.2) as a result of being:

- "<u>reassure[d]</u>" by Microsoft through their "highly conspicuous" Windows Vista Capable sticker certification program "that they would be buying a product that had been certified by Microsoft as upgradeable to Vista" (when, in fact, the product was not), Dkt. No. 8-2, ¶ 4.3 (emphasis added);

- "<u>falsely led to believe</u>" by Microsoft that "they would be upgraded to a version of a dramatically new operating system bearing the unique features marketed by Microsoft as Vista" (when, in fact, the "new operating system" was "Vista" in name only), <u>id.</u> ¶ 4.5 (emphasis added); <u>and</u>

- "<u>assur[ed]</u> [by Microsoft] they were purchasing 'Vista Capable' PCs when, in fact, they could obtain, or were provided with, only a stripped-down operating system lacking the functionality and features that Microsoft touted as 'Vista,'" <u>id.</u> ¶ 1.2 (emphasis added).

These allegations taken as true, "proximate cause" or any heightened theory of causation suggested by Microsoft is at least a reasonable inference, if not established outright.

## 3.    The 12(b)(6) Case Cited by Microsoft in Which a CPA Claim Was Dismissed

**Confirms the Sufficiency of Ms. Kelley's Allegations.**

Only one case cited by Microsoft involved the dismissal of a CPA claim under Rule 12(b)(6). All the others involved review of alleged insufficient evidence either after trial or on summary judgment. Those cases have no bearing on this motion. The one 12(b)(6) case cited by Microsoft, Ass'n of Wash. Pub. Hosp. Dists. v. Phillip Morris, Inc., 241 F.3d 696 (9th Cir. 2001), in fact confirms that Ms. Kelley has adequately pleaded causation. In Phillip Morris, the Ninth Circuit held that the plaintiffs could not establish causation, because their allegations, even if true, failed to supply a "direct link" between the alleged misconduct of the defendants (concealing nicotine addictiveness) and the plaintiffs' claimed damages (increased costs in having to treat smokers' illnesses). Id. at 706, 701-03. Because the plaintiffs were "third-party" victims, their injuries were "too remote" from the alleged unlawful conduct and thus lacked proximate cause. Id. Notably, the Ninth Circuit restated the Washington CPA causation analysis not as requiring "reliance," "inducement" or any other heightened standard, but for purposes of determining whether the allegations of defendants' unfair and deceptive conduct could provide a "proximate cause" link to the plaintiffs' injuries. Id. at 706.

Here, Ms. Kelley and every single member of the proposed class are consumers of Microsoft products. Thus, they are "first party" victims akin to "the smokers" in Phillip Morris. Their injuries, as alleged, were "directly and proximately" caused by Microsoft's conduct. Dkt. No. 8-2 ¶ 8.5; see also id., ¶¶ 1.2, 4.3-4.6.

### 4. Ms. Kelley's Allegation of Having to Pay More for Her Mislabeled PC Is Merely an Additional Theory of CPA Injury, Not Causation.

Microsoft maintains that the allegation of artificial price increase is a "transparent effort to avoid [Ms. Kelley's] obligation to allege causation." Dkt. No. 12 at 25. Microsoft fails to

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 15
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

quote Ms. Kelley's allegation in full, which provides:

> Plaintiff and the members of the proposed Class also were <u>injured</u> by defendant's unfair or deceptive acts or practices which created artificial demand for PCs at an artificially inflated price. Plaintiff and the proposed Class paid the artificially inflated price, thus incurring <u>economic loss</u>.

Dkt. No. ¶ 8.5 (emphasis added). Rather than avoiding causation, these allegations merely set forth an additional theory of CPA injury. In this respect, Microsoft studiously avoids any discussion of Washington CPA law on the injury element and, instead, resorts to only a discussion of unhelpful out-of-state authorities. <u>See</u> Dkt. No. 12 at 25-26.

## D.    PLAINTIFF HAS ADEQUATELY PLED UNJUST ENRICHMENT.

Ms. Kelley's unjust enrichment claim also withstands Microsoft's attacks. First, Microsoft asserts that the Court should dismiss the unjust enrichment claims because, if Ms. Kelley can establish the existence of a contract claim, she cannot also claim unjust enrichment. Although Ms. Kelley will not be able to <u>recover</u> under both theories, the pleading of alternate legal theories does not provide a basis for dismissal of either claim. Rule 8(e)(2) explicitly permits pleading of alternate claims. <u>See</u> <u>MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.</u>, 216 F Supp 2d 251, 261 (S.D.N.Y. 2002) (court refused to dismiss complaint that alleged both breach of contract and, in the alternative, unjust enrichment). Microsoft cannot have its cake and eat it too—it cannot deny the existence of a contract and also argue that a claim for unjust enrichment is barred by the contract.

Second, the Complaint pleads facts sufficient to satisfy the elements of unjust enrichment. Unjust enrichment "occurs when one retains money or benefits which in justice and equity belong to another." <u>Bailie Communications Ltd. v. Trend Bus. Sys., Inc.</u>, 61 Wn. App. 151, 160, 810 P.2d 12 (1991). The elements of unjust enrichment are:

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 16
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6

> [a] a benefit conferred upon the defendant by the plaintiff; [b] an
> appreciation or knowledge by the defendant of the benefit; and [c]
> the acceptance or retention by the defendant of the benefit under
> such circumstances as to make it inequitable for the defendant to
> retain the benefit without the payment of its value.

7   Id. at 159-60.
8
9   With respect to the first element, Microsoft asserts that the Complaint fails to allege that
10
11  Microsoft received a benefit from Ms. Kelley (in the form of payment for a license to Windows
12
13  XP or a license for an upgrade to Vista Premium).  Dkt. No. 12 at 21:9-15.  The Complaint
14
15  specifically states, however, that "unjust enrichment has resulted from <u>payment for licenses sold</u>
16
17  <u>for Windows XP in PC's certified by Microsoft as 'Windows Vista Capable,' and upgrades from</u>
18
19  <u>Vista Basic to Vista Premium</u>."  Dkt. No. 8-2 at ¶9.2 (emphasis added).  Additionally, the
20
21  Complaint states that one of the common class questions is "[w]hether Microsoft has been
22
23  unjustly enriched by <u>purchases of licenses</u> by Class members."  Id. ¶ 5.5.j (emphasis added).
24
25  Moreover, under Washington law, there is no requirement that the benefit be conferred
26
27  directly by the plaintiff:  "Want of privity between parties is no obstacle to recovery under quasi-
28
29  contract."  Mill & Logging Supply Co. v. West Tenino Lumber Co., 44 Wn.2d 102, 112, 265
30
31  P.2d 807 (1954).  See also Farwest Steel Corp. v. Mainline Metal Works, 48 Wn. App. 719, 732,
32
33  741 P.2d 58 (1987) (third party's misleading act can give rise to right to restitution against third
34
35  party where contracting party fails to perform).
36
37  In West Tenino Lumber, in refusing to dismiss the plaintiff's unjust enrichment claim,
38
39  the court held that:
40
41  > The significant fact to be derived from the complaint, which
42  > constitutes the enrichment of [defendant] as unjust enrichment, is
43  > <u>the acquiescence of [defendant] in the transactions between</u>
44  > <u>[plaintiff and the former mill owner], with resultant unjust benefits</u>
45  > <u>to [defendant]</u>; or stated differently and perhaps more strongly, it

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 17
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> was [defendant's] failure to notify the sellers of the goods that it
> owned the mill and, as owner would refuse to pay for them. The
> receipt of the goods and the use thereof by[defendant], together
> with its failure to disclose its ownership for the mill, is the gist of
> the matter. We think the complaint stated a cause of action for
> unjust enrichment . . . .

Id. at 116 (emphasis added). Here, Microsoft more than simply "acquiesced" in the transaction

between Ms. Kelley and the OEM. Microsoft itself designed the "Windows Vista Capable"

certification sticker that was placed on the PC as an inducement to consumers to purchase it.

Whether Microsoft received payment directly from Ms. Kelley or from the OEM is irrelevant. In

other class action litigation, Microsoft's attempts to hide behind the methods by which it

distributes its software have been rejected. See Manning v. Microsoft Corp, 914 S.W.2d 602,

612 (Tx. Ct. App. 1995) (affirming certification of nationwide class asserting, among other

claims, Magnuson-Moss, Washington CPA, and unjust enrichment claims, and rejecting

Microsoft's arguments that individual fact questions predominated because purchasers may have

acquired Microsoft software from different sources). Microsoft's reliance upon Brader v. Minute

Muffler Installation, Ltd., 81 Wn. App. 532, 914 P.2d 1220 (1996), does not alter this analysis.

The Brader court distinguished rescission and restitution, noting that restitution is available only

when the party has conferred a benefit on the other party. 81 Wn. App. at 537. The court did not

discuss whether the parties must be in privity to obtain restitution.

Microsoft also contends that the Complaint fails to allege facts sufficient to meet the third

element of unjust enrichment: the inequitable retention of the benefit by Microsoft. Microsoft

relies on the fact that the Windows XP operating system installed on Ms. Kelley's computer did

not "fall short" or "cost more than the going price." Dkt. No. 12 at 22:6-8. Microsoft misses the

mark entirely. Whether Ms. Kelley paid a fair price for a PC with a Windows XP operating

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 18
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

system is not central to the Complaint. Rather, she alleges that she purchased a PC that Microsoft promised was capable of running "Vista" but which, in fact, cannot do so. The gravamen of the Complaint is that Microsoft, through its "Windows Vista Capable" and "Express Upgrade" programs, promoted the sales of computers with Microsoft XP installed on them on the pretense that they had the capability to run Microsoft's new Vista operating system, when, in fact, they cannot run the "real Vista" that provides the "core Windows Vista experience." Dkt. No. 8-2, ¶¶ 4.3-4.6. Through its misleading acts, Microsoft benefited by selling more XP licenses and additional upgrades than it would have without the "Windows Vista Capable" and "Express Upgrade" programs.

Lynch v. Deaconess Med. Center, 113 Wn.2d 162, 775 P.2d 681 (1989), does not support Microsoft's argument. In Lynch, an attorney successfully settled an insured's claim against a medical insurer, resulting in payment of the insured's outstanding hospital bills. The attorney then brought an unjust enrichment claim against the hospital. The court affirmed summary judgment in favor of the hospital, on the basis that because the hospital only received payment that it had been owed, there was no equitable reason that it should not retain the funds. Id. Unlike the allegations in Lynch, the Complaint here cannot be read as pleading that Microsoft was a mere incidental beneficiary of Ms. Kelley's PC purchase. Instead, the Complaint alleges that Microsoft received a benefit as a result of its own misleading acts. Dkt. No. 8-2, ¶ 9.2.

## E.    MICROSOFT'S "WINDOWS VISTA CAPABLE" CERTIFICATION IS A WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS ACT.

Microsoft erroneously argues that its "Windows Vista Capable" certification sticker fails as a matter of law to meet the Magnuson-Moss Act ("MMA") definition of a written warranty. See Dkt. No. 12 at 8: 3-4. Microsoft is wrong. The MMA defines a written warranty as:

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 19
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> any written affirmation of fact or written promise made in connection with
> the sale of a consumer product by a supplier to a buyer which relates the
> nature of the material or workmanship and affirms or promises that such
> material or workmanship is defect free <u>or will meet a specified level of
> performance over a specified period of time</u>, . . .

15 U.S.C. § 2301(6) (emphasis added).  Microsoft's initial argument that "Windows Vista

Capable" does not promise that any material or workmanship will be "defect free" ignores the

definition's use of the disjunctive "or."  The relevant question is whether "Windows Vista

Capable" describes "a specified level of performance over a specified period of time."  It does.

## 1. Microsoft Warranted a Specified Level of Performance

The Complaint alleges that "Windows Vista Capable" PCs failed to perform at the

specified level of performance—that is, capability of running Vista—warranted by Microsoft:

> Microsoft touted Vista's unique features and capabilities, but then <u>certified
> PCs as "Windows Vista Capable" that were incapable of running these
> features and capabilities.</u>

Dkt. No. 8-2 ¶ 4.4 (emphasis added).  <u>See also id.</u>, ¶¶ 1.2 & 4.1–.5 (regarding

development and implementation of Windows Vista Capable certification program).

The deficiency cited by Ms. Kelley—the inability of her PC to run "Vista"—is purely a

"performance" shortcoming.  In its motion, Microsoft never explains what the term "Windows

Vista Capable" does mean if not a promise of a specified level of performance.  Instead,

Microsoft cites a string of cases in a footnote that involve written representations that could not

be even arguably construed as performance-related.  <u>See</u> <u>In re Sears Roebuck & Co.</u>, No. MDL-

1703, 05C4742, 05C2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) ("Made in USA");

<u>Goodman v. Perlstein</u>, 1989 U.S. Dist. LEXIS 8420 (E.D. Pa. July 21, 1989) ("purely pecuniary

appraisals . . . <u>pertaining neither to absence of defect nor level of performance</u> " (emphasis

added)); <u>Simmons v. Taylor Childre Chevrolet-Pontiac</u>, 629 F. Supp. 1030 (M.D. Ga. 1986)

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 20
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

(designation of car as "new"); <u>Thomas v. Micro Center,</u> 2007 WL 1219282 (Ohio Ct. App. April

26, 2007) ("computers may be returned or exchanged within 7 days of purchase").

In fact, the <u>Goodman</u> case Microsoft relies upon actually supports Ms. Kelley's claim:

> Had the defendant warranted that a particular diamond had no flaws, it is
> crystal clear that the statutory definition would have been met. Or, if a
> plaintiff had been promised that the stone was rock-solid, impervious to
> chipping, but when lightly tapped, it shattered, that would constitute a
> breach of the statutory definition of "written warranty." But the purely
> pecuniary appraisals at bar, pertaining neither to absence of defect nor
> level of performance, do not bear the ring of a warranty under the
> Magnuson-Moss Act.

<u>Goodman</u>, 1989 U.S. Dist. LEXIS 8420 at *6-7.  For purposes of this motion, the Court must

accept as true that the PC Ms. Kelley purchased was not "Vista Capable."  Microsoft's promise

is at least as performance-related as <u>Goodman's</u> example of an MMA warranty—a promise that a

diamond is "impervious to chipping."

## 2.   The Warranty Relates to a Specified Period of Time

Microsoft  argues that "the sticker by its plain language does not relate to any 'specified

period of time' and therefore cannot be a 'written warranty' under the second prong of Section

2301(6)(A)."  Dkt. No. 12 at 7-8.  As an abstract proposition, a sticker reading "Windows Vista

Capable" affixed to a PC could mean only two things, either:

- The computer was "Vista Capable" at the time it was purchased, or

- The computer would be "Vista Capable" when Vista was released.

Given context, the words can be interpreted only as specifying the latter.  If Microsoft disagrees,

then Ms. Kelley poses the simple question, "What time frame did you mean to specify when you

told this to consumers?"  Thus, Microsoft's Windows Vista Capable certification relates to one,

and only one time period—the period ending with Microsoft's release of Vista.  As such,

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 21
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Microsoft's warranty related to a "specified period of time" within the definition of "written warranty" under the MMA. The Complaint satisfies Rule 8(a)(2) on this element by alleging:

> Microsoft thus authorized original equipment manufacturers ("OEMs") to place a sticker on PCs indicating that the PCs had been certified by Microsoft as "Windows Vista Capable," meaning that the consumer could upgrade the PC to run the new Vista operating system when it was released.

Dkt. No. 8-2, ¶ 1.2 (emphasis added).

Microsoft cites a Federal Trade Commission regulation that actually supports Ms. Kelley, not Microsoft. "A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty." 16 C.F.R. § 700.3 (emphasis added). Microsoft cannot argue seriously that its certification of Vista capability did not "relate" to a specified period of time culminating with Microsoft's release of Vista. Microsoft's Vista launch team project manager Nick White summarized the Windows Vista Capable upgrade program and stated, "So with this program, you can buy a PC with Windows XP now and upgrade it to Windows Vista once we've launched commercially." See Dkt. No. 13, Ex. A (emphasis added).

In its most recent decision regarding the MMA, the Ninth Circuit has made it clear that "context is crucial" in analyzing the Act. Milicevic v. Fletcher Jones & Mercedes-Benz, 402 F.3d 912, 917-18 (9th Cir. 2005). Microsoft is asking this Court to completely ignore context, and common sense, and rule that Microsoft's Windows Vista Capable certification relates to no time whatsoever. Such a position is nonsensical. Upon the release of Vista, previously-purchased PCs bearing the Windows Vista Capable stickers were either capable of achieving a specified level of performance—running Vista—or, as Ms. Kelley alleges, they were not.

Microsoft mistakenly relies on Skelton v. General Motors Corp., 660 F.2d 311, 316 (7th Cir. 1981). The very issue that Microsoft states was affirmed by Skelton—that the

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 22
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

warranties described in the plaintiffs' complaint did not constitute written warranties under the

MMA—was not even at issue in that appeal. As the Skelton court noted, "On this appeal,

plaintiffs do not challenge the district court's conclusion that the warranties described in their

complaint are not within the § 101(6) definition." Id. at 316 n.7. The Ninth Circuit agreed:

> The context for the Seventh Circuit's statement, however, is essential. The
> district court had held that the written promises at issue were not 'written
> warranties' as defined in Section 2301(6), and the plaintiffs did not appeal
> that holding. ... Unlike General Motors' written promises, which the
> Seventh Circuit presumed not to amount to warranties under Section
> 2301(6), as we explain below, the express limited warranty given by
> Mercedes does qualify as a written warranty.

Milicevic, 402 F.3d at 917 (emphasis added).

Microsoft cites other cases in ostensible support of the general proposition that a written

warranty under the MMA must relate to a specified period of time. Ms. Kelley does not take

issue with the general proposition. This, however, does not advance Microsoft's argument.

With its promise that Ms. Kelley's computer was Windows Vista Capable, Microsoft promised a

level of performance upon the release of Vista. Microsoft's promise of Vista capability thus

relates to a specific period of time and constitutes a written warranty under the MMA.

## F.    PLAINTIFF HAS STANDING TO REPRESENT THE CLASS HARMED BY MICROSOFT'S EXPRESS UPGRADE PROGRAM.

Microsoft confuses the concepts of standing and typicality in the class action context.

Although Rule 23 requires a class representative to have a claim typical of all class members, it

does not require that the class representative have individual standing for each of the claims

asserted by the class. See, e.g., Adam v. Silicon Valley Bancshares, 1994 U.S. Dist. LEXIS

21717 (N.D. Cal. April 18, 1994). In Adam, the defendant in a securities class action claimed

that the plaintiff had no standing to challenge any representations made by the defendant after

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 23
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

she had purchased the defendant's stock. The district court disagreed, holding that individual

standing for each claim asserted by the class was unnecessary, and the plaintiff's claim met the

Rule 23 typicality requirement if it arose from the same event or course of conduct that gives rise

to the other class members and the claims are based upon the same legal theory. Id. (citing

Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985)).

Here, Ms. Kelley alleges that Microsoft unfairly and deceptively marketed Vista Basic,

which does not provide the "core" Vista experience and is not "the real Vista." That same

conduct harmed consumers who: (1) purchased a PC bearing a Windows Vista Capable sticker

that could run only Vista Basic and not "the real Vista"; or (2) purchased a PC with a guaranteed

free or reduced-price upgrade to Vista, but received an upgrade to Vista Basic, which is not "the

real Vista." In other words, the same conduct harmed consumers in different ways. Although

their damages claims may be different, these consumers' claims are based upon the same

conduct and same legal theories. Because Ms. Kelley alleges she was harmed by this conduct,

her claims also are typical of those harmed in other ways by the same conduct. See Dukes v.

Wal-Mart, Inc., 474 F.3d 1214, 1232-33 (9th Cir. 2007) (class representatives' claims were

typical of those in different job categories who were harmed by same discriminatory practices).

The only authority cited by Microsoft in support of its argument has no application here.

Timberlane Homeowners Assn. v. Brame, 79 Wn. App. 303, 901 P.2d 1074 (1995), was not a

class action. Timberlane stands for the unremarkable proposition that a homeowner's

association has no standing to enforce its members' property rights without their authority.

## IV. CONCLUSION

Defendant's motion to dismiss should be denied.

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 24
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this _18th_ day of June, 2007.

**GORDON TILDEN THOMAS & CORDELL LLP**

By _____
    Jeffrey I. Tilden, WSBA #12219
    Jeffrey M. Thomas, WSBA #21175
    Michael Rosenberger, WSBA #17730
    Mark A. Wilner, WSBA #31550

**KELLER ROHRBACK L.L.P.**

By _____
    William C. Smart, WSBA #8192
    Ian S. Birk, WSBA #31431

Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 25
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following.

Counsel for Defendant Microsoft Corporation

Stephen M. Rummage, WSBA #11168
Cassandra Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
Davis Wright Tremaine LLP
2600 Century Square
1501 Fourth Avenue
Seattle, Washington 98101-1688
steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

GORDON TILDEN THOMAS & CORDELL LLP

By _____
Jeffrey M. Thomas, WSBA #21175
Attorneys for Plaintiff
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: jthomas@gordontilden.com

PLAINTIFF'S OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT - 26
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292