IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARTIN SCHNALL, a New Jersey
resident; NATHAN RIENSCHE, a
Washington resident; and KELLY
LEMONS, a California resident;
individually and on behalf of all the
members of the class of persons
similarly situated,

                    Appellants/
              Cross-Respondents.

        and

JOHN GIRARD, a California resident;
and SEAN O'DAY, a Florida resident;

                Plaintiffs,

          v.

AT&T WIRELESS SERVICES, INC., a
domestic corporation,

              Respondent/
              Cross-Appellant.

No. 57523-6-I

DIVISION ONE

PUBLISHED OPINION

FILED: June 18, 2007

AGID, J. – Appellants brought a class action lawsuit on behalf of all AT&T

Wireless Services customers who were charged a "universal connectivity charge"

(UCC) from 1998 through 2003.  They allege that AT&T violated Washington's

Dockets.Justia.com

57523-6-I/2

Consumer Protection Act (CPA)[1] by charging the fee without disclosing it in its advertisements, misleading its customers by categorizing it as a tax, surcharge or regulatory fee, and breaching its customer contracts by raising the fee without notice. The trial court denied class certification on all of the appellants' claims on two grounds: (1) the appellants were required to prove each class member's individual reliance to establish a CPA claim and (2) choice of law issues made a class action on the contract claims unmanageable because individual issues predominated over common ones.

The trial court correctly ruled that the CPA applies to the appellants' nationwide claims. AT&T's most significant contacts were within the state, Washington has an important interest in regulating business activities within its state, and the alleged misleading acts occurred before any consumer contracts were executed. We also agree with the trial court that causation is an essential element of private class action claims under RCW 19.86.090. But proof of individual reliance is not the only means by which consumers may make a prima facie showing on this element. Finally, while the trial court correctly enforced the choice of law provisions in each consumer's contract, its denial of class certification on the contract claim was in error because the mere existence of individualized issues does not preclude a class claim so long as there are both a common nucleus of operative facts and a common legal issue. Here, the appellants claim, that AT&T breached its contracts by charging them a fee that was neither disclosed in their contracts nor properly categorized as a government fee, tax or surcharge, was enough to certify the class at this stage of the proceedings.

_____

[1] Chapter 19.86 RCW.

Page 5                                    2

FACTS

AT&T sells its wireless service on monthly plans, and subscribers pay monthly fees for the service. AT&T advertises its monthly rates in the media and other marketing materials and provides a pre-printed standard form contract to each new customer explaining the terms and conditions of service. Customer contracts include a choice of law clause.[2]

In addition to its monthly fees and mandatory government taxes and fees, AT&T began charging new subscribers a universal connectivity charge in 1998. In January and February 1998, AT&T sent its existing customers a notice with their bill that described the UCC and what it would cost. From 1998 through 2003, AT&T billed its customers for the UCC under the "Taxes, Surcharges, and Regulatory Fees" category. The appellants allege that the UCC is an element of AT&T's overhead, not a government mandated charge, because it reimburses fees required by the Federal Communications Commission (FCC) for the Universal Service Fund (USF), which was created to subsidize cellular service to low-income and rural areas. According to the appellants, the FCC allows, but does not require, cellular providers to recover their contributions to the USF from their customers. When customers called the AT&T service center, the appellants assert AT&T told them it was "federally mandated and not an [AT&T] initiative."

The appellants filed a motion to certify a class of AT&T customer plaintiffs who, like them, signed up for service between March 1998 and February 2003 and were

_____

[2] Some of the choice of law clauses identified a specific state law but most identified the customer's area code as the forum for the choice of law.

charged and paid the UCC even though it was not in their service contract and was misrepresented as a government fee or tax. The trial court found that the CPA applied to all nationwide members of the class because CPA claims arise from statute rather than the contract, and the factual basis for the claims occurred before the parties entered into their respective contracts. But it denied class certification on both the CPA and contract claims because the appellants did not satisfy the commonality and typicality tests set forth in CR 23(a) and CR 23(b)(3). In its memorandum opinion, the trial court explained that it denied certification on the CPA claim because each class member was required to establish causation by proving individual reliance. It denied certification on the contract claims because the choice of law provision in each consumer's contract created individualized issues of liability and provided affirmative defenses that made a class action unmanageable.

We granted discretionary review of the class certification issue. On January 24, 2006, the trial court entered final judgment and this appeal was converted to an appeal of right under RAP 2.2(a)(1). The appellants appeal the trial court's denial of their motion for class certification. AT&T cross-appeals the trial court's decision that the CPA applies to non-Washington plaintiffs.

## DISCUSSION

A trial court's class certification decision is discretionary and will not be overturned absent an abuse of that discretion.[3] The "'primary function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small

---

[3] Lacey Nursing Ctr. v. Dep't of Revenue, 128 Wn.2d 40, 47, 905 P.2d 338 (1995).

to justify individual legal action but which are of significant size and importance if taken as a group."[4]  Washington courts favor a liberal interpretation of CR 23 to avoid multiplicity of litigation, free defendants from the harassment of identical future litigation, and save the cost and trouble of filing individual suits.[5]  Because Federal Rule of Civil Procedure 23 is identical to CR 23, courts may look to federal decisions for guidance in interpreting and construing the state rule when state and federal issues are substantially similar.[6]

When the trial court heard the certification motion, the complaint alleged breach of contract and violations of the CPA.  The appellants argue that their claims meet all of the threshold requirements of CR 23(a) and CR 23(b)(3), common issues predominate over individual ones, and a class action is superior to individual claims because the monetary losses are small.  The appellants assert that the trial court's decision was an abuse of discretion and based on an erroneous view of the law because it ignored the Legislature's mandate to apply CR 23 liberally in favor of granting class certification.

Consumer Protection Act

The appellants allege a violation under the CPA on the ground that AT&T sold its service at an advertised price but charged the UCC, which it identified as "Taxes, Surcharges, and Regulatory Fees," in order to recoup overhead costs.  When customers questioned the UCC on their bill, the appellants allege that AT&T customer service told customers it was a government-mandated charge rather than an AT&T

---

[4] Smith v. Behr Process Corp., 113 Wn. App. 306, 318-19, 54 P.3d 665 (2002) (quoting Brown v. Brown, 6 Wn. App. 249, 253, 492 P.2d 581 (1971)).

[5] Brown, 6 Wn. App. at 256-57.

[6] Smith, 113 Wn. App. at 319 (citing Pickett v. Holland Am. Line-Westours, Inc., 145 Wn.2d 178, 188, 35 P.3d 351 (2001), cert. denied, 536 U.S. 941 (2002)).

initiative. The appellants, and the Attorney General in his amicus brief, assert that the trial court erred as a matter of law when it ruled that individual reliance is required to establish private claims under the CPA.

AT&T asserts that RCW 19.86.090 requires a causal link between the allegedly unfair or deceptive acts and the injury suffered by the appellant under the holding in Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.[7] AT&T argues there was no basis to conclude that every AT&T subscriber was misled about his or her obligation to pay the UCC, and a class-wide trial runs the risk of giving a windfall to millions of consumers who were fully informed and paid the UCC freely and voluntarily. Relying upon Nuttall v. Dowell,[8] Hangman Ridge and the Supreme Court's analysis in Pickett v. Holland Am. Line-Westours, Inc. (Picket II),[9] AT&T argues that proof of individual reliance is required to satisfy the causation requirement. AT&T contends the trial court correctly concluded that individual questions of fact predominate over common ones because a long line of cases requires proof of causation through an individual showing of reliance.

RCW 19.86.090 provides a private right of action to allow private individual citizens to bring suit to enforce the CPA. In Hangman Ridge, the Washington Supreme Court identified five elements that plaintiffs in private CPA claims must show to prevail: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) which affects the public interest, (4) injury to the plaintiff's business or property, and (5) a causal link

---

[7] 105 Wn.2d 778, 719 P.2d 531 (1986).

[8] 31 Wn. App. 98, 639 P.2d 832, review denied, 97 Wn.2d 1015 (1982).

[9] 145 Wn.2d 178, 196, 35 P.3d 351 (2001), cert. denied, 536 U.S. 941 (2002) (Pickett II).

6

between the unfair or deceptive act complained of and the injury suffered.[10] Hangman
Ridge did not explain how a plaintiff should or could establish causation under this test.

In Nuttall v. Dowell, a pre-Hangman Ridge case relied on by the trial court and
AT&T, we affirmed denial of class certification in a case involving a dispute between an
individual and a real estate broker.[11] The plaintiff alleged that the real estate broker
confirmed the legal accuracy of a boundary and the location of an easement on
property he purchased.[12] After purchasing the property, Nuttall's neighbors conducted
a more accurate survey that showed the true boundary line which reduced Nuttall's
property from 10 to 9 acres. On appeal, we affirmed the trial court's ruling that a
private CPA claim did not arise because Nuttall did not rely entirely on the accuracy of
the broker's representations but independently investigated the accuracy of the
boundaries by contacting a previous owner.[13] We held that he failed to establish a
causal relationship with a misrepresentation of fact because he did not convince the
trier of fact that he relied upon it.[14]

After Hangman Ridge, we held in Pickett v. Holland America Line-Westours, Inc.
(Pickett I), that injury and causation in CPA claims could be satisfied by means other
than reliance.[15] In Edmonds v. John L. Scott Real Estate, Inc. and Mason v. Mortgage

---

[10] 105 Wn.2d at 785.
[11] 31 Wn. App. at 99-103.
[12] Id. at 103-04.
[13] Id. at 104.
[14] Id. at 111.
[15] Pickett v. Holland America Line-Westours, Inc. (Pickett I), 101 Wn. App. 901, 918, 6
P.3d 63 (2000), reversed on other grounds, Pickett v. Holland Am. Line-Westours, Inc. (Pickett
II), 145 Wn.2d 178, 196, 35 P.3d 351 (2001), cert. denied, 536 U.S. 941 (2002) (citing
Edmonds v. John L. Scott Real Estate, 87 Wn. App. 834, 847, 942 P.2d 1072 (1997), review
denied, 134 Wn.2d 1027 (1998); Mason v. Mortgage Am., Inc., 114 Wn.2d 842, 854, 792 P.2d
142 (1990)).

Am., Inc., this included proof that the plaintiff lost money because of unlawful conduct.[16]
The Supreme Court did not reverse this substantive ruling.  Rather, it ruled in Pickett II
that we had erred by deciding the merits of the court's denial of class certification rather
than confining ourselves to the question whether the settlement between the parties
was fair.[17]  Acknowledging that Hangman Ridge did not elaborate on the proof required
to show causation, the Supreme Court recognized that Nuttall, Edmonds and Mason
were all means by which causation could be found in CPA claims.  But it did not
overrule Nuttall or decide whether reliance is a necessary component of causation
because the issue was a "debatable question without a clear answer under Washington
law."[18]

Both parties agree that causation is required under RCW 19.86.090 and the
holding in Hangman Ridge.  Here the trial court relied on Nuttall to deny the plaintiff's
CPA claims.  But contrary to AT&T's assertion, Nuttall is not the only Washington
authority on point.  While Nuttall has never been expressly overruled, given the many
differences between Nuttall and this case, it is easily distinguished.  First, Nuttall did
not involve a class certification motion and its attendant liberal construction rules.
Second, the facts in Nuttall would not have satisfied the public interest element of a
CPA claim because it involved a single transaction and the misrepresentation was not

---

[16] Edmonds, 87 Wn. App. at 847; Mason,114 Wn.2d at 854.
[17] Pickett II, 145 Wn.2d at 201.  The trial court in Pickett denied class certification on
several bases.  Pickett appealed the trial court's class certification motion, but his interlocutory
appeal was denied.  A class was then certified for settlement purposes.  The appeal
concerned only the settlement amount, not the trial court's initial class certification decision.  Id.
at 185-86.
[18] Id. at 197.

one that was likely to injure other consumers. Unlike the appellants in this case who were forced to rely solely on the defendant's representations about the UCC, the plaintiff in Nuttall was able to investigate the property boundary on his own and evaluate the realtor's representations. These facts made reliance a critical component of causation in Nuttall.

In Pickett I, a private consumer class action brought under the CPA, this court said there is more than one way to satisfy the Hangman Ridge causation requirement. There, the plaintiffs established causation by showing that consumers bought tickets for a cruise and the cruise line retained a portion of the ticket charges it had represented were port charges or taxes. We held that it was not necessary to prove the consumers' reliance.

> We need not engage in an inquiry whether each plaintiff would have purchased a cruise ticket had they known about the port charges and taxes. We simply hold that Holland America cannot impose on passengers fees, which are not port charges and taxes, and yet call them government charges, taxes, and fees—pass-through charges—when they are not. . . .[19]

In its amicus brief, the Attorney General emphasizes the importance of CPA actions brought by "private attorneys general" which supplement the efforts of his office. If individual reliance were the exclusive means of proving causation in class action CPA claims, particularly those concerning misrepresentations or nondisclosure of material facts, many meritorious private CPA claims could not be brought. Such a rule would place class plaintiffs in the impossible position of proving a negative; that is, that they believed the opposite of the omitted fact when they made their purchase. The

---

[19] Pickett I, 101 Wn. App. at 920.

Attorney General directs our attention to <u>Morris v. Int'l Yogurt Co.</u>, in which the court stated:

> it is virtually impossible to prove reliance in cases alleging nondisclosure of material facts. The inquiry that would normally be made in a case of affirmative misrepresentation—did the plaintiff believe the defendant's representation, and did that belief cause the plaintiff to act—does not apply in a case of nondisclosure.[20]

We agree. Because these appellants allege they did not know about the nature of the UCC, they cannot be required to prove that they would not have purchased wireless service had they known about it.[21]

Trial courts must take the appellants' substantive allegations as true when ruling on a motion for class certification.[22] Thus, here, as in <u>Pickett I</u>, it is enough to establish causation that they purchased the service and AT&T charged them a fee that was not a tax or government surcharge. This is particularly true because deceptive acts or practices are unlawful whether or not they actually deceive anyone.[23] It is sufficient to prove that a practice has the capacity to deceive a substantial portion of the public to prevail on a CPA claim.[24] We hold that the trial court erred in denying class certification on the CPA claim. Plaintiffs are not required to prove that each individual class member relied on AT&T's nondisclosure because, as the courts in <u>Pickett I</u> and <u>Pickett II</u> recognized, reliance is not the only means by which causation can be proven

---

[20] 107 Wn.2d 314, 328, 729 P.2d 33 (1986) (citing <u>Wilson v. Comtech Telecomms. Corp.</u>, 648 F.2d 88, 92 n.6, 93 (2d Cir. 1981)).
[21] The sheer number of negatives required to construct this sentence demonstrates the impossibility of the proof requirement AT&T seeks to impose on the appellants.
[22] <u>Blackie v. Barrack</u>, 524 F.2d 891 (9th Cir. 1975), <u>cert. denied</u>, 429 U.S. 816 (1976).
[23] <u>See Pickett I</u>, 101 Wn. App. at 920.
[24] AT&T presents numerous arguments concerning the legitimacy of the UCC. None of this is relevant to the issue here because the trial court must take the substantive allegations of the complaint as true at the certification stage. <u>Blackie</u>, 524 F.2d at 901.

in CPA cases.

Impact of Choice of Law Clause on CPA Claims

The trial court held that the choice of law provisions in the contracts did not

apply to the CPA claims because those claims were based on the statute rather than

contract and arose before the class members entered into their contracts with AT&T.

The trial court also ruled that the legislature intended that the CPA regulate

Washington businesses whether their conduct affects Washington or non-Washington

consumers.  In so doing, the trial court applied Restatement (Second) of Conflict of

Laws section 145 (1971), which tends to focus on the defendant's contacts:

> (1) The rights and liabilities of the parties with respect to an issue in tort
> are determined by the local law of the state which, with respect to that
> issue, has the most significant relationship to the occurrence and the
> parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to
> determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicil, residence, nationality, place of incorporation and
> > place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is
> > centered.
>
> These contacts are to be evaluated according to their relative importance
> with respect to the particular issue.

AT&T argues the trial court erred by considering its headquarters location rather

than the forum in which each consumer purchased wireless service.  AT&T contends

the court should have relied on Restatement (Second) of Conflict of Laws section 145

(1971), which focuses on the plaintiff's substantial contacts and the forum where the

plaintiff was allegedly deceived and purchased service.

Where reliance upon false or fraudulent representations or advertising is a

substantial factor in inducing a plaintiff and proposed class members to purchase a

defendant's goods or services, Restatement (Second) of Conflict of Laws section

148(2) (1971) identifies the following factors to determine the forum state based on a

determination of which state has the most significant relationship to the occurrence and

parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.[25]

Although contractual choice of law provisions may be considered, they do not dictate

the choice of law for tort claims.[26]  While many of the factors outlined in both section

145 and section 148 center on the plaintiffs' contacts, the analysis focuses on the most

significant contacts, not merely those that are greater in number.

Here, the trial court found that the most significant relationships were in

Washington because all of the marketing materials and service agreements originated

in Washington at the direction of Washington employees.  All of the billing and

disclosure decisions were made by AT&T employees in Washington.  All relevant

evidence and witnesses are in Washington.  Washington has a strong interest in

regulating the activities of Washington businesses.  And most importantly, as a

---

[25] Restatement of Conflict of Laws § 148 (1971).
[26] Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 159, 744 P.2d 1032 (1987), appeal dismissed, 488 U.S. 805 (1988).

Washington business, AT&T is subject to Washington law. These are significant

factors which the trial court correctly applied to conclude that the Washington CPA

applies to all of the appellants' CPA claims. Accordingly, we reject AT&T's cross-

appeal.

Contract Claims

As we noted earlier, when ruling on a motion for class certification, a court must take the substantive allegations of the complaint as true.[27] CR 23(a) contains four threshold requirements: numerosity, commonality, typicality, and adequacy of representation.[28] Representative plaintiffs satisfy the typicality requirement if their claims arise from the same conduct that gives rise to the claims of other class members and are based on the same legal theory.[29] "Where the same unlawful conduct is alleged to have affected both the named plaintiffs and the class members, varying fact patterns in the individual claims will not defeat the typicality requirement."[30]

The test for commonality has a low threshold. It is qualitative rather than quantitative and is satisfied so long as class members have one issue in common.[31] But class members must share more than a legal theory of recovery. Some courts have expressed reluctance to certify a class where individualized proof is required to resolve an allegedly common issue, or resolution of a common legal issue is dependent upon highly specific factual and legal determinations that will be different for each class

---

[27] Blackie, 524 F.2d at 901.

[28] CR 23 (a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Numerosity and adequacy of representation are not at issue here.

[29] Id. at 1082.

[30] Smith, 113 Wn. App. at 320 (citing Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994)).

[31] In re Am. Med. Sys., 75 F.3d 1069, 1080 (6th Cir. 1996).

member.[32]  It is not necessary that the shared questions of law or fact be identical.[33]

Rather, the commonality requirement is satisfied when the legal question "linking the

class members is substantially related to the resolution of the litigation even though the

individuals are not identically situated."[34]  There is a common question of law and fact if

the "course of conduct" that gives rise to the cause of action affects all the class

members and all class members share at least one of the elements of the cause of

action.[35]

 In order to certify a class, the court must also find the plaintiffs have satisfied

one of the requirements of CR 23(b).[36]  Appellants rely on CR 23(b)(3) which requires

_____

[32] Id.

[33] Id. (citing Brown, 6 Wn. App. at 255).

[34] Miller v. Farmer Bros. Co., 115 Wn. App. 815, 824, 64 P.3d 49 (2003) (internal quotation marks omitted) (quoting Yslava v. Hughes Aircraft Co., 845 F. Supp. 705, 715 (D. Ariz. 1993)).

[35] Id. (citing Lockwood Motors v. Gen. Motors Corp., 162 F.R.D. 569, 575 (D. Minn. 1995)).

[36] CR 23(b) provides:
 **Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
 (1) The prosecution of separate actions by or against individual members of the class would create a risk of
  (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
  (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or
 (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or

that common legal and factual issues predominate over individual issues. The court may certify the class even though there are individual factual or legal issues. The relevant inquiry is whether the issue or issues shared by the class members are the dominant, central, or overriding issues.[37] Further, "'[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.'"[38] And the time it may take to resolve those individual issues is not a basis for denying class certification because courts have a number of methods for dealing with individual issues in class litigation.[39]

Here, the trial court denied class certification on the appellants' contract claims because the choice of law provisions in Subscriber Agreements created a predominance of individual issues and made the class unmanageable. The language of the choice of law provisions in the appellants' contracts varied.[40] The trial court ruled it should enforce the choice of law clauses because they were not included for any anti-competitive or anti-consumer reasons. Washington courts will enforce an express choice of law clause so long as applying it does not violate the fundamental public

against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
[37] Id. at 825-26 (citing 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 4.25, at 4-85 (3d ed. 1992)).
[38] Id. at 825 (quoting 1 NEWBERG § 4.25, at 4-84).
[39] Id. (citing 1 NEWBERG § 4.25, at 4-83).
[40] For example, some contained a clause stating: "'This Agreement is subject to applicable federal laws, federal or state tariffs, if any, and the laws of the state associated with the [consumer's phone] number.'" Schnall's Subscriber Agreement included the following language: "This agreement is subject to applicable federal and state laws, and tariffs, and the laws of the state associated with the Number, without regard to such state's conflict of law rules." According to AT&T, other contracts contained choice of law clauses naming specific states.

policy of the forum state.[41]  Absent contrary intent, a choice of law clause refers only to

the local law of the state but not to its conflict rules.[42]  We review the trial court's

decision to enforce a choice of law clause for abuse of discretion.[43]  A customer's area

code generally covers the area in which a customer lives.  The trial court found that the

clause should be enforced as written because it chooses the law with which the

customer is most familiar.  We agree.

In its Memorandum Opinion, the trial court made several findings about the

individual issues the contract claim raised:  (1) liability issues differ based on the

materials consumers relied upon, whether those materials were a service contract or

advertising or promotional material explicitly mentioning the UCC; (2) contract

interpretation rules would differ among class members from different states in light of

---

[41] McGill v. Hill, 31 Wn. App. 542, 547, 644 P.2d 680 (1982).
[42] Id. at 547-48.  See also Restatement (Second) of Conflict of Laws § 187 (1971), which states:

§ 187 Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

[43] Erwin v. Cotter Health Ctrs., Inc., 133 Wn. App. 143, 135 P.3d 547 (2006), review granted, 159 Wn.2d 1011 (2007).

the choice of law provisions of each Subscriber Agreement; (3) the type of context
evidence that could apply to contract interpretation under the varying state laws could
vary based on the information a customer may have obtained from the AT&T website
about the UCC and evidence about contacts between customers and AT&T after a
customer received his first billing; and (4) the types of affirmative defenses that might
arise under the varying state laws, including voluntary payment and enforcement of an
arbitration clause. Based on the number of potential individual issues, the trial court
concluded that the commonality and typicality requirements of CR 23(b) and (c) were
not satisfied and that individual issues predominated over common class issues.

    To determine whether common issues predominate over individual ones, a trial
court pragmatically examines whether there is a common nucleus of operative facts in
each class member's claim.[44] The common question here is whether the language
AT&T used in its consumer contracts permitted it to charge, and later increase, the
UCC. The appellants' complaint asserted that AT&T breached their agreements by
charging the UCC to recover a cost of doing business and not informing customers
each time they raised the UCC. Appellants rely on language in the agreements that
required them to pay "charges to [an] account, including but not limited to . . . any
taxes, surcharges, fees, assessments, or recoveries imposed on you or us as a result
of the use of the Service" but nothing more. The common nucleus of facts among all
class members on this breach of contract claim is that AT&T charged all customers
from 1998 through 2003 a UCC it represented was a government tax, surcharge or fee.

---

[44] Smith, 113 Wn. App. at 323 (citing Clark v. Bonded Adjustment Co., 204 F.R.D. 662,
666 (E.D. Wash. 2002)).

The common legal theory is that AT&T charged an amount not authorized under the

contracts because like the fees at issue in <u>Pickett I</u>, the UCC was an overhead offset

amount, not a government-mandated charge it was merely passing on to consumers. As explained above, the existence of individual issues alone should not defeat class certification when the legal and factual question at issue is substantially related to the resolution of the litigation. If the UCC is a government tax, surcharge or fee, then the matter will be resolved because it is an amount authorized under the contract. If not, there are mechanisms available, such as subclasses and master's hearings for resolving individual claims. Class certification of the issue will be an efficient means of determining this claim given the small amounts of money at issue and its broad impact.[45]

Contrary to AT&T's argument, extrinsic evidence to determine the individual consumer's intent at formation will not be necessary here because these consumers entered into a standardized contract they were not able to negotiate or change on an individual basis. Having availed itself of the benefits of a standardized, boilerplate contract used across the nation, AT&T cannot now assert that the contracts are to be interpreted individually based on the intent of each consumer at the time of purchase. The choice of law provisions may result in some variations in damages, but they do not alter the meaning of the express terms of the agreement or destroy the common claims

---

[45] On appeal, AT&T raises numerous arguments concerning the propriety of categorizing the UCC as a government charge and the steps taken to inform its customers about the UCC. But these arguments go to the merits of the plaintiffs' claim and are not relevant to a decision concerning class certification.

57523-6-I/21

among this class of plaintiffs.

   We reverse and remand to the trial court for further proceedings.

_____
Azid, J.

WE CONCUR:

_____          _____
Dwyer, J.                         Grosse, J.