The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY, | ) No. C 07-475 MJP |
| | ) |
|     Plaintiff, | ) MICROSOFT'S REPLY IN |
| | ) SUPPORT OF MOTION TO |
|  v. | ) DISMISS |
| | ) |
| MICROSOFT CORPORATION, a Washington | ) |
| corporation, | ) **Note on Motion Calendar:** |
| | ) June 22, 2007 |
|     Defendant. | ) *Oral Argument Requested* |

REPLY ON MOTION TO DISMISS (NO. C07-475 MJP)
SEA 2000284v13 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY ..................................................................1

II.     ARGUMENT............................................................................................................1

    A.   Because Ms. Kelley Has Not Alleged a "Written Warranty," She Has Not Stated a
          Claim under the Magnuson-Moss Warranty Act. ............................................................1

    B.   Ms. Kelley Has Not Pled a Binding Contractual Bargain with Microsoft. ...................3

       1.   According to the Allegations in the Complaint, the "Windows Vista Capable"
            Sticker Did Not Create an Enforceable Contract..........................................................4

       2.   Ms. Kelley Has Not Stated a Claim for Breach of the EULA. ...................................6

    C.   Because Ms. Kelley Has Not Alleged That Unfair or Deceptive Conduct Caused
          Her Any Injury, She Has Not Stated a CPA Claim. ........................................................7

       1.   Ms. Kelley Has Not Alleged that She Suffered Any Injury. ......................................7

       2.   Ms. Kelley Has Not Alleged that Microsoft's Conduct Caused Her to Do
            Anything. .........................................................................................................................8

    D.   Ms. Kelley Has Not Alleged that Her Transaction with an OEM Enriched
          Microsoft Unjustly.............................................................................................................9

    E.   Ms. Kelley Does Not Have Standing to Assert Claims Challenging the "Express
          Upgrade" Program. .........................................................................................................11

III.    CONCLUSION....................................................................................................12

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

1

## <u>TABLE OF AUTHORITIES</u>

2

**FEDERAL CASES**

3

*Alabama v. Blue Bird Body Co.*,
    573 F.2d 309 (5th Cir. 1978) .............................................................................12

4

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)..........................................................................................4

5

*Davis v. Homecomings Financial*,
    No. 05-1466RSL, 2006 U.S. Dist. LEXIS 77381 (W.D. Wash. Oct. 10, 2006).......9

6

*Goldin v. Local 55 of the Int'l Ass'n of Firefighters*,
    633 F.2d 817 (9th Cir. 1980) .............................................................................12

7

*In re Hotel Tel Charges*,
    500 F.2d 86 (9th Cir. 1974) ...............................................................................12

8

*Milicevic v. Fletcher Jones Imports, Ltd.*,
    402 F.3d 912 (9th Cir. 2005) ...............................................................................2

9

*Rolo v. City Investing Co.*,
    155 F.3d 644 (3d Cir. 1998) ...........................................................................7, 12

10

*Skelton v. General Motors Corp.*,
    660 F.2d 311 (7th Cir. 1981) ...........................................................................2-3

11

*United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*,
    290 F.3d 1199 (9th Cir. 2002)...........................................................................11

12

**STATE CASES**

13

*Benoy v. Simons*,
    66 Wn. App. 56, 831 P.2d 167 (1992)...................................................................7

14

*Demopolis v. Galvin*,
    57 Wn. App. 47, 786 P.2d 804 (1990)...................................................................7

15

*Farwest Steel Corp. v. Mainline Metal Works*,
    48 Wn. App. 719, 741 P.2d 58 (1987)................................................................11

16

*Johnston v. Beneficial Mgmt. Corp. of Am.*,
    85 Wn. 2d 637, 538 P.2d 510 (1975)...............................................................7, 11

17

*Keystone Land & Dev. Co. v. Xerox Corp.*,
    152 Wn.2d 171, 94 P.3d 945 (2004)....................................................................4

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

*Lynch v. Deaconess Med. Ctr.*,
   113 Wn.2d 162, 776 P. 2d 681 (1989) ................................................................................10

*Mill & Logging Supply Co. v. West Tenino Lumber Co.*,
   Wn.2d 102, 265 P.2d 807 (1954) ......................................................................................11

*Mortenson Co. v. Timberline Software Co.*,
   140 Wn.2d 568, 998 P.2d 305 (2000) ................................................................................6

*Multicare Med. Ctr. v. State*,
   114 Wn.2d 572, 790 P.2d 124 (1990) ................................................................................4

*Pickett v. Holland Am. Line-Westours, Inc.*,
   145 Wn.2d 178, 35 P.3d 351 (2001) ................................................................................8

*Quinn v. Connelly*,
   63 Wn. App. 733, 821 P.2d 1256 (1992) ..........................................................................7

*Robinson v. Avis Rent-a-Car*,
   106 Wn. App. 104, 22 P.3d 818 (2001) ............................................................................9

*Schnall v. AT&T Wireless Servs., Inc.*,
   ___ P.3d ___, 2007 WL 1733117 (Wn. App. June 18, 2007) ............................................9

*Vehicle/Vessel LLC v. Whitman County*,
   122 Wn. App. 770, 95 P.3d 394 (2004) ............................................................................5

**FEDERAL STATUTES**

15 U.S.C. § 2301(6) ................................................................................................................ 1-2

15 U.S.C. § 2301(6)(A) ........................................................................................................... 2-3

**STATE STATUTES**

RCW 19.86.090 ..........................................................................................................................9

**RULES**

Civil Rule 11 ..........................................................................................................................4, 6

Civil Rule 23(a)(3) ............................................................................................................... 11-12

**REGULATIONS**

16 C.F.R. § 700.3 ........................................................................................................................2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

**OTHER AUTHORITIES**

E. Allan Farnsworth, CONTRACTS § 2.10, at 67 (3d ed. 1999) .......................................................5

RESTATEMENT (SECOND) OF CONTRACTS § 23 (1981)...............................................................4

25 DeWolf, *et al.*, WASH. PRAC. § 2.23 (1998) .............................................................................5

Sheila B. Scheuerman, *The Consumer Fraud Class Action: Reining In Abuse By Requiring Plaintiffs To Allege Reliance As An Essential Element*, 43 HARV. J. LEG. 1 (2006)......................................................................................................................8

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

# I.    INTRODUCTION AND SUMMARY

As her Opposition makes clear, Ms. Kelley's claim turns on three words—"Windows Vista Capable"—that appeared on a sticker on a computer Ms. Kelley bought from an undisclosed computer manufacturer ("OEM").  Ms. Kelley does not allege that she read those words.  She does not allege that they would have meant anything to her if she *had* read them.  And she does not allege that she took any action in response to them.  Those three words cannot bear the burden of Ms. Kelley's claims, and this Court should dismiss, because:

(1)    The sticker did not promise a specified level of performance over a specified period of time.  Ms. Kelley therefore has no claim under the Magnuson-Moss Warranty Act.

(2)    Based on settled law, the sticker did not create an enforceable contract.  Nor has Ms. Kelley alleged a breach of the contract she did have—her Windows XP End User License Agreement (which was between Ms. Kelley and her OEM, not with Microsoft).

(3)    The sticker did not give rise to a CPA claim, as Ms. Kelley has not alleged that she suffered any injury to her business or property as a result of the words on the sticker.

(4)    Ms. Kelley has not alleged that she unjustly enriched Microsoft as a result of the sticker.  Although she says *someone* enriched Microsoft by buying a computer in response to the sticker, she does not allege that the sticker caused *her* to buy a computer.

(5)    Ms. Kelley's claim focuses entirely on the "Windows Vista Capable" sticker, and she has not alleged that she bought a computer with an "Express Upgrade."  She therefore does not have standing to assert any claims with respect to the "Express Upgrade" program.

# II.    ARGUMENT

## A.    Because Ms. Kelley Has Not Alleged a "Written Warranty," She Has Not Stated a Claim under the Magnuson-Moss Warranty Act.

Ms. Kelley's Opposition persists in her misguided attempt to fit the square peg of the Windows Vista Capable sticker into the round hole of the Magnuson-Moss Act's definition of a "written warranty."  15 U.S.C. § 2301(6).  The Magnuson-Moss Act does not apply here

REPLY ON MOTION TO DISMISS (NO. C07-475 MJP) – 1
SEA 2000284v13 0025936-000689

1  because the "Windows Vista Capable" sticker does not promise "a specified level of

2  performance *over a specified period of time*." 15 U.S.C. § 2301(6)(A) (emphasis added).

3  Ms. Kelley suggests two possible times at which one might infer performance was promised

4  (i.e., when she purchased her PC or when Microsoft released Windows Vista), Opp. at 21:30-

5  36, but in doing so ignores the text of the Act. Performance must be promised "*over* a

6  *specified* period of time" not *at* some *unspecified* time. Here, the sticker does not specify any

7  time period. The sticker merely says "Windows Vista Capable."

8          The FTC regulations point out that an appliance's energy efficiency rating is not a

9  "written warranty" because it lacks a "specified time period." 16 C.F.R. § 700.3. In this

10 respect, a sticker stating that a refrigerator has an energy efficiency rating of 10.0 does not

11 differ from one stating that a PC is "Windows Vista Capable." Neither promises that the

12 energy efficiency rating or Windows Vista capability will be maintained *over* 90 days, one

13 year, ten years, or any other "specified period of time," as the Act requires. Hence, neither is

14 a "written warranty." Because the Act applies only to a "written warranty," the Court should

15 dismiss Ms. Kelley's Magnuson-Moss Act claim.

16         Ms. Kelley relies upon *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th

17 Cir. 2005), for the proposition that "context is crucial" in analyzing the Act. Opp. at 22:28-

18 32. But *Milicevic* does not address the issue here—whether "Windows Vista Capable" meets

19 the definition of "written warranty" under Section 2301(6)(A). In *Milicevic*, a new Mercedes

20 had spent 55 days in the repair shop by the end of seven months. Mercedes-Benz's warranty

21 promised to make repairs to correct defects in materials or workmanship, which made it a

22 "written warranty" under Section 2301(6)(B) ("undertaking in writing … to refund, repair,

23 replace, or take other remedial action …")—a different prong of the definition of "written

24 warranty" than at issue here. *Id.* at 917-19.

25         In *Skelton v. General Motors Corp.*, 660 F.2d 311 (7th Cir. 1981), the district court

26 held that statements in brochures, manuals, and advertising were not "written warranties" but

27

that the Act nonetheless applied to them. No one appealed the holding that the statements (for

example, that "1976 through 1979 GM automobiles contained THM 350 (M38)

transmissions, or transmission of similar quality and performance") were not "written

warranties," *id.* at 312 (internal quotations omitted), but GM did appeal the ruling that the Act

applied to them anyway. In reversing, the Seventh Circuit discussed with approval—and at

length—the district court's holding that the statements were not "written warranties." The

Seventh Circuit found that holding "consistent" with the FTC's interpretation of the definition

that "[a] product information disclosure without a specified time period to which the

disclosure relates is … not a written warranty." The court emphasized the need for a clear

definition of a "written warranty" because "manufacturers and suppliers must know in

advance exactly which representations are subject to" obligations under the Act and it would

be "excessively cumbersome to impose the Act's disclosure rules on every advertisement

containing a description of a product or its components." *Id.* at 316 n.7.

In response, Ms. Kelley has not cited a single case holding a statement to be a "written

warranty" where it promises a specified level of performance[1] but not "over a specified period

of time." 15 U.S.C. § 2301(6)(A). A "Windows Vista Capable" sticker does not promise

anything "over a specified period of time." It is not a "written warranty," the Magnuson-

Moss Warranty Act does not apply, and the Court should dismiss the claim under the Act.

**B.    Ms. Kelley Has Not Pled a Binding Contractual Bargain with Microsoft.**

Ms. Kelley alleges only one contract in her First Amended Complaint (the

"Complaint"): "Microsoft ***contractually promised*** to provide to plaintiff … software and

services … that provided 'Vista' at a price not exceeding any cost of any upgrade to Vista

Basic." Am. Compl. ¶ 7.2 (emphasis added). Despite her remarkable assertion that it does

not matter "whether that promise was made, but [only] whether Microsoft breached its

---

[1] Microsoft stands on its original brief for its demonstration that "Windows Vista Capable" does not
promise a "specified level of performance" either. The Court need not resolve that issue because the
lack of any promise "over a specified period of time" is dispositive. 15 U.S.C. § 2301(6)(A).

promise," Opp. at 6:37-39, an action for breach of contract requires that an enforceable contract exist. Because parties enter into an enforceable contract only if they "objectively manifest their mutual assent," *Keystone Land & Dev. Co. v. Xerox Corp.,* 152 Wn.2d 171, 177, 94 P.3d 945 (2004), Ms. Kelley must allege that she and Microsoft did something to manifest their mutual assent to be bound in a contractual relationship.

In her Opposition, Ms. Kelley *still* does not assert that she responded to (or even saw) the words "Windows Vista Capable" on her computer—and the absence of that allegation means that she has not pleaded a contract. Tacitly recognizing that deficiency, Ms. Kelley resorts to arguing that she and Microsoft had a different contract in the form of an "End User License Agreement" (or "EULA"). But she does *not* allege a breach of the EULA, either in her Complaint or in her Opposition; she could not allege such a claim consistent with Rule 11; and, in any event, the EULA on which she relies would bar her claims.

        **1.**      **According to the Allegations in the Complaint, the "Windows Vista Capable" Sticker Did Not Create an Enforceable Contract.**

The mere existence of a marketing sticker combined with Ms. Kelley's purchase of a product upon which that sticker appeared do not amount to objective manifestations of mutual assent sufficient to create a contract. At most, Ms. Kelley has pleaded two independent actions: Microsoft "authorized" placement of a sticker on a computer, and Ms. Kelley bought a computer with that sticker. She does not allege *any* connection between the sticker and her purchase that would allow even a plausible inference of mutual assent to the supposed contract she alleges. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1970-73 (2007) (allegations of "parallel conduct" inadequate to plead a "contract, combination or conspiracy" in violation of § 1 of the Sherman Act).

The absence of any alleged connection between the sticker and Ms. Kelley's purchase means that she has not alleged a bargain between Microsoft and her. "It is essential to a bargain that each party manifest assent *with reference to the manifestations of the other*."

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

RESTATEMENT (SECOND) OF CONTRACTS § 23 (1981) (emphasis added); *see also Multicare Med. Ctr. v. State*, 114 Wn.2d 572, 586 n.24, 790 P.2d 124 (1990) ("Mutual assent or mutual intention are the modern expressions for the concept of meeting of the minds."). Thus, to form a contract of the type alleged in her Complaint, Ms. Kelley must allege that Microsoft made an enforceable offer, which she met with knowing and intentional acceptance via performance in response to the offer. *Vehicle/Vessel LLC v. Whitman County*, 122 Wn. App. 770, 777, 95 P.3d 394 (2004) ("There is no contract until the ***bargained-for*** act is performed.") (emphasis added).

Settled law, however, establishes that advertisements and marketing campaigns, such as the sticker, do not rise to the level of binding offers that can give rise to a contract. Motion at 10:14-23. Ms. Kelley neither challenges that basic principle nor explains how the Court could construe the "Windows Vista Capable" sticker as a binding offer to contract. Indeed, Ms. Kelley virtually concedes that Microsoft's marketing could ***not*** be a binding offer, Opp. at 6:1-5 (disavowing allegations based on Microsoft's marketing campaign as "irrelevant"), and she agrees that "general, impersonal advertising" cannot create a contract. Opp. at 6:7.

Even if Microsoft's marketing campaign could rise to the level of a binding offer, Ms. Kelley ***still*** would have to allege that she accepted that offer with the purpose of taking Microsoft up on its proposal. Put another way, Ms. Kelley had to "know of the offer and intend to accept it" for a contract to be formed. *See* 25 DeWolf, *et al.*, WASH. PRAC. § 2.23 (1998); *see also* E. Allan Farnsworth, CONTRACTS § 2.10, at 67 (3d ed. 1999) ("[T]he promisee's purpose must be to take advantage of the proposed exchange."). Rather than make that allegation, Ms. Kelley relies on a series of bullet points, Opp. at 7:3-20, which boil down to the propositions that (a) Microsoft authorized OEMs to place Windows Vista Capable stickers on their computers, and (b) Ms. Kelley bought a computer from an OEM who used the sticker. She does ***not*** allege that she purchased her PC ***in response to*** the "Windows Vista Capable" sticker. That omission as well forecloses any contract claim based on the sticker.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

1        **2.     Ms. Kelley Has Not Stated a Claim for Breach of the EULA.**

2        Because she cannot plead a contract based on the sticker, Ms. Kelley stakes her claim

3  on a Windows XP End User License Agreement ("EULA"), which she did ***not*** mention in her

4  Complaint but now attaches to her Opposition.  Opp. at 3-5; Thomas Decl., Ex. A.

5        But Ms. Kelley has not pleaded a breach of the Windows XP EULA.  Neither the

6  Complaint nor the Opposition points to a single obligation in the EULA that Microsoft

7  allegedly breached.  More precisely, the EULA for Windows XP on its face has no bearing on

8  whether Microsoft "contractually promised" to provide Ms. Kelley with "'Vista' at a price not

9  exceeding any cost of an upgrade to Vista Basic."  Am. Compl. ¶ 7.2.  The EULA does not

10 mention Windows Vista, much less make a promise of the sort that Ms. Kelly alleges.  For

11 that reason, cases enforcing shrink-wrap licenses, such as *Mortenson Co. v. Timberline*

12 *Software Co.*, 140 Wn.2d 568, 998 P.2d 305 (2000), provide no guidance here.

13       In any event, Rule 11 would preclude Ms. Kelley from pleading a contract claim

14 against Microsoft based on the EULA attached to her Opposition:  she alleges that she bought

15 a computer, Am. Compl. ¶ 2.1, and acknowledges that it came with Windows XP pre-

16 installed, Am. Compl. ¶ 1.2; Opp. at 3:21.  Any reasonable investigation of her claims would

17 involve looking at the EULA she received with her computer—not downloading a different

18 EULA from Microsoft's Web site for Windows in retail boxes, *see* Thomas Dec. ¶ 2.  Such a

19 modest investigation would show that the EULA that came with her computer created a

20 contract between her and the OEM, not between her and Microsoft, which is not a party to

21 that EULA.  Even if she ***did*** plead—contrary to the EULA's terms—that Microsoft was a

22 party, it would bar her claims:  the EULA attached to the Thomas Declaration contains an

23 integration clause, making the license "supersede all prior or contemporaneous oral or written

24 communications, proposals and representations with respect to the Software or any other

25 subject matter covered by this EULA."  Thomas Dec., Ex. A, ¶ 21.  Thus, even if the EULA

26 were the governing contract, Ms. Kelley would have no Windows Vista claim.

27

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

**C.    Because Ms. Kelley Has Not Alleged That Unfair or Deceptive Conduct Caused Her Any Injury, She Has Not Stated a CPA Claim.**

Ms. Kelley concedes that she must allege that Microsoft proximately caused injury to her property to state a CPA claim.  Opp. at 10:17-34.  But Ms. Kelley has not alleged that *she* suffered injury.  Nor has she alleged that Microsoft *caused* whatever injury she might claim.

**1.    Ms. Kelley Has Not Alleged that She Suffered Any Injury.**

Ms. Kelley alleges only that she "and Class members" suffered unspecified injury, "including … having to purchase RAM and/or other hardware in order to run 'the real Vista'" or being required to pay "additional money to obtain 'the real Vista.'"  Am. Comp. ¶ 8.5; Opp. at 14:4-12.  But Ms. Kelley steadfastly refuses to identify any injury that she herself has suffered.  She alleges only that she bought a computer with the "Windows Vista Capable" sticker and that it could run Windows Vista—just not the Windows Vista edition that she now claims it *should* run.  She does not allege that she purchased RAM or other hardware, or paid additional money for a premium Windows Vista edition.  Thus, she does *not* allege that her purchase of a new computer injured her property.  The most one can infer from her allegations is that some other putative class members may have bought RAM or other hardware, or an upgrade to a premium Windows Vista edition.

But Ms. Kelley cannot allege an individual claim by relying on injuries to absent members of an uncertified class.  "Until the putative class is certified, the action is one between the [named plaintiff] and the defendant.  Accordingly, the First Amended Complaint must be must be evaluated as to [this] particular plaintiff."  *Rolo v. City Investing Co.*, 155 F.3d 644, 659 (3d Cir. 1998).  Washington courts routinely dismiss CPA claims where plaintiffs have not paid the charges they challenge.  *Johnston v. Beneficial Mgmt. Corp. of Am.*, 85 Wn. 2d 637, 644, 538 P.2d 510 (1975); *see also Benoy v. Simons*, 66 Wn. App. 56, 65, 831 P.2d 167 (1992); *Quinn v. Connelly*, 63 Wn. App. 733, 742-43, 821 P.2d 1256 (1992); *Demopolis v. Galvin*, 57 Wn. App. 47, 54-55, 786 P.2d 804 (1990).  Because Ms.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

Kelley has not alleged that she incurred any detriment as a result of Microsoft's actions, she has not alleged the injury required to state a claim under the CPA.

> **2.     Ms. Kelley Has Not Alleged that Microsoft's Conduct Caused Her to Do Anything.**

Leaving aside the issue of injury, Ms. Kelley's CPA claim should be dismissed because she has not alleged causation. Ms. Kelley alleges a "bait and switch scheme" to which members of the putative class "were subjected." Am. Compl. ¶ 1.2; Opp. at 14:18-43. To state a claim of that nature, however, Ms. Kelley at least would have to allege that she took the "bait" by responding to the "Windows Vista Capable" sticker and then suffered the "switch" by buying an upgrade to Windows Vista so that she could experience the "real Vista" that she allegedly expected to be able to buy and run.

Ms. Kelley, however, has not made any such allegations. Instead, she relies on allegations that putative class members (*not* her) may have been "reassured," "falsely led to believe," or "assured" by the Windows Vista Capable sticker, Opp. at 14:26-39, and those allegations have no bearing on this motion. Ms. Kelley must allege that *she* saw the "Windows Vista Capable" sticker, that it meant something *to her*, and that *she* paid to upgrade from Windows Vista Home Basic because it lacked features *she* expected to receive.

Lacking these allegations, Ms. Kelley's Complaint cannot satisfy even the most indulgent view of the CPA's causation requirement. Her long discussion of "reliance" under the CPA therefore has only academic interest—and it remains inconclusive, for the Supreme Court has declared that it remains "debatable" in Washington whether one can prove causation under the CPA without showing reliance.[2] *Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn.2d 178, 196-97, 35 P.3d 351 (2001). Indeed, Judge Lasnik recently refused to certify a CPA class in part because "each plaintiff must show that he or she relied on

---

[2] While some jurisdictions have relaxed the requirement of alleging reliance, Opp. at 13, that development has received sharp criticism. *See generally,* Sheila B. Scheuerman, *The Consumer Fraud Class Action: Reining In Abuse By Requiring Plaintiffs To Allege Reliance As An Essential Element*, 43 HARV. J. LEG. 1 (2006).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

[defendant's] allegedly unfair or deceptive acts." *Davis v. Homecomings Financial*, No. 05-1466RSL, 2006 U.S. Dist. LEXIS 77381 (W.D. Wash. Oct. 10, 2006) (citing *Pickett*, 145 Wn. 2d at 196). In any event, causation—not reliance—is at issue here.

Contrary to Ms. Kelley's implication, Division I's recent opinion in *Schnall v. AT&T Wireless Servs., Inc.*, ___ P.3d ___, 2007 WL 1733117 (Wn. App. June 18, 2007), does not excuse her from alleging that she saw the Windows Vista Capable sticker and cared about what it meant. *See* Pl. Not. of Supp. Auth. (Dkt. No. 19). In *Schnall*, a seller allegedly contracted to sell services at one price, but added an unauthorized charge. On those facts, the court of appeals held that Mr. Schnall could prove causation by showing that he contracted for the service at a set price but paid more. Here, by contrast, Ms. Kelley's claims turn on whether readers of the Windows Vista Capable sticker were "reassured," misled, or "assured," Opp. at 14:26-39, by the "Windows Vista Capable" sticker at a time when information about the hardware needed to run all Windows Vista features was widely available. *See* Am. Compl. ¶ 4.6; Motion at 4:6-5:8. For that reason, this case has nothing in common with *Schnall*. Here, Ms. Kelley must allege that she was "injured in … her business or property by a violation of" the CPA. RCW 19.86.090. She has not done so.

Simply put, Ms. Kelley's Complaint cannot survive this motion by pleading that she bought a computer and that a sticker on that computer misled someone else and caused someone else to buy more hardware or an upgrade to Windows Vista. Her failure to connect the sticker to her behavior and any damage to her requires dismissal. *See Robinson v. Avis Rent-a-Car*, 106 Wn. App. 104, 119, 22 P.3d 818 (2001).[3]

### D.    Ms. Kelley Has Not Alleged that Her Transaction with an OEM Enriched Microsoft Unjustly.

Ms. Kelley's failure to allege that she took any action in response to the Windows Vista Capable sticker likewise requires dismissal of her unjust enrichment claim.

---

[3] Ms. Kelley has abandoned her ill-conceived theory that "price inflation" allegations can suffice to plead causation on a CPA claim. *See* Opp. at 15:42-16:14.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1    Ms. Kelley admits that she must plead facts that, if proved, would show that Microsoft

2    reaped an "unjust" benefit from her purchase of a computer with Windows XP pre-installed.

3    In an unsuccessful effort to satisfy that obligation, Ms. Kelley claims that "[t]hrough its

4    misleading acts, Microsoft benefited by selling *more* XP licenses and additional upgrades

5    *than it would have* without the 'Windows Vista Capable' and 'Express Upgrade' programs."

6    Opp. at 19:3-17 (emphasis added); Am. Compl. ¶¶ 4.3-4.6.  In other words, the supposed

7    unjust enrichment arose from Microsoft's incremental additional sales.

8    But Ms. Kelley does *not* allege that she was one of those additional sales, i.e., that *her*

9    purchase of a computer equipped with Windows XP came about because of Microsoft's

10   "misleading acts."  In particular, she does not allege that *she* bought a computer that she

11   would not have purchased "without the 'Windows Vista Capable' and 'Express Upgrade'

12   programs."  The "gravamen of [her] Complaint," Opp. at 19:5—using the programs to sell

13   more Window XP licenses to computer manufacturers—therefore does not address any action

14   that Ms. Kelley alleges she took.  It does not matter that she purchased a computer with

15   Windows XP pre-installed.  Unless the Windows Vista Capable sticker or Express Upgrade

16   program caused her to buy a computer she otherwise would not, she has in no way unjustly

17   enriched Microsoft.  *See Lynch v. Deaconess Med. Ctr.,* 113 Wn.2d 162, 165, 776 P. 2d 681

18   (1989) ("[T]he mere fact that a person benefits another is not sufficient to require the other to

19   make restitution.").

20   Because Microsoft mentioned that she bought her computer from an OEM, Ms. Kelley

21   argues about privity.  Opp. at 17-18.  But Microsoft has never argued that Ms. Kelley lacked a

22   remedy because of an absence of privity.  She paid an OEM for a computer with Microsoft

23   Windows XP pre-installed, and Microsoft in turn received a payment from the OEM.  *See*

24   Opp. at 4:9-32.  If that payment was unjust, then a lack of privity would not bar her claim.

25   But Ms. Kelley has not alleged that whatever amount Microsoft received from her OEM as a

26   result of her transaction was "unjust":  as far as the Complaint shows, the OEM provided Ms.

27

REPLY ON MOTION TO DISMISS (NO. C07-475 MJP) – 10
SEA 2000284v13 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

Kelley with the computer she meant to buy, and Microsoft received from the OEM what the OEM owed. (Ms. Kelley has not alleged that she paid anything directly to Microsoft. Am. Compl. ¶ 9.2.)

The two cases Ms. Kelley cites have nothing to do with the circumstances here. Both involved defendants who had profited by taking and using goods for which they did not pay. *See, e.g., Mill & Logging Supply Co. v. West Tenino Lumber Co.*, Wn.2d 102, 265 P.2d 807 (1954). Indeed, in the second of these cases, on those facts, the court of appeals found that enrichment was not "unjust" where, among other things, the defendant did not mislead the plaintiff. *See Farwest Steel Corp. v. Mainline Metal Works*, 48 Wn. App. 719, 732, 741 P.2d 58 (1987). Far from alleging that Microsoft received something for nothing, Ms. Kelley alleges only that it received payment from an OEM for the Windows XP software that the OEM pre-installed on its machine and sold to Ms. Kelley.[4] That was hardly unjust.

### E. Ms. Kelley Does Not Have Standing to Assert Claims Challenging the "Express Upgrade" Program.

Ms. Kelley's Complaint does ***not*** allege that the PC she bought in November 2006 included an "Express Upgrade" to Windows Vista. For that reason, she cannot assert claims with respect to the Express Upgrade program, for a plaintiff who did not buy the product that she claims was deficient or deceptively marketed has no standing to sue. *Johnston*, 85 Wn. 2d at 644-45 (where CPA plaintiff did not take loan at issue, court rejected claim as lacking injury and held "[a] party who lacks standing himself cannot represent a class of which he is not a party").

Ms. Kelley's argument to the contrary, *see* Opp. at 23-24, confuses the requirements for stating a claim with the burden that a named plaintiff in a class action bears under Rule

---

[4] Ms. Kelley chides Microsoft for supposedly not recognizing her right to plead in the alternative. Opp. at 16:18-36. But the Ninth Circuit gave no deference to pleading in the alternative when it dismissed a claim for unjust enrichment in the face of a valid contract in *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002). For that reason, if Ms. Kelley's contract claim survives, she cannot maintain her claim for unjust enrichment.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

23(a)(3) of demonstrating that her claim is typical of the claims of the class she wants to represent.  The fact that Ms. Kelley filed this lawsuit as a proposed class action does not reduce her obligation of pleading and proving every element of each claim she is asserting— including her standing to assert the claim.  *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 327 (5th Cir. 1978) ("[T]he fact that a case is proceeding as a class action does not in any way alter the substantive proof required to prove up a claim for relief"); *In re Hotel Tel Charges*, 500 F.2d 86, 89 (9th Cir. 1974) (court should not permit class action "to wear away the substantive requirements to maintain a … cause of action").  Having not bought a PC with an "Express Upgrade" to Windows Vista, she has no standing to challenge the "Express Upgrade" program.  Filing the case as a class action does not change this.  *See Rolo*, 155 F.3d at 659 ("[u]ntil the putative class is certified … the First Amended Complaint must be must be evaluated as to [this] particular plaintiff").

Rule 23(a)(3)'s typicality requirement permits named plaintiffs—with standing—to represent absent class members whose claims involve some different facts.  It does not permit a plaintiff with standing to assert one claim (here, a claim challenging the "Windows Vista Capable" program) to add another claim that she has no standing to assert—on behalf of herself or anyone else.  *See, e.g.*, *Goldin v. Local 55 of the Int'l Ass'n of Firefighters*, 633 F.2d 817, 824 (9th Cir. 1980) (trial court properly excluded future job applicants from class action brought by present employees).  Accordingly, the Court should dismiss all claims in the Complaint that purport to challenge the "Express Upgrade" program.

### III.    CONCLUSION

For these reasons, and for the reasons set forth in its Motion, Microsoft respectfully requests that the Court dismiss Ms. Kelley's First Amended Complaint with prejudice.

DATED this 22nd day of June, 2007.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation

By /s/ Stephen M. Rummage
    Stephen M. Rummage, WSBA #11168
    Cassandra Kinkead, WSBA #22845
    Charles S. Wright, WSBA #31940
    1201 Third Avenue, Suite 2200
    Seattle, WA 98101
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: steverummage@dwt.com
            cassandrakinkead@dwt.com
            charleswright@dwt.com

Of Counsel:

Charles B. Casper
Patrick T. Ryan
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215) 772-1500

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on June 22, 2007, I electronically filed the foregoing Microsoft's

4 Reply in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system

5 which will send notification of such filing to the following:

6            Jeffrey I. Tilden:            jtilden@gmtlaw.com
             Jeffrey M. Thomas:            jthomas@gmtlaw.com
7            Michael Rosenberger:          mrosenberger@gmtlaw.com
             Mark A. Wilner:               mwilner@gmtlaw.com
8            William C. Smart:             wsmart@kellerrohrback@dwt.com
             Mark A. Griffin:              mgriffin@kellerrohrback@dwt.com
9            Ian S. Birk:                  ibirk@kellerrohrback@dwt.com

10

11        DATED this 22nd day of June, 2007.

12                                        Davis Wright Tremaine LLP
                                          Attorneys for Defendant
13

14                                        By /s/ Stephen M. Rummage
                                             Stephen M. Rummage, WSBA #11168
15                                           Davis Wright Tremaine LLP
                                             1201 Third Avenue, Suite 2200
16                                           Seattle, WA 98101
                                             Telephone: (206) 622-3150
17                                           Fax: (206) 757-7700
                                             E-mail: steverummage@dwt.com
18

19

20

21

22

23

24

25

26

27

REPLY ON MOTION TO DISMISS (NO. C07-475 MJP) – 14
SEA 2000284v13 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700