# EXHIBIT Q

Dockets.Justia.com

A-2182-97/5

REC'D
MAY 0 1 1998
MICHAEL PATRICK KING
P.J.A.D.

# Superior Court of New Jersey
# Appellate Division

FILED
APPELLATE DIVISION
MAY 1 1998
Clerk

DOCKET NO. A-2182-97-T5

**STEVEN J. CASPI, RONALD W. JONAS, ARDEN JEFFREY CONE III, and LAUREL BARRIE, on behalf of Themselves and All Others Similarly Situated,**

Plaintiffs/Appellants,

**v.**

**THE MICROSOFT NETWORK, L.L.C., and MICROSOFT CORPORATION,**

Defendants/Respondents.

CIVIL ACTION

*On Appeal From:*

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
BERGEN COUNTY
DOCKET NO. BER-L-1811-97

*Sat Below:*

THE HONORABLE
PATRICK F.X. FITZPATRICK, J.S.C.

## *BRIEF OF DEFENDANTS/RESPONDENTS*
## *THE MICROSOFT NETWORK, L.L.C. and MICROSOFT CORPORATION*

CONNELL, FOLEY & GEISER LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

Attorneys for Defendants/Respondents
THE MICROSOFT NETWORK, L.L.C.
and MICROSOFT CORPORATION

**ON THE BRIEF:**

Richard D. Catenacci, Esquire

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(609) 488-7700

Attorneys for Defendants/Respondents
THE MICROSOFT NETWORK, L.L.C.
and MICROSOFT CORPORATION

**ON THE BRIEF:**

Charles B. Casper, Esquire
Stacy Alison Fols, Esquire

## I. PRELIMINARY STATEMENT

This is an appeal from an order upholding a forum selection clause in contracts between four plaintiffs — two from New Jersey, one from New York and one from Ohio — and The Microsoft Network ("MSN"), under which the plaintiffs subscribed to MSN's Internet and online services. The plaintiffs seek certification of a nationwide class action purportedly consisting of 1.5 million MSN members and assert claims under the consumer fraud statutes and other laws of all fifty states.

The forum selection clause requires all litigation under plaintiffs' contracts to be brought in King County, Washington, where MSN and Microsoft are located. Plaintiffs each agreed to this provision when, after being presented with the text of the MSN Member Agreement containing the forum selection clause on their computer screens, they "clicked" on a box clearly labeled "I Agree." Plaintiffs and all other MSN members received an initial thirty-day free trial period during which they could cancel without paying anything for their membership, no matter how much they used the service. The service costs only a few dollars per month and can be canceled at any time.

"Forum-selection clauses are enforceable in New Jersey . . . unless the party objecting thereto demonstrates (1) the clause is a result of fraud or overweening bargaining power, or (2) the enforcement in a foreign forum would violate strong public policy of the local forum, or (3) enforcement would be

seriously inconvenient for the trial." McNeill v. Zoref, 297 N.J. Super. 213, 219 (App. Div. 1997) (internal quotations omitted). The Law Division, Bergen County, The Honorable Patrick F.X. Fitzpatrick, J.S.C., dismissed plaintiffs' first amended complaint for lack of jurisdiction and venue, holding that the forum selection clause was enforceable under this standard.

While plaintiffs have shrouded their case in a haze of ancillary, irrelevant or misleading issues, the enforceability of the clause is the only issue genuinely in dispute, as the trial court recognized. As demonstrated below, the clause is plainly enforceable under the precedents of the New Jersey appellate courts, precedents that are grounded in United States Supreme Court decisions. Plaintiffs ask this Court to refuse to enforce forum selection clauses in all cases brought under the Consumer Fraud Act. Because the Consumer Fraud Act applies so broadly, doing what plaintiffs ask would essentially reverse settled New Jersey law that such clauses are normally enforceable, which this Court reaffirmed as recently as last year in McNeill. The trial court correctly dismissed plaintiffs' claims, and this Court should affirm.

## II. PROCEDURAL HISTORY

On February 24, 1997, plaintiffs Caspi and Jonas filed this putative nationwide class action in the Superior Court of New Jersey, Bergen County. (Ja27) Plaintiffs filed a First

The trial court correctly recognized plaintiffs' complete failure of proof on this point:

> Plaintiffs have shown little more than a size difference here. The on-line computer service industry is not one without competition, and therefore consumers are left with choices as to which service they select for Internet access, e-mail and other information services. Plaintiffs were not forced into a situation where MSN was the only available server.
>
> [Ja9-10.]

On the contrary, the Microsoft Network is just one player in a large and thriving market for online and Internet services. (Ja99) It had no ability to compel anyone to sign up for its services. (Ja9-10) Because plaintiffs retained the option of rejecting the MSN Member Agreement with impunity, even after signing up, the trial court found it "impossible to perceive an overweening bargaining situation." Ibid.

### C. Trial Would Not Be Seriously Inconvenient In Washington.

The trial court also correctly found that enforcing MSN's forum selection clause would not seriously inconvenience a trial. (Ja12)

> Here, the named plaintiffs are from three different states and members of the putative class are scattered nationwide (perhaps worldwide). Significant trial witnesses and much of the trial evidence are likely to be located in Washington . . . . While trial in Washington may be inconvenient for one or more plaintiffs, analyzing the overall situation can lead this court nowhere but to a decision that the inconvenience to all

> parties is no greater in Washington then anywhere else in the country.
>
> [Ja12-13.]

The record amply supports the trial court's conclusions. Nearly all of the trial witnesses and documents are located in Washington, defendants' headquarters. (Ja100) All business decisions regarding the MSN pricing structure were made in Washington. Ibid. Thus, maintenance of this action in Washington, far from being "seriously inconvenient," would actively promote the convenience of trial, particularly in a case brought on behalf of MSN members across the country.

The fact that an individual plaintiff might have to travel to the contractually-agreed-upon forum is no reason to invalidate the clause. In Shute, the United States Supreme Court rejected plaintiff's position that the forum selection clause should be disregarded because she was physically and financially unable to travel from Washington to Florida to prosecute her personal injury claim. Noting that the trial record was devoid of any finding of inconvenience, the court held that a sister state was not, as plaintiffs argued, a "remote alien forum" inappropriate for the litigation of a local dispute "inherently more suited" to resolution in plaintiff's home state. Shute, supra, 499 U.S. at 594, 111 S. Ct. at 1522, 113 L. Ed. 2d at 632. Plaintiff failed to satisfy the "'heavy burden of proof' required to set aside the clause on grounds of inconvenience." Ibid.

(quoting The Bremen, 407 U.S. at 17, 92 S. Ct. at 1907, 32 L. Ed. 2d at 513).

Just as in Shute, plaintiffs here advance the notion that travel across the United States would be a financial hardship. As in Shute, that argument is insufficient. If anything, the circumstances in favor of a finding of inconvenience were stronger in Shute; there, the individual plaintiff involved would have been required to pay all of her litigation expenses. Here, in contrast, if plaintiffs' class action claims truly have merit, they will surely have no difficulty locating Washington counsel willing to advance travel and other litigation costs. Attorney's fees and litigation expenses are commonly awarded to prevailing plaintiffs in class actions. Serious inconvenience to the trial is not an issue in the present case. "[T]he inconvenience to all parties is no greater in Washington than anywhere else in the country." (Ja13)

**D. The Trial Court Correctly Held That The Forum Selection Clause Does Not Violate Any Strong Public Policy Of New Jersey.**

In rare cases, New Jersey courts have found that enforcement of a forum selection clause would directly contravene a strong public policy of the state. Relying on the three New Jersey cases that have carved out discrete exceptions to presumptive enforceability — two in narrow, statutorily regulated substantive areas, one on state constitutional grounds — plaintiffs invite this Court to fashion an entirely new public

EXHIBIT Q
PAGE 91

policy exception applicable whenever a plaintiff adds a claim under New Jersey's Consumer Fraud Act to a complaint.

There is no basis for plaintiffs' position, which not only is unsupported by the Consumer Fraud Act itself, but which would also reverse the well-established judicial approval of contractual forum selection clauses in New Jersey and which this Court strongly reaffirmed as recently as last year in McNeill.

**i. The New Jersey Courts Have Recognized Exceptions To Enforceability In Only Three Well-Defined Substantive Areas.**

In Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc., 146 N.J. 176 (1996), the plaintiff alleged that Sun Microsystems had violated the Franchise Act and tortiously interfered with plaintiff's business relationships. Id. at 180. The Franchise Act expressly authorizes franchisees to institute suit against franchisors "in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this Act and, where appropriate. . .[for] injunctive relief." Id. at 184 (quoting N.J.S.A. 56:10-10). Our Supreme Court explained that "the legislative findings [in the Franchise Act] persuade us that the Legislature considered such clauses in general to be inimical to the rights afforded all franchisees under the Act." Id. at 185.

The Court noted that the legislature, in giving franchisees the statutory right to sue franchisors in the New

Jersey Superior Court, expressly indicated a purpose to "level the playing field for New Jersey franchisees." Id. at 195. Indeed the legislature, in the Franchise Act itself, expressly made findings emphasizing the "vital" importance of franchising to the New Jersey economy and the high public interest in protecting New Jersey citizens who enter into franchise agreements with franchisors:

> [D]istribution and sales through franchise arrangements in the State of New Jersey vitally affects the general economy of the State, the public interest and the public welfare. It is therefore necessary in the public interest to define the relationship and responsibilities of franchisors and franchisees in connection with franchise arrangements.
>
> [N.J.S.A. 56:10-2 (emphasis added).]

The legislature heard testimony that many franchisees had invested their life savings in their business and often could not get timely access to court to obtain injunctive relief needed to protect their businesses from arbitrary or unreasonable franchisors' conduct if they had to sue in another state. Id. at 182-86. The Court expressly premised the exception to presumptive enforceability on three provisions of the Franchise Act: (1) the Franchise Act's prohibition on contract provisions relieving franchisors of liability or unfairly prejudicing the franchisee in the operation of a franchise, N.J.S.A. 56:10-7; (2) the Franchise Act's purpose "to prevent franchisors from acquiring the business of a successful franchisee by preventing

termination of franchises without good cause," N.J.S.A. 56:10-5; and (3) the specific establishment of a cause of action for franchisees in the New Jersey courts, N.J.S.A. 56:10-10. Kubis, 146 N.J. at 195-96.

Here, there is no suggestion that the two New Jersey plaintiffs — leaving aside the two out-of-state plaintiffs and the proposed nationwide class — would not get a fair trial of their Consumer Fraud Act claims in the sister state of Washington. And this case, completely unlike the franchise situation, poses no risk to anyone's life savings. Rather, this case involves a few dollars per month and, unlike a franchisee, an MSN member can cancel anytime and immediately substitute a competitor's services. In short, nothing here provides a basis for a new exception to the presumptive enforceability of forum selection clauses.

A year after Kubis, in Param Petroleum Corp. v. Commerce & Indus. Ins. Co., 296 N.J. Super. 164 (App. Div. 1997), this Court recognized another exception, limited to insurance contracts. Param, the plaintiff, was a one-man corporation operating a gasoline service station in Burlington. Id. at 165-66. It purchased an insurance policy from the defendant insurer to cover pollution liability, and the policy contained a forum selection clause. Id. at 166.

The Appellate Division, emphasizing the public policy represented by the pervasive state regulation of the insurance

industry, held that the clause was presumptively invalid, explaining: "The principles of Kubis govern here. Indeed, given the nature and purpose of insurance, the argument for the presumptive rejection of forum selection clauses is even stronger in relation to insurance policies than it is for franchise agreements . . . ." Id. at 167.

As in Kubis, the legislature had articulated a strong public policy, requiring by statute that foreign insurance companies issuing policies to New Jersey citizens submit to the jurisdiction of the New Jersey courts in "any action or legal proceeding." Id. at 170 (quoting N.J.S.A. 17:32-2.c). Private agreements requiring litigation outside New Jersey "would certainly violate the public policy evidenced by this statute, since it would negate the submission to jurisdiction the statute commands." Id. at 170-71. Again, in this case the legislature has not set forth any comparable public policy relating to online or Internet services, or to litigation of consumer fraud claims generally. The Consumer Fraud Act does not require all businesses coming into contact with New Jersey citizens to submit to jurisdiction in New Jersey. Nor is there any reason to believe that claims under our New Jersey Consumer Fraud Act cannot be adequately heard by courts in Washington, which has a very similar consumer protection act. Wash. Rev. Code Ann. § 19.86.010 et seq.

changes in New Jersey law will undermine its attractiveness to companies seeking to do business on a broad scale. That sort of policy decision has in the past been left to the legislative branch.

New Jersey courts have made only narrow exceptions to the enforceability of forum selection clauses, and made them only in response to the clear expression of the legislature. Here, the plaintiffs seek a broad exception, covering all cases brought under the Consumer Fraud Act, without any legislative warrant at all.

Defendants-respondents The Microsoft Network, L.L.C. and Microsoft Corporation respectfully request that the Court apply settled New Jersey law and affirm the November 13, 1997 Order of the Honorable Patrick F.X. Fitzpatrick, J.S.C., dismissing plaintiffs-appellants' First Amended Complaint for lack of jurisdiction and venue.

CONNELL, FOLEY & GEISER LLP

Attorneys for Defendants/
Respondents The Microsoft
Network, L.L.C. and
Microsoft Corporation

BY: Richard D. Catenacci
Richard D. Catenacci

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
Attorneys for Defendants/
Respondents The Microsoft
Network, L.L.C. and
Microsoft Corporation

BY: Charles B. Casper
Charles B. Casper

Dated: May 1, 1998