The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY and KENNETH HANSEN,<br><br>  Plaintiffs,<br>  v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>  Defendant. | No. C 07-475 MJP<br><br>MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL CERTAIN CONFIDENTIAL DOCUMENTS MAKING THE SHOWING REQUIRED BY CR 5(g)<br><br>*Note on Motion Calendar:*<br>October 29, 2007 |

On October 5, 2007, in accordance with the requirements of the Court's Protective Order [Dkt. No. 57], Plaintiffs filed a Motion to Seal certain confidential materials that they submitted to the Court in support of their contemporaneously filed Motions for Class Certification and for the Application of Washington Law. [Dkt. No. 59] ("Plaintiffs' Motion to Seal"). Plaintiffs' Motion to Seal stated that they were submitting materials to the Court under seal that either (a) Microsoft Corporation ("Microsoft") had designated "Confidential" or (b) contained excerpts from materials that Microsoft had designated "Confidential." Specifically, Plaintiffs submitted the following confidential materials under seal:

1. **Plaintiffs' Motion for Application of Washington Law** [Dkt. No. 60], in which the following pages referred to or described excerpts from materials that Microsoft designated as confidential: 2:11, 2:13-16, 2:18-24, 3:12-20, and

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

   14:15-16;[1]

2. **Declaration of William C. Smart in Support of Plaintiffs' Motion for the Application of Washington Law, Exhibit C** [Dkt. No. 62]: Designed for Microsoft Windows and Windows Vista Logo Licensing Agreement;

3. **Declaration of William C. Smart in Support of Plaintiffs' Motion for the Application of Washington Law, Exhibit D** [Dkt. No. 63]:  Microsoft Business Terms Document for OEM Customers;

4. **Declaration of William C. Smart in Support of Plaintiffs' Motion for the Application of Washington Law, Exhibit F** [Dkt. No. 64]:  OEM Marketing Bulletin: Windows Vista Capable Program;

5. **Plaintiffs' Motion for Class Certification** [Dkt. No. 65], in which the following pages referred to or described materials that Microsoft designated as confidential: 3:1-5, 3:7-41, 4:1-9, and 15:11-17;[2]

6. **Declaration of Jeffrey I. Tilden in Support of Plaintiffs' Motion for Class Certification, Exhibit A** [Dkt. No. 67]:  OEM Marketing Bulletin: Windows Vista Capable Program;[3] and

7. **Declaration of Jeffrey I. Tilden in Support of Plaintiffs' Motion for Class Certification, Exhibit L** [Dkt. No. 68]:  Certain pages from the Transcript of the Rule 30(b)(6) Deposition of Microsoft (Mark Croft), of which only lines 1-9 of page 50 contains testimony designated as confidential by Microsoft.

Under the Court's Protective Order [Dkt. No. 57 ¶ 13(b)], Microsoft, as the party that disclosed the materials at issue and designated those materials as "Confidential," now must make the showing required by CR 5(g) in its response to Plaintiffs' Motion to Seal.  Microsoft is submitting this brief, supported by the contemporaneously filed Declaration of Nicholas J. Psyhogeos ("Psyhogeos Decl."), for the purpose of making that showing.

---

[1] The pages identified in Plaintiffs' Motion for the Application of Washington Law contain references to the (a) Microsoft's Designed for Microsoft Windows and Windows Vista Logo Licensing Agreement and (b) Microsoft's OEM Marketing Bulletin: Windows Vista Capable Program.

[2] The pages identified in Plaintiffs' Motion for Class Certification contain references to Microsoft's OEM Marketing Bulletin: Windows Vista Capable Program.

[3] The OEM Marketing Bulletin attached as Exhibit A to Mr. Tilden's Declaration in support of Plaintiffs' Motion for Class Certification is the same document as Exhibit F attached to Mr. Smart's Declaration in support of Plaintiffs' Motion for the Application of Washington Law.  Both are Bates stamped as MS-KELL 000000000039-58.

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 2

**A. Under the Relevant Standard, Microsoft Need Only Show That "Good Cause" Exists to Seal the Materials, and Microsoft Has Produced Evidence That Well Exceeds That Standard.**

Microsoft already has discussed the legal standard used in the Ninth Circuit to determine whether a court may seal confidential materials submitted by a party on a non-dispositive motion. In Microsoft's Supplemental Memorandum in Support of its Motion to Seal Confidential Documents [Dkt. No. 53] in relation to materials that Plaintiffs submitted to the Court with their reply brief in support of their Motion to Compel, Microsoft explained that in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), the Ninth Circuit held that the presumption of public access to judicial records does not apply to a sealed discovery document attached to a non-dispositive motion. The Court explained:

> We have … "carved out an exception to the presumption of access" to judicial records, *Foltz* [*v. State Farm Mutual Auto. Insurance Co.*], 331 F.3d [1122,] 1135 [(9th Cir. 2003)], for a "***sealed discovery document*** [attached] to a ***non-dispositive*** motion," such that "the usual presumption of the public's right of access is rebutted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (emphasis added). There are, as we explained in *Foltz*, "good reasons to distinguish between dispositive and non-dispositive motions." 331 F.3d at 1135. Specifically, the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often "'unrelated, or only tangentially related, to the underlying cause of action.'" *Id*. (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).

447 F.2d at 1179 (emphasis in original).

Plaintiffs have submitted sealed discovery documents and materials in support of two motions that are, by any measure, non-dispositive: Plaintiffs' Motion for the Application of Washington Law and their Motion for Class Certification. Plaintiffs did not file either Motion to resolve disputes as to the merits of this litigation. To the contrary, Plaintiffs argue that, since they filed their Motion for Class Certification before the parties completed detailed merits discovery, the Court's analysis must focus on the Plaintiffs' allegations and the issues

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL
UNDER CR 5(g) (NO. C07-475 MJP) – 3

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

derived therefrom, not the merits of the case. *See* Dkt. No. 65, p. 9.[4] Likewise, Plaintiffs' Motion for the Application of Washington Law, which Plaintiffs also filed before the parties engaged in detailed merits discovery, requests only that the Court determine the applicable law, not rule upon the merits. *See* Dkt. No. 60, p. 24 ("Conclusion"). Even if either of Plaintiffs' Motions require the Court to consider evidence that overlaps with the merits, such "consideration" by the Court would not be sufficient to impose *Kamakana*'s more rigorous standard for sealing materials submitted in relation to dispositive motions. *See, e.g., In re Nat'l Sec. Agency Telecomms. Records Litig.,* MDL Docket No 06-1791 VRW, 2007 U.S. Dist. LEXIS 14473, *45-47 (N.D. Cal. Feb. 20, 2007) (Walker, J.) (denying motion to unseal records submitted in support of plaintiffs' motion for a preliminary injunction, finding the public's right of access to be rebutted under *Kamakana*'s standard for sealed materials filed in support of non-dispositive motions, and rejecting media claims that "consideration" of the merits of the dispute was sufficient to treat the motion as "dispositive" under *Kamakana*).[5] Thus, under Ninth Circuit authority, Microsoft need only show that "good cause" exists for continuing to keep these materials under seal.

Here, the accompanying Psyhogeos Declaration presents facts that satisfy both the "good cause" standard that applies to the sealing of discovery materials attached to non-dispositive motions and the "sufficiently compelling reasons" standard that applies to the sealing of materials attached to dispositive motions. Microsoft has a strong interest in keeping the terms of its contractual relationships with its OEM partners and the details of its marketing strategies confidential and unavailable to competitors. As explained in the

---

[4] Plaintiffs carefully distinguished their Class Certification Motion from the standards that apply to dispositive proceedings, such as motions for summary judgment. *See* Dkt. No. 65, p. 9, fn 2.

[5] Although the OEM Marketing Bulletin and the Designed for Microsoft Windows and Windows Vista Logo License Agreement do contain information pertinent to Microsoft's defenses to Plaintiffs' claims, that information is not why Plaintiffs submitted those materials with Plaintiffs' Motions.

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 4

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

Psyhogeos Declaration, with one exception,[6] each of the materials at issue is, or contains information about, a commercially sensitive business matter, and each has significant competitive value to Microsoft. Psyhogeos Decl. ¶ 4. Indeed, the materials at issue include fundamental licensing and business term documents in Microsoft's desktop operating system business with OEMs, one of the largest sources of Microsoft's revenue. Indeed, Microsoft uses the business term document not only in licensing desktop operating systems (Windows on individual PCs), but in licensing all of its most important software—including Microsoft Office and server operating system software (operating system software on computers that serve many PCs)—to OEMs. These documents reveal the terms and strategies under which Microsoft licenses Windows, Office, and the Windows logo to OEMs, and Microsoft considers them to be highly confidential. *Id.* ¶¶ 6, 26, 31.

The Supreme Court and the Ninth Circuit both have acknowledged that, even in the context of dispositive proceedings, courts may deny public access to judicial documents where such records constitute "sources of business information that might harm a litigant's competitive standing." *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)

---

[6] Although part of a larger section of Mr. Croft's testimony designated as "Confidential" by Microsoft, the portion of page 50 (50:1-9) from the deposition of Mark Croft attached as Exhibit L to the Tilden Declaration does not disclose commercially sensitive information from Microsoft when taken out of the context of Mr. Croft's prior testimony on pages 48 and 49 of his deposition transcript. (In those pages, Mr. Croft testifies regarding the terms of Microsoft's OEM Marketing Bulletin for the Windows Vista Capable Program.) But Microsoft respectfully submits that lines 1-22 of page 50 of Mr. Croft's deposition testimony have no bearing on any points that Plaintiffs make in their Motion for Class Certification and that, as a result, the Court's Protective Order required that Plaintiffs not submit that portion of the deposition to the Court. *See* Dkt. No. 57, ¶ 12 (directing that documents containing "Confidential" material shall not be filed with the Court unless it is reasonably necessary to do so). Microsoft therefore urges Plaintiffs promptly to withdraw lines 1-9 of page 50 of Mr. Croft's deposition from the record, which will obviate the need to keep Exhibit L under seal. Even if Plaintiffs refuse to do so, Microsoft will, in this instance, waive its right to require that lines 1-9 of page 50 submitted by Plaintiffs in support of Plaintiffs' Motion for Class Certification be filed under seal—while reserving its right to assert that the larger section of Mr. Croft's testimony designated as "Confidential" (*i.e.,* pages 48:24-50:9), which includes the portion of page 50 at issue, is, in fact, confidential when considered in its totality.

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL
UNDER CR 5(g) (NO. C07-475 MJP) – 5

(denying access to copies of tapes played at trial and noting that courts have refused public access to their files where granting such access might "become a vehicle for improper purposes," including causing a litigant competitive harm); *Kamakana,* 447 F.3d at 1179 ("'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to…release trade secrets.") (citing *Nixon,* 435 U.S. at 598); *Foltz,* 331 F.3d at 1135 (quoting *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995)) (noting that, when deciding whether to seal confidential materials submitted with summary judgment motions under the "sufficiently compelling reasons" standard, a court should consider "whether disclosure of the material could result in …infringement upon trade secrets"). The declaration of Mr. Psyhogeos, the General Manager of Microsoft's Worldwide OEM Programs & Policy team, establishes that the documents at issue fall into that category.

    **B.**    **Microsoft's Confidential Business Materials Should Be Sealed Because Disclosure Would Harm Microsoft's Competitive Standing.**

              **1.**    **Microsoft's Business Terms Document for OEM Customers**

Microsoft's Business Terms Document for OEM Customers (hereafter, "BTD") [Dkt. 63] sets forth the business terms that are incorporated into Microsoft's licensing agreements with OEMs for specific software products, including, but not limited to, Microsoft's Desktop Operating System License Agreement for OEM Customers (the "DTOS Agreement"). Psyhogeos Decl. ¶ 6. The DTOS Agreement is the license agreement that Microsoft enters into with an OEM that authorizes the OEM to preinstall specified Microsoft operating system software on the PCs the OEM manufactures and sells. Although Microsoft licenses such operating system software under uniform terms and conditions to all OEMs (pursuant to the consent decree with the U.S. Department of Justice) Microsoft does not divulge these terms, which are set forth in the DTOS Agreement and the BTD, to its software competitors or to the

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL
UNDER CR 5(g) (NO. C07-475 MJP) – 6

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

public. *Id.* ¶ 7. The DTOS Agreement incorporates by reference all of the terms of the BTD, which include such information as: (a) specific instructions for OEMs to make payments to Microsoft, including wiring instructions and Microsoft bank account numbers; (b) contractual limitations on the licenses granted by Microsoft to OEMs; (c) certain reporting requirements for OEM licensees; (d) warranty information; (e) confidentiality agreements; (f) terms relating to the termination of the agreement; and (g) other general business terms for OEMs. *Id.* ¶¶ 8, 9. Microsoft considers both the DTOS Agreement and the BTD to be commercially sensitive business matters and takes steps to keep these materials confidential. *Id.* ¶¶ 10, 11.

### 2. Microsoft's Designed for Microsoft Windows and Windows Vista Logo License Agreement with OEMs

Microsoft's Designed for Microsoft Windows and Windows Vista Logo License Agreement with OEMs (hereafter, the "Logo License Agreement") is a contract in which Microsoft specifies criteria under which OEMs may use particular Microsoft-created logos on or in connection with the PCs the OEMs manufacture and sell. Psyhogeos Decl. ¶¶ 12, 13. Microsoft does not divulge the terms of the Logo License Agreement to its software competitors or to the public; it considers the Logo License Agreement to be a commercially sensitive business matter; and it takes steps to keep these materials confidential. *Id.* ¶ 14.

### 3. The OEM Marketing Bulletin

Microsoft created the OEM Marketing Bulletin, dated September 20, 2006 (the "OEM Marketing Bulletin") to explain in detail to its OEM partners the marketing strategy behind its "Windows Vista Capable" program and the specific steps and guidelines Microsoft had developed to implement that program. Psyhogeos Decl. ¶¶ 17, 18. Microsoft made the Bulletin available only to the OEM partners who were eligible to participate in the "Windows Vista Capable" program, and it provided the OEM Marketing Bulletin to those OEMs under a non-disclosure agreement. *Id.* Like the BTD, the DTOS Agreement, and the Logo License Agreement, Microsoft considers the OEM Marketing Bulletin to be a commercially sensitive

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL
UNDER CR 5(g) (NO. C07-475 MJP) – 7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

business matter. *Id.* ¶ 18. It does not disclose the OEM Marketing Bulletin or other documents detailing its marketing strategies to its software competitors or to the public, and it takes steps to keep such materials confidential. *Id.*

Even before it designated these documents as "Confidential" in this lawsuit, Microsoft labeled the BTD, the Logo License Agreement, and the OEM Marketing Bulletin [Dkt. Nos. 63, 62, 64, 67] as "Confidential," thus demonstrating that both Microsoft and the OEMs intended that these materials be kept confidential. *Id.* ¶ 4. Indeed, the OEMs themselves have contractual rights to confidentiality under their agreements with Microsoft, and they expect that Microsoft will maintain that confidentiality. *Id.* ¶ 5.

The Psyhogeos Declaration describes the substantial efforts that Microsoft takes to maintain the confidentiality of commercially sensitive business documents such as the BTD, the DTOS Agreement, the Logo License Agreement, and the OEM Marketing Bulletin—including (a) maintaining these types of materials in areas not open to the public in locations protected by passwords (for online information) or locked cabinets and/or doors accessible only with company-issued keys held by those with responsibility for protecting this information, and (b) making this information available only to Microsoft personnel with a business need for the information and to the particular OEM(s) to which the information pertains. *Id.* ¶¶ 21-22. Further, Microsoft has made its marketing strategies available to OEMs only under a non-disclosure agreement. *Id.* ¶¶ 18, 23.

The public disclosure of the terms of any of Microsoft's agreements with OEMs or the details of Microsoft's marketing strategies would put Microsoft at a competitive disadvantage vis-à-vis its software competitors. *Id.* ¶¶ 24-28. If Microsoft's competitors knew the terms to which Microsoft was willing to agree with OEM partners, those competitors could use that information in their own negotiations with OEMs. *Id.* ¶ 24. If competitors knew the details of marketing strategies that Microsoft had developed for use by its OEM partners, those

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 8

competitors could use that information in their own marketing programs or could structure their own marketing programs to undercut the effectiveness of the strategies Microsoft had developed. *Id.* ¶ 25. Public disclosure of these materials thus would put Microsoft at a significant competitive disadvantage in the marketplace. *Id.* ¶¶ 24-28.

### C. The Harm That Microsoft May Suffer If These Materials Are Disclosed Is Even Greater Than The Harm Set Forth In Microsoft's Prior Brief.

Indeed, Microsoft's interests in maintaining the confidentiality of the materials that Plaintiffs have submitted in support of their Motions for Class Certification and for the Application of Washington Law and the competitive harm Microsoft may suffer if those materials are disclosed to the public are, in many ways, even greater than those being considered by the Court in the context of Microsoft's Motion to Seal confidential materials filed by the Plaintiffs in support of their Motion to Compel [Dkt. Nos. 45, 53]. As Mr. Psyhogeos explains in his Declaration:

- Previously, in the context of Plaintiffs' Motion to Compel, Plaintiffs submitted *excerpts* from Microsoft's highly confidential DTOS Agreement. Plaintiffs have now submitted into evidence a copy of the *entire* BTD, which is an integral part of the DTOS Agreement. [Dkt. No. 63]; Psyhogeos Decl. ¶¶ 3, 11.

- The BTD contains Microsoft's confidential banking information, including the details of Microsoft's banking relationships and its specific bank account numbers. [Dkt. No. 63, at MS-KELL 000000000208]. Disclosing this information would jeopardize the security of Microsoft's bank accounts. Psyhogeos Decl. ¶ 26.

- Previously, in the context of Plaintiffs' Motion to Compel, Plaintiffs submitted *excerpts* from the Rule 30(b)(6) deposition transcript of Microsoft designee Ms. Christine Mullaney Sundlie in which counsel for Plaintiffs questioned Ms. Mullaney Sundlie about the Logo License Agreement. [Dkt. No. 48 (Attachment A)]. Now, Plaintiffs have submitted into evidence a copy of the Logo License Agreement *in its entirety* [Dkt. No. 62]. It is even more vital to Microsoft that the actual terms of the Logo Agreement itself, in its entirety, be protected from public disclosure. Psyhogeos Decl. ¶¶ 3, 15, 16, 27.

- Previously, in the context of Plaintiffs' Motion to Compel, Plaintiffs submitted *excerpts* from Microsoft's confidential OEM Marketing Bulletin [Dkt. 48 (Attachment B)]. Plaintiffs have now submitted into evidence a copy of the OEM Marketing Bulletin *in its entirety* [Dkt. Nos. 64, 67]. It is even more vital to

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL
UNDER CR 5(g) (NO. C07-475 MJP) – 9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

Microsoft that the *entire* OEM Marketing Bulletin be protected from public disclosure. Psyhogeos Decl. ¶¶ 3, 17, 19, 20, 28.

### D. Microsoft's Confidential Materials Have Commercial Sensitivity After The Conclusion Of The Windows Vista Capable Marketing Program.

Finally, even though the Windows Vista Capable marketing program contemplated by the OEM Marketing Bulletin and authorized by the Logo License Agreement is now complete, those documents retain their commercial sensitivity. The Logo License Agreement licensed not only the Windows Vista Capable logo during the term of the program but also other Microsoft operating system logos after the program ended. It and the OEM Marketing Bulletin contain the details of Microsoft's business and marketing methods and strategies with respect to OEMs. The public disclosure of those terms, even after the conclusion of the Windows Vista Capable marketing program, would put Microsoft at a competitive disadvantage vis-à-vis its competitors. Psyhogeos Decl. ¶¶ 12, 13, 29.

Similarly, the fact that individual versions of the DTOS Agreement and the BTD contain an Expiration Date and an End Date, respectively, does not mean that those documents no longer contain commercially sensitive information for Microsoft and the OEMs. Both the DTOS Agreement and the BTD contain the terms of Microsoft's agreements with its OEMs. The public disclosure of the terms of these agreements with OEMs would put Microsoft at a competitive disadvantage vis-à-vis its software competitors. If those competitors knew the terms to which Microsoft was willing to agree with an OEM partner, Microsoft's competitors could use that information in their own negotiations with OEMs. This risk is particularly great where, as is the case here, the agreements at issue—version 9.0 of the BTD (July 2007), version 8.01 of the DTOS Agreement (July 2006), and version 9.3 of the Logo License Agreement (2006)—are so recent. *Id.* ¶ 30.

Moreover, the confidential documents at issue play a substantial role in Microsoft's long-term business and marketing strategies involving its OEM partners. The BTD, the

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 10

DTOS Agreement, and the Logo License Agreement are all agreements that Microsoft uses to run its desktop operating system business, one of Microsoft's largest sources of revenue. Because of the importance of the desktop operating system business to Microsoft, Microsoft considers these agreements to be highly confidential. *Id.* ¶ 31. Microsoft has used all three agreements on a continuous basis, and they have evolved through several versions over many years. Although the terms of these agreements change to some degree when they are revised—usually each year—the basic framework they provide for Microsoft's business dealings with its OEM partners usually remains similar from one year to the next. *Id.*

In addition, Microsoft uses the BTD to provide business terms for its most important software licenses with OEMs, including licenses for software that is not at issue in this litigation, such as Microsoft Office and Microsoft's server operating system software. As a result, the BTD contains the majority of Microsoft's business terms for licensing software to OEMs, and any public disclosure of the BTD would reveal a large amount of highly confidential information about how Microsoft conducts its licensing business with its OEM partners. *Id.* ¶ 26. Similarly, the OEM Marketing Bulletin reveals a marketing strategy that Microsoft used in the release of its last two desktop operating systems—Windows XP and Windows Vista—and Microsoft may well use the OEM Marketing Bulletin again to provide a framework for a similar marketing program in the future. *Id.* ¶ 32. As a result, Microsoft would still suffer a competitive disadvantage if a competitor obtained access to the OEM Marketing Bulletin, regardless of the fact that the Windows Vista Capable marketing program is now complete. *Id.* ¶ 32. Microsoft and its OEM partners have continued to treat the BTD, the DTOS Agreement, the Logo License Agreement, and the OEM Marketing Bulletin as confidential business information, and Microsoft continues to make commercially reasonable efforts to ensure that the terms of those documents (including those terms that are required to be uniform) are not divulged outside of Microsoft's relationships with its OEM partners, even

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL
UNDER CR 5(g) (NO. C07-475 MJP) – 11

though (a) Microsoft's Windows Vista Capable marketing program has ended and (b) the Expiration Date or End Date for the particular versions of the BTD or DTOS Agreement here have arrived. *Id.* ¶ 33. "Disclosing them would cause Microsoft serious harm." *Id.* ¶ 31.

Balancing Plaintiffs' limited purpose in submitting Microsoft's confidential materials to the Court on two non-dispositive motions against the commercially sensitive nature of the materials and the serious competitive harm that could result if those materials become part of the public record demonstrates that Microsoft has made the showing required under CR 5(g).

For these reasons, Microsoft requests that the Court enter an Order under Local Civil Rule 5(g) directing that the BTD [Dkt. No. 63], the Logo Licensing Agreement [Dkt. No. 62], and the OEM Marketing Bulletin [Dkt. Nos. 64, 67] remain filed under seal. Consistent with its proposed order, Microsoft proposes that appropriately redacted copies of Plaintiffs' Motions [Dkt. Nos. 60, 65] should be filed for public record.

DATED this 24th day of October, 2007.

                                     Davis Wright Tremaine LLP
                                     Attorneys for Microsoft Corporation

                                     By */s/ Stephen M. Rummage*
                                         Stephen M. Rummage, WSBA #11168
                                         Cassandra Kinkead, WSBA #22845
                                         Charles S. Wright, WSBA #31940
                                         1201 Third Avenue, Suite 2200
                                         Seattle, WA  98101-1688
                                         Telephone: (206) 622-3150
                                         Fax: (206) 628-7699
                                         E-mail:  steverummage@dwt.com

Of Counsel:

Charles B. Casper
Patrick T. Ryan
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215) 772-1500

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 12

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

## CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, October 24, 2007, I electronically filed the foregoing Microsoft's Response to Plaintiffs' Motion to Seal Certain Confidential Documents Making the Showing Required by CR 5(g), as well as the related Declaration of Nicholas Psyhogeos, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey I. Tilden: | jtilden@gmtlaw.com |
| Jeffrey M. Thomas: | jthomas@gmtlaw.com |
| Michael Rosenberger: | mrosenberger@gmtlaw.com |
| Mark A. Wilner: | mwilner@gmtlaw.com |
| William C. Smart: | wsmart@kellerrohrback@dwt.com |
| Mark A. Griffin: | mgriffin@kellerrohrback@dwt.com |
| Ian S. Birk: | ibirk@kellerrohrback@dwt.com |

DATED this 24th day of October, 2007.

Davis Wright Tremaine LLP
Attorneys for Defendant

By */s/ Stephen M. Rummage*
    Stephen M. Rummage, WSBA #11168
    Davis Wright Tremaine LLP
    2600 Century Square
    1501 Fourth Avenue
    Seattle, WA 98101-1688
    Telephone: (206) 628-7513
    Fax: (206) 628-7699
    E-mail: steverummage@dwt.com

MICROSOFT'S RESPONSE TO PLAINTIFFS' MOTION TO SEAL UNDER CR 5(g) (NO. C07-475 MJP) – 13

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700