The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIANNE KELLEY and KENNETH HANSEN, )     No. C 07-475 MJP
                                   )
                Plaintiffs,        )     DECLARATION OF
      v.                           )     NICHOLAS J. PSYHOGEOS IN
                                   )     SUPPORT OF MICROSOFT'S
MICROSOFT CORPORATION, a Washington )    RESPONSE TO PLAINTIFFS'
corporation,                       )     MOTION TO SEAL CERTAIN
                                   )     CONFIDENTIAL DOCUMENTS
                Defendant.         )     MAKING THE SHOWING
———————————————————————————————————)    REQUIRED BY CR 5(g)

I, NICHOLAS PSYHOGEOS, hereby declare as follows:

1.      I am employed by Microsoft Corporation ("Microsoft") at our headquarters in Redmond, Washington. I have been employed by Microsoft since 1998. My current position at Microsoft is General Manager of the Worldwide OEM Programs & Policy team. I have held that position since April 2005. I am over 18 years of age. I have personal knowledge of the facts set forth herein, except as to those facts where I state that my understanding is based on information available to me as General Manager of Microsoft's Worldwide OEM Programs & Policy team.

2.      In my position as General Manager of the Worldwide OEM Programs & Policy team, I am responsible for managing Microsoft's programs, licensing and policies with the companies (called "original equipment manufacturers" or "OEMs") that manufacture

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) —– 1
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  computers that have Microsoft operating systems and other software preinstalled on them

2  under one or more licenses from Microsoft or an affiliate.

3        3.      I understand that the plaintiffs in this lawsuit have submitted copies of the

4  following confidential agreements, communications and other materials with Plaintiffs'

5  Motion for Class Certification and their Motion for the Application of Washington Law

6  (hereafter "Plaintiffs' Motions"):

7        •   Microsoft's Business Terms Document for OEM
            Customers (Version 9.0), Bates stamped as MS-KELL
8            000000000207-219.

9        •   Microsoft's Designed for Microsoft Windows and
            Windows Vista Logo License Agreement with OEMs
10           (Version 9.3), Bates stamped as MS-KELL 5000044-
            5000059.
11
         •   Microsoft's OEM Marketing Bulletin, dated
12           September 20, 2006, concerning the "Windows Vista
            Capable" program, Bates stamped as MS-KELL
13           000000000039-58.

14       4.      Each of these materials is, or contains information about, a commercially

15  sensitive business matter, and each of them is of significant competitive value to Microsoft.

16  As such, Microsoft considers these materials confidential and takes steps to keep these

17  materials confidential.  Each of the three business documents listed above is labeled

18  "Confidential" on each page of the document.  The "Confidential" labels on these documents

19  were included or placed on or within them prior to the inception of this lawsuit, and are

20  separate from any "confidential" designation that may have been placed on them in

21  connection with this litigation.

22       5.      Maintaining the confidentiality of the agreements and communications with

23  our OEM partners listed in paragraph 3 above is not simply a matter of great importance to

24  Microsoft.  The OEMs also have contractual rights to confidentiality under these agreements,

25  and, based on information available to me as General Manager of Microsoft's Worldwide

26  OEM Programs & Policy team, I understand that OEMs expect Microsoft to keep these

27  matters confidential.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**Microsoft's Business Terms Document for OEM Customers**

6.      One of the confidential documents is Microsoft's Business Terms Document for OEM Customers (hereafter, "BTD"). [Dkt. 63.] The BTD contains the business terms that are incorporated into Microsoft's licensing agreements with OEMs for specific software products, including, but not limited to, Microsoft's Desktop Operating System License Agreement for OEM Customers (the "DTOS Agreement").

7.      The DTOS Agreement is the license agreement that Microsoft enters into with an OEM that authorizes the OEM to preinstall specified Microsoft operating system software on the PCs the OEM manufactures and sells.  Although Microsoft licenses such operating system software under uniform terms and conditions to all OEMs (pursuant to the consent decree with the U.S. Department of Justice) Microsoft does not divulge these terms, which are set forth in the DTOS Agreement and the BTD, to its software competitors or to the public.

8.      The DTOS Agreement incorporates by reference all of the terms of the BTD. *See* DTOS Agreement, excerpts of which are attached as Exhibit F to the Supplemental Declaration of Mark Wilner in Support of Plaintiffs' Reply in Support of their Motion to Compel Discovery and to Deem Certain requests for Admission "Admitted" [Dkt. 48], at Terms and Conditions ¶ 1.

9.      The BTD includes such information as: (a) specific instructions for OEM to make payments to Microsoft, including wiring instructions and Microsoft bank account numbers; (b) contractual limitations on the licenses granted by Microsoft to OEMs; (c) certain reporting requirements for OEM licensees; (d) warranty information; (e) confidentiality agreements; (f) terms relating to the termination of the agreement; and (g) other general business terms for OEM customers.  *See* BTD, attached as Exhibit D to the Declaration of William C. Smart [Dkt. 63].

10.     Microsoft considers both the DTOS Agreement and the BTD incorporated into the terms of the DTOS Agreement to be commercially sensitive business matters and takes

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 3
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

steps to keep these materials confidential, as set forth in greater detail in paragraphs 21, 22 and 23 below.

11.     I previously signed a Declaration in Support of Microsoft's Motion to Seal Confidential Documents dated October 1, 2007 (my "Prior Declaration") [Dkt. 54]. One of the purposes of my Prior Declaration was to provide evidentiary support for Microsoft's request that certain excerpts from the DTOS Agreement, which counsel for Plaintiffs had submitted to the Court under seal in support of Plaintiffs' Motion to Compel, remain sealed and kept confidential by the Court. [Dkt. 54, ¶¶ 3, 9, 10]; [Dkt. 48 (Attachment F)]. My testimony relating to the DTOS applies to the BTD as well.

**Microsoft's Designed for Microsoft Windows and Windows Vista**
**Logo License Agreement with OEMs**

12.     Another of the confidential documents is Microsoft's Designed for Microsoft Windows and Windows Vista Logo License Agreement with OEMs (hereafter, the "Logo License Agreement"). [Dkt. 62.]

13.     The Logo License Agreement is a contract under which Microsoft specifies criteria under which OEMs may use particular Microsoft-created logos on or in connection with the PCs the OEMs manufacture and sell with Microsoft software.

14.     Microsoft does not divulge the terms of the Logo License Agreement to its software competitors or to the public. Microsoft considers the Logo License Agreement to be a commercially sensitive business matter and takes steps to keep these materials confidential, as set forth in greater detail in paragraphs 22, 22 and 23 below.

15.     One of the purposes of my Prior Declaration was to provide evidentiary support for Microsoft's request that certain excerpts from the Rule 30(b)(6) deposition transcript of Ms. Christine Mullaney Sundlie in this case in which counsel for plaintiffs questioned Ms. Mullaney Sundlie about the terms of the Logo License Agreement, which counsel for Plaintiffs had submitted to the Court under seal in support of Plaintiffs' Motion to

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 4
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    Compel, remain sealed and kept confidential by the Court. [Dkt. 54, ¶¶ 3, 9, 11]; [Dkt. 48

2    (Attachment A)].

3        16.    It is my understanding that, as part of Plaintiffs' Motions, Plaintiffs have now

4    submitted to the Court a copy of the Logo Licensing Agreement in its entirety.  *See* Exhibit C

5    to the Declaration of William C. Smart [Dkt. 62].

6                          **The OEM Marketing Bulletin**

7        17.    The last of the confidential documents is Microsoft's OEM Marketing Bulletin,

8    dated September 20, 2006, concerning the "Windows Vista Capable" program (the "OEM

9    Marketing Bulletin").  *See* Exhibit F to the Declaration of William C. Smart [Dkt. 64];

10    Exhibit A to Declaration of Jeffrey I. Tilden [Dkt. 67].

11        18.    The OEM Marketing Bulletin is a document that Microsoft created to explain,

12    in detail, to its OEM partners the marketing strategy behind its "Windows Vista Capable

13    Program" and the specific steps and guidelines Microsoft had developed to implement that

14    program.  This document was made available only to the OEM partners who were eligible to

15    participate in the "Windows Vista Capable" program, and was provided to those OEMs under

16    a non-disclosure agreement.  A footer on each page of the OEM Marketing Bulletin states:

17    "Microsoft – OEM Confidential – Subject to NDA."  Microsoft does not disclose this and

18    other documents detailing its marketing strategies to its software competitors or to the public.

19    Microsoft considers the OEM Marketing Bulletin to be a commercially sensitive business

20    matter and takes steps to keep these materials confidential, as set forth in greater detail in

21    paragraphs 21, 22 and 23 below.

22        19.    One of the purposes of my Prior Declaration was to provide evidentiary

23    support for Microsoft's request that certain excerpts from the OEM Marketing Bulletin, which

24    counsel for Plaintiffs had submitted to the Court under seal in support of Plaintiffs' Motion to

25    Compel, remain sealed and kept confidential by the Court. [Dkt. 54, ¶¶ 3, 12]; [Dkt. 48

26    (Attachment B)].

27

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) —— 5
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

20.     It is my understanding that, as part of Plaintiffs' Motions, Plaintiffs have now submitted to the Court a copy of the OEM Marketing Bulletin in its entirety. *See* Exhibit F to the Declaration of William C. Smart [Dkt. 64]; Exhibit A to Declaration of Jeffrey I. Tilden [Dkt. 67].

**Microsoft's Efforts to Maintain the**
**Confidentiality of Its Commercially Sensitive Business Documents**

21.     It is Microsoft's regular practice to protect certain types of information as confidential. I am familiar with how Microsoft stores and manages access to certain records relating to our relationships with OEMs. In particular, I am personally familiar with how Microsoft stores and manages access to records relating to (a) the various types of contracts we enter into with OEMs and (b) the communications we have with OEMs concerning those contracts, and, based on information available to me as General Manager of Microsoft's Worldwide OEM Programs & Policy team, I understand how Microsoft stores and manages access to records relating to (c) the marketing programs and strategies we develop for our OEM partners to consider and use. Microsoft considers this information confidential, proprietary and trade secret information of significant competitive value and exerts commercially reasonable efforts to preserve the confidential, proprietary and trade secret nature of such information.

22.     We exert commercially reasonable efforts to ensure that the terms of our agreements with our OEM partners (including those terms that are required to be uniform) are not divulged outside the relationships with our OEM partners. In addition, we exert commercially reasonable efforts to ensure that information concerning the details of each particular OEM's transactions with Microsoft are not divulged to other OEMs or to the public. This information is maintained in areas not open to the public in locations protected by passwords (for online information) or locked cabinets and/or doors accessible only with company-issued keys held by those with responsibility for protecting this information. Furthermore, this information is available only to Microsoft personnel with a business need

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 6
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   for the information and to the particular OEM to which the information pertains. Divulging

2   this information in a public forum would create a serious and imminent threat of Microsoft's

3   competitors misusing and gaining unfair advantage from our confidential information, and it

4   would also harm our interests during future negotiations with OEMs.

5       23.     In addition, we exert commercially reasonable steps to keep the details of

6   specific marketing strategies that Microsoft develops for its OEM partners to consider and use

7   in promoting the PCs they manufacture and sell that contain Microsoft software confidential

8   and available only to our OEM partners. We do not want our software competitors to have

9   access to these marketing strategies because we have made a significant investment of time

10  and resources in developing the strategies and we do not want our competitors to take

11  advantage of our efforts. Based on information available to me as General Manager of

12  Microsoft's Worldwide OEM Programs & Policy team, I understand that this information is

13  likewise kept confidential and is available only to Microsoft personnel with a business need

14  for the information and to the particular OEMs who are eligible to participate in the marketing

15  program to which the information pertains. Divulging this information in a public forum

16  would create a serious and imminent threat of Microsoft's competitors misusing and gaining

17  unfair advantage from our confidential information.

18          **Disclosure of Microsoft's Confidential Business**
19  **Materials Would Cause Significant Harm to Microsoft's Competitive Interests**

20      24.     The public disclosure of the terms of any of Microsoft's agreements with

21  OEMs would put Microsoft at a competitive disadvantage vis-à-vis its software competitors.

22  If those competitors knew the terms to which we were willing to agree with an OEM partner,

23  Microsoft's competitors could use that information in their own negotiations with OEMs. For

24  example, a competitor knowing the terms to which Microsoft was willing to agree with an

25  OEM partner could provide more favorable terms to that OEM or to other of our current or

26  potential OEM partners. In that case, Microsoft could see its business with one or more

27

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) —— 7
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   OEMs decline, and it could be forced to renegotiate its agreements with one or more OEMs

2   on less favorable terms—all to Microsoft's competitive disadvantage in the marketplace.

3       25.    In addition, the public disclosure of the details of marketing strategies that

4   Microsoft has developed for use by its OEM partners—such as the marketing strategies set

5   out in the OEM Marketing Bulletin for the "Windows Vista Capable" program—would also

6   put Microsoft at a competitive disadvantage vis-à-vis its software competitors.  If those

7   software competitors knew the details of marketing strategies that Microsoft had developed

8   for use by its OEM partners, Microsoft's competitors could use that information in their own

9   marketing programs or could structure their own marketing programs to undercut the

10  effectiveness of the strategies Microsoft had developed—all to Microsoft's competitive

11  disadvantage in the marketplace.

12      26.    Microsoft uses the BTD to provide business terms for its most important

13  software licenses with OEMs, including licenses for software that is not at issue in this

14  litigation, such as Microsoft Office and Microsoft's server operating system software.  As a

15  result, the BTD contains the majority of Microsoft's business terms for licensing software to

16  OEMs, and any public disclosure of the BTD would reveal a large amount of highly

17  confidential information about how Microsoft conducts its licensing business with its OEM

18  partners.  Dkt. 63.  In addition, the BTD contains Microsoft's confidential banking

19  information, including the details of Microsoft's banking relationships, including Microsoft's

20  specific bank account numbers.  *Id.* at MS-KELL 000000000208.  Disclosing this information

21  to the public would jeopardize the security of Microsoft's bank accounts.

22      27.    In my Prior Declaration, I provided evidentiary support for Microsoft's request

23  that excerpts from Ms. Mullaney Sundlie's testimony about the terms of the Logo License

24  Agreement be protected from public disclosure.  [Dkt. 54, ¶¶ 3, 9, 11].  It is even more vital to

25  Microsoft that the actual terms of the Logo Agreement itself, in its entirety, be protected from

26  public disclosure.

27

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 8
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

28.    Likewise, in my Prior Declaration, I provided evidentiary support for Microsoft's request that excerpts from the OEM Marketing Bulletin be protected from public disclosure. [Dkt. 54, ¶¶ 3, 12]. It is even more vital to Microsoft that the copies of the entire OEM Marketing Bulletin that Plaintiffs have submitted to the Court under seal with regard to Plaintiffs' Motions [Dkt. 64, 67] be protected from public disclosure.

### The Completion of the Windows Vista Capable Marketing Program Has No Impact on the Confidentiality of the Logo License Agreement, the BTD, or the OEM Marketing Bulletin

29.    Although the Windows Vista Capable marketing program contemplated by the OEM Marketing Bulletin and authorized by sections of the Logo License Agreement is now complete, those documents retain their commercial sensitivity. The Logo License Agreement and the OEM Marketing Bulletin contain the details of Microsoft's business and marketing methods and strategies with respect to OEMs. The public disclosure of those terms, even after the conclusion of the Windows Vista Capable marketing program, would put Microsoft at a competitive disadvantage vis-à-vis its competitors. If Microsoft's competitors knew the details of marketing strategies that Microsoft had developed for use by its OEM partners, those competitors could use that information in the development of their strategies to compete with Microsoft.

30.    Similarly, the fact that individual versions of the DTOS Agreement and the BTD contain an Expiration Date and an End Date, respectively, does not mean that those documents no longer contain commercially sensitive information for Microsoft and the OEMs. Both the DTOS Agreement and the BTD contain the terms of Microsoft's agreements with its OEMs. The public disclosure of the terms of any of Microsoft's agreements with OEMs would put Microsoft at a competitive disadvantage vis-à-vis its software competitors. If those competitors knew the terms to which Microsoft was willing to agree with an OEM partner, Microsoft's competitors could use that information in their own negotiations with OEMs. For example, a competitor knowing the terms to which Microsoft was willing to agree with an OEM partner could provide more favorable terms to that OEM or to other of

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 9
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   our current or potential OEM partners. In that case, Microsoft could see its business with one

2   or more OEMs decline, and it could be forced to renegotiate its agreements with one or more

3   OEMs on less favorable terms—all to Microsoft's competitive disadvantage in the

4   marketplace. This risk is particularly great where, as is the case here, the agreements are so

5   recent. The End Date for the version of the BTD at issue, version 9.0, is July 31, 2007. The

6   Expiration Date for the version of the DTOS Agreement at issue, version 8.01, is July 31,

7   2006. The Logo License Agreement, version 9.3, was released in 2006.

8           31.    The BTD, the DTOS Agreement, and the Logo License Agreement are all

9   agreements that Microsoft uses over the long term of its desktop operating system business,

10  one of Microsoft's largest sources of revenue. Because of the importance of the desktop

11  operating system business to Microsoft, Microsoft considers these agreements to be highly

12  confidential. All three agreements have been used continuously, and evolved through several

13  versions over many years. Although the terms of these agreements change to some degree

14  when they are revised—usually each year—the basic framework they provide for Microsoft's

15  business dealings with its OEM partners usually remains quite similar from one year to the

16  next. Thus, Microsoft's competitors would still be able to utilize the information contained in

17  the versions of the BTD, the DTOS Agreement, and the Logo License Agreement at issue

18  here to Microsoft's competitive disadvantage in the marketplace were they disclosed.

19  Disclosing them would cause Microsoft serious harm, as I described above.

20          32.    Similarly, the OEM Marketing Bulletin reveals a marketing strategy that

21  Microsoft used in the release of its last two desktop operating systems—Windows XP and

22  Windows Vista—and Microsoft may well use the OEM Marketing Bulletin again to provide a

23  framework for a similar marketing program in the future. As a result, Microsoft would still

24  suffer a competitive disadvantage in the marketplace if one of its competitors obtained access

25  to a copy of the OEM Marketing Bulletin, regardless of the fact that the Windows Vista

26  Capable marketing program is now complete.

27

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 10
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

33.     Accordingly, Microsoft and its OEM partners have continued to treat the BTD, the DTOS Agreement, the Logo License Agreement, and the OEM Marketing Bulletin as confidential business information, and Microsoft continues to make commercially reasonable efforts to ensure that the terms of those documents (including those terms that are uniform) are not divulged outside of Microsoft's relationships with its OEM partners.  Those efforts have not ceased simply because (a) Microsoft's Windows Vista Capable marketing program has ended or (b) the Expiration Date or End Date for the particular versions of the BTD or DTOS Agreement at issue here has been reached.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 24th day of October, 2007, at Redmond, Washington.

_____
Nicholas J. Psyhogeos

DECLARATION OF NICHOLAS J. PSYHOGEOS IN SUPPORT OF
RESPONSE TO MOTION TO SEAL (C 07-475 MJP) — 11
DWT 2155907v1 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700