EXHIBIT A

FILED WITH REDACTIONS PURSUANT TO DOCKET NO. 78 AND MICROSOFT'S CONFIDENTIALTY DESIGNATIONS

Exhibit A Page 4

Dockets.Justia.com

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

---

DIANNE L. KELLEY and KENNETH HANSEN, )
)
Plaintiffs, )
)
vs. ) No. C070475 MJP
)
MICROSOFT CORPORATION, a Washington corporation, )
)
Defendant. )

---

VIDEOTAPED 30(b)(6) DEPOSITION UPON ORAL EXAMINATION OF

MICROSOFT CORPORATION

CHRISTINE MULLANEY SUNDLIE

(CONTAINS CONFIDENTIAL TESTIMONY

SUBJECT TO PROTECTIVE ORDER)

---

1:52 P.M.

AUGUST 29, 2007

1001 FOURTH AVENUE, SUITE 4000

SEATTLE, WASHINGTON

REPORTED BY: JULIE R. HEAD, CRR, RPR, CCR No. 3119

C. MULLANEY-SUNDLIE CONFIDENTIAL; August 29, 2007

Page 2

APPEARANCES

FOR THE PLAINTIFFS:
WILLIAM C. SMART
IAN S. BIRK
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
(206)623-1900
wsmart@kellerrohrback.com
ibirk@kellerrohrback.com

FOR THE PLAINTIFFS:
JEFFREY I. TILDEN
MARK A. WILNER
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154-1007
(206)467-6477
jtilden@gordontilden.com
mwilner@gordontilden.com

Page 3

FOR THE DEFENDANT:
CHARLES B. CASPER
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215)772-7223
ccasper@mmwr.com

FOR THE DEFENDANT AND THE WITNESS:
LINDA K. NORMAN
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052-6399
(425)703-2780
lnorman@microsoft.com

ALSO PRESENT:
TANIA GRANT, Video Specialist, Yamaguchi, Obien, Mangio, LLC

Page 4

INDEX

| EXAMINATION BY: | PAGE |
|---|---|
| MR. SMART | 6, 119 |
| MR. CASPER | 113 |

| EXHIBITS FOR IDENTIFICATION | | PAGE |
|---|---|---|
| 5 | Microsoft Corporation Form 10-K, Commission File Number 0-14278 | 75 |

Page 5

SEATTLE, WASHINGTON; AUGUST 29, 2007
1:52 P.M.
--oOo--

THE VIDEOGRAPHER: Good afternoon. We are now on the record.

Today's date is August 29th, 2007, and the time is now 1:52 p.m. The location of today's deposition is Gordon Murray Tilden -- Gordon, Tilden, Thomas, Cordell, 1001 Fourth Avenue, Suite 4000, Seattle, Washington 98154.

My name is Tania Grant, video specialist representing Yamaguchi, Obien & Mangio in Seattle, Washington. Cause number is C07-0475 MJP, entitled Dianne L. Kelley v Microsoft Corporation.

This is a 30(b)(6) deposition of Microsoft Corporation's representative Christine Mullaney Sundlie.

The video deposition was requested by the plaintiffs' counsel with Keller Rohrback.

Would counsel and all present please identify yourselves and state whom you represent.

MR. SMART: This is Will Smart, along with Ian Birk from Keller Rohrback. We represent the plaintiffs, along with co-counsel Mark Wilner and Jeff Tilden of Gordon, Thomas, Tilden.

2 (Pages 2 to 5)

Yamaguchi Obien Mangio, LLC * www.yomreporting.com
520 Pike Street, Suite 1320, Seattle, Washington 98101 * (206) 622-6875 * 1 (800) 831-6973

Exhibit A Page 9


C. MULLANEY-SUNDLIE CONFIDENTIAL; August 29, 2007

Page 26

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 27

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 28

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 29

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Q. (BY MR. SMART:) Am I right?

MR. CASPER: I'm going to object. It misstates the witness's testimony. You're also ignoring her statement earlier that she is not an expert in this

8 (Pages 26 to 29)

Yamaguchi Obien Mangio, LLC * www.yomreporting.com
520 Pike Street, Suite 1320, Seattle, Washington 98101 * (206) 622-6875 * 1 (800) 831-6973

Exhibit A Page 7

Page 30

area, and this is beyond scope of the 30(b)(6) deposition -- designation.

MR. SMART: Well, actually, it's not, because I'm trying to find out exactly what records there are from which one can determine the number of sales and the people who bought them of various Microsoft products under the Windows Vista Capable program.

MR. CASPER: She already answered that question.

MR. SMART: Not fully, but, anyway.

Q. (BY MR. SMART:) You can go ahead, ma'am. Would you like the question read back so it's fairly in front of you?

A. Yes, please.

(Record read as follows:

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 31

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 32

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 33

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

C. MULLANEY-SUNDLIE CONFIDENTIAL; August 29, 2007

Page 54

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Q. Are there any documents that describe, either in summary or detailed form, the success of the Windows

Page 55

Vista Capable program for selling Windows XP licenses prior to the Vista launch?

MR. CASPER: Objection: Beyond the scope of the 30(b)(6) designation.

A. And the answer is I don't know.

(Mr. Tilden arrives.)

Q. (BY MR. SMART:) Okay. And did you look for any?

A. No.

Q. What documents are there at Microsoft that identify the number of XP licenses sold during the Windows Vista Capable program period?

MR. CASPER: Objection: Asked and answered.

A. I already stated that the Microsoft sales database contains that information.

Q. (BY MR. SMART:) Okay. But you have to query it; is that right?

A. Yes, that's correct.

Q. Are there any reports that were sent to any OEMs or any executives that compiled the numbers for sales of XP licenses during that time period?

MR. CASPER: Objection: Beyond the scope of the 30(b)(6) designation.

A. Given that we're a public company and we're required to financially report our data in ways that are

Page 56

required by the government, I am sure that our executives have some report that they look at that identifies sales information to them. Whether it's specific to the number and quantity of licenses sold by product, I'm not certain.

Q. (BY MR. SMART:) Okay. So, what documents exist at Microsoft that identify how many XP Home licenses were sold during that time period?

MR. CASPER: Objection: Beyond the scope of the 30(b)(6) designation.

A. I don't know.

Q. (BY MR. SMART:) Does the Microsoft database contain that information?

A. Yes.

Q. Okay. And does the Microsoft database information also contain the number of Express Upgrade licenses that were activated after Windows Vista became available?

A. No.

Q. Why not?

A. Because the activation database is separate from the sales database, because there are two separate processes as I described earlier.

Q. Okay. So, there's a separate database that you go to to look for activations?

Page 57

A. There is; however, I want to be clear, we would not necessarily -- I'd have -- we'd have to find out, but we would not necessarily be able to identify activations of Express Upgrade product versus the standard product because there is technically no difference in the software itself.

Q. Give me a ballpark as to how many Windows XP Home licenses were sold during the Windows Vista Capable program in the United States.

MR. CASPER: Objection: Calling for speculation; lack of foundation; beyond the scope of the 30(b)(6) designation.

Q. (BY MR. SMART:) You can go ahead and answer, please.

A. I don't know.

Q. Is it more than a hundred?

MR. CASPER: Objection: Calling for speculation.

A. We're a large company. I'm sure it's more than a hundred.

Q. (BY MR. SMART:) Is it more than a thousand?

MR. CASPER: Objection: Calling for speculation.

A. I could presume it's more than a thousand.

Q. (BY MR. SMART:) Would it be more than a

15 (Pages 54 to 57)

Yamaguchi Obien Mangio, LLC * www.yomreporting.com
520 Pike Street, Suite 1320, Seattle, Washington 98101 * (206) 622-6875 * 1 (800) 831-6973

Exhibit A Page 9

Page 58

million?
MR. CASPER: Objection: Calling for speculation.
A. That I really don't know.
Q. (BY MR. SMART:) And who would know the answer to that?
A. Again, we'd have to look at the Microsoft sales database.
Q. And the Microsoft sales database would give you that information?
A. Yes.
Q. What was the average cost of an XP Home license during the Windows Vista Capable program?
MR. CASPER: Objection. No foundation, beyond the scope of the 30(b)(6) designation.
A. In terms of cost, I'm not sure whether you're referring to the price that Microsoft charged its retailers or distributors or OEMs or the cost that the customer would be presumed to pay.
Q. (BY MR. SMART:) Sure, that's a fair question.
What was the cost that Microsoft charged the OEMs?
MR. CASPER: Objection: No foundation; beyond the 30(b)(6) designation.
A. I don't know.

Page 59

Q. (BY MR. SMART:) Who would know that?
A. People in the OEM decision.
Q. Okay. And what was the price that the OEMs charged the consumers?
MR. CASPER: Objection: No foundation; beyond the 30(b)(6) designation.
A. You'd have to ask the OEMs.
Q. (BY MR. SMART:) Okay. And is that because Microsoft has no information concerning what OEMs were charging to consumers for XP Home licenses during the Windows Vista Capable program?
MR. CASPER: Same objection.
A. To my knowledge, we don't have that information. Additionally, Microsoft does not dictate the price by which the OEMs are required to sell to their end user customers.
Q. (BY MR. SMART:) Sure, but isn't it true that Microsoft tracks the charges that OEMs charge consumers so that it can have information as to what a particular product will bring in the marketplace?
MR. CASPER: Objection: No foundation; beyond the scope of the 30(b)(6) designation.
A. Not to my knowledge.
Q. (BY MR. SMART:) Did you ask anybody whether or not they did that?

Page 60

A. No, I had no reason to ask them.
Q. Did you ever look for any records that might exist at Microsoft that tracked the prices charged by OEMs to consumers for Windows XP Home licenses during the Windows Vista Capable program?
MR. CASPER: Objection: Misstates the witness's testimony; assumes facts not in evidence.
A. No, I did not look for documents that would track that information.
Q. (BY MR. SMART:) Wouldn't that be an important thing for the marketing department to know?
MR. CASPER: Objection: No foundation; beyond the 30(b)(6) designation; calling for speculation.
A. No, it would not be important for the marketing organization to know.
Q. (BY MR. SMART:) Who is in charge of documents reflecting communications between Microsoft and computer manufacturers regarding the Microsoft Windows Vista Capable sticker program?
A. The OEM division would be responsible for those documents.
Q. And what documents exist relating to such communications?
A. There would be e-mail, there would be presentations and word processing documents.

Page 61

Q. What is in the presentations?
A. Condensed information regarding a given program or a given set of objectives or information that we needed to provide to the OEMs.
Q. And where are those documents located?
A. They would -- If it's e-mail, it would be located in individuals' mailboxes.
Q. And have you looked for any such documents prior to your deposition here today?
A. No.
Q. Do you know of anybody at Microsoft who has?
A. I don't -- I'm not aware of any, no.
Q. Okay. And what presentations exist?
A. There would be a presentation regarding the -- Well, actually, could you be more specific?
Q. Yeah, how many presentations did Microsoft create for its OEMs regarding the Microsoft Windows Vista Capable sticker program or logo program?
A. One.
Q. There's only one presentation?
A. To my knowledge, yes.
Q. Have -- Who did you talk to to determine that there was only one presentation?
A. Based on my involvement in the implementation of the program, I am aware of one presentation.

C. MULLANEY-SUNDLIE CONFIDENTIAL; August 29, 2007

Page 122

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Page 123

REDACTED PURSUANT TO DKT. NO. 78 AND MICROSOFT'S CONFIDENTIALITY DESIGNATION

Q. Okay. Thank you. I don't have any further questions.

MR. CASPER: Thank you very much.

THE VIDEOGRAPHER: Here ends the deposition of Christine Mullaney Sundlie. This is the end of tape two. The time is now 5:15 p.m.

(Deposition adjourned at 5:15 p.m.)

(Signature reserved.)

Page 124

CORRECTION & SIGNATURE PAGE

RE: DIANNE L. KELLEY, ET AL. V. MICROSOFT CORPORATION
WESTERN DISTRICT AT SEATTLE; NO. C07-0475 MJP
CHRISTINE MULLANEY SUNDLIE; TAKEN AUGUST 29, 2007
Reported by: JULIE R. HEAD, CCR No. 3119

I, CHRISTINE MULLANEY SUNDLIE, have read the within transcript taken AUGUST 29, 2007, and the same is true and accurate except for any changes and/or corrections, if any, as follows:

| PAGE/LINE | CORRECTION | REASON |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Signed at ____________________, Washington,
on this date: ______________________________

______________________________
CHRISTINE MULLANEY SUNDLIE

Page 125

REPORTER'S CERTIFICATE

I, JULIE R. HEAD, the undersigned Certified Court Reporter and Notary Public, do hereby certify:

That the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that any and/or all witness(es) were by me duly sworn to testify to the truth; that the sworn testimony and/or proceedings were by me stenographically recorded and transcribed under my supervision, to the best of my ability; that the foregoing transcript contains a full, true, and accurate record of all the sworn testimony and/or proceedings given and occurring at the time and place stated in the transcript; that I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the case.

WITNESS MY HAND AND SEAL THIS 31st day of August, 2007.

JULIE R. HEAD, CRR, RPR
Certified Court Reporter
CCR No. 3119
Notary Public in and for the
State of Washington, residing in
Snohomish County. Commission
Expires 8-09-11.

32 (Pages 122 to 125)

Yamaguchi Obien Mangio, LLC * www.yomreporting.com
520 Pike Street, Suite 1320, Seattle, Washington 98101 * (206) 622-6875 * 1 (800) 831-6973

Exhibit A Page 11