The Honorable Marsha J. Pechman

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| DIANNE L. KELLEY and KENNETH HANSEN, | ) No. C07-0475 MJP |
| | ) |
| Plaintiffs, | ) PLAINTIFFS' MOTION FOR |
| | ) APPLICATION OF WASHINGTON LAW |
| v. | ) FILED AS REDACTED* |
| | ) |
| MICROSOFT CORPORATION, a Washington Corporation, | ) CLASS ACTION |
| | ) |
| | ) NOTE ON MOTION CALENDER: |
| | ) December 19, 2007 |
| Defendant. | ) |
| | ) ORAL ARGUMENT REQUESTED |

*FILED WITH REDACTIONS PURSUANT TO DKT. NO. 81 AND MICROSOFT'S CONFIDENTIALITY DESIGNATIONS

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - i

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Dockets.Justia.com

TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................................1

II. STATEMENT OF FACTS .......................................................................................1

    A.  Plaintiffs' Claims .................................................................................................1

    B.  Washington and Out-of-State Contacts ...............................................................2

III. ARGUMENT.............................................................................................................6

    A.  Washington Law Satisfies the Constitutional Requirement for
        Choice of Law in Multi-State Class Actions. ......................................................6

        1.  The Shutts Test ........................................................................................6

        2.  Significant Washington Contacts Creating State Interests
            Ensure That Applying Washington Law Is Both
            Constitutional and Fair To Plaintiffs and Defendant. ...................................7

        3.  The Aftermath of Shutts..........................................................................9

    B.  Washington Choice of Law Analysis ...................................................................9

        1.  Basic Principles........................................................................................9

        2.  Three Washington Cases Have Applied Washington Law to
            Multi-State Class Actions Against Washington Defendants. ...................13

        3.  Applying Washington Law Promotes Relevant State
            Interests...................................................................................................15

        4.  The States Share a Legitimate Interest in Seeing Plaintiffs'
            Claims Litigated in Some Forum as Opposed to Not At All .....................17

    C.  Out-of-State Case Law Supports Applying Washington Law................................18

        1.  A Consumer Class Action Challenging a Uniform
            Marketing Practice Originated in One State Is Governed by
            That State's Law. .....................................................................................18

        2.  Out-of-State Cases Applying Class Members' Home
            States' Laws Are Distinguishable.............................................................20

        3.  A Steady Line of Cases Applies the Law of the Defendant's
            Home State to Uniform Conduct Harming Consumers in
            Multiple States. .......................................................................................23

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

IV.    CONCLUSION...................................................................................................24

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - iii
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# TABLE OF AUTHORITIES

**Cases**

Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981)............................................................. 6, 7

Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801 (Ill. 2005) ..................................... 20, 21

Baffin Land Corp. v. Monticello Motor Inn, 70 Wn.2d 893, 425 P.2d 623 (1967)...... 9, 10, 12, 17

Barbara's Sales Inc. v. Intel Corp., 857 N.E.2d 717 (Ill. App.), appeal granted, 861
N.E.2d 653 (Ill. 2006)........................................................................................................ 8, 18, 19, 23

Blain v. SmithKline Beecham Corp., 240 F.R.D. 179 (E.D. Penn. 2007).................................... 22

Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543 (D.N.J. 1998) ..................................... 8

Burnside v. Simpson Paper Co., 123 Wn.2d 93, 864 P.2d 937 (1994)............................. 10, 11, 16

Caspi v. The Microsoft Network, L.L.C., 732 A.2d 528 (N.J. Super. Ct. App. Div.
1999) ................................................................................................................................................ 5

Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir. 1996) ......................................................... 11

Clark v. TAP Pharmaceutical Prods., Inc., 798 N.E.2d 123 (Ill. App. Ct. 2003) ......................... 23

Clay v. The American Tobacco Co. Inc., 188 F.R.D. 483 (S.D. Ill. 1999) ................................... 22

Clothesrigger, Inc. v. GTE Corp., 236 Cal. Rptr. 605 (Ct. App. 1987)........................................... 6

Commander Properties Corp. v. Beech Aircraft Corp., 164 F.R.D. 529 (D. Kan.
1995) ............................................................................................................................................... 22

CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69 (1987)............................................................ 8

Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001) ................................................. 20

DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd., 268 F.3d 829 (9th
Cir. 2001).......................................................................................................................................... 10

Erwin v. Cotter Health Ctrs., ___ Wn.2d ___, 2007 WL 2729036 (Sept. 20, 2007).................... 10

Farmers Ins. Exch. v. Leonard, 125 S.W.3d 55 (Tex. App. 2003) ............................................... 23

Fluke Corp. v. Hartford Accident & Indem. Co., 145 Wn.2d 137, 34 P.3d 809
(2001)................................................................................................................................................ 12

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - iv
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 823-1900
FACSIMILE: (206) 823-3384

Hewlett-Packard Co. v. Intergraph Corp., 2004 U.S. Dist. LEXIS 17601 *12 n. 3
(N.D. Cal. August 24, 2004) ........................................................................................... 5

In re Am. Medical Sys., 75 F.3d 1069 (6th Cir. 1996) ................................................... 11

In re Baycol Prods. Litig., 218 F.R.D. 197 (D. Minn. 2003) ......................................... 22

In re Bridgestone/Firestone, Inc., 288 F.3d 1012 (7th Cir. 2002) ........................... 21, 22

In re Ford Motor Co. Ignition Switch Prod. Liab. Litig., 174 F.R.D. 332 (D.N.J.
1997) ............................................................................................................................ 11

In re General Motors Corp. Dex-Cool Prods. Liab. Litig., 241 F.R.D. 305 (S.D.
Ill. 2007) ...................................................................................................................... 22

In re Great S. Life Ins. Co. Sales Practices Litig., 192 F.R.D. 212 (N.D. Tex.
2000) ......................................................................................................................... 8, 24

In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 170 F.R.D. 417 (E.D.
La. 1997) ...................................................................................................................... 22

In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 211 F.R.D. 435, 442 (W.D.
Wash. 2002) ................................................................................................................. 22

In re Pizza Time Theatre Secs. Litig., 112 F.R.D. 15 (N.D. Cal. 1986) .................. 17, 18

In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61 (S.D.N.Y. 2002) ............................... 22

In re St. Jude Medical, Inc. Silzone Heart Valve Prods. Liab. Litig., 2006 U.S.
Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ...................................................... 20, 23

Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc.,
894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006), rev'd on other grounds, 929
A.2d 1076 (N.J. 2007) ........................................................................................... 22, 23

J.M.I.C. Life Ins. Co. v. Toole, 634 S.E.2d 123 (Ga. Ct. App. 2006) ......................... 11

Johnson v. Spider Staging Corp., 87 Wn.2d 577, 555 P.2d 997 (1976) ........ 11, 12, 16, 17

Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941) ............................................. 9

Lee v. Allstate Life Ins. Co., 838 N.E.2d 15 (Ill. App. Ct. 2005) ................................ 23

Lobo Exploration Co. v. Amoco Prod. Co., 991 P.2d 1048 (Okla. Civ. App. 1999) .......... 6, 11

Longden v. Sunderman, 123 F.R.D. 547 (N.D. Tex. 1988) ........................................... 11

Lyon v. Caterpillar, Inc., 194 F.R.D. 206 (E.D. Penn. 2000) ...................................... 22

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Martin v. Dahlberg, 156 F.R.D. 207 (N.D. Cal. 1994) ............................................................ 11, 23

Martin v. Heinold Commodities, Inc., 510 N.E.2d 840 (Ill. 1987) .............................................. 21

Montgomery v. The New Piper Aircraft, Inc., 209 F.R.D. 221, 225-26 (S.D. Fla.
    2001) ................................................................................................................................................ 22

Mooney v. Allianz Life Ins. Co. of N. Am., 2007 U.S. Dist. LEXIS 34530 *12-17
    (D. Minn. May 10, 2007) .......................................................................................................... 19, 20, 23

Mulcahy v. Farmers Ins. Co., 152 Wn.2d 92, 95 P.3d 313 (2004) ......................................... 8, 12

Odom v. Microsoft Corp. et al., No. 04-2-10618-4 SEA (King County Super. Ct.
    Apr. 12, 2006) .......................................................................................................... 1, 15, 17, 23

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985) .................................................. 6, 7

Pickett v. Holland Am. Line-Westours, Inc., 101 Wn. App. 901, 6 P.3d 63 (2000),
    rev'd on other grounds, 145 Wn.2d 178, 35 P.3d 351 (2001) .................................................... 14

Pickett v. Holland Am. Line-Westours, Inc., 145 Wn.2d 178, 198-99, 35 P.3d 351
    (2001) ............................................................................................................................................ 15

Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. App. 1999) .................................. 6, 7

Rice v. Dow Chem. Co., 124 Wn.2d 205, 875 P.2d 1213 (1994) ................................................. 10

Roberts v. Heim, 670 F. Supp. 1466 (N.D. Cal. 1987) ................................................................. 11

Schnall v. AT&T Wireless Servs., Inc., 139 Wn. App. 280, 161 P.3d 395 (2007) ............... passim

Shutts v. Phillips Petroleum Co., 732 P.2d 1286 (Kan. 1987) ....................................................... 7

State ex rel. Corbin v. Superior Court, 667 P.2d 1304 (Ariz. 1983) .............................................. 8

Tracker Marine, L.P. v. Ogle, 108 S.W.3d 349 (Tex. App. 2003) ............................................... 22

Walsh v. Ford Motor Co., 807 F.2d 1000 (D.C. Cir. 1986) ......................................................... 11

Wershba v. Apple Computer, Inc., 110 Cal. Rptr. 2d 145 (Ct. App. 2001) ..................................... 6

Zenaida-Garcia v. Recovery Sys. Tech., Inc., 128 Wn. App. 256, 115 P.3d 1017
    (2005) ............................................................................................................................................ 15

**Statutes**

15 U.S.C. § 45(a)(1) ...................................................................................................................... 16

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - vi
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   15 U.S.C. §§ 41-51 ................................................................................................... 16

2   RCW 19.86.020 ............................................................................................... 2, 14, 15

3   **Other Authorities**

4   Choice of Law After the Class Action Fairness Act, 74 U.M.K.C. L. Rev. 661,
5       683 (2006).................................................................................................... 9

6   Erie, The Class Action Fairness Act, and Some Federalism Implications of
        Diversity Jurisdiction, 48 Wm. and Mary L. Rev. 1247, 1281-88, (2007)................................. 9
7
    Fed. R. Civ. P. 23................................................................................................ 7, 11
8
    Multistate Class Actions After Phillips Petroleum Co. v. Shutts, 96 Yale L. J. 1,
9       75, 78 (1986).................................................................................................. 9

10  National Consumer Law Center, Consumer Class Actions § 3.6.4 (6th ed. 2006) ...................... 16

11  Restatement (Second) Conflict of Laws § 136 ............................................................. 10

12  Restatement (Second) Conflict of Laws § 145 ............................................................. 12, 14, 16

13  Restatement (Second) Conflict of Laws § 145(2)........................................................... 12

14  Restatement (Second) Conflict of Laws § 154 ............................................................. 16
15
    Restatement (Second) Conflict of Laws § 188 ............................................................. 12
16
17  Restatement (Second) Conflict of Laws § 6 ............................................................... 12, 13

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - vii
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I. INTRODUCTION

Plaintiffs, on behalf of a proposed nationwide class, seek application of Washington law to their claims. The basis for this motion, in summary, is as follows:

- *Most Significant Contacts.* The critical events occurred in Washington, the critical witnesses live and work in Washington, and Microsoft put the proposed class members on notice to expect Washington law would govern.

- *Constitutional Test.* Applying Washington law respects the constitutional rights of out-of-state class members.

- *State Law Controls.* Because this is a diversity case, the Erie doctrine directs the Court to apply Washington choice of law principles.

- *Washington Courts Apply Washington Law.* Three Washington courts—Schnall, Pickett, and Odom, see infra at 13-15—have considered choice of law in analogous nationwide class actions against Washington defendants, including Microsoft. All three applied Washington law.

- *Out-of-State Courts Agree.* Applying Washington law is consistent with the out-of-state case law on choice of law in multi-state class actions.

# II. STATEMENT OF FACTS

## A.    Plaintiffs' Claims

Microsoft spent five years and five billion dollars developing its Windows Vista operating system, and promoted it as revolutionary. Before Vista's release, Microsoft authorized original equipment manufacturers ("OEMs") to certify computers as "Windows Vista Capable." Computers bearing only the "Windows Vista Capable" logo were capable of running only "Vista Home Basic." This "version" of "Vista" is not really Vista at all, having none of the significant features marketed as Vista. In a confidential memo to OEMs, the best Microsoft could say of Vista Home Basic was that it is "at least equivalent to [the soon-to-be-replaced] Windows XP." Decl. of William C. Smart, Ex. A, at 8. Plaintiffs have asserted claims of violation of the

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Washington Consumer Protection Act, chapter 19,86 RCW ("CPA"), and common law unjust

2    enrichment.

3    B.    **Washington and Out-of-State Contacts**

4         The contacts of this case with Washington are substantial:

5         1.    *Microsoft Based in Washington.* Microsoft is the world's largest seller of

6    operating systems for personal computers ("PCs"). It is a Washington corporation, with its

7    international headquarters located only a few miles across Lake Washington from the courthouse

8    in Redmond. Dkt. 27 ¶ 2.3, 3:21-25; Dkt. 56 ¶ 2.3, 2:25. Microsoft is one of only three Fortune

9    100 companies headquartered in Washington. Id., Ex. B.

10

11        2.

12

13

14            REDACTED PURSUANT TO DKT. NO. 81 AND
              MICROSOFT'S CONFIDENTIALITY DESINGATIONS

15

16

17

18        3.

19            REDACTED PURSUANT TO DKT. NO. 81 AND
              MICROSOFT'S CONFIDENTIALITY DESINGATIONS

20

21

22        4.

23            REDACTED PURSUANT TO DKT. NO. 81 AND
              MICROSOFT'S CONFIDENTIALITY DESINGATIONS

24

25

26

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 2
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

5.     *Microsoft Selects Washington Law for Class Members.* Every proposed class member bought a Windows XP license that included an End-User License Agreement ("EULA") containing a Microsoft-drafted choice of law clause selecting Washington law. Id., Ex. E, at 54.

6.     *Common Course of Conduct in Washington.* Microsoft spent more than a decade pursuing a deliberate strategy of training consumers to look for and rely on Windows "logos" as representations from Microsoft when buying PCs. These logos include:

   

7.     *Marketing Centrally Coordinated.* Some of the particulars Microsoft dictated regarding use of the "Windows Vista Capable" logo were the following:

REDACTED PURSUANT TO DKT. NO. 81 AND
MICROSOFT'S CONFIDENTIALITY DESINGATIONS

Id. at 20-28, Exs. C and F at 71-14.

8.     *Company Spokespersons in Washington.* All three Microsoft 30(b)(6) designees to date, and the witness supporting the confidentiality of documents, work in Washington:

      a.     Mr. Mark Tindall, of Seattle, Washington, Lead Program Manager of Global Marketing. Id., Ex. G at 7:20-8:9.

      b.     Mr. Mark Croft, of Bellevue, Washington, Director of Marketing, was designated to testify on the documents regarding the Windows Vista Capable Program. Id., Ex. H at 6:16-7:2; 9:17-24.

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 3

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

c.    Ms. Christine Mullaney-Sundlie, of Bellevue, Washington, a Principal Program Manager, was designated to testify on the records reflecting Microsoft's sales of Windows XP computers during the Windows Vista Capable Program. Id., Ex. I at 6:24-7:12; 11:14-16.

d.    Mr. Nicholas Psyhogeos, a Redmond employee, General Manager of the Worldwide OEM Programs & Policy team. Dkt. 54 ¶ 1, 1:18-20.

9.    *Conduct to be Repeated in Washington.* Microsoft stands to repeat its conduct in Washington, and already has announced that the next generation Windows operating system will be released within the next three years. Id., Ex. J, at 98.

10.   *Marketing Activities Directed from Washington.* The individuals responsible for the Windows Vista Capable Marketing Program work at the company's Redmond, Washington, campus. Id., Ex. H at 29:12-24 (referring to Mr. Rajesh Srinavasan, a Redmond employee identified in Microsoft's Initial Disclosures, Id., Ex. K at 2:20). The marketing department's experience with Windows logo programs supported developing the Windows Vista Capable logo. Id., Ex. H at 39:6-12. Microsoft "made a significant investment of time and resources" to develop "specific marketing strategies" for OEMs to use to sell PCs with Microsoft software. Dkt. 56 ¶ 15, 6:15-20. Microsoft specified the criteria under which OEMs could use Microsoft logos, and established "specific steps and guidelines" for the "Windows Vista Capable" program. Id. ¶¶ 11, 12, 4:20-22, 5:3-6. This was explicitly in furtherance of its "common interest" with the OEMs in promoting PC sales. Id. ¶ 6, 3:11-13.

11.   *Sales Data in Washington.* The computer database with Microsoft's sales information is accessible in Washington. Smart Decl., Ex. I at 20:8-22; 21:7-11.

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 4

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

12.    *Microsoft Enforces Choice of Washington Law*.  Microsoft enforces its Washington choice of law clauses when it perceives advantage in doing so.  In Caspi v. The Microsoft Network, L.L.C., 732 A.2d 528, 531 (N.J. Super. Ct. App. Div. 1999), Microsoft and its affiliate Microsoft Network enforced a Washington forum-selection and choice of law clause to defeat New Jersey venue of a proposed nationwide class action.  In Hewlett-Packard Co. v. Intergraph Corp., 2004 U.S. Dist. LEXIS 17601 *12 n. 3 (N.D. Cal. August 24, 2004), Microsoft agreed that Washington law governed a third-party warranty claim brought against it because of a choice of law clause it included in a software license.

13.    *Microsoft's Witnesses Are All from Washington*.  Every witness Microsoft identified in its Initial Disclosures, including its "chief story teller," Smart Decl., Ex. K at 2:19, works at its Redmond, Washington, campus.  Id., Ex. L, at 109.

Every important fact about Microsoft's "Windows Vista Capable" program connects this case to Washington.  We do not doubt Microsoft's ability to draft a list of "contacts" supposedly connecting this case to the proposed class members' home states.  Each such "contact," however, is merely an incident of each class member's purchase of a "Windows Vista Capable" PC in his or her home state.  The facts that will be in dispute, the facts that will be important to the resolution of this case, and the facts that will be tried, are those concerning Microsoft's development and marketing of Vista Home Basic as a product that would deliver the "core experiences," Id., Ex. M at 116, of "Vista" even though the Home Basic version did not.  Those facts occurred, and the witnesses knowledgeable about them, are located in Washington.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# III. ARGUMENT

**A.    Washington Law Satisfies the Constitutional Requirement for Choice of Law in Multi-State Class Actions.**

### 1.    The Shutts Test

In a multi-state class action, a state must have "a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [forum] law is not arbitrary or unfair." Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981)). The Constitution places only "modest restrictions" on the application of forum law. Id. at 818. Forum law may be applied constitutionally as long as it is more than "casually or slightly" related to the action. Id. at 819, "[I]n many situations a state court may be free to apply one of several choices of law." Id. at 823.

Courts have not hesitated to find the Constitution satisfied when the chosen state is: (a) the defendant's principal place of business; (b) home to a significant number of class members; and (c) the site of acts or omissions forming the basis of plaintiffs' claims. Wershba v. Apple Computer, Inc., 110 Cal. Rptr. 2d 145, 159 (Ct. App. 2001). All three of these elements are present here. Washington law may be applied under Shutts as a result. Numerous decisions are in accord. See, e.g., Clothesrigger, Inc. v. GTE Corp., 236 Cal. Rptr. 605, 608 (Ct. App. 1987); Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436, 439 (Fla. App. 1999); Lobo Exploration Co. v. Amoco Prod. Co., 991 P.2d 1048, 1050-51 (Okla. Civ. App. 1999).

The facts of Shutts reinforce the fairness of applying Washington law here. In Shutts, Kansas applied its law to a multi-state class based on the presence of a handful of class plaintiffs in that state who were entitled to interest on the gas lease royalties at issue. 472 U.S. at 801. The vast majority of class members, most gas leases, and the defendant, were from other states.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Id. at 799, 801. The defendant was a Delaware corporation whose principal place of business was in Oklahoma. Id. at 799. Kansas applied its law to transactions involving plaintiffs, a defendant, and leases wholly unconnected to that state. The United States Supreme Court determined that Kansas' choice of law analysis was deficient and remanded. Id. at 822, 823. On remand, the Kansas Supreme Court found no conflicts and again applied its law to the main liability issue. Shutts v. Phillips Petroleum Co., 732 P.2d 1286, 1313 (Kan. 1987). The Supreme Court denied certiorari. 487 U.S. 1223 (1988).

  2. **Significant Washington Contacts Creating State Interests Ensure That Applying Washington Law Is Both Constitutional and Fair To Plaintiffs and Defendant.**

  Applying Washington law is fair to out-of-state class members and to Microsoft because Washington law is far more than "casually or slightly related to the action." Shutts, 472 U.S. at 819. Shutts held that the Rule 23 protections afforded to class members permit a forum to adjudicate their rights consistent with due process where they receive "notice plus an opportunity to be heard and participate," an opportunity to "'opt out,'" and "at all times" adequate representation. Id. at 812. On choice of law, Shutts looked to Allstate Ins. Co. v. Hague, which concluded that a litigant's due process rights are satisfied when applying a state's law is based on significant contacts creating state interests such that selecting the state's law is "neither arbitrary nor fundamentally unfair." Hague, 449 U.S. at 313.

  Washington's choice of law analysis, described below, closely tracks the constitutional analysis. Just as Shutts holds that "[w]hen considering fairness in this context, an important element is the expectation of the parties," 472 U.S. at 822, under Washington law, "the expectations of the parties to the contract may significantly tip the scales in favor of one jurisdiction's laws being applied over another's." Mulcahy v. Farmers Ins. Co., 152 Wn.2d 92,

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

101, 95 P.3d 313 (2004). Microsoft, widely known to be based in Washington, has spent years promoting the "logo" program as a means for consumers to recognize immediately as confirmation that they are buying Microsoft products—even while buying PCs containing Microsoft's products from Microsoft's "partner" OEMs. Each proposed class member holds an XP EULA selecting Washington law. Thus, from the standpoint of the class members, it is reasonable to apply Washington law to claims arising from the same transactions.

Courts applying <u>Shutts</u> repeatedly have acknowledged the interest of a class defendant's home state in seeing its law applied to class claims. In <u>Barbara's Sales Inc. v. Intel Corp.</u>, 857 N.E.2d 717 (Ill. App.), <u>appeal granted</u>, 861 N.E.2d 653 (Ill. 2006) (argued in Illinois Supreme Court on May 16, 2007) (<u>see</u> <u>infra</u> at 18), the court stated, "[a]pplying the law of [defendant's] home state is a sensible choice that cannot be said to be fundamentally unfair." In <u>In re Great S.</u> <u>Life Ins. Co. Sales Practices Litig.</u>, 192 F.R.D. 212, 219 (N.D. Tex. 2000) (<u>see</u> <u>infra</u> at 24), the court found Texas had the most significant interest in a case against a Texas corporation that was headquartered in Texas and employed a significant number of Texans.

Courts also give effect to a state's interest in regulating its own businesses. Every state has a "substantial interest in preventing the corporate form from becoming a shield for unfair business dealing." <u>CTS Corp. v. Dynamics Corp. of Am.</u>, 481 U.S. 69, 93 (1987). <u>See</u> <u>also</u> <u>Boyes v. Greenwich Boat Works, Inc.</u>, 27 F. Supp. 2d 543, 547 (D.N.J. 1998) (New Jersey "has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries"); <u>State ex rel. Corbin v. Superior Court</u>, 667 P.2d 1304, 1312 (Ariz. 1983) (finding "when out-of-state investors are swindled by Arizona enterprises, the reputations and businesses of the majority of honest business people within the state are harmed").

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 8
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### 3.    The Aftermath of Shutts

Harvard law professor Arthur R. Miller argued Shutts on behalf of the defendant. After

the decision, Professor Miller called for federalizing multi-state class actions and suggested

including a federal choice of law provision. Arthur R. Miller and David Crump, Jurisdiction and

Choice of Law in Multistate Class Actions After *Phillips Petroleum Co. v. Shutts*, 96 Yale

L. J. 1, 75, 78 (1986). Twenty years later, the Class Action Fairness Act ("CAFA") effectively

federalized multi-state class actions. CAFA was promoted in part in the hope that federal judges

would depart from emerging state court choice of law rulings. See David Marcus, *Erie*, The

Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction, 48 Wm.

and Mary L. Rev. 1247, 1281-88, (2007); Richard A. Nagareda, Class Action Symposium: The

Twentieth Anniversary of *Phillips Petroleum Co. v. Shutts*: Artcle: Bootstrapping in Choice of

Law After the Class Action Fairness Act, 74 U.M.K.C. L. Rev. 661, 683 (2006). Because CAFA

relies on the diversity clause, it leads to two ironies: in some states, federal courts are bound by

the Erie doctrine to follow some of the very state court decisions cited as evidence of the need

for reform; and in other states, such as this one, federal courts must ascertain state law on a

question that the highest state court now may never consider.

### B.    Washington Choice of Law Analysis

#### 1.    Basic Principles

*Washington Law.* State law governs the choice of law analysis in diversity cases.

Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).

*Purpose of Choice of Law Doctrine.* The Washington Supreme Court adopted the most

significant relationship test in Baffin Land Corp. v. Monticello Motor Inn, 70 Wn.2d 893, 899-

901, 425 P.2d 623 (1967). This test was later incorporated into the Restatement of the Law

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 9

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(Second) Conflict of Laws (1971) ("Restatement"). The court adopted this test over the traditional common law rules on the ground that it was "more rational and more consistent with standards of equity, fair play, and justice" than the comparatively arbitrary common law rules, id. at 898, and likely to "produce results which are less arbitrary and more just," id. at 900. The court determined the most significant relationship test is "more flexible and thus better adapted to deal with [] contracts with multistate aspects . . ." Id. at 899. The court's aim was to treat what the court called "our modern multistate commercialism" with rationality, equity, fair play, and justice. Id.

*False Conflict Rule & Burden of Proof.* A party asserting that another state's law should apply has the burden of demonstrating that an "actual conflict" with another state's law exists before the court will engage in a conflict of law analysis. Burnside v. Simpson Paper Co., 123 Wn.2d 93, 103-04, 864 P.2d 937 (1994); B. Currie, Selected Essays on the Conflict of Laws 176 (1963). The "presumptive local law" applies unless there is "an actual conflict between the laws or interests of Washington and the laws or interests of another state." Rice v. Dow Chem. Co., 124 Wn.2d 205, 210, 875 P.2d 1213 (1994); accord DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd., 268 F.3d 829, 845 (9th Cir. 2001); Restatement § 136 cmt. *f*. An actual conflict exists if different states' laws produce different results on a legal issue. Erwin v. Cotter Health Ctrs., ___ Wn.2d ___, 2007 WL 2729036, at ¶ 30 (Sept. 20, 2007).

In Burnside, the defendant sought application of a California requirement of exhaustion of administrative remedies where a California resident brought suit under the Washington Law Against Discrimination. 123 Wn.2d at 98. The court found that in the absence of "a conflict between the purposes of Washington and California law," id. at 101 (emphasis added), and in the

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 10
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

absence of proof that plaintiff's claims would have been procedurally barred in California, id. at 103, the case presented a "false conflict" and Washington law therefore applied. Id. at 104.

Many courts have applied the false conflict rule in multi-state class actions. Martin v. Dahlberg, 156 F.R.D. 207, 218 (N.D. Cal. 1994); Longden v. Sunderman, 123 F.R.D. 547, 556 (N.D. Tex. 1988); Roberts v. Heim, 670 F. Supp. 1466, 1494 (N.D. Cal. 1987); J.M.I.C. Life Ins. Co. v. Toole, 634 S.E.2d 123, 128 (Ga. Ct. App. 2006); Lobo Exploration, 991 P.2d at 1053.

A few courts have suggested that the false conflict rule may not apply in multi-state class actions, based on the plaintiffs' burden of persuasion under Fed. R. Civ. P. 23. They include: Castano v. Am. Tobacco Co., 84 F.3d 734, 740-41 (5th Cir. 1996); In re Am. Medical Sys., 75 F.3d 1069, 1085 (6th Cir. 1996); Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986); and In re Ford Motor Co. Ignition Switch Prod. Liab. Litig., 174 F.R.D. 332, 349-50 (D.N.J. 1997). However, these cases suggest that a plaintiff has the burden of showing that certification is proper in spite of state law variations only after multiple states' laws either (1) have been found to apply, In re Ford, 174 F.R.D. at 348, or (2) have been assumed to apply, Castano, 84 F.3d at 741, Am. Med. Sys., 75 F.3d at 1085, Walsh, 807 F.2d at 1017. They do not speak to what law should be chosen.

*"Two Step" Process*. Washington has a two-step process for determining which state has the most significant relationship. First, the Court considers the contacts that make up the relationship of the parties, determining which contacts are most significant and where these are found. Johnson v. Spider Staging Corp., 87 Wn.2d 577, 581, 555 P.2d 997 (1976). Second, where these contacts are evenly balanced, the Court will consider "the interests and public policies" of the states and their relation to the occurrence at issue. Id. at 582.

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 11

N:\CLIENTS\27673\11\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1        *Restatement and Additional Contacts.* The Restatement lists contacts to be considered

2    in § 145 (tort) and § 188 (contract). The contacts are evaluated "according to their relative

3    importance with respect to the particular issue." Fluke Corp. v. Hartford Acc. & Indem. Co., 145

4    Wn.2d 137, 149, 34 P.3d 809 (2001). Washington rejects mere "counting contacts" rather than

5    
6    focusing on the ones that are important. See, e.g., Johnson, 87 Wn.2d at 581.

7        The Washington Court of Appeals in Schnall v. AT&T Wireless Servs., Inc., 139 Wn.

8    App. 280, 293, 161 P.3d 395 (2007) (see infra at 13-14), applied the tort analysis to plaintiffs'

9    CPA claim on behalf of a nationwide class of consumers. Those contacts "include":

10                  (a)    the place where the injury occurred,
11                  (b)    the place where the conduct causing the injury occurred,
                    (c)    the domicil, residence, nationality, place of incorporation and place
12                         of business of the parties, and
                    (d)    the place where the relationship, if any, between the parties is
13                         centered.

14   Restatement § 145(2).

15       Washington courts do not limit themselves to the Restatement contacts in determining

16   what is important in a given case. In Baffin Land, before the Restatement was finalized, the
17   
     court endorsed a draft Restatement section on contracts looking to "the place under whose local
18   
19   law the contract will be most effective." Id. at 901. A contractual choice of law clause is a

20   relevant contact in a tort case, even when it does not govern the tort claim. Haberman v. Wash.

21   Pub. Power Supply Sys., 109 Wn.2d 107, 159, 744 P.2d 1032 (1987). As noted, "[a]dditionally"

22   to the Restatement contacts, the expectations of the parties may "significantly tip the scales."

23   Mulcahy, supra at 7.

24       *Forum Statutory Law.* The Restatement rule is that a court will apply forum statutory
25   
26   law to the extent constitutionally permissible. See Restatement § 6, cmt. *b*. The Restatement

     explains, "[t]he court should give a local statute the range of application intended by the

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 12
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1 │ legislature when these intentions can be ascertained and can constitutionally be given effect." Id.

2 │ As a result, "[i]f the legislature intended that the statute should be applied to the out-of-state facts

3 │ involved, the court should so apply it unless constitutional considerations forbid." Id.

### 2. Three Washington Cases Have Applied Washington Law to Multi-State Class Actions Against Washington Defendants.

#### a. Schnall v. AT&T Wireless

In Schnall, plaintiffs brought a class action alleging CPA violations against their

telephone service provider for a fee erroneously represented as a tax, surcharge, or regulatory

fee. The court ruled that Washington's CPA applied to all class members because the injury-

causing conduct occurred in Washington. AT&T argued that the court would have to apply the

laws of each state in which each consumer made a purchase and was deceived. The Court of

Appeals rejected this argument, holding:

> Here, the trial court found that the most significant relationships were in
> Washington because all of the marketing materials and service agreements
> originated in Washington at the direction of Washington employees. All of the
> billing and disclosure decisions were made by AT&T employees in Washington.
> All relevant evidence and witnesses are in Washington. Washington has a strong
> interest in regulating the activities of Washington businesses. And most
> importantly, as a Washington business, AT&T is subject to Washington law.
> These are significant factors which the trial court correctly applied to conclude
> that the Washington CPA applies to all of the appellants' CPA claims.
> Accordingly, we reject AT&T's cross-appeal.

Schnall, 139 Wn. App. at 294.

Schnall rejected the defendant's argument for applying the class members' home states'

laws on the ground that their contacts were more numerous, stating: "[w]hile many of the

[Restatement] factors outlined in both section 145 and section 148 center on the plaintiffs'

contacts, the analysis focuses on the most significant contacts, not merely those that are greater

in number." Id. Schnall also rejected the defendant's argument that the place of injury was a

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 13
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

significant contact. Id. at 293-94. The Restatement confirms that the place of injury does not

play an important role: (1) when "the place of injury can be said to be fortuitous"; (2) when it

"bears little relation to the occurrence and the parties"; (3) when "injury has occurred in two or

more states"; or (4) "in the case of fraudulent misrepresentations." Restatement § 145, cmts. e, f.

This case represents an even clearer case than Schnall for applying Washington law to all

class members' claims. First, it is undisputed that Microsoft has the same and additional

Washington contacts as AT&T Wireless (actually a Delaware corporation headquartered here).

Microsoft's "Windows Vista Capable" marketing decisions were made in Washington; all

evidence and witnesses named by Microsoft are based in Washington; Washington has the same,

if not stronger interest in regulating Microsoft; and Microsoft is a Washington corporation

subject to Washington law. Second, and significantly, Microsoft—over and above AT&T's

Washington contacts in Schnall—has included a choice of law clause selecting Washington law

in every XP EULA provided to class members, and in every

### REDACTED PURSUANT TO DKT. NO. 81 AND
### MICROSOFT'S CONFIDENTIALITY DESINGATIONS

b.   Pickett v. Holland Am. Line-Westours

In Pickett v. Holland Am. Line-Westours, Inc., 101 Wn. App. 901, 906, 6 P.3d 63 (2000),

rev'd on other grounds, 145 Wn.2d 178, 35 P.3d 351 (2001), plaintiffs brought a nationwide

class action against Washington-based Holland America for violation of the CPA. The

Washington defendant marketed a uniform consumer contract throughout the nation that

contained a choice of law clause selecting Washington law. Id. at 909. The court held the

Washington CPA applied to the class claim. The holding of Pickett is consistent with the

statutory language permitting "[a]ny person" to bring suit under RCW 19.86.020. (The state

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page – 14
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Supreme Court reversed on other grounds and without reaching choice of law. Pickett v. Holland Am. Line-Westours, Inc., 145 Wn.2d 178, 198-99, 35 P.3d 351 (2001).)

### c.    Odom v. Microsoft

In Odom v. Microsoft Corp. et al., No. 04-2-10618-4 SEA (King County Super. Ct. Apr. 12, 2006) (Defs.' Revised Form of Order Granting Pls.' Mot. for Class Cert.) (North, J.) (copy attached at Smart Decl., Ex. N), plaintiffs alleged that Microsoft charged consumers for on-line services that they never logged on to or used, asserting CPA and common law claims. Focusing on the contacts most relevant to plaintiffs' claims, the court found, "[t]his case centers on Microsoft's promotion of its MSN Internet access service," and in addition to Microsoft's Washington headquarters, "relevant records were generated and are held by Microsoft in Washington," and "Microsoft charged class members and collected the monthly fees from Washington." Smart Decl., Ex. N at 8:8-13. Ruling "Washington has 'strong policy interests' in deterring misconduct by its corporate citizens, such as Microsoft," the court applied Washington law. Id. at 8:14-15 (citing Zenaida-Garcia v. Recovery Sys. Tech., Inc., 128 Wn. App. 256, 266, 115 P.3d 1017 (2005); Haberman, 109 Wn.2d at 136). The court reached this conclusion because of the contacts that were most important to the case, in spite of the presence of another defendant, Best Buy, that was headquartered in Minnesota. Id. at 8:13.

### 3.    Applying Washington Law Promotes Relevant State Interests.

As in Schnall, Pickett, and Odom, the Washington Supreme Court has found that applying Washington law is proper in cases of deceptive conduct emanating from this state. In Haberman, bondholders for terminated nuclear power plants sought damages against Oregon and Idaho utilities and other out-of-state defendants. The Washington Supreme Court held that Washington was the state with the most significant contacts where, inter alia: (a) materials

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 15
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"allegedly containing misrepresentations emanated from this state;" (b) defendants had

"substantial business dealings in Washington;" (c) "the planning of the project" occurred in

Washington; and (d) the fraudulent acts took place in Washington.  109 Wn.2d at 135.

Plaintiffs' claims satisfy (a), (b), and (c).  Further, although plaintiffs in this case have not

alleged fraud, the acts giving rise to their claims took place in Washington, satisfying (d) as well.

With respect to plaintiffs' CPA claim, all states have a common interest, notwithstanding

any differing legislation.  The states' consumer protection laws trace their origins to the Federal

Trade Commission Act, 15 U.S.C. §§ 41-51, which prohibits "deceptive acts or practices in or

affecting commerce," 15 U.S.C. § 45(a)(1).  Generally, what is deceptive in one state is

deceptive in another state.  See National Consumer Law Center, Consumer Class Actions § 3.6.4

(6th ed. 2006).  Microsoft's burden of showing a conflict between the purposes of another state's

and Washington's law, Burnside, 123 Wn.2d at 100-01, is insurmountable in this case:  each

state is interested in fairness to its consumers, and in this the purpose of the states is uniform.

When "the primary purpose of the tort rule involved is to deter or punish misconduct . . .

the state where the conduct took place may be the state of dominant interest and thus that of most

significant relationship."  Restatement § 145 cmt. c; see also § 154 cmt. c.  Washington has

given effect to this principle.  In Johnson v. Spider Staging Corp., , a Kansas plaintiff sued a

Washington defendant in a tort case in which the injury, wrongful death, occurred in Kansas, but

the court refused to give the Washington defendant the benefit of Kansas' statutory cap on

damages.  The court explained, "[Kansas'] interest in preventing financial burdens and

exaggerated claims is primarily local."  Id. at 582-83.  Applying Kansas law would serve no

interest of that state, but would "merely limit the damages of its own residents," but

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 16

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Washington's "deterrent policy of full compensation" would be served by applying its law to the Washington defendant. Id. at 583.

The indisputable contacts calling for applying Washington law under the state Supreme Court's decisions and under Schnall, Pickett, and Odom are that the meaningful aspects of marketing the stripped-down Vista Home Basic through the Windows Vista Capable Program were conceived in, developed in, and carried out from, this state. In contrast, Microsoft will point to purchases occurring in the proposed class members' home states, and "injuries" in those states. Microsoft will also purport to champion the interests of the proposed class members' home states. But this is a false conflict. All states have an interest in deterring unfair or deceptive conduct, and none has an interest in denying its citizens the relief that a Washington court is prepared to grant against a Washington defendant.

Washington law directs the Court to determine which set of contacts is more important to the case, so that the most significant relationship test will "produce results which are less arbitrary and more just." Baffin Land, 70 Wn.2d at 898. The central issue is whether the Windows Vista Capable Program was deceptive--that is an issue with which Washington law is more particularly concerned than any other. That is what Schnall, Pickett, and Odom determined when applying Washington law to nationwide consumer class actions challenging marketing practices of Washington defendants. In arguing that this Court should apply any other state's law, Microsoft will be arguing that these Washington courts got their own state's law wrong.

4.    **The States Share a Legitimate Interest in Seeing Plaintiffs' Claims Litigated in Some Forum as Opposed to Not At All**

The states have an interest in seeing class claims litigated in Washington as opposed to not at all. In In re Pizza Time Theatre Secs. Litig., 112 F.R.D. 15 (N.D. Cal. 1986), the court performed a California choice of law analysis, which looks to the "comparative impairment" of

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 17

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the purposes of the respective states. Id. at 19. The issue was whether to apply California law to

pendent state law claims in a federal securities class action. Id. at 20. Starting from the premise

that "each jurisdiction would rather have the injuries of its citizens litigated and compensated

under another state's law than not litigated or compensated at all," the court observed:

> It is [] highly unlikely that any plaintiff will bring an individual suit in California
> or any other interested jurisdiction; he must depend on the class action mechanism
> to vindicate his rights under the federal securities laws. Precluding plaintiffs from
> simultaneously asserting their common law claims arising from the same facts
> might effectively rob them of legitimate recoveries, and would emasculate
> significant and well-defined state interests.

Id. at 20. Anticipating that applying the class members' home states' laws would preclude class

treatment of their claims, the court held:

> It appears that the maximum attainment of the underlying purposes of all the
> states will be achieved best by certifying the class. Thus, the defendants have
> failed to carry their burden of showing that the interests of other jurisdictions
> would be more impaired by application of California tort law than by their own.

Id. at 20-21. Although this is not a case in which state law claims are pendent to federal

securities claims as was Pizza Time, this case is analogous in that it is "highly unlikely" any

plaintiff will bring an individual suit in another jurisdiction because plaintiffs' claims are

individually small. Id. at 20. The Pizza Time rationale supports applying Washington law.

C.    Out-of-State Case Law Supports Applying Washington Law.

    1.    A Consumer Class Action Challenging a Uniform Marketing Practice
        Originated in One State Is Governed by That State's Law.

In Barbara's Sales Inc. v. Intel Corp., plaintiffs alleged on behalf of a nationwide class

that Intel concealed that the Pentium 4 processor is no faster than the Pentium III, in spite of

Intel's "billion-dollar advertising campaign" to the effect that the Pentium 4 is "the highest

performance processor ever developed and vastly superior to its Pentium III processor." 857

N.E.2d at 719. Barbara's Sales also featured this logo:

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 18
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Id. at 719 (logo "accompanied virtually every computer sold with a Pentium 4 processor.").

Barbara's Sales applied California law. Applying the Restatement, the court noted, "[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws." Id. at 722 (internal quotation marks omitted). The significant part of the case was "Intel's marketing strategy" of "putting forth a consistent message, across all 50 states, to convince the public that the Pentium 4 was the best and fastest processor ever." Id. at 722. Contacts in the class members' home states had no bearing on the central question—whether the Pentium 4 was superior to the Pentium III—and as a result, no other state's interest was jeopardized by applying California law. Id. at 723.

In May of this year, in Mooney v. Allianz Life Ins. Co. of N. Am., 2007 U.S. Dist. LEXIS 34530 *12-17 (D. Minn. May 10, 2007), plaintiffs alleged that an insurance company "fraudulently marketed certain annuity products as providing an 'up-front' or 'intermediate' bonus, when the bonus was not fully available until years after the products were purchased." Id. at *3. Coming to the "governmental interest" factor in Minnesota's choice of law test, the court noted both Minnesota's interest in policing its corporations, and the class members' home states' interests in providing redress for their citizens, and found, "[b]oth parties present sound policy interest arguments." Id. at *16.

Three facts, however, led the court to conclude that "[o]n balance . . . the governmental interest factor favors application of Minnesota law." Id. at *16. First, by allowing out-of-state plaintiffs to bring claims under the Minnesota consumer fraud act, "the Minnesota legislature has

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 19

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

evinced a strong policy of providing redress for fraudulent business practices that occur within

Minnesota's borders, regardless of where a consumer's injury occurs." Id. at *17.  Second,

applying Minnesota unjust enrichment law would serve to prevent use of the state "as a shield to

engage in unfair business practices." Id.  And third, the interests of the class members' home

states were "not so strong as to prevent their citizens from benefiting from Minnesota's

willingness to provide statutory and common law remedies for fraudulent conduct emanating

from Minnesota." Id.  Each of these facts is present in this case.

In In re St. Jude Medical, Inc. Silzone Heart Valve Prods. Liab. Litig., 2006 U.S. Dist.

LEXIS 74797 *18-19 (D. Minn. Oct. 13, 2006), applying Minnesota consumer protection

statutes to nationwide class claims, the court said:

> [T]he Court recognizes that other states may have interests in applying their
> relevant laws to the marketing, sale, and implantation of medical devices within
> their borders.  In all jurisdictions that have substantive conflicts with Minnesota
> consumer protection laws, those jurisdictions have more stringent liability
> standards.  These jurisdictions may have a strong interest in applying these
> standards to protect local defendants, but the Court cannot find that these
> jurisdictions would have such a strong interest in applying their own laws that
> they would seek to prevent an action that would benefit their own citizens.  See
> Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007 (9th Cir. 2001) (dismissing
> as "pure fancy" the suggestion that Hawaii would wish to restrict its residents
> from recovery that others could obtain under California law).  Even though the
> liability standards differ from Minnesota laws, the policy interests of these
> jurisdictions are still furthered through the application of Minnesota law to their
> citizens because all consumer fraud laws in the nation are designed to protect
> consumers to some degree.  See [Merck, infra at 22].

Although other states have interests in applying their own laws to vindicate their citizens'

interests, their interests do not overcome Washington's overriding interest.

### 2.    Out-of-State Cases Applying Class Members' Home States' Laws Are Distinguishable.

A few decisions deny class certification on choice of law grounds with particular fanfare.

In Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801 (Ill. 2005), the court reversed a

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 20
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    $1.18 billion verdict, decertified a class, and remanded for dismissal. In Avery, automobile

2    insureds sued State Farm for specifying the use of replacement parts that were not manufactured

3    by "original equipment manufacturers." Id. at 811. But Avery in fact upheld Illinois authority

4    applying that state's law to multi-state class actions. When, the court said, the "bulk of the

5    circumstances making up" a transaction violating consumer protection law occur in one state,

6    and "the only thing that occurs out-of-state is the injury or deception," id. at 853, then "it seems

7    to make little sense to say that the fraudulent transaction has occurred outside" the state in which

8    the "bulk of the circumstances" making up the violation occurred. Id. The court found that both

9    "the place where a company policy is created," or "where a form document is drafted" may be

10    "relevant factor[s] to consider in determining the location of a consumer transaction." Id. at 854.

11        Avery upheld Martin v. Heinold Commodities. Inc., 510 N.E.2d 840 (Ill. 1987), in which

12    the court certified a multi-state class action under Illinois law where Illinois commodities brokers

13    contracted to charge clients transaction fees greatly exceeding the actual costs to the brokers.

14    Martin, 510 N.E.2d at 841. The factors justifying application of Illinois law in Martin were: (1)

15    the contracts by their terms became effective when accepted by the defendant in Illinois; (2) the

16    defendant's principal place of business was Illinois; (3) the contracts contained Illinois choice of

17    law and forum clauses; (4) complaints were directed to Chicago; and (5) payments were to be

18    sent to Chicago. See Avery, 835 N.E.2d at 855; Martin, 510 N.E.2d at 847. Under these

19    principles, the Court should apply Washington law to Microsoft in this case.

20        The paradigmatic case decertifying a class based on choice of law is In re

21    Bridgestone/Firestone. Inc., 288 F.3d 1012 (7th Cir. 2002), in which class claims were proposed

22    on behalf of Ford Explorer owners with Firestone tires whose tires had not failed. The decision

23    is most noted for its conclusion, "[t]empting as it is to alter doctrine in order to facilitate class

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 21
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    treatment, judges must resist so that all parties' legal rights may be respected." Id. at 1020. It is

2    also easily distinguishable from this case. The court applied Indiana's *lex loci delicti* rule, which

3    Washington abandoned thirty-one years ago, id. at 1016; there was no choice of law clause, id. at

4    1017; and the importance of the defendants' conduct hardly overshadowed the importance of

5
6    varying product failure issues arising from 67 different tire specifications, id. at 1018-19.

7       Bridgestone/Firestone is one of many product[1] and prescription drug[2] cases rejecting

8    class claims. We have collected both, but we do not believe they are relevant here. Individual

9    mechanical failure is often dependent on individual use and environmental conditions; individual

10   reactions to prescription drugs are often dependent on individual medical condition. Further,

11
12   cases of personal injury are of particular concern to the states in which the injured persons reside,

13   and the absence of this fact from this case and others of economic injury promotes the selection

14   of the law of the state of the injury-causing conduct. See Int'l Union of Operating Eng'rs

15   Local # 68 Welfare Fund v. Merck & Co., Inc., 894 A.2d 1136, 1149 (N.J. Super. Ct. App. Div.

16   2006), rev'd on other grounds, 929 A.2d 1076 (N.J. 2007).

17

18      [1] In re General Motors Corp. Dex-Cool Prods. Liab. Litig., 241 F.R.D. 305 (S.D. Ill. 2007) (plaintiffs
alleged factory-installed coolant caused damage to vehicles); Montgomery v. The New Piper Aircraft, Inc., 209
19   F.R.D. 221 (S.D. Fla. 2001) (plaintiff alleged manufacturer's representation that engine would operate 2000 hours
before needing overhaul was deceptive where connecting rod bearings in some aircraft failed before 2000 hours);
Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 211-18 (E.D. Penn. 2000) (plaintiff alleged that boat engines burned fuel
20   at a faster rate than was warranted in engine specifications); Clay v. The American Tobacco Co. Inc., 188 F.R.D.
483 (S.D. Ill. 1999); In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 170 F.R.D. 417, 422-23 (E.D. La.
21   1997) (plaintiffs alleged Masonite siding, which came in different types manufactured in different ways, was prone
to failure due to moisture); Commander Properties Corp. v. Beech Aircraft Corp., 164 F.R.D. 529, 541 (D. Kan.
22   1995) (plaintiff sought replacement cost of allegedly defective wing bolts); Tracker Marine, L.P. v. Ogle, 108
S.W.3d 349, 355-360 (Tex. App. 2003) (plaintiffs alleged, due to watercraft's propensity to rot when exposed to
23   marine environment, "'these boats are no good in water.'").

24      [2] Blain v. SmithKline Beecham Corp., 240 F.R.D. 179, 193-94 (E.D. Penn. 2007) (suit over alleged
tendency of Paxil to cause suicidality in children); In re Baycol Prods. Litig., 218 F.R.D. 197, 207 (D. Minn. 2003)
25   (Baycol alleged to have caused death and several diseases); In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 70-71
(S.D.N.Y. 2002) (Rezulin alleged to be hepato- and cardio-toxic); In re Phenylpropanolamine (PPA) Prds. Liab.
26   Litig., No. MDL 1407, Order Den. Pls.' Mot. for Class Cert. Pursuant to Rule 23(b)(3) for Econ. Inj. Claims (W.D.
Wash. September 4, 2002) (Rothstein, J.) (Class certification of plaintiffs' injury claims had previously been denied
in In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 211 F.R.D. 435 (W.D. Wash. 2002)).

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**3.    A Steady Line of Cases Applies the Law of the Defendant's Home State to Uniform Conduct Harming Consumers in Multiple States.**

The relevant cases are those involving consumer protection claims, which, like this one, are based on a uniform course of conduct. In addition to <u>Schnall</u>, <u>Pickett</u>, <u>Odom</u>, <u>Barbara's Sales</u>, <u>Mooney</u>, <u>St. Jude Medical</u>, <u>Martin</u>, and <u>Merck</u>, supra, cases applying one state's law, include the following four:

First, <u>Lee v. Allstate Life Ins. Co.</u>, 838 N.E.2d 15 (Ill. App. Ct. 2005). In <u>Lee</u>, a plaintiff class sued Allstate for allegedly basing life insurance charges on factors beyond those permitted by the policies. The claims were based on "the same type of Allstate insurance contract with the same terms in question." <u>Id.</u> at 19. Because "the alleged wrongful conduct . . . occurred at Allstate's headquarters in Illinois," <u>id.</u> at 26, the court applied Illinois law.

Second, <u>Clark v. TAP Pharmaceutical Prods., Inc.</u>, 798 N.E.2d 123 (Ill. App. Ct. 2003). In <u>Clark</u>, plaintiffs alleged inflation of the price of a prescription drug. The court applied Illinois law where "[t]he defendants' deceptive practices involving the fraudulent inflation of the cost of Lupron were designed, established, and initiated from the defendants' marketing and sales agents located at the defendants' corporate headquarters in Illinois and were designed to be <u>uniformly</u> relied upon by Medicare and its beneficiaries nationwide." <u>Id.</u> at 129 (emphasis added).

Third, <u>Farmers Ins. Exch. v. Leonard</u>, 125 S.W.3d 55 (Tex. App. 2003). In <u>Leonard</u>, the plaintiffs in 29 states sued Farmers for miscalculating bonuses due under uniform contracts. The court applied California law because Farmers awarded, calculated, and mailed the bonuses in California, <u>id.</u> at 62, the contracts were "drafted solely by Farmers," and "sent from California to the class members without the possibility for further input from those class members." <u>Id.</u> at 64. "No other state involved in this dispute [had] equal interests to California in having its law applied." <u>Id.</u> at 62.

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 23
N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Fourth, In re Great S. Life Ins. Co. Sales Practices Litig., 192 F.R.D. 212, 214 (N.D. Tex.

2000). In Great Southern, plaintiffs alleged an insurance company's marketing materials were

"often based on inflated and not realistic performance models." Id. at 214. "The essential

contract provisions at issue remained virtually unchanged," and the key alleged deception was

traceable to the company's own materials. Id. Having "no doubt that if the shoe were on the

other foot and Great Southern were the plaintiff, Great Southern would be adamant that the law

of Texas governed the contracts at issue," id. at 217-18, the court applied Texas law. Id. at 218-

19. We suspect the same would be true of Microsoft here.

## IV. CONCLUSION

Under the Constitution and Washington's choice of law rules, Washington law may fairly

be applied to the claims of all class members. Plaintiffs therefore request that the Court apply

Washington law to their claims.

DATED this 5th day of October, 2007.

KELLER ROHRBACK L.L.P.

By _____
William C. Smart, WSBA #8192
Ian S. Smart, WSBA #31431

GORDON TILDEN THOMAS & CORDELL
L.L.P.

By _____
Jeffrey I. Tilden, WSBA #12219
Jeffrey M. Thomas, WSBA #21175
Michael Rosenberger, WSBA #17730
Mark A. Wilner, WSBA #31550

Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON
LAW
(C07-0475 MJP) Page - 24

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant Microsoft Corporation

Stephen M. Rummage, WSBA #11168
Cassandra L. Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
Davis Wright Tremaine LLP
1201 Third Avenue Suite 2200
Seattle, Washington 98101-3045
steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Counsel for Defendant Microsoft Corporation – Admitted Pro Hac Vice

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA 19109
ccasper@mmwr.com

GORDON TILDEN THOMAS & CORDELL LLP

By _____
Mark A. Wilner, WSBA #31550
Attorneys for Plaintiff
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mwilner@gordontilden.com

PLAINTIFFS' MOTION FOR APPLICATION OF WASHINGTON LAW
(C07-0475 MJP) Page - 25

N:\CLIENTS\27673\1\PLEADINGS\MOT.APP.WA.LAW.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384