1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DIANNE L. KELLEY and KENNETH HANSEN,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>Defendant. | NO. C07-0475 MJP<br><br>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br>*Filed as Redacted\**<br><br>CLASS ACTION<br><br>NOTE ON MOTION CALENDAR:<br>December 19, 2007<br><br>ORAL ARGUMENT REQUESTED |

\* *Filed with Redactions Pursuant to Docket No. 81 and Microsoft's Confidentiality*

*Designations*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF FACTS .....................................................................2

    A.   Microsoft Developed Its Windows Vista Capable Marketing
          Program—Including the "Windows Vista Capable" Logo and the
          Express Upgrade to Windows Vista Promotion—to Maintain
          Windows XP Sales Prior to the Launch of Vista. ...................................2

    B.   Vista Home Basic Is Not the "Real" Vista Marketed by Microsoft. .......4

    C.   The Named Plaintiffs, Like All Proposed Class Members, Purchased
          PCs Bearing Microsoft's "Windows Vista Capable" Logo. ....................6

    D.   Plaintiffs' Class Claims Are Supported by the 30(b)(6) Admission of
          Microsoft's Director of Marketing that "Capable" in "Windows Vista
          Capable" Meant PCs Bearing The Logo Could Run "Any" Version of
          Vista, Not Merely Home Basic. ..............................................................6

    E.   Plaintiffs Seek Class Certification to Prosecute Consumer Protection
          and Unjust Enrichment Claims on Behalf of a Nationwide Class of
          Consumers. ...........................................................................................7

III.  ARGUMENTS AND AUTHORITIES ....................................................8

    A.   This Motion Is Governed by Applying Rule 23 to Plaintiffs'
          Allegations. ............................................................................................8

          1.    Whether to Certify a Nationwide Consumer Class Action Is a
               Matter Within the Court's Discretion. .........................................8

          2.    Where, as Here, a Class Certification Motion Is Brought
               Before Merits Discovery, the Rule 23 Requirements Are
               Analyzed Focusing on Plaintiffs' Allegations and the Issues
               Discernable Therefrom, Not the Merits. ......................................9

    B.   Plaintiffs' Allegations Satisfy the Four Rule 23(a) Prerequisites to
          Certification. ........................................................................................10

           1.    Microsoft Has Conceded Numerosity. .........................................10

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

2.    Plaintiffs' Claims Allege Numerous Common Question of Law
      and of Fact...................................................................................10

      a.    Common Questions of Fact ............................................10

      b.    Common Questions of Law ............................................12

3.    The Named Plaintiffs' Claims Are "Typical" Because They
      Are "Reasonably Coextensive" With the Claims of the
      Proposed Class Members.............................................................13

4.    The Named Plaintiffs Will Fairly and Adequately Protect the
      Interests of Unnamed Class Members Because They Share the
      Class Members' Interests in a Vigorous Prosecution. .................17

C.    Plaintiffs' Lawsuit May Be Maintained as a Class Action Under Rule
      23(b)(3). ...................................................................................................18

      1.    Common Issues Such as Whether Vista Home Basic Is the
            "Real" Vista Predominate Over Any Individual Issues Such as
            Damages Calculations...................................................................18

            a.    Individual Damages Issues Do Not Prevent Class
                  Certification. ...................................................................20

            b.    Choice of Law Issues Do Not Prevent Class
                  Certification. ...................................................................20

      2.    A Single Class Action in This Forum Is Far Superior to Many
            Smaller, Individual CPA Claims in Many Forums.....................23

IV.    CONCLUSION AND PROPOSED ORDER.......................................................24

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# TABLE OF AUTHORITIES

**Cases**

Adam v. Silicon Valley Bancshares, No. C 93-20399 RMW, 1994 U.S. Dist. LEXIS 21717
(N.D. Cal. Apr. 18 1994) ........................................................................... 14

Ali v. Ashcroft, 213 F.R.D. 390 (W.D. Wash. 2003), aff'd, 346 F.3d 873 (9th Cir.),
rev'd on other grounds, 421 F.3d 795 (9th Cir. 2005) ........................................ 10

Ali v. Ashcroft, 346 F.3d 873 (9th Cir. 2003), rev'd on other grounds, 421 F.3d 795
(9th Cir. 2005)........................................................................................ 8

Am. Timber & Trading Co. v. First Nat'l Bank of Or., 690 F.2d 781 (9th Cir. 1982) ............... 24

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997) ...................................... 19, 23

Bell v. Addus Healthcare, Inc., No. C06-5188RJB, 2007 U.S. Dist. LEXIS 62959
(W.D. Wash. Aug. 27, 2007) .......................................................................... 5

Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975)............................................... 9

Califano v. Yamasaki, 442 U.S. 682 (1979)..................................................... 8

Caspi v. Microsoft, 732 A.2d 528 (N.J. App. 1999)............................................ 22

Clark v. Bonded Adjustment Co., Inc., 204 F.R.D. 662 (E.D. Wash. 2002)................... 18

Clark v. TAP Pharm. Prods., Inc., 798 N.E.2d 123 (Ill. App. 2003)....................... Passim

Cope v. Metro. Life Ins. Co., 696 N.E.2d 1001 (Ohio 1998) ................................. 23

Dal Ponte v. American Mort. Express Corp., No. 04-2152 (JEI), 2006 U.S. Dist.
LEXIS 57675 (D.N.J. Aug. 17, 2006) ........................................................ Passim

Dukes v. Wal-Mart, Inc., 474 F.3d 1214 (9th Cir. 2007) ................................... Passim

Ellis v. Costco Wholesale Corp., 240 F.R.D. 627 (N.D. Cal. 2007) ...................... 10, 16

Grays Harbor Adventist Christian Sch. v. Carrier Corp., No. 05-05437 RBL, 2007 U.S.
Dist. LEXIS 31886 (May 1, 2007)................................................................. 22

Hamilton v. Ohio Savings Bank, 694 N.E.2d (Ohio 1998) ................................... 23

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

In re Data Access Systs. Sec. Litig., 103 F.R.D. 130 (D.N.J. 1984) ............................................ 22

In Re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig., MDL,
    No. 01-1396 (JRT/FLN), 2003 U.S. Dist. LEXIS 5188 (D. Minn. Mar. 27, 2003),
    rev'd for choice of law analysis on remand by 425 F.3d 1116 (8th Cir. 2005),
    decision on remand at 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ............. Passim

In Re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig., MDL,
    No. 01-1396 (JRT/FLN), 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ........ Passim

In re Prudential Ins. Co. of Am. Sales Pracs. Litig., 148 F.3d 283 (3rd Cir. 1998)...................... 23

In re United Energy Corp. Solar Power Modules Tax Shelter Invests. Sec. Litig., 122
    F.R.D. 251 (C.D. Cal. 1988)........................................................................................................ 22

Johns v. DeLeonardis, 145 F.R.D. 480 (N.D. Ill. 1992) ........................................................... 9, 18

Microsoft Corp. v. Manning, 914 S.W.2d 602 (Tex. App. 1995) .........................................Passim

Mooney v. Allianz Life Ins. Corp. of N.A., No. 06-545 ADM/FLN, 2007 U.S. Dist.
    LEXIS 34530 (D. Minn. May 10, 2007)............................................................................Passim

Mortimore v. FDIC, 197 F.R.D. 432 (W.D.Wash. 2000)............................................................. 20

Schnall v. AT&T Wireless Servs., Inc., 139 Wn. App. 280, 161 P.3d 395 (2007) ...............Passim

Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007)................................................ 1

Sharp v. Coopers & Lybrand, 70 F.R.D. 544 (E.D. Pa. 1976) ...................................................... 22

Weinberg v. Hertz Corp., 116 A.2d 1 (N.Y. 1986)........................................................................ 23

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................................Passim

2 Conte & Newberg, Newberg on Class Actions § 4.25 (4th ed. 2002)........................................18

3 Conte & Newberg, Newberg on Class Actions § 9.68 (4th ed. 2002)........................................24

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## I.    INTRODUCTION

[I]n our large and impersonal society, class actions are often the last barricade of consumer protection. The consumer class action provides restitution to the injured and deterrence to the wrongdoer; thus, the ends of equity and justice are attained. Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time, effort, and expense and prevent possible inconsistent results. Litigating . . . individual lawsuits . . . would be a waste of judicial resources, and addressing the common issues in one action would aid judicial administration.

Clark v. TAP Pharm. Prods., Inc., 798 N.E.2d 123, 134 (Ill. App. 2003) (affirming certification

of nationwide consumer class action for claims regarding alleged fraudulent marketing practices

under Illinois consumer protection law and unjust enrichment).

The Washington appellate courts made similar points earlier this year when specifically

applying the Washington Consumer Protection Act ("CPA"), chapter 19.86 RCW:

[W]hen consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights. Class remedies not only resolve the claims of the individual class members but can also strongly deter future similar wrongful conduct, which benefits the community as a whole. . . . Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of . . . the practice as to one . . . would provide proof for all. Individual actions by each . . . is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial. . . . [C]lass actions are a critical piece of the enforcement of consumer protection law. The reason is clear. Without class actions, many meritorious claims would never be brought.

Scott v. Cingular Wireless, 160 Wn.2d 843, 852-53, 161 P.3d 1000 (2007); accord Schnall v.

AT&T Wireless Servs., Inc., 139 Wn. App. 280, 287, 161 P.3d 395 (2007) (certifying

nationwide class of consumers for claims arising under Washington CPA).

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Like these cases, the amount in controversy for any one class member here is outweighed

by the expense and impracticalities of individual litigation. At the same time, the claims of

consumer protection liability and unjust enrichment against Microsoft are common to all. Proof

of plaintiffs' theories of liability—whether brought individually or as a nationwide class of

consumers—will be the same. The claims rise (or fall) based on evaluating Microsoft's conduct.

Class certification is thus appropriate and warranted.

## II.    STATEMENT OF FACTS

**A.    Microsoft Developed Its Windows Vista Capable Marketing Program—Including the "Windows Vista Capable" Logo and the Express Upgrade to Windows Vista Promotion—to Maintain Windows XP Sales Prior to the Launch of Vista.**

This case involves Microsoft's conduct in using its marketing muscle to avoid the

anticipated slump in sales of Windows XP prior to the launch of Windows Vista. Concern was

particularly acute after Microsoft announced that the launch of its five-years-in-the-making, $5

billion-in-development Vista operating system would be delayed until after the 2007 New Year.

Dkt. 29 ¶¶ 1.2, 4.1-4.3. Intent on maintaining profits throughout the delay, Microsoft developed

and implemented an interim marketing program centered around its "Windows Vista Capable"

logo: a carefully designed sticker placed on "qualifying" PCs to send a message to consumers

that their soon-to-be-obsolete XP PCs were "Windows Vista Capable" state-of-the-art. Id. ¶ 4.3.

The same marketing program also included an "express upgrade" for a subset of purchasers of

PCs that carried the identical "Windows Vista Capable" logo. Id. ¶ 4.5.

Microsoft created a confidential "OEM Marketing Bulletin" to explain to original

equipment manufacturers ("OEMs") "in detail" "the marketing strategy behind its 'Windows

Vista Capable [Marketing] Program' and the specific steps and guidelines Microsoft had

developed to implement that program." Dkt. 54 ¶ 12. As set forth in the bulletin, the program

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 2
No. C07-0475 MJP

had

**REDACTED PURSUANT TO DKT. NO. 81 AND**
**MICROSOFT'S CONFIDENTIALITY DESINGATIONS**

Microsoft described the Windows Vista

Capable program as:

**REDACTED PURSUANT TO DKT. NO. 81 AND**
**MICROSOFT'S CONFIDENTIALITY DESINGATIONS**

The Express Upgrade to Windows Vista was a specific promotion within the Windows

Vista Capable program. As Microsoft described in the confidential OEM Marketing Bulletin:

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 3
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

REDACTED PURSUANT TO DKT. NO. 81 AND
MICROSOFT'S CONFIDENTIALITY DESINGATIONS

**B.    Vista Home Basic Is Not the "Real" Vista Marketed by Microsoft.**

Whether as part of the Windows Vista Capable program generally or the Express

Upgrade promotion specifically, the problem with Microsoft's marketing strategy—indeed, one

of the key common factual questions in this case—is whether Microsoft's certification of

"Windows Vista Capable" told consumers the truth. Dkt. 29 ¶¶ 1.2, 4.4-4.8. Plaintiffs contend

that PCs bearing Microsoft's "Windows Vista Capable" logo in fact were incapable of running

all but a rudimentary operating system that Microsoft still marketed as "Vista": Vista Home

Basic. Put differently, Vista Home Basic was nothing more than a gimmick Microsoft designed

to among other things avoid the anticipated drop-off in sales, prior to the launch of Vista, of

soon-to-be obsolete PCs that Microsoft knew lacked the horsepower to run the "real" Vista. Id.

Microsoft's public advertising blitz introduced "Vista" (without qualification for Home

Basic) as akin to one's first view of the Great Wall of China[1]—"so new, so delightfully

unexpected, that there is only one word for it: 'Wow.'" See, e.g., Tilden Decl., Ex. B at MS-

KELL 11789. Confidentially and pre-launch, however, the company in fact had acknowledged

that the real consumer "experience" of Vista Home Basic only would be "at least equivalent to

Windows XP." Id., Ex. C at MS-KELL 13029. Post-launch, others now describe Vista Home

---

[1] Microsoft's analogy, not ours.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 4
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Basic as possibly "the most pointless edition of Windows that Microsoft has ever released."[2]  Id.,

Ex. D.  A Senior Corporate Vice President at Acer ("the world's No. 4 branded PC vendor") says

consumers "won't feel" the "new Vista experience" with Home Basic, as "Premium is the real

Vista."  Id., Ex. E.  Even Windows Vista: The Official Magazine, a publication licensed by

Microsoft, describes Vista Home Basic as an operating system for "those who only want to do

the bare minimum with their PCs."  Id., Ex. F at 18.  In one edition (again, post-launch), the

Microsoft-licensed magazine goes so far as to suggest that Home Basic is not "right for" anyone:

## Which Windows Vista is Right for Me?

| VERSION / PRICE | AERO GLASS | MEDIA CENTER | MOBILITY CENTER | CONNECT TO XBOX 360 | DRIVE ENCRYPTION | DOMAIN NETWORKING |
|---|---|---|---|---|---|---|
| Windows Vista Home Basic — $200; $100 upgrade | | | | | | |
| Windows Vista Home Premium — $240; $160 upgrade | ✓ | ✓ | ✓ | ✓ | | |
| Windows Vista Home Business — $300; $200 upgrade | ✓ | | ✓ | | ✓ | ✓ |
| Windows Vista Home Ultimate — $400; $260 upgrade | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

February 2007  Windows Vista Magazine  23

Id., Ex. G at 23.  Further indicative of Vista Home Basic's low esteem after its launch, Adobe

Systems announced two months ago that its "Creative Suite 3 is not supported on Microsoft

Vista Home Basic."  Id., Ex. H.  Adobe did not even bother testing on Vista Home Basic.  Id.

Creative Suite 3, however, does run on XP and every version of Vista other than Home Basic.

Id., Ex. I.  In sum, Vista Home Basic is hardly a "Wow" experience for consumers.

---

[2] Contrary to trial or summary judgment where the merits are placed at issue, when addressing an early-filed motion for class certification, as here, the Court may consider otherwise inadmissible hearsay to help determine the background and nature of the claims. Microsoft Corp. v. Manning, 914 S.W.2d 602, 615 (Tex. App. 1995); Bell v. Addus Healthcare, Inc., No. C06-5188RJB, 2007 U.S. Dist. LEXIS 62959, at *7 (W.D. Wash. Aug. 27, 2007).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 5
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**C.    The Named Plaintiffs, Like All Proposed Class Members, Purchased PCs Bearing Microsoft's "Windows Vista Capable" Logo.**

Plaintiff Diane Kelley is a Washington resident. She lives on Camano Island. Plaintiff Ken Hansen is an Illinois resident. He lives in Chicago. Both plaintiffs Kelley and Hansen purchased PCs during Microsoft's Windows Vista Capable program—PCs pre-installed with Windows XP and bearing Microsoft's "Windows Vista Capable" logo. Dkt. 29 ¶¶ 2.1-2.2. Ms. Kelley purchased her "Windows Vista Capable" PC on November 24, 2006. Tilden Decl., Ex. J at 6. Mr. Hansen purchased his "Windows Vista Capable" PC on December 22, 2006. Id., Ex. K at 6. Although neither Ms. Kelley nor Mr. Hanson took part in the specific Express Upgrade promotion, as with all those consumers who did, both plaintiffs purchased PCs bearing Microsoft's Windows Vista Capable logo.

**D.    Plaintiffs' Class Claims Are Supported by the 30(b)(6) Admission of Microsoft's Director of Marketing That "Capable" in "Windows Vista Capable" Meant PCs Bearing the Logo Could Run "Any" Version of Vista, Not Merely Home Basic.**

That consumers would fall prey to Microsoft's marketing is not remarkable considering the 30(b)(6) testimony of Microsoft's Director of Marketing, Mark Croft. Mr. Croft candidly acknowledged that the "Capable" in "Windows Vista Capable" meant a PC with the logo could run "<u>any</u> version of" Vista. Id., Ex. L at 51:10-11 (emphasis added). To explain the difference between "capable" and "ready" (a word Microsoft uses in other logos), Mr. Croft testified:

> Capable is a statement—single-word statement—that has an interpretation for many that, in the context of this program, a PC, would be able to run any version of the Windows Vista operating system. Ready may have concerns that the PC would run in some improved or better way than—than capable; therefore, the word capable was deemed to be a more fitting word for this program.

Id. at 51:8-15 (emphasis added). Mr. Croft understood Microsoft's logo to be telling consumers that PCs would run not only the stripped-down Vista Home Basic, but also what plaintiffs

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

contend are the "real" versions of Vista: the ones that included Microsoft's heavily marketed

"Vista features." Ironically, Mr. Croft's understanding of what "Windows Vista Capable" means

is the same understanding that Microsoft asserts no consumer would be justified in having. It

thus comes as no surprise that after nearly a ten-minute break to consult with Microsoft's

lawyers, id. at 67:14-24, Mr. Croft attempted to change his testimony (albeit quite awkwardly):

> A. Oh, the error—When I was explaining—We were talking about ready
> and capable, and I made a statement that capable—we ended up with capable with
> the intention that—I made the statement that we ended up with capable would be
> able to run any version of Windows Vista, whereas, in reality, our intent, with
> capable, was that the system would be able to run a version of Windows Vista.
> So, quite an important difference in the two—two terms, there.

> Q. Okay. Did you ever do any market research—consumer research to
> determine whether or not the term Windows Vista Capable would cause any
> consumers to make the very mistake that you just made?

> A. We did not do research for that.

Id. at 68:24-69:15 (emphasis added).

**E.      Plaintiffs Seek Class Certification to Prosecute Consumer Protection and Unjust
Enrichment Claims on Behalf of a Nationwide Class of Consumers.**

Plaintiffs assert claims under the Washington CPA and for unjust enrichment. By this

motion, plaintiffs seek a ruling that they also may assert such claims on behalf of a nationwide

class of consumers similarly situated, defined as follows:

> All persons and entities residing in the United States who purchased a personal
> computer certified by Microsoft as "Windows Vista Capable" and not also bearing
> the "Premium Ready" designation, and/or all persons and entities residing in the
> United States who purchased a PC with an "Express Upgrade" to Vista Home Basic.

> Excluded from this class are: (a) Defendant, any entity in which defendant has a
> controlling interest or which has a controlling interest in defendant; (b) Defendant's,
> employees, agents, predecessors, successors or assigns; and (c) the judge and staff to
> whom this case is assigned, and any member of the judge's immediate family.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Dkt. 29 ¶ 5.1. Plaintiffs also request that the Court appoint plaintiffs as the representatives of the class and their attorneys as class counsel.

### III.    ARGUMENTS AND AUTHORITIES

**A.    This Motion Is Governed by Applying Rule 23 to Plaintiffs' Allegations.**

    **1.    Whether to Certify a Nationwide Consumer Class Action Is a Matter Within the Court's Discretion.**

Like any other class, "certification of a nationwide class is 'committed in the first instance to the discretion of the district court.'" Ali v. Ashcroft, 346 F.3d 873, 888 (9th Cir. 2003) (quoting Califano v. Yamasaki, 442 U.S. 682, 702-03 (1979)), rev'd on other grounds, 421 F.3d 795 (9th Cir. 2005); accord Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1223 (9th Cir. 2007) (affirming nationwide class of 1.5 million; "Rule 23 provides district courts with broad discretion to determine whether a class should be certified"); Schnall, 139 Wn. App. at 287-92 (trial court abused discretion by not certifying nationwide consumer class under Washington CPA).

The relevant inquiry is whether the Rule 23 requirements have been met. Ali, 346 F.3d at 889 ("Nothing in Rule 23 . . . limits the geographical scope of a class action that is brought in conformity with that Rule"); Dukes, 474 F.3d at 1224 (same); Schnall, 139 Wn. App. at 287 (same). Rule 23(a) contains four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Rule 23 also requires that one of three conditions in Rule 23(b) has been met. As discussed below, plaintiffs satisfy each requirement of Rule 23(a), as well as the condition set forth at Rule 23(b)(3). As such, certification is warranted.

2.    **Where, as Here, a Class Certification Motion Is Brought Before Merits Discovery, the Rule 23 Requirements Are Analyzed Focusing on Plaintiffs' Allegations and the Issues Discernable Therefrom, Not the Merits.**

In addressing a motion for class certification, "[t]he focus . . . is on whether a class action is an appropriate vehicle for litigat[ing] the claims alleged, and not on the merits of the case." Dal Ponte v. American Mort. Express Corp., No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675, at *6 (D.N.J. Aug. 17, 2006) (certifying nationwide consumer class under New Jersey CPA). To this end, "the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Id. at *8-9. In deciding whether plaintiffs have satisfied Rule 23, the Court thus "must take" the allegations in their Second Amended Class Action Complaint "as true." Schnall, 139 Wn. App. at 292, 294 (certifying nationwide consumer class action under Washington CPA) (citing Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975)); Clark, 798 N.E.2d at 128 (affirming nationwide consumer class action under Illinois CPA) (citing Johns v. DeLeonardis, 145 F.R.D. 480, 482 (N.D. Ill. 1992)).

These rules are particularly appropriate when applied here. Plaintiffs have filed their motion at the earliest point practicable. Microsoft answered plaintiffs' complaint just three days ago. Dkt. 56. The parties also have agreed to conduct merits discovery only after the Court's ruling on this motion for class certification. Dkt. 21 at 3. Microsoft, furthermore, has resisted vigorously any discovery that it deems merits-related. See, e.g., Dkt. 36 at 5-12; Dkt. 46 at 4-7. Thus, at this stage, plaintiffs have not been able to fully explore the available evidence on the merits of their claims.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**B.    Plaintiffs' Allegations Satisfy the Four Rule 23(a) Prerequisites to Certification.**

**1.    Microsoft Has Conceded Numerosity.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Microsoft has conceded the issue. Dkt. 47 at 16; Dkt. 46 at 6-7; Dkt. 56 ¶ 5.2.[3]

**2.    Plaintiffs' Claims Allege Numerous Common Question of Law and of Fact.**

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "construed permissively" and "focuses on the relationship of common facts and legal issues among class members." Dukes, 474 F.3d at 1225. One common issue is all that is needed:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. . . . The commonality test is qualitative rather than quantitative—one significant issue common to the class may be sufficient to warrant certification.

Id.; accord Dal Ponte, 2006 U.S. Dist. LEXIS 57675, at *9 (commonality "easily met" since plaintiffs need only "share at least one question of fact or law with the grievances of the prospective class."); Ellis v. Costco Wholesale Corp., 240 F.R.D. 627, 638 (N.D. Cal. 2007) (nationwide class; only "one significant issue of fact or theory of law" need be common).

**a.    Common Questions of Fact**

With respect to questions of fact, commonality exists in consumer protection cases where the defendant's standardized conduct is at issue. See, e.g., Dal Ponte, 2006 U.S. Dist. LEXIS

---

[3] Numerosity would be established regardless. Microsoft's 30(b)(6) deponent testified that she "could presume" without consulting Microsoft's sales database that Microsoft sold between one thousand and one million XP Home licenses during the Windows Vista Capable program. Tilden Decl., Ex. M at 57:7-58:11. Others have calculated that Microsoft's sales through the Express Upgrade program alone amounted to more than $1 billion. Id., Exs. N-P. See also Ali v. Ashcroft, 213 F.R.D. 390, 408 (W.D. Wash. 2003), aff'd, 346 F.3d 873 (9th Cir.), rev'd on other grounds, 421 F.3d 795 (9th Cir. 2005) ("The Court does not need to know the exact size of the putative class, so long as general knowledge and common sense indicate that it is large.").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 10
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

57675, at *11 ("The sufficiency and clarity of AMX's disclosures is an issue common to all

potential class members. Moreover, the Third Circuit has 'squarely held that reliance is not an

element.'"). For example, a Texas court of appeals held that alleged defects in a prior Microsoft

operating system and Microsoft's alleged omissions to end-users regarding the same were

common factual questions supporting a nationwide class under the Washington CPA arising out

of the claim that the operating system did not perform as marketed. Microsoft Corp. v. Manning,

914 S.W.2d 602, 611-12 (Tex. App. 1995). Similarly, the factual question whether a defendant

manufactured a defective heart valve sufficed to establish commonality supporting certification

of a nationwide consumer class under Minnesota's CPA pursuant to claims about the defendant's

marketing of the product. In re: St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.,

MDL No. 01-1396 (JRT/FLN), 2003 U.S. Dist. LEXIS 5188, at *8-9 (D. Minn. Mar. 27, 2003),

rev'd for choice of law analysis on remand by 425 F.3d 1116 (8th Cir. 2005), decision on remand

at 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) (re-certifying nationwide class).

Here, there are numerous common questions of fact central to each class member's

claims—all of which focus squarely on Microsoft's course of conduct and the product it

manufactures and markets. Some of the common questions of fact include:

- Whether Vista Home Basic fails to provide the new and unique features promoted by Microsoft as being "Vista."

- Whether certifying PCs as "Windows Vista Capable" was unfair or deceptive when the promised "upgrade" from XP fails to perform Vista's most touted functions.

- Whether "capable" in "Windows Vista Capable" would reasonably be construed as meaning capable of running "any" version of Vista (as Microsoft's Director of Marketing testified).

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

- Whether the "Windows Vista Capable" certification to consumers was by Microsoft—or its OEMs, as Microsoft has suggested to the Court.

- Whether Microsoft has been enriched unjustly by increased sales of XP licenses to class members as part of the Windows Vista Capable program.

- Whether Microsoft has been enriched unjustly by sales of XP licenses to class members who were guaranteed free or reduced-price upgrades to "Vista" as part of the Express Upgrade program, but who, because the "upgrade" was to Home Basic, must now buy Premium to obtain the "core Windows Vista experience."

### b.    Common Questions of Law

With respect to questions of law, commonality exists "when the legal question linking the class members is substantially related to the resolution of the litigation even though the individuals may not be identically situated." St. Jude Medical, 2003 U.S. Dist. LEXIS 5188, at *8. Thus, where plaintiffs on behalf of a nationwide class of consumers have sought relief pursuant to a state CPA, including in some cases a claim for unjust enrichment, courts have found common questions of law satisfying commonality. Id. (nationwide class under Minnesota CPA); Schnall, 139 Wn. App. at 295-96 (nationwide class under Washington CPA); Manning, 914 S.W.2d at 612 (nationwide class against Microsoft under Washington CPA and unjust enrichment); Dal Ponte, 2006 U.S. Dist. LEXIS 57675, at *10 (nationwide class under New Jersey CPA and unjust enrichment); Clark, 798 N.E.2d at 545-46 (nationwide class under Illinois CPA and unjust enrichment); Mooney v. Allianz Life Ins. Corp. of N.A., No. 06-545 ADM/FLN, 2007 U.S. Dist. LEXIS 34530 (D. Minn. May 10, 2007) (nationwide class, except California residents, under Minnesota CPA and unjust enrichment).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 12
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Here, as with these nationwide consumer class actions, at least the following common

questions are "substantially related to the resolution of the litigation." They include:[4]

- Whether Microsoft's conduct, including its Vista marketing and deployment of the "Windows Vista Capable" logo, was "unfair or deceptive" within the meaning of the Washington CPA;

- Whether Microsoft's conduct occurred "in trade or commerce" within the meaning of the Washington CPA;

- Whether Microsoft's conduct had a "public interest impact" within the meaning of the Washington CPA;

- Whether Microsoft's conduct caused "injury" legally cognizable under the Washington CPA;

- Whether Microsoft is liable for "treble damages" under the Washington CPA as a result of intentional, knowing, or reckless deception of the class; and

- Whether the "enrichment" Microsoft enjoyed as a result of its conduct was "unjust" for purposes of unjust enrichment.

Because just one common question of fact or of law may suffice to meet the commonality

requirement, plaintiffs meet this prerequisite to class certification.

### 3.    The Named Plaintiffs' Claims Are "Typical" Because They Are "Reasonably Coextensive" With the Claims of the Proposed Class Members.

Typicality requires that "the claims . . . of the representative parties are typical of the

claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards,

representative claims are 'typical' if they are reasonably coextensive with those of absent class

members; they need not be substantially identical." Dukes, 474 F.3d at 1232. The Ninth Circuit

articulates the test as "whether other members have the same or similar injury, whether the action

is based on conduct which is not unique to the named plaintiffs, and whether other class

---

[4] Some of these issues will be susceptible to resolution via motion brought before trial.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

members have been injured by the same conduct." Id. As "in all cases," "[s]ome degree of individuality is to be expected . . . but that specificity does not necessarily defeat typicality." Id.; accord Schnall, 139 Wn. App. at 280 (where claims focused on same unlawful conduct, "varying fact patterns in the individual claims will not defeat the typicality requirement").

Here, the plaintiffs and proposed class members each have suffered the same or similar harm resulting from the same common course of conduct: Microsoft's alleged unfair and deceptive marketing. Each plaintiff and class member purchased a PC certified by Microsoft as "Windows Vista Capable" when the PC, in fact, was incapable of running any real version of Vista. Each is entitled to recover the costs of making their respective PCs truly "Vista," above any cost of the Home Basic upgrade. Microsoft's unfair and deceptive conduct regarding "Vista" capability—conduct common to all claims—also created artificial demand, at artificially maintained prices, for PCs that were not truly "Vista capable" and, thus, were rendered less valuable or obsolete upon the release of Vista. Each plaintiff and class member also may seek additional damages measured by the diminution in value between the artificially high purchase price and the actual post-Vista-release value of the PC they purchased.

Typicality also answers the question Microsoft posed in its motion to dismiss (Dkt. 12 at 30-31)—which the Court deferred until class certification (Dkt. 39 at 3)—whether plaintiffs have "standing" to assert claims on behalf of class members who took part in the Microsoft's Express Upgrade promotion portion of its Windows Vista Capable marketing program. Representative standing in class actions is determined properly by addressing whether plaintiffs' claims are "typical" of class members' claims. Adam v. Silicon Valley Bancshares, No. C 93-20399 RMW, 1994 U.S. Dist. LEXIS 21717, at *3-7 (N.D. Cal. Apr. 18, 1994) ("issue is not one of standing

but of typicality") (citing cases).  That plaintiffs and many class members purchased a "Windows Vista Capable" PC pursuant to Microsoft's general Windows Vista Capable program, whereas other class members purchased their "Windows Vista Capable" PC specifically pursuant to the Express Upgrade promotion, has no effect on the typicality analysis.  The common course of conduct giving rise to each claim remains the same.  The Express Upgrade promotion was part of the Windows Vista Capable program, specifically

## REDACTED PURSUANT TO DKT. NO. 81 AND MICROSOFT'S CONFIDENTIALITY DESINGATIONS

Thus, regardless of whether a class member took part in the promotion, the common conduct to be evaluated by classwide litigation will remain the same.  Because plaintiffs' claims are "typical" of those class members who took part in the Express Upgrade promotion, plaintiffs also have "standing" to assert such claims.

Notably, if typicality did not allow for factual variances among class members, the result in Dukes v. Wal-Mart would have been decidedly different.  In Dukes, the Ninth Circuit affirmed certification of a nationwide class of 1.5 million female employees subject to alleged discriminatory pay practices.  The court acknowledged the defendant's argument that "individual employees in different stores with different managers may have received different levels of pay and were denied promotion or promoted at different rates."  Dukes, 474 F.3d at 1232.  It concluded typicality was present nevertheless, because the allegations, as here, centered on a common liability-producing practice:

> because the discrimination they allegedly suffered occurred through an alleged common practice—e.g., excessively subjective decision-making in a corporate

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 15
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

culture of uniformity and gender stereotyping—their claims may be sufficiently
typical to satisfy Rule 23(a)(3).

Id.; accord Ellis, 240 F.R.D. at 640-41 (finding typicality and certifying nationwide class of

female employees pursuant to discrimination claim regarding alleged gender disparity in upper-

level positions; although factual difference existed among class members, named plaintiffs

asserted "the same type of legal and remedial theory as the unnamed class members").

The Ninth Circuit's view that factual differences will not render claims atypical if the

claims arise from the same practice or course of conduct at the root of other class members'

claims is well-grounded in class action law, including cases certifying nationwide consumer

classes. In Dal Ponte, for example, the District Court of New Jersey certified a nationwide class

of consumers asserting claims under New Jersey's CPA and unjust enrichment based upon

allegations that plaintiff and class members were subject to a "mass loan cancellation scheme"

resulting in the loss of lower, locked-in interest rates. The defendant argued that "the majority"

of class members "either withdrew their loan applications, failed to timely submit required

documentation or were denied loans for legitimate credit reasons." 2006 U.S. Dist LEXIS 57675

at *8. Finding typicality nevertheless, the court reasoned that:

> [F]actual differences will not render a claim atypical if the claim arises from the
> same event or practice or course of conduct that gives rise to the claims of the
> class members, and if it is based on the same legal theory. . . . Dal Ponte's claims
> arise from AMX's alleged mass cancellation policy, as do the claims of the
> proposed class members. In instances wherein it is alleged that the defendants
> engaged in a common scheme relative to all members of the class, there is a
> strong assumption that the claims of the representative parties will be typical of
> the absent class members.

Id. at *12 (citations and quotations omitted).

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

In St. Jude Medical, the Minnesota federal district court certified a nationwide class of

consumers under Minnesota's CPA arising out of defendant's conduct in the design,

manufacture, marketing, and sale of allegedly defective heart valves. Defendant argued class

members' claims contained fact differences due to "varying types of care, treatment, and

magnitude of alleged injuries." But the court concluded typicality was present, holding:

> The burden is "fairly easily met so long as other class members have claims similar
> to the named plaintiff." Moreover, "factual variations in the individual claims will
> not normally preclude class certification if the claim arises from the same event or
> course of conduct as the class claims, and gives rise to the same legal or remedial
> theory." . . . Even if the named plaintiffs' cases do exhibit different factual
> circumstances, each of them clearly arises "from the same event or practice or
> course of conduct that gives rise to the claims of the other class members and [is]
> based on the same legal theor[ies]." Specifically, all of the plaintiffs' contentions
> arise from St. Jude's design, manufacture, marketing, and sales of the Silzone valve.
> These contentions address the ultimate question in the lawsuit, and the Court finds
> that they satisfy the typicality requirement.

St. Jude Medical, 2003 U.S. Dist. LEXIS 5188 at *10-11; accord Schnall, 139 Wn. App. at 295.

> 4.    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of
>        Unnamed Class Members Because They Share the Class Members' Interests
>        in a Vigorous Prosecution.

Adequacy of representation requires that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Resolution of two issues

determines adequacy: "(1) that the proposed representative Plaintiffs do not have conflicts of

interest with the proposed class, and (2) that Plaintiffs are represented by qualified and

competent counsel." Dukes, 474 F.3d at 1233; see also Dal Ponte, 2006 U.S. Dist. LEXIS 57675

at *12-13. Here, plaintiffs have the same interests as all class members: to obtain a financial

recovery and other remedies resulting from defendant's unfair and deceptive marketing of its

new operating system. Further, the litigation to date provides substantial evidence that the

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 17
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

plaintiffs certainly are not in collusion with Microsoft and do not have any conflicts of interest

that would disqualify them from otherwise being adequate class representatives.

As to the adequacy of counsel, plaintiffs have retained attorneys willing and able to

prosecute this litigation vigorously. See Tilden Decl. ¶ 2; Smart Decl. ¶ 2; see also Dkt. 56 ¶ 5.7.

We hope that the handling of plaintiffs' case thus far has proven the point to the Court. See also

Johns, 145 F.R.D. at 484 (holding that court may rely on reputations of the attorneys).

## C.    Plaintiffs' Lawsuit May Be Maintained as a Class Action Under Rule 23(b)(3).

For class certification to be appropriate, the Court also must conclude that at least one of

three requirements of Rule 23(b) is met. Plaintiffs seek relief that includes money damages and

thus seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) contains the two further

requirements of "predominance" and "superiority." These requirements are satisfied here.

### 1.    Common Issues Such as Whether Vista Home Basic Is the "Real" Vista Predominate Over Any Individual Issues Such as Damages Calculations.

The predominance requirement is related to the commonality requirement of Rule

23(a)(2) and entails a "pragmatic inquiry into whether there is a common nucleus of operative

facts to each class member's claim." Clark v. Bonded Adjustment Co., Inc., 204 F.R.D. 662, 666

(E.D. Wash. 2002); accord Schnall, 139 Wn. App. at 298-99. The central question is whether

"unitary adjudication of common issues is economical and efficient" given all issues in a

particular suit. 2 Conte & Newberg, Newberg on Class Actions § 4.25 at 156 (4th ed. 2002). In

undertaking a "pragmatic inquiry" of this suit, the Court should consider the elements required

for a claim under the Washington CPA and unjust enrichment. Schnall, 139 Wn. App. at 288-92,

299-300. The CPA elements include: (1) unfair or deceptive acts or practices; (2) occurring in

trade or commerce; (3) public interest impact; (4) injury to plaintiffs in business or property; and

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 18
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

(5) causation. Id. at 288-89. Common proofs regarding the "common nucleus of operative

facts" will decide the dominant issues raised for each of the five elements:

- Whether Vista Home Basic is the "real" Vista (elements 1-5);

- Whether Microsoft maintained a common marketing strategy, e.g., its logo, of informing end-users that certain PCs were "Windows Vista Capable" when the PCs only could run Vista Home Basic (elements 1-5);

- Whether Microsoft's marketing, including its "Windows Vista Capable" logo, constitutes an unfair or deceptive act or practice in violation of the WCPA (element 1); and

- Whether plaintiffs and class members suffered cognizable injury caused by Microsoft's unfair or deceptive practices when, despite Microsoft's assurances, their PCs could not run the "real" Vista (elements 4-5).

Viewed in the context of the CPA elements, this case is paradigmatic of the Supreme Court's

observation that "[p]redominance is a test readily met in certain cases alleging consumer ...

fraud[.]" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). Plaintiffs' unjust

enrichment claim likewise depends on common proof of defendant's marketing conduct.

    "A single common issue" can warrant a finding of predominance. Manning, 914 S.W.2d

at 611; Schnall, 139 Wn. App. at 296-97. The test "is not whether the common issues outnumber

the individual issues, but whether the court and the litigants will concentrate most of their efforts

on the common or individual issues." Manning, 914 S.W.2d at 611. In Manning, a Texas court

of appeals affirmed certification of a nationwide consumer class action against Microsoft under

the Washington CPA, where plaintiffs claimed Microsoft was unfair and deceptive in the

marketing of a prior allegedly defective operating system. With respect to predominance,

Microsoft argued that the marketing and sale of the operating system by varying retailers and

OEMs, varying hardware and software configurations of end-users, and choice of law, raised

predominating individual issues that would overwhelm the litigation. Id. at 612. The court

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 19
No. C07-0475 MJP

disagreed. Id. It took a pragmatic approach and looked at the claim to be proved. Id. (noting,

for example, Microsoft sold product end-user acquired, regardless of arrangements with OEMs

and retailers). The "single common issue" in Manning that predominated over any individual

issue was whether Microsoft's operating system had a design flaw that could lead to data loss.

Id. Here, that "single common issue" is whether Vista Home Basic, in truth, can fairly be called

"Vista."

Predominance also was discussed in Dal Ponte, where the New Jersey district court

certified a nationwide consumer class under the New Jersey CPA. The court noted that, "given

the uniform pattern of improper conduct toward all proposed class members, common issues will

predominate the proof of these claims." 2006 U.S. Dist. LEXIS 57675 at *25. Microsoft's

alleged pattern of improper conduct—its marketing program and "Windows Vista Capable"

logo—is just as "uniform" (if not more so) as the "mass loan cancellation scheme" in Dal Ponte.

### a.    Individual Damages Issues Do Not Prevent Class Certification.

The exact amount of each class member's actual damages is an individual issue, but

having to prove individual damages does not preclude certification. Mortimore v. FDIC, 197

F.R.D. 432, 438 (W.D.Wash. 2000) (individual damages calculation does not diminish

appropriateness of certification where common questions as to liability predominate). Any

individual damages calculation would be necessary only after liability issues have been decided.

### b.    Choice of Law Issues Do Not Prevent Class Certification.

Any class action where plaintiffs seek to represent a nationwide consumer class with

claims arising under a state CPA will require addressing choice of law.  In this case, like others,

choice of law does not raise individual issues that will predominate. Mooney, 2007 U.S. Dist.

LEXIS 34530 at *5-19 (certifying nationwide consumer class, minus California, after finding

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Minnesota CPA and unjust enrichment law applies to all class members' claims); Dal Ponte, 2006 U.S. Dist. LEXIS 57675 at *14-25 (certifying nationwide consumer class after finding New Jersey CPA applies to all class members' claims); In re: St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig., MDL No. 01-1396 (JRT/FLN), 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) (re-certifying nationwide consumer class, after finding Minnesota CPA applies to all class members' claims); Clark, 798 N.E.2d at 131 (certifying nationwide consumer class after finding Illinois CPA and unjust enrichment law applies to all class members' claims).

First and foremost, choice of law is a "non-issue" if, as plaintiffs contend, Washington law applies to all class members' claims. See Pls.' Mot. for Application of Washington Law. If the Court concludes that Washington law applies to all class members' claims, then a single state law equally applying to all class members would provide yet another basis for certifying a nationwide class. Cf. Mooney, 2007 U.S. Dist. LEXIS 34530 at *5 (predominance follows from finding one state's law applies to each class members' claims).

Even if Washington law does not apply to the claims of non-Washington class members, choice of law does not present insurmountable obstacles to class certification. First, to the extent no actual conflict of law exists between the laws Washington and other states, the claims of class members from such other states may be adjudicated pursuant to Washington law "without further analysis." St. Jude Medical, 2006 U.S. Dist. LEXIS 74797 at *13 (no conflict with CPAs of 33 jurisdictions, including Washington). Indeed, in one nationwide class action, Microsoft has argued that there is no "reason to believe that claims under [the] New Jersey [CPA] cannot be adequately heard by courts in Washington, which has a very similar [CPA]." Tilden Decl., Ex. Q at 19 (emphasis added). The New Jersey court of appeals agreed with Microsoft. See Caspi v.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Microsoft, 732 A.2d 528, 532 (N.J. App. 1999) (holding "no reason to apprehend that the nature

and scope of consumer fraud protections afforded by the State of Washington are materially

different or less broad in scope than those available in this State").

Moreover, to the extent there are substantive conflicts with other jurisdictions' CPAs,

see, e.g., St. Jude Medical, 2006 U.S. Dist. LEXIS 74797 at *13 (noting 18 jurisdictions), the

predominance question would remain whether such other CPAs contain requirements that raise

"individual" issues and, if so, whether those issues "predominate" over the common issues. The

St. Jude Medical court concluded that the issues raised by other "conflicting" CPAs are the level

of intent, reliance, whether the state recognizes a private CPA claim, and whether material

omissions are prohibited. Id. at *14 n.4. None of these issues would require individualized

proof here.[5] Even reliance is amenable to common proof. As the Court noted in its oral ruling

on Microsoft's motion to dismiss, Dkt. 34 (Minute Order), even if reliance were a CPA element,

it would inhere in the very act of purchasing Microsoft's product. This is the same for all class

members. Moreover, reliance may be presumed or inferred on a classwide basis where, as here,

the claim arises from standardized conduct of the defendant. Grays Harbor Adventist Christian

Sch. v. Carrier Corp., No. 05-05437 RBL, 2007 U.S. Dist. LEXIS 31886 at *10-11 (May 1,

2007) (courts may presume classwide evidence of reliance where plaintiffs allege misstatements

---

[5] Indeed, whether these elements are required under any given non-Washington CPA would be yet another common legal question supporting certification. See, e.g., In re United Energy Corp. Solar Power Modules Tax Shelter Invests. Sec. Litig., 122 F.R.D. 251, 256 (C.D. Cal. 1988) ("[w]hether reliance must be shown is itself a common question"); accord Sharp v. Coopers & Lybrand, 70 F.R.D. 544, 548 (E.D. Pa. 1976); In re Data Access Systs. Sec. Litig., 103 F.R.D. 130, 140 (D.N.J. 1984). These common questions could be decided via motion.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

and omissions).[6]  Were it otherwise, the Supreme Court would have been profoundly mistaken

by holding predominance is "readily met" in consumer fraud cases.  Amchem, 521 U.S. at 625.

2.    **A Single Class Action in This Forum Is Far Superior to Many Smaller,
Individual CPA Claims in Many Forums.**

The superiority analysis of Rule 23(b)(3) "asks the court to balance, in terms of fairness

and efficiency, the merits of a class action against those of alternative available methods of

adjudication."  Dal Ponte, 2006 U.S. Dist. LEXIS 57675 at *26.  Rule 23(b)(3) lists four factors:

(A) the interest of the members of the class in individually controlling the
prosecution or defense of separate actions; (B) the extent and nature of any
litigation concerning the controversy already commenced by or against members
of the class; (C) the desirability or undesirability of concentrating the litigation of
the claims in the particular forum; (D) the difficulties likely to be encountered in
the management of a class action.

As compared with individual CPA actions by each of the hundreds of thousands, if not

millions, of class members, consideration of each factor favors class certification.  St. Jude

Medical, 2006 U.S. Dist. LEXIS 74797 at *21 ("It difficult for the Court to imagine how over

11,000 individual consumer fraud cases could be handled effectively against the defendant.").

Interest in individual control of the litigation appears very low, considering the amount at stake

for any one class member is small.  Counsel for plaintiffs are unaware of any similar suit brought

against Microsoft.  Tilden Decl. ¶ 3.  Further, concentrating the litigation in this forum is

especially desirable because the Court has become familiar with the parties' respective claims

---

[6] Accord Hamilton v. Ohio Savings Bank, 694 N.E.2d, 442, 456 (Ohio 1998) (proof of reliance may be
established "by inference or presumption" based on defendant's common conduct); In re Prudential Ins. Co. of Am.
Sales Pracs. Litig., 148 F.3d 283, 315 (3rd Cir.1998) ("presence of individual questions as to the reliance of each
investor does not mean that the common questions of law and fact do not predominate."); Cope v. Metro. Life Ins.
Co., 696 N.E.2d 1001, 1004 (Ohio 1998) ("existence of common misrepresentations obviates the need to elicit
individual testimony as to each element of a fraud or misrepresentation claim, especially where written
misrepresentations or omissions are involved. ... If a fraud was accomplished on a common basis, there is no valid
reason why those affected should be foreclosed from proving it on that basis."); Weinberg v. Hertz Corp., 116 A.2d
1, 7 (N.Y. 1986) ("once it has been determined that the representations alleged are material and actionable, thus
warranting certification, the issue of reliance may be presumed subject to such proof as is required on the trial").

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

and defenses by adjudicating the various motions thus far. It also is a convenient forum for Microsoft, whose headquarters are "only a few miles from th[e] courthouse." Dal Ponte, 2006 U.S. Dist. LEXIS 57675 at *27 (convenience of forum for defendant favors superiority finding).

Finally, given the nature of the common issues to be presented, this case presents no particularly difficult management issues. The parties agree the case can be tried in 10 days. Dkt. 21 ¶ 13; Dkt. 23 at 1. Even if the Court found multiple state CPAs apply, the "broad discretion" afforded by Rule 23(d) would empower it to employ any number of procedural innovations, such as separate jury instructions for additional CPA elements, special verdict forms, and subclassing for non-Washington class members with CPAs containing actual conflicts with Washington's CPA. Am. Timber & Trading Co. v. First Nat'l Bank of Or., 690 F.2d 781, 786-87 (9th Cir. 1982); see also St. Jude Medical, 2003 U.S. Dist. LEXIS 5188 at *33 (holding material state law variations, assuming single state law did not apply to all, would be amenable to "minimum number of subclasses"); Schnall, 139 Wn. App. at 299 (noting availability of subclassing and master's hearings); 3 Conte & Newberg, Newberg on Class Actions § 9.68 at 463 (4th ed. 2002) (applying "laws of multiple states to a common set of claims certainly has potential complexities, but, on analysis, procedures and litigation devices are available, in common usage, to render these tasks manifestly manageable for the court, the jury, and all the parties."). Indeed, devices such as special jury instructions and verdict forms are encouraged to avoid inconsistent results and maximize judicial economy. Newberg § 9.68 (citing Manual for Complex Litigation 3d).

## IV.    CONCLUSION AND PROPOSED ORDER

Plaintiffs respectfully request entry of an order: (a) certifying a class as defined above pursuant to Rule 23; (b) appointing the named plaintiffs as representatives of the class; and (c) appointing the undersigned attorneys as class counsel. A proposed order is submitted herewith.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 24
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 5th day of October, 2007.

GORDON TILDEN THOMAS & CORDELL LLP

By_____
    Jeffrey I. Tilden, WSBA #12219
    Jeffrey M. Thomas, WSBA #21175
    Michael Rosenberger, WSBA #17730
    Mark A. Wilner, WSBA #31550

KELLER ROHRBACK L.L.P.

By_____
    William C. Smart, WSBA #8192
    Ian S. Birk, WSBA #31431

Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 25
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant Microsoft Corporation

Stephen M. Rummage, WSBA #11168
Cassandra L. Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
Davis Wright Tremaine LLP
1201 Third Avenue Suite 2200
Seattle, Washington 98101-3045
steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Counsel for Defendant Microsoft Corporation
– Admitted Pro Hac Vice

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA 19109
ccasper@mmwr.com

**GORDON TILDEN THOMAS & CORDELL** LLP

By _____

Mark A. Wilner, WSBA #31550
Attorneys for Plaintiff
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mwilner@gordontilden.com

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 26
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292