1

```
 1              IN THE UNITED STATES DISTRICT COURT FOR
                 THE WESTERN DISTRICT OF WASHINGTON
 2                           AT SEATTLE

 3   DIANE L. KELLEY, et al.,              )
                                           )  Case No. C07-475
 4                    Plaintiff,           )
                                           )  Seattle, Washington
 5            v.                           )
                                           )  August 7, 2007
 6   MICROSOFT CORPORATION,                )
                                           )
 7                                         )
                      Defendants.          )
 8   _____)

 9                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MARSHA J. PECHMAN
10                 UNITED STATES DISTRICT JUDGE

11

12
     For the Plaintiff:          JEFFREY I. TILDEN, ESQ.
13                               JEFFREY M. THOMAS, ESQ.
                                 MARK ADAM GRIFFEN, ESQ.
14

15   For the Defendant:          STEPHEN M. RUMMAGE, ESQ.
                                 CASSANDRA L. KINDEAD, ESQ.
16

17

18

19

20   SUSAN A. ZIELIE
     Official Court Reporter
21   700 Stewart Street
     Seattle, Washington 98101
22
     Proceedings Recorded by Computer-aided Stenography.
23

24

25
```

1          SEATTLE, WASHINGTON; TUESDAY, JULY 7, 2007

2                         4:14 P.M.

3          THE COURT:  All right, Ms. Scollard, let's call the

4     case.

5          THE CLERK:  CR07-475, Anne Kelley, et al, vs. Microsoft

6     Corporation.  Counsel, please make your appearances.

7          MR. TILDEN:  Jeff Tilden, Jeff Thomas and Mark Griffin

8     for the plaintiff.  We have co-counsel behind the bar in the

9     courtroom as well.

10         MR. RUMMAGE:  Steve Rummage, Your Honor, for defendant,

11    with Cassandra Kinkead.

12         THE COURT:  Well, good afternoon.  Counsel, I've had an

13    opportunity to read Microsoft's motion to dismiss, plaintiff's

14    amended complaint, I've read the Kelley opposition and I have

15    read the reply.  I also was aware that you have stipulated the

16    fact that there will be no contract action, and so I thank you

17    for that and my clerks thank you for that.  I did not read nor

18    have I worked up those sections.

19         So I understand that you are allowed 20 minutes per side

20    for argument, and I believe I'm ready to hear you.  I really have

21    only one question for you, and that is the issue of standing.

22    And is the issue of whether or not this is a proper plaintiff who

23    has experienced all of the events appropriate to bring up in a

24    12(b)(6) motion, or should that be more properly reserved for

25    your certification motion.

1          MR. RUMMAGE:  Thank you, Your Honor.  Your Honor, I have

2     20 minutes as Your Honor just said, and I'd like to reserve five

3     minutes for rebuttal, if I could.  And, in the 15 minutes that

4     remains, what I'd like to talk about are two main topics, the

5     second of which we'll get into the area that Your Honor just

6     asked about, that is the implications or the inaction really

7     between this motion and the class certification issues.

8          The first thing I want to talk about today, Your Honor,

9     is the Magnuson-Moss Warranty Act and explain where the

10    plaintiff's claim on that falls short.  And that's a relatively

11    brief discussion.  After that, Your Honor, I plan to talk about

12    the more fundamental flaw in the complaint as we see it, which is

13    that the plaintiff alleges the plaintiffs now, since they've

14    amended to add one, allege only that they bought PCs that had

15    Windows Vista Capable stickers on them but they don't allege any

16    other connection with Microsoft or any conduct of Microsoft.  And

17    we believe that, as a result, the plaintiffs have not alleged

18    enough to show that they're entitled to relief under any of their

19    theories, and that the case ought to be dismissed.  And I'll get

20    into that standing question.

21          So let's first talk about the Magnuson-Moss claim.  It's

22    important, I think, to set the stage by realizing that that claim

23    is predicated entirely on three words.  The claim is that the

24    words Windows Vista Capable which appear on a sticker on a PC are

25    a written warranty under the act.  Now, we all agree, plaintiffs

1  and defendants both, that the act has three definitions for

2  written warranty, and there's only one that could conceivably

3  apply here, and that's the one that requires that the sticker --

4  any written warranty promise, and I quote, a specified level of

5  performance over a specified period of time.  So the key here,

6  Your Honor, is that phrase Over a specified period of time.

7          And we think that the available authority -- and,

8  admittedly, there's not cascades of authority -- but the

9  available authority makes clear that that is a durational

10  promise.  It is a promise that extends over a period of time.

11  When you look at the FTC regulation, what it says is that a

12  product information disclosure without a specified period of time

13  to which the disclosure relates is not a written warranty.  And

14  that's at 16 CFR Section 700.3A.  And then, when you look at the

15  only case that really talks about this with any substance, that's

16  the Skeleton case out of the Seventh Circuit, that court talks

17  about the distinction between what is and isn't a written

18  warranty under this provision and it makes the distinction that a

19  promise that a transmission will perform like a THM 350

20  transmission is not a warranty because it has no specified

21  duration of time.  But the same promise for the life of the

22  transmission would be a warranty because it would be for a

23  specified period of time.

24          In this instance, those three words, Windows Vista

25  Capable, have no specified period of time to which they relate.

1    No duration to which they relate.  The plaintiff's response to

2    this argument is not to stay that we're conceptually wrong, but

3    to say, Gee whiz, those three words have to have some temporal

4    content to them.  And so what they say is that in fact what that

5    promise is is that at the time of the Windows Vista release this

6    PC will run Windows Vista.  Well, Your Honor, that is not a

7    promise over a period of time, that is a promise at a period of

8    time, and speaks right to the distinction that the Seventh

9    Circuit makes in Skeleton.  So there's no durational content to

10   those three words on that sticker, and that in our view, Your

11   Honor, is dispositive of the Magnuson-Moss claim.

12        THE COURT:  Can it be for a moment in time?  In other

13   words, when you set it up?

14        MR. RUMMAGE:  I think not, Your Honor.

15        THE COURT:  In other words, how long does the statute

16   require?  Is it three moments, five moments, ten moments?

17        MR. RUMMAGE:  I would say, Your Honor, if it said for

18   three minutes, that would be okay.  And the reason why -- that

19   may sound absurd, Your Honor.  And the Seventh Circuit says that,

20   Gee whiz, this may sound absurd, but they say it's important to

21   honor whatever is in the statute, because the consequences that

22   attach to that are not simply that you can have lawsuits like

23   this, but there are a whole raft of disclosures that you have to

24   have if it is a written warranty.  And so people like Microsoft

25   or any other business has to know in a bright-line way, have I

1    just made a written warranty or not.  Because if I do, if I have,

2    I need to go through all those things that the regulation

3    requires; interestingly, among them, a specification of a period

4    of time to which the warranty relates.  And so I think applying

5    that bright line test, Your Honor, like it may seem like angles

6    dancing on a head of a pin, we get from one moment to three

7    moments, the reality is there has to be durational content.  And

8    if it doesn't meet that test, those our obligations under the act

9    don't kick in.

10          As a matter of common sense, Your Honor, when one looks

11   at those three words, there's not a one of us, even lawyers

12   though we may be, and look at that sticker and say that's a

13   warranty under the Magnuson-Moss Warranty Act.  It doesn't fit.

14   It's a square peg that they're trying to put into a round hole.

15          So, Your Honor, with that claim set aside for the

16   moment, I want to talk about the remaining issue, which we think

17   cuts across every one of the claims, cuts across the breach of

18   contract claim, though that's now disposed of, and that is the

19   deficiency in the claim that they have not alleged any connection

20   between the supposed misconduct of Microsoft and their own

21   damages for conduct.

22          I want to begin, Your Honor, with what the complaint

23   alleges.  And I want to do it more in chronological order than

24   the complaint presents it, because I think it's important.

25          The first thing they allege, chronologically, is that in

1  May of 2006, Microsoft conceived of a marketing plan that was

2  going to tell people that if they bought a PC, even if it was

3  loaded with Windows XP, it would be capable of running Windows

4  Vista when it was released.  They say that in March.

5       They then alleged in October of 2006, about the time

6  that program was implemented and still before either plaintiff

7  purchased a PC, they alleged that a Microsoft employee posted a

8  blog which they cite and describe in the their complaint.  And,

9  in that blog, there is listed four different versions of Vista,

10  and the gentleman explains that these two versions of Vista are

11  good for home users, and these two versions of Vista are good for

12  business users, and if you want a premium experience look for a

13  Windows Premium Ready sticker or certification or description on

14  the computer.  They allege that in their complaint.

15       Then they allege that the next month, in November of

16  2006, the following.  In November 2006, Ms. Kelley purchased a PC

17  to which a Windows Vista Capable sticker was affixed.  The PC she

18  purchased was not designated as Premium Ready, period full stop.

19  The only allegation in the complaint about Ms. Kelley.  She does

20  not allege that she read the sticker.  She does not allege that

21  she knew anything about what the sticker meant.  She doesn't

22  allege that she knew anything about Premium Ready PCs.  She

23  doesn't allege anything about whether she read or had any

24  background information about the PCs before she bought the

25  particular one she bought.  She has alleged only that she bought

1    a PC, and that somewhere out in ether there was a marketing

2    campaign by Microsoft, without any connection between the two.

3    And so the question is, can you do that?  Is that okay?

4         And, to talk about that, Your Honor, I want to march

5    through each of the three causes of action that we are talking

6    about in connection with this motion.  Actually, it's two causes

7    of action and one theory that runs through the two, one is

8    Consumer Protection Act, one is unjust enrichment, and one is the

9    theory that goes to Your Honor's question about whether she can

10   sue on an express upgrade theory without actually having herself

11   participated in the express upgrade program.

12        CPA first.  We all know, Your Honor, that under Hangman

13   Ridge, long ago, 20 years or so ago, the Washington Supreme Court

14   made clear that Consumer Protection Act claims requires

15   causation.  And the court said that that inheres in just nature

16   of the language of the statute.  The statute allows someone

17   injured in his or her business or property by a violation of the

18   statute to sue for actual damages.  Not restitution, not

19   statutory penalties, but actual damages.  And reading that

20   language, the court said a causal link is required between the

21   unfair or deceptive acts, on the one hand, and the injury

22   suffered by plaintiff on the other.

23        There's no causal link of that nature alleged.

24        Plaintiffs try to misdirect this by saying what we're

25   really trying to do is impose a reliance requirement.  The

1  interesting thing is, Your Honor, that is a good question, is

2  there a reliance requirement under the CPA.  But it's not a

3  question that's even presented by this complaint.  Why?  Because

4  they make no effort to allege any causal connection.  Not

5  reliance, not anything else.  They simply allege the purchase of

6  a computer and the existence of some marketing.

7          In talking themselves about what the causation

8  requirement might entail, they cite to pattern instruction

9  3.10.07, the jury pattern instructions.  Plaintiff has the burden

10  of proving the defendant's unfair or deceptive act or practice

11  was a proximate cause of plaintiff's injury.  Proximate cause, as

12  Your Honor's probably said hundreds of times, means a cause which

13  in direct sequence produces the injury complained of.

14          Your Honor, there's nothing in this complaint suggesting

15  that the unfair or deceptive act or practice of Microsoft in

16  direct sequence caused Ms. Kelley or Mr. Hansen any injury at

17  all.

18          And what's interesting, Your Honor --

19          THE COURT:  Can't you extrapolate that the purchase of

20  the machine itself is the injury?  In other words, they are

21  basically saying:  I bought this thinking it was Vista ready and

22  it's not.

23          MR. RUMMAGE:  But, Your Honor, what Your Honor just said

24  just perfectly embodies the flaw in the complaint, they do not

25  allege and they studiously avoid allege saying:  I bought this

1    thinking.  They just said:  I bought this.

2          And if what they had alleged, Your Honor, was:  I saw

3    the sticker and I bought this thinking it was Windows Vista

4    Capable, we might have a very different motion.  But not in the

5    complaint and not in the opposition do they go that far.  They

6    are very, very careful to avoid ever saying that.

7          That's why when I read, Your Honor, the allegation

8    concerning the purchase of the computer by Ms. Kelley, I said

9    full stop, because that literally is it in the complaint in terms

10   of the allegation concerning her.

11         And it's particularly telling, Your Honor, that when

12   they argue this in their papers and they talk about causation,

13   they say that class members -- remember, this isn't a class

14   action yet -- class members received assurances from Microsoft

15   and falsely were led to believe that Windows Vista Capable meant

16   something other than what they got.  But they don't allege that

17   Ms. Kelley was.  And they don't allege that Mr. Hansen was.

18         THE COURT:  Well, it is a fair extrapolation to say

19   class members, if we don't have a class but if they consider

20   themselves part of that group, that the group, you know, that's

21   how they're saying to you we were deceived because we are a

22   member of that class.

23         MR. RUMMAGE:  Your Honor, I don't think it is a fair

24   extrapolation, and the reason I don't think it's a fair

25   extrapolation is that they've been given so many opportunities to

1   say it, and they decline to.  And these are good lawyers on the

2   other side.  They know that if that got them past this motion, it

3   wouldn't be very hard for them to say that.  And they've been

4   very scrupulous about avoiding it.

5           I would say, Your Honor, this is a case very comparable

6   to Rolo, which is one of the cases that we cite in our brief, a

7   Third Circuit case.  And that's a case that involved alleged

8   deception in not the sale of software or hardware but in the sale

9   of real estate.  And the Third Circuit point outs that, look it,

10  they make all these allegations about deception and fraud in

11  connection with the marketing of this real estate, and they

12  allege that people were deceived, and then they allege that we

13  bought the real estate.  But they don't allege that middle part

14  for themselves, they don't allege:  We were received.  The court

15  says:  You know, a class action complaint before a class is

16  certified is just an individual complaint and you can't rely on

17  the allegations for the other people; you have to rely on the

18  allegations as to yourself.  Because you don't have a personal

19  claim, your claim is dismissed.

20          And I think the same is true here.  As I said, Your

21  Honor, it would be easy enough for them to do it, it would have

22  been easy enough for them to say it.  But they haven't, and

23  they've studiously avoided it.  So, for that reason, Your Honor,

24  we think they have not alleged anything pertinent to causation

25  under the CPA, and therefore it should be dismissed.

1          The unjust enrichment argument is slightly different.

2   But, at some level, it's an argument that follows from the way

3   they've argued this in their opposition.  Because the point of

4   their enrichment, what they say was the enrichment to Microsoft,

5   is that Microsoft received -- and I think this is a quote -- more

6   XP licenses and additional upgrades than it would have without

7   the marketing program.  So, in other words, it's saying:  You

8   were going to sell some XP licenses anyway, you were you going to

9   sell some upgrades, because of the marketing program you sold

10  more.  Which is another way of saying:  We got one body of people

11  who were going to buy anyway, and then we got another body of

12  people who were induced to buy because of this market.  That's

13  the theory.  And they say, as to this second group of people,

14  enrichment is unjust.

15          But again, Your Honor, they never say which category of

16  people Ms. Kelley or Mr. Hansen fall into.  Were they among the

17  people that were going to buy anyway, or were they among the

18  people who were prompted to buy by virtue of the supposed

19  deceptive marketing campaign?  Plaintiffs don't say.  And that,

20  under their own theory of what constitutes unjust enrichment,

21  means they haven't alleged unjust enrichment.

22          And that brings me to the final one, which is the

23  express upgrade program, which I think goes right to Your Honor's

24  question about is it a standing issue that's appropriate for

25  class certification or is this a 12(b)(6) issue.

1          I think the standing issue -- let me first explain the

2    argument, and then we'll segue into how that affects the class

3    certification issues.

4          With respect to the express upgrade program, that was a

5    particular feature that the plaintiffs allege in their complaint

6    in paragraph 8.2, and they allege in the complaint that there

7    were certain class members who were subjected to the express

8    upgrade program and the alleged deception associated with that.

9    But they are very careful to say, in two sentences -- the first

10   sentence they talk about what Ms. Kelley and Mr. Hansen did, and

11   in the second sentence of paragraph 8.2 they talk about the class

12   and the express upgrade program.  So they have no allegation that

13   these two people participated in that program, and yet they

14   purport to base causes of action upon it.  And, Your Honor, that,

15   we believe, too, falls short of stating a claim, any claim,

16   related to the express upgrade program.

17         Now, their response to that goes right to the class

18   issue.  They say:  Geez whiz, even though we don't have a claim,

19   it's similar to the complains we do have, and we think our claims

20   remain typical of the absent class members.  Your Honor, that may

21   be an issue that we get to when we get to class certification.

22   They may try to define the class to encompass people like that.

23   And, that's fine, we'll argue about that then.  And I happen to

24   think that we ought to win that argument.  But, for today, the

25   argument is not about typicality, it's not about standing, as

1    Your Honor put it.  It is about whether these people have alleged

2    the elements of a claim.  And, they have not, because they have

3    not alleged the causal connection.

4         Your Honor also referred to the standing.  And I think,

5    Your Honor, standing can be raised on a 12(b)(6) motion just as

6    well as the absence of elements of a claim can be raised on a

7    12(b)(6).  If the face of the complaint does not show standing,

8    then it's appropriate to resolve that on a 12(b)(6).

9         Now, Your Honor, I think my time is probably nearly up.

10   I think the summary of all of this is that the whole complaint

11   rests on the premise that there was supposedly misleading

12   advertising or marketing in the air, which is a concept that

13   Justice Cardoza used years ago when he said:  Negligence in the

14   air will not do, it has to be negligence toward a person.

15        And, here, Your Honor, I would say misrepresentations or

16   deception in the air won't do.  They have to show that those

17   misrepresentations or deception affected them, affected their

18   conduct.  And, if they don't, they don't have a claim.

19        I couldn't resist going through this whole argument and

20   not referring to Twombly, so I'll close by referring to Justice

21   Suter's opinion in *Bell Atlantic vs. Twombly* where he said:  The

22   plain statement required by Rule 8A must possess enough hest to

23   show that the pleader is entitled to relief.  And I like that

24   phrase, enough heft.

25        And I think, if you read through this complaint, there's

1    not enough heft to show that Ms. Kelley or Mr. Hansen, if they

2    prove what they allege in the complaint, are going to be entitled

3    to relief.  And that, we believe, entitles us to a dismissal

4    under 12(b)(6).

5              THE COURT:  Thank you, Mr. Rummage.  Mr. Tilden.

6              MR. TILDEN:  Your Honor, I have some demonstratives.

7    May I approach the Court?

8              We necessarily are required to over-prepare, and I don't

9    expect I will use all of those.

10             Let me address the Court's initial question directly.

11   And, as a threshold matter, I agree with the next to last

12   statement of my colleague, Mr. Rummage, we have no theoretical

13   objection to the Court's addressing the standing issue as a

14   12(b)(6) matter.

15             THE COURT:  Excuse me, Mr. Tilden, did you mean to hand

16   up to me Microsoft's motion to dismiss plaintiff's amended

17   complaint?

18             MR. TILDEN:  I did.  I believe it's only three pages,

19   annotated by me.

20             THE COURT:  Got it.  I thought that you were handing me

21   your copy.  Go ahead.

22             MR. TILDEN:  I gave you the pretty one and kept the

23   Xerox for myself.

24             THE COURT:  Okay.  Very good.

25             MR. TILDEN:  We have no quarrel with the notion as an

1    abstract proposition that standing can be decided as a 12(b)(6)

2    matter.  Obviously, the facts would have to be clear, and there

3    would be no conceivable dispute about them.  But, were that the

4    case, we don't have a problem with that result.

5          If we could direct the Court to only one case or place

6    to look on the standing issue, we would direct the Court to the

7    *Dukes vs. Welmark* decision, a recent Ninth Circuit case.  And

8    Dukes relies in large part significantly several times on chapter

9    3.13 of Newberg.  And, when you read Dukes and when you read

10   Newberg, what you learn is that no named plaintiff need satisfy

11   every element of every cause of action, that there must be some

12   reasonable overlap.

13         We believe there is a reasonable overlap here, and we

14   believe as a 12(b)(6) matter that has got to be decided in the

15   plaintiff's favor today.

16         Dukes itself involved -- this was the female Walmart

17   employee case which is still in the Ninth Circuit.  Dukes

18   involved a contention that a group of named plaintiffs, all of

19   whom were hourly but for one low level salaried employee,

20   couldn't possibly be reasonable representatives of among others,

21   the upper level salaried employee women.  And the Ninth Circuit

22   didn't have any problem concluding that wasn't the case.

23         Here, we will show, when the time comes, that the

24   computers bought were the same, that the promise given was the

25   same, that the route that you took to get from your computer to

1  the promise given was slightly different but not materially

2  different.

3          Does this present a question for Mr. Rummage for another

4  day?  I suppose it does.  But, as a 12(b)(6) matter, we think the

5  law, and in particular the cases in 3.13 of Newberg, pretty

6  handsomely demonstrate that on this motion now we should prevail.

7          I'll address, if it's Twombly/Bell Atlantic briefly, and

8  then move on.  The 12(b)(6) standard is not something that --

9  it's not a subject about which I can educate the Court at all.

10  But Bell Atlantic is interesting for this reason.  The plaintiffs

11  were intellectually honest in the Bell Atlantic case, and they

12  walked in the court and they said:  We believe that a conspiracy

13  has occurred based solely on parallel conduct.  And we believe

14  based on the parallel conduct that there must have been a

15  meeting, it must have had attendees, it must have taken place in

16  a physical place and time, and they must have said things back

17  and forth, as a result of which the conspiracy developed.  But

18  they had to evidence whatsoever of the meeting.  And they did not

19  allege any.  And that is why the Bell Atlantic/Twombly by case is

20  7-2.  No allegation of the conduct at issue.  No conduct alleged.

21  None.

22          We don't have any problem with the Twombly result, and

23  we believe it should have been 9 to nothing.

24          What have we alleged here?  We have alleged that

25  Microsoft orchestrated a program, Microsoft designed the sticker,

1    caused it to appear on computers.  They went out in to trader

2    commerce, people bought them, and were damaged as a result.  We

3    know the computer, we know who did it.  We don't know the person,

4    but we know the entity.  We know the buyers.  We don't know all

5    their names, but we can define who they are.  So the tort here is

6    fully alleged.  The Twombly tort wasn't alleged at all.  So we

7    don't believe there's any teaching on the 12(b)(6) front that's

8    important for the Court here.

9          I would like to talk about Magnuson-Moss and the

10   Consumer Protection Act, and then I'll be quiet.  Mr. Rummage

11   said he didn't -- and I'll -- I think it's easier to address

12   Consumer Protection Act first.

13         He said that their brief or their argument did not raise

14   reliance, but then it was all he talked about.  No showing that

15   Diane Kelley had read the sticker, that Mr. Hansen understood

16   what the sticker meant, that either of these people went out and

17   did anything.  The question for the Court is, is reliance

18   required in Washington on a Consumer Protection Act case?

19         I'll be very brief.  One, this issue is in the Supreme

20   Court now in a case called Indoor Billboard vs. Integra Telecom.

21   It has been briefed, it has been argued, and we are awaiting for

22   an opinion.  So someone out there is going to let us now

23   definitively at whatever pace the Supreme Court issues a ruling.

24         Two, do we have a sense of what the ruling is going to

25   be?  We do.  We have five dato points that tell us what the

1    ruling's going to be.  Every one of them clearly rejects the kind

2    of individual reliance that Mr. Rummage just demanded of us.

3          Picket I, Picket vs. Holland America, these are people

4    that paid $4,000 for a cruise, and Mr. Rummage would impose on

5    them the requirement that they say:  Oh, no, $25 is too much in

6    port expenses, I want my money back.  Division I looked at that

7    and said:  You don't have to ask for your money back, you don't

8    even have to know about the expense, you don't have to show any

9    reliance at all.  That's Picket I.

10         Robinson vs. Avis Rent a Car system, similar disclosure

11   of a fee at a rent-a-car contract.  No individual reliance

12   required.  Don't have to read it.

13         Pierce vs. Novastar Mortgage, this is Judge Brian case

14   from 2006, similar result.

15         Stevens vs. Omni Insurance Company, Division I, April of

16   this year.

17         And then *Schnall vs. AT&T*, June 18th of 2007.  AT&T

18   involved a uniform or unified connector charge.  You get your

19   phone bill, and it's got a zillion entries on it you, and don't

20   know what they all mean.  Although, some of them say Tilden

21   called Smith on this day, that part you can figure out.  There's

22   a UCC charge on the phone bill.  And the argument is that not all

23   of it is a proper charge.  AT&T defended saying these people

24   didn't read the bill, they didn't know what a UCC was, they said

25   they didn't care, are you telling me they would have complained?

1    And Division I said you don't have to show any of that because

2    individual reliance isn't necessary.

3         If individual reliance -- incidentally, the Attorney

4    General's Office filed an amicus curiae brief in the AT&T Schnall

5    case, arguing that the Consumer Protection Act would be gutted if

6    individual reliance were necessary.  So we have a handy call

7    league in our corner on this very issue.

8         What do we allege on the causation front?  Microsoft

9    defined the terms of this market, you're going to get this

10   Windows Vista Capable machine and at some point in time in the

11   future -- and we'll talk about that in a second -- you're going

12   to receive the remainder of this promise.  Then they didn't

13   deliver the promised product.

14        Robinson vs. Avis Rent-a-Car says injury and causation

15   are established if the plaintiff loses money because of

16   defendant's unlawful conduct.

17        Well, every plaintiff in this class and both -- punitive

18   class and both named plaintiffs have lost the benefit of their

19   bargain because they do not have what Microsoft told us we would

20   get.  The Windows Vista Capable boxes we have deliver by one

21   pedigree count zero of 17 important Vista features.  0 for 17.

22        Every trade or commerce event involves an exchange of

23   the form of bird in the hand is worth two in the bush.  Or two

24   birds in the hand is worth three in the bush.  In the hidden fee

25   cases, the argument is I gave you two birds, the basic cost for

1  the cruise and the extra 25 bucks, for the bird or two in the

2  bush, and I should have only given you one bird.

3         Here, the contention is we delivered our bird in the

4  hand, the money, and we should have gotten two in the bush, we

5  should have gotten a box and a box that was upgradeable to the

6  real Vista.  We did not get the second bird in the bush.  That is

7  a benefit of the bargain damage, it's real, every class member

8  got it or sustained it, and we sustained it because Microsoft did

9  not deliver it.

10        The Magnuson-Moss Act question, Your Honor, is a fun

11 one, as a legal proposition.  If we were in law school, sitting

12 around talking about what we'd learned today, this might be first

13 on our list.  I've got a hand-out here of the statutory language,

14 and I'd like to go through it real kick.

15        THE COURT:  Can you focus real quick, Mr. Tilden?

16        MR. TILDEN:  No, is the answer.

17        THE COURT:  Have you given that in the packet to me?

18        MR. TILDEN:  Yes.

19        THE COURT:  I see.  Thank you.

20        MR. TILDEN:  Have I done better here?

21        THE COURT:  Yes, you have.

22        MR. TILDEN:  What does the law require?  Any written

23 affirmation of fact.  We make no apology for the fact that this

24 warranty does not look like most.  Most warranties look fancy

25 because, we hypothesize, the manufacturer wants to charge more

1  money for the warranties.  This warranty doesn't look like most,

2  but does it satisfy the parameters of the act?  Yes.  Any written

3  affirmation of the fact that a computer is Windows Vista Capable

4  of an affirmation of fact.  Made in connection with a sale of a

5  product, consumer product.  A personal computer is a consumer

6  product.  By a supplier to a buyer.  No dispute.  Which relates

7  to the nature of the material or workmanship.  Well, Windows

8  Vista Capable relates to the nature of the computer.  Affirms or

9  promises that such material or workmanship is defect-free or will

10  meet a specified level of performance.  What Microsoft is telling

11  us -- and we'll get to this in detail on the next page or the one

12  after -- from the date of purchase, this machine is capable of

13  running Microsoft's new Vista operating system when it's

14  released, that refers to a specified level of performance.  The

15  specified period of time is the date of purchase through Vista's

16  release.

17        What have we heard here?  We've heard that we don't

18  satisfy 16 CFR 700.3, a written affirmation of fact or a written

19  promise of a specified level of performance must relate to --

20  doesn't say identify, it doesn't say include two dates, it only

21  says relate to -- a specified period of time.

22        Microsoft has told us in their response to our requests

23  for Admission No. 43, and I've attached the response behind

24  this -- Microsoft admits only that Windows Vista Capable logo was

25  intended in part to encourage consumers not to delay their

1    purchases of new PCs until their release.  They have identify the

2    period of time, from the date of purchase until the release.

3         Let's go to the sticker and let's analyze the question

4    that has to be resolved on a 12(b) motion.  What does the sticker

5    mean?

6         There's an example in the Microsoft brief, and I'd like

7    to begin with that.

8         How much time do I have left, Your Honor?

9         THE COURT:  You have about five more minutes.

10        MR. TILDEN:  Okay.  I'll finish on time.

11        The example they use is one --

12        THE COURT:  I'm sorry, Mr. Tilden, you've got eight

13    minutes left here.

14        MR. TILDEN:  They take an example from I believe the

15    CFRs, a refrigerator has an energy efficiency rating of 10.0, is

16    that a warranty.  No.  Well, let me back up.  It's a warranty.

17    Is it a Magnuson-Moss warranty?  No, it's not.  It makes no

18    future promise at all.  If the refrigerator that is the subject

19    of this statement degrades tomorrow and now has an energy

20    efficiency rating of 9.0 tomorrow, does that contradict the

21    statement made?  No.  If it breaks tomorrow, does it contradict

22    the statement made?  No.  If refrigerator state-of-the-art

23    changes tomorrow and suddenly an energy efficiency rating of 20.0

24    is what everybody wants, does this contradict the statement made?

25    It doesn't.

1          Microsoft's statement here, Windows Vista Capable.  Your

2     Honor, in order to address the question on a 12(b)(6) motion

3     whether or not this statement a Magnuson-Moss Warranty, we have

4     to know what the words mean.  Microsoft, for starters, needs to

5     tell us everything it thinks the words mean.  Microsoft has

6     studiously avoided telling us what it believes the words mean.

7          For purposes of a Magnuson-Moss warranty analysis, the

8     Court has to impute to these words everything that a reasonable

9     person would impute to them.  Nothing unreasonable, but

10    everything that a reasonable person would impute to them.

11         What are the things that a reasonable person would

12    impute if you got a computer with a sticker on it that says

13    Windows Vista Capable?

14         First thing you would assume is that the computer will

15    run Vista when it is released.  We believe any reasonable

16    purchaser would think that.

17         The second thing you're going to assume is that,

18    whatever Windows Vista is, it's coming out pretty soon.  People

19    wouldn't put a sticker on it if it were coming out in 2017.

20    That's especially the case in the computer field.  I don't know

21    anything about computers, and I think I've told the Court that

22    before.  And, if I haven't told you, I'm sure I've demonstrated

23    it in the courtroom.  I have had the experience of trying to take

24    my computer to both the school district and Good Will.  One of

25    them told me they didn't want it because of the elements in it,

1  the other told me they didn't want it because it was obsolete and

2  they had no use for it.  So I took my hard drive, the box, and I

3  threw it in the garbage.  No one wanted my computer.  More's law

4  had made my computer obsolete; it would not run the games my

5  children wanted.

6          THE COURT:  And Mayor Nichols might not like the fact

7  that you did that.

8          MR. TILDEN:  Not my first sin.

9          And I threw it in the garbage a long time ago.  But I

10  did throw it in the garbage.

11          Everyone's fear with their computer is they'll become

12  obsolete.  Windows Vista Capable is telling you that, whatever

13  Vista is, it's going to come out at some point before your

14  computer is obsolete and some point reasonably soon.  Could

15  Microsoft encourage OEMs to put this sticker on a computer and

16  then announce that Vista was coming out ten years from now?  No.

17  Could they announce Vista was coming out in a week?  Sure.  Where

18  between a week and ten years is the line?  I don't know, that's

19  why we have courts.  But there is a time content to this sticker

20  that is not present on the face of the words, and any reasonable

21  person would interpret it that way.

22          The last one is the point, though, that's most important

23  for us.  Between the date of purchase and the date of release of

24  Vista, this computer will not be rendered obsolete by losing its

25  Vista capability.  That is the promise made here.  And the way we

1   know that is inherent in this statement is this.  Assume that the

2   period is four months that a plaintiff buys -- both plaintiffs,

3   every member of the class -- bought their computer on day 1, and

4   Vista's released on day 120, or would have been.  All the

5   computers on day 1 have this sticker.  If Microsoft on day 60

6   announced that they have an even better, neater, cooler Vista

7   that's going to come out instead, because they've been working

8   real hard and they're all really smart, but it requires twice as

9   much RAM and a different box, could Microsoft do that?  Well,

10  they can do it.  Would it be a tort?  Sure.  Because they've

11  already flooded the market with people who own this box and have

12  been told their computer is Windows Vista Capable.

13          And it is that promise that Microsoft has breached here.

14  That is the warranty, the promise that your box will remain

15  Windows Vista Capable throughout that period, and that's the

16  breach.

17          Let me check my notes, I think I'm done.

18          (Pause in Proceedings.)

19          MR. TILDEN:  I am done, Your Honor, with one comment.  A

20  portion of the Microsoft attack is directed at our theories or

21  the underlying facts.  A portion of it, however, is directed at

22  the words in the complaint.  I won't take the Court through the

23  words in the complaint, but we believe each theory is thoroughly

24  pleaded in there, and I' happy to address that at any length the

25  Court wishes.

```
 1           THE COURT:  Thank you, Mr. Tilden.

 2           Mr. Rummage, rebuttal.

 3           MR. RUMMAGE:  So much to say, so little time.  I have

 4   three main points, Your Honor.

 5           First of all, I'd like Your Honor to disregard what Mr.

 6   Tilden handed up, because obviously some of what he handed up are

 7   recent discovery responses, outside the pleadings, outside the

 8   scope of the 12(b)(6).  It would have been just as improper for

 9   Your Honor to get from me a copy of the discovery responses we

10   received yesterday which some of which bear upon our arguments

11   here.

12           THE COURT:  I'm not sure exactly what you are --

13           MR. RUMMAGE:  In particular, Your Honor, the first page

14   was produced in discovery, the response to the request for

15   admissions were produced in discovery.

16           THE COURT:  You mean, the sticker itself?  I shouldn't

17   look at the sticker itself?

18           MR. RUMMAGE:  I don't have an objection to the sticker

19   itself.

20           MR. TILDEN:  It's requests for admitted No. 43, Mr.

21   Rummage has a legitimate point.  I got -- I forgot all about we

22   were here on a 12(b)(6) motion.  It's request for admission No.

23   43, that's a fair observation.

24           THE COURT:  Well, that's not one of the things -- hold

25   on.  What I looked at is what does the statement mean.  I'm
```

1  assuming that's pure argument of Mr. Tilden's.

2          MR. TILDEN:  Correct.

3          THE COURT:  And I looked at Magnuson-Moss Act statutory

4  analysis, and I'm sure that's pure argument on the part of Mr.

5  Tilden.

6          MR. RUMMAGE:  Right.

7          And the next page, Windows Vista Capable relates to a

8  specified period of timed as a response to requests for admission

9  as the centerpiece.

10          MR. TILDEN:  We'll withdraw that.

11          MR. RUMMAGE:  I don't know whether Your Honor intended

12  to take those back to chambers, but some of the other materials

13  in that stack are discovery materials.

14          THE COURT:  All right.  Well, we'll limit ourselves to

15  the sticker and the two argument pages.

16          MR. RUMMAGE:  Outstanding.

17          So, with that, Your Honor, let me respond on the

18  Magnuson-Moss claim, and I don't think it takes very long.

19  Because the one word that Mr. Tilden didn't underscore and that

20  he kept dancing around was the word specify.  It's not just that

21  it has to promise performance over a period of time, it has to

22  promise performance over a specified period of time.  That's an

23  important word.  Congress didn't put those words in there by

24  accident.  There's no period of time specified in those three

25  words.  Mr. Tilden can tease it out, but you can equally tease

1    out period of time in any of the other examples he gave,

2    including an efficiency rating for a refrigerator which the FTC

3    specifically says is not a warranty.

4         THE COURT:  Mr. Rummage, Mr. Tilden argues that you take

5    the sticker and you put it on the computer, and that the -- and,

6    if I understand his argument correctly, the combination of the

7    two make the statement.  In other words, you don't put it on

8    something that's going to be obsolete in X amount of time.

9         MR. RUMMAGE:  Nor would you put an efficiency rating on

10   a refrigerator that will not have that rating tomorrow.  And that

11   was the example he gave, Your Honor.  If Your Honor agrees

12   with -- I'm sorry to interrupt.

13        THE COURT:  He uses the example refrigerator has energy

14   efficiency rating of 1.0.  That's a pure statement.  Either it

15   does or it doesn't.

16        MR. RUMMAGE:  So too, Windows Vista Capable is a pure

17   statement, either it is or it isn't at the moment in time it's

18   given.  Both of those statements have exactly the same temporal

19   quality.  When I buyer the refrigerator, Your Honor, I could

20   careless whether it has that efficiency rating as it sits on the

21   retailer's floor, I want to know if it's going to have that

22   efficiency rating when it's in my house.

23        THE COURT:  That's the problem, isn't it?  Because, at

24   the time these were purchased, Vista wasn't out.

25        MR. RUMMAGE:  My point is, they are two sides of the

1    same coin.  If Your Honor says that this is a promise of

2    performance over a specified period of time, so too is the

3    performance standard with respect to the refrigerator that the

4    FTC specifically has said is not.  Why?  Because it doesn't have

5    a specified period of time.  Maybe we all can think about what in

6    common sense the period of time might be, but the statute doesn't

7    say that.  The statute says a specified period of time.  And so,

8    if the retailer or manufacturer does not specify the period of

9    time, under the statute, it just doesn't fall within.

10         And, again, I go back to the point of what the Seventh

11   Circuit was saying on this, which is you need a bright line rule

12   so that people know whether to comply with the act or not.  And,

13   if it's not going to be a specified period of time, there's a lot

14   of people out there in a world of confusion.

15         THE COURT:  The only question I have for you here, Mr.

16   Rummage, is that, can the specified period of time be taken from

17   the context?

18         MR. RUMMAGE:  No, Your Honor, because that's not

19   specified.  Then it becomes a contextual inference, implication,

20   however one wants to look at, but it is not specified.  Specified

21   means it says the period of time.  And that, I believe, is

22   exactly what Skeleton says in the Seventh Circuit opinion.  And I

23   believe that's exactly what the FTC is getting at.  And it would

24   not be a bright line rule, Your Honor, if it were something that

25   one could tease out of the circumstances.  So it seems to me that

1    it's answered on the face of the statute.

2            What I would like to now briefly turn to, and I guess I

3    have probably 10 seconds left at this juncture, but the question

4    of causation.  I think it's important to understand that Mr.

5    Tilden again is trying to recast what we argue.  We are not

6    arguing reliance.  I happen to believe, as the person who argued

7    Picket I and Picket II, that my data points of what the supreme

8    courts intends to do about this are pretty decent.  And I believe

9    at the end of the day they will stick with causation as we have

10   described to Your Honor today.  And that means that reliance can

11   establish causation.  The Court typically in dodging this

12   question in the past in Picket II has left open the possibility

13   that there may be some other way to establish causation.  But Mr.

14   Tilden hasn't come forward with what that other way might be.

15   What he said to Your Honor is:  Here's what we say about

16   causation.  And he said:  Microsoft promised this, promised that

17   it would run Vista, and it doesn't run Vista, and that was the

18   benefit of the bargain.

19           That's not the way the Consumer Protection Act works.

20   That's the way it a breach of contract claim works, which they

21   have withdrawn.  Benefit of the bargain damages are an alien

22   concept.

23           Here, they have alleged that we did have a marketing

24   campaign about Windows Vista.  They have alleged that we had

25   plastered on the web the fact that different experiences were

1    associated with different versions of Windows Vista at different

2    price points, and they have alleged they bought a PC.  That is

3    not something that pushes this claim across the threshold.  It's

4    not something that gives it heft, because they do not have

5    embedded within those allegations anything to suggest that these

6    individuals were responding to something that turned out to be

7    false or misleading.  They just say they bought a computer.  And,

8    as Your Honor sits there today and reads that complaint, Your

9    Honor has no idea whether they bought a computer because they

10   needed one and this is the computer they wanted, or whether they

11   thought it was going to be a Windows Vista Capable and that

12   Windows Vista Capable meant that not just that it could run

13   Vista, because Your Honor knows and they have conceded it runs

14   Vista, but that it doesn't run the version of Vista that they

15   wish it did.  That's the gist of the complaint.

16          And, indeed, when one looks at the web site, there's no

17   other way to characterize it.  Because the web site makes clear

18   that there were different versions of Vista with different

19   experiences associated with it.

20          Without them alleging, Your Honor, that there was some

21   link between something we did that was wrong or misleading or

22   deceptive, they are not entitled to be in this court, taking up

23   Your Honor's time or taking up our time.  They need to allege

24   that there is a connection, a causal link between the conduct at

25   injury.

1        With that, Your Honor, we ask the Court to dismiss under

2    12(b)(6).  Thank you.

3        THE COURT:  All right, counsel, I know that we have very

4    carefully -- and I know I hammered on you very hard -- to come up

5    with a very strict timeline for how fast you have to do things.

6    So I am going to rule partially from the bench today so that you

7    understand where this is going.

8        First of all, on the issue of what I call standing or

9    whether each individual plaintiff must come under the same set of

10   facts, that is an issue for your certification.  And I'll revisit

11   that issue when we have that then.

12       Turning to the Consumer Protection Act claim, which is a

13   state claim, I'm much more familiar with the whole series of

14   cases coming out of the state court, and obviously we've all

15   followed them since Hangman Ridge.  And I believe that the

16   plaintiffs, using the very minimal pleading standards in these

17   circumstances, have pled enough.  And that, if I am a betting

18   woman, I am assuming that the Supreme Court is basically going to

19   say you go in and buy a computer and you don't specifically have

20   to say that you were deceived by this particular fact.  And,

21   therefore, their act of purchase covers their reliance and their

22   causation.

23       As to the Magnuson-Moss Act, I'm going to need to go

24   back and take a look at the cases, keeping in mind your

25   arguments.  I'm not ready to tell you where I'm coming out on

1   that.

2        The area that I have the most problems with is the point

3   in time, and that's where I need to go back and read the case and

4   see where we are.  It's not a statute that comes up all the time

5   for me, so I need to take a look carefully at that time.

6        As to the unjust enrichment, that also survives as a

7   claimed statement of what happened and the result, and I believe

8   that that is all that's necessary to move us along.

9        So, as to the Magnuson-Moss Act, you should look for a

10  written opinion on that issue probably in about two weeks.  But I

11  think that the other rulings should keep you chugging along, or

12  is that a problem of bifurcating them in that way?

13       MR. RUMMAGE:  No, Your Honor.

14       MR. TILDEN:  None here.

15       I take very seriously Mr. Rummage's point regarding the

16  hand-out is an excellent one, and I would like the opportunity to

17  clean those up, and I'm happy to do that now.

18       THE COURT:  Okay.  We'll give you those back, and how

19  about if you just take the pages that are remaining, and those

20  will be the only ones that we'll look at or consider.  And we'll

21  move on from there.  And I obviously will limit myself to the

22  pleadings themselves and what's here.

23       Now, how are you coming on everything else?  Are things

24  moving along, are you on your timetable?

25       MR. TILDEN:  So far so good, Your Honor.  Is that fair?

1        MR. RUMMAGE:  I think that's basically right, Your

2   Honor.

3        THE COURT:  Okay.  Don't wait until things go south

4   before you come tell me that there's a problem.

5        MR. RUMMAGE:  They have not gone south, that's for sure.

6        THE COURT:  All right.  Because I'd much rather have you

7   come tell me, and have me be part of helping you work it out,

8   than telling me after the fact.  Asking permission is better than

9   pleading for forgiveness; okay?  Have a nice evening.

10        (5:06 p.m., Proceedings Concluded.)

11

12                            CERTIFICATE

13

14

15        I, Susan A. Zielie, Official Court Reporter, do hereby
     certify that the foregoing transcript is correct.

16

17

18                         /S/ SUSAN A. ZIELIE, RPR, CCR
                           _____
19                             Susan A. Zielie, RPR, CCR

20

21

22

23

24

25