The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY and KENNETH HANSEN, | No. C 07-475 MJP |
| Plaintiffs, | MICROSOFT'S MOTION TO SEAL CERTAIN CONFIDENTIAL MATERIALS PURSUANT TO CR 5(g) |
| v. | |
| MICROSOFT CORPORATION, a Washington corporation, | |
| Defendant. | *Note on Motion Calendar:* December 11, 2007 |

## I. INTRODUCTION

In accordance with the requirements of the Court's Protective Order [Dkt. No. 57], Microsoft asks this Court to seal certain confidential materials submitted in support of its contemporaneously filed Opposition to Plaintiffs' Motion for Class Certification [Dkt. No. 65] ("Microsoft's Brief"). In particular, Microsoft requests that the Court seal the following confidential materials cited in Microsoft's Brief:

1. **Declaration of Christine Mullaney Sundlie in Support of Microsoft's Brief**, which contains confidential information taken from (a) Microsoft's OEM Marketing Bulletin, dated September 20, 2006, concerning the "Windows Vista Capable" program [Dkt. No. 64] (the "OEM Marketing Bulletin"), and (b) versions of Microsoft's Designed for Microsoft Windows and Windows Vista Logo License Agreement with OEMs (the "Logo License Agreement");

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

2. **Exhibits A through F attached to the Declaration of Christine Mullaney Sundlie in Support of Microsoft's Brief**, which consist of six (6) different versions of the Logo License Agreement;

3. **Declaration of Robert L. Moline in Support of Microsoft's Brief**, which contains confidential information regarding (a) Microsoft's sales of Windows Vista and Windows XP licenses, and (b) the current and historical size of the personal computer market in the United States.

4. **Microsoft's Opposition to Class Certification**, in which the following pages refer to or describe materials that Microsoft designated as "Confidential": 5, 9, 14.

Under the Court's Protective Order [Dkt. No. 57 ¶ 13(a)], Microsoft, as the party that disclosed the materials at issue and designated those materials as "Confidential," now must make the showing required by CR 5(g) in support of its Motion to Seal. Microsoft is submitting this brief, supported by the contemporaneously filed Declaration of Nicholas J. Psyhogeos ("Psyhogeos Decl."), for the purpose of making that showing. Microsoft is also relying in part upon the prior Orders of this Court, which direct that some of the documents at issue in this Motion be kept under seal. [Dkt. Nos. 78, 81].

## II.   ARGUMENT

### A.   Microsoft Need Only Show That "Good Cause" Exists to Seal the Materials, and the Evidence Meets That Standard.

Microsoft on two occasions has discussed the legal standard used in the Ninth Circuit to determine whether a court may seal confidential materials submitted by a party on a non-dispositive motion. In Microsoft's Supplemental Memorandum in Support of its Motion to Seal Confidential Documents [Dkt. No. 53], and its Response to Plaintiffs' Motion to Seal [Dkt. No. 75], Microsoft explained that in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), the Ninth Circuit held that the presumption of public access to judicial records does not apply to a sealed discovery document attached to a non-dispositive motion. The Court explained:

> We have … "carved out an exception to the presumption of access" to judicial records, *Foltz* [*v. State Farm Mutual Auto. Insurance Co.*], 331 F.3d [1122,] 1135 [(9th Cir. 2003)], for a "***sealed discovery***

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

> *document* [attached] to a ***non-dispositive*** motion," such that "the usual presumption of the public's right of access is rebutted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (emphasis added). There are, as we explained in *Foltz*, "good reasons to distinguish between dispositive and non-dispositive motions." 331 F.3d at 1135. Specifically, the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often "'unrelated, or only tangentially related, to the underlying cause of action.'" *Id*. (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).

447 F.2d at 1179 (emphasis in original). Plaintiffs have not contested that *Kamakana*'s standard applies to discovery documents filed in connection with their Motion for Class Certification. [*See* Dkt. No. 77]. Thus, Plaintiffs have conceded that, under Ninth Circuit authority, Microsoft need show only that "good cause" exists to seal the confidential business materials that it has filed in opposition to Plaintiffs' Motion for Class Certification.[1]

As noted above, the Court already has entered two orders directing that confidential business information from Microsoft filed in relation to non-dispositive motions—including materials filed with Plaintiffs' Motion for Class Certification—be kept under seal. [Dkt. Nos. 78, 81]. Microsoft has cited some of those sealed materials again in its Opposition to Plaintiffs' Motion for Class Certification, and it has submitted additional confidential discovery documents and materials under seal in support of its Brief.

The accompanying Psyhogeos Declaration presents facts sufficient to satisfy both the "good cause" standard that applies to the sealing of discovery materials attached to non-dispositive motions and the "sufficiently compelling reasons" standard that applies to the sealing of materials attached to dispositive motions. Microsoft has a strong interest in keeping the terms of its contractual relationships with its OEM partners, the details of its marketing strategies, and its specific and detailed sales information regarding its products and

---

[1] Microsoft incorporates and relies upon the arguments contained in its previously filed Response to Plaintiffs' Motion to Seal documents filed with their Motion for Class Certification [Dkt. No. 75] by reference as though set forth at length herein. [Dkt. No. 75 at 3-6].

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 3

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

services confidential and unavailable to competitors. As explained in the Psyhogeos Declaration, each of the materials at issue in this Motion is, or contains information about, a commercially sensitive business matter, and each has significant competitive value to Microsoft. Psyhogeos Decl. ¶ 4. The materials at issue include fundamental licensing documents used in Microsoft's desktop operating system business with OEMs, one of the largest sources of Microsoft's revenue. *Id.* ¶ 16. Similarly, if Microsoft's competitors knew the specific and detailed confidential sales data submitted by Microsoft in support of its Brief, such as how well one Microsoft product was selling when compared to another, or how well one Microsoft product was selling in a particular segment of the marketplace for a specific period of time, Microsoft's competitors could use that information to compete more effectively with Microsoft and place it at a competitive disadvantage. *Id.* ¶ 10. Likewise, Microsoft's confidential information regarding the current and historical size of the personal computer market in the United States has significant competitive value to Microsoft, and Microsoft does not disclose that information to the public. *Id.* That data is important and valuable because Microsoft uses it to provide an understanding of business performance within the industry, and it forms the basis for business planning and forecasting. *Id.* As a result, if Microsoft's detailed information regarding the size of the U.S. personal computer market were disclosed, Microsoft would suffer a substantial competitive disadvantage— Microsoft's competitors would know the specific data used as a basis for Microsoft's business performance, planning, and forecasting, but Microsoft would not know the data used by its competitors for those same purposes. *Id.*

The Supreme Court and the Ninth Circuit both have acknowledged that, even in the context of dispositive proceedings, courts may deny public access to judicial documents where such records constitute "sources of business information that might harm a litigant's competitive standing." *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (denying access to copies of tapes played at trial and noting that courts have refused public

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 4

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

access to their files where granting such access might "become a vehicle for improper purposes," including causing a litigant competitive harm); *Kamakana,* 447 F.3d at 1179 ("'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to…release trade secrets.") (citing *Nixon,* 435 U.S. at 598); *Foltz,* 331 F.3d at 1135 (quoting *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995)) (when deciding whether to seal confidential materials submitted with summary judgment motions under the "sufficiently compelling reasons" standard, a court should consider "whether disclosure of the material could result in …infringement upon trade secrets"). The declaration of Mr. Psyhogeos, the General Manager of Microsoft's Worldwide OEM Programs & Policy team, establishes that the documents here fall into that category.

**B.  Microsoft's Confidential Business Materials Should Be Sealed Because Disclosure Would Harm Microsoft's Competitive Standing.**

**1.  The OEM Marketing Bulletin**

The Declaration of Christine Mullaney Sundlie in support of Microsoft's Brief (the "Sundlie Declaration") contains information excerpted from the OEM Marketing Bulletin. This Court already has ruled that the OEM Marketing Bulletin is confidential and should be kept sealed and not disclosed to the public. [Dkt. No. 81, ¶¶ 3, 4 (sealing Dkt. Nos. 64, 67)]. The Sundlie Declaration therefore should be likewise sealed.

**2.  The Versions of the Logo License Agreement**

The Sundlie Declaration contains information taken from the Logo License Agreement, and it also attaches six (6) different versions of that agreement leading up to the most current version, version 9.3. This Court has ruled that version 9.3 of the Logo License Agreement is confidential and should be kept under seal. [Dkt. No. 81, ¶ 1 (sealing Dkt. No. 62)]. Microsoft is now also seeking to seal the six earlier versions of the Logo License Agreement attached to the Sundlie Declaration.

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 5

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

As Microsoft previously has explained, the Logo License Agreement is a contract in which Microsoft specifies criteria under which OEMs may use particular Microsoft-created logos on or in connection with the PCs the OEMs manufacture and sell. [Dkt. No. 54, ¶ 11; Dkt. No. 76. ¶ 13]. Microsoft does not divulge the terms of the Logo License Agreement to its software competitors or to the public; it considers the Logo License Agreement to be a commercially sensitive business matter; and it takes steps to keep these materials confidential. [Dkt. No. 54, ¶¶ 11, 13-14; Dkt. No. 76. ¶ 14]. Even though the Windows Vista Capable marketing program authorized by the Logo License Agreement is now complete, the agreement retains its commercial sensitivity. Psyhogeos Decl., ¶ 15. It contains the details of Microsoft's business and marketing methods and strategies with respect to OEMs, and the public disclosure of those terms, even after the conclusion of the Windows Vista Capable marketing program, would put Microsoft at a competitive disadvantage vis-à-vis its competitors. *Id.*

Microsoft and its OEM partners used the earlier versions of the Logo License Agreement attached to the Sundlie Declaration. *Id.* ¶ 8. Microsoft considers those prior versions of the Logo License Agreement to be confidential and commercially sensitive, and it keeps them confidential; the documents require protection from public disclosure for the same reasons that Microsoft has stated previously. *Id.* ¶¶ 8 [referencing Dkt. No. 76, ¶¶ 3-5, 12-16, 21-22, 24, 27, 29, 31, 33], 11, 12. The fact that individual versions of the Logo License Agreement were in effect for specific periods of time does not mean that superseded versions no longer contain commercially sensitive information for Microsoft and the OEMs. *Id.* ¶ 16. The Logo License Agreement is an agreement that Microsoft uses over the long term of its desktop operating system business, one of Microsoft's largest sources of revenue. *Id.* Because of the importance of the desktop operating system business to Microsoft, Microsoft considers the Logo License Agreement to be highly confidential. *Id.* It has been used continuously and has evolved through several versions over many years. *Id.* Although the

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 6

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

terms of the agreement change to some degree when it is revised, the basic framework it provides for Microsoft's business dealings with its OEM partners remains similar from one year to the next. *Id.* Thus, Microsoft's competitors still would be able to use information from the earlier versions of the Logo License Agreement to Microsoft's competitive disadvantage in the marketplace. *Id.* Accordingly, Microsoft and its OEM partners have continued to treat all versions of the Logo License Agreement as confidential business information, and Microsoft continues to make commercially reasonable efforts to ensure that the terms of those documents (including those terms that are uniform) are not divulged outside of Microsoft's relationships with its OEM partners. *Id.* ¶¶ 17, 11, 12.[2] Those efforts have not ceased simply because Microsoft's Windows Vista Capable marketing program has ended. *Id.* ¶ 17. "Disclosing them would cause Microsoft serious harm." *Id.* ¶ 16.

### 3. Microsoft's Confidential Sales Information

The Declaration of Robert L. Moline filed in support of Microsoft's Brief (the "Moline Declaration") contains specific sales information regarding the numbers of Windows Vista and Windows XP licenses Microsoft sold over specified periods of time in the United States. *Id.* ¶ 9. This detailed sales information has significant competitive value to Microsoft, and Microsoft takes steps to keep this information confidential. *Id.* ¶ 9. Although Microsoft, as a public company, must make public disclosures of certain general sales information, the law does not require it to disclose to the public, and in fact it does not disclose, specific and detailed sales information regarding particular Microsoft products and services. *Id.* ¶ 10. If Microsoft's competitors knew the sales data contained in the Moline Declaration, such as how well one Microsoft product was selling when compared to another, or how well one Microsoft

---

[2] Even before it designated these documents as "Confidential" in this lawsuit, Microsoft labeled the prior versions of the Logo License Agreement as "Confidential," thus demonstrating that both Microsoft and the OEMs intended that these materials be kept confidential. Psyhogeos Decl. ¶ 5. Indeed, the OEMs themselves have contractual rights to confidentiality under their agreements with Microsoft, and they expect that Microsoft will maintain that confidentiality. *Id*. ¶ 6.

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

product sold in a particular segment of the marketplace for a specific period of time, Microsoft's competitors could use that information to compete more effectively with Microsoft and place it at a competitive disadvantage. *Id.*

In addition, the confidential and proprietary information contained within the Moline Declaration regarding the current and historical size of the personal computer market in the United States has significant competitive value to Microsoft, and Microsoft does not disclose that information to the public. *Id.* That data is important and valuable because it is used to provide an understanding of business performance within the industry, and it forms the basis for business planning and forecasting within the industry. *Id.* Microsoft's competitors do not disclose their own specific and proprietary data regarding the size of the U.S. personal computer market to Microsoft. *Id.* As a result, if Microsoft's detailed information regarding the size of the U.S. personal computer market were disclosed, Microsoft would suffer a substantial competitive disadvantage—Microsoft's competitors would know the specific data used as a basis for Microsoft's business performance, planning, and forecasting, but Microsoft would not know the data used by its competitors for those same purposes.

### C. Microsoft Makes Substantial Efforts to Maintain the Confidentiality of Its Commercially Sensitive Business Documents And Sales Information.

The Psyhogeos Declaration describes the substantial efforts that Microsoft takes to maintain the confidentiality of commercially sensitive business documents such as the Logo License Agreement, the OEM Marketing Bulletin, and detailed sales information regarding particular Microsoft products and services—including (a) maintaining these types of materials in areas not open to the public in locations protected by passwords (for online information) or locked cabinets and/or doors accessible only with company-issued keys held by those with responsibility for protecting this information, and (b) making this information available only to Microsoft personnel with a business need for the information (and, if applicable, to the particular OEM(s) to which the information pertains). *Id*. ¶¶ 9, 11-13.

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 8

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

### III. CONCLUSION

Given the commercially sensitive nature of the materials at issues and the competitive harm that could result if those materials become public, Microsoft has made the showing required under CR 5(g). As set forth in its proposed order, Microsoft proposes that an appropriately redacted copy of its Opposition to Plaintiffs' Motion for Class Certification be filed for public record.

DATED this 19th day of November, 2007.

        Davis Wright Tremaine LLP
        Attorneys for Microsoft Corporation

        By */s/ Stephen M. Rummage*
           Stephen M. Rummage, WSBA #11168
           Cassandra Kinkead, WSBA #22845
           Charles S. Wright, WSBA #31940
           1201 Third Avenue, Suite 2200
           Seattle, WA 98101-1688
           Telephone: (206) 622-3150
           Fax: (206) 628-7699
           E-mail: steverummage@dwt.com

Of Counsel:

Charles B. Casper
Patrick T. Ryan
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215) 772-1500

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, November 19, 2007, I electronically filed the foregoing Motion to Seal Certain Confidential Materials with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey I. Tilden: | jtilden@gmtlaw.com |
| Jeffrey M. Thomas: | jthomas@gmtlaw.com |
| Michael Rosenberger: | mrosenberger@gmtlaw.com |
| Mark A. Wilner: | mwilner@gmtlaw.com |
| William C. Smart: | wsmart@kellerrohrback@dwt.com |
| Mark A. Griffin: | mgriffin@kellerrohrback@dwt.com |
| Ian S. Birk: | ibirk@kellerrohrback@dwt.com |

DATED this 19th day of November, 2007.

Davis Wright Tremaine LLP
Attorneys for Defendant

By */s/ Stephen M. Rummage*
   Stephen M. Rummage, WSBA #11168
   Davis Wright Tremaine LLP
   2600 Century Square
   1501 Fourth Avenue
   Seattle, WA 98101-1688
   Telephone: (206) 628-7513
   Fax: (206) 628-7699
   E-mail: steverummage@dwt.com

MICROSOFT'S MOTION TO SEAL
PURSUANT TO CR 5(g)
(NO. C07-475 MJP) – 10