The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

| | | |
|---|---|---|
| DIANNE KELLEY and KENNETH HANSEN, | ) | No. C 07-475 MJP |
| | ) | |
| Plaintiffs, | ) | MICROSOFT'S OPPOSITION TO |
| | ) | PLAINTIFFS' MOTION FOR |
| v. | ) | APPLICATION OF |
| | ) | WASHINGTON LAW |
| MICROSOFT CORPORATION, a Washington | ) | |
| corporation, | ) | **(WITH CORRECTED TABLE** |
| | ) | **OF AUTHORITIES)** |
| Defendant. | ) | |
| | ) | **Note on Motion Calendar:** |
| | ) | December 19, 2007 |
| | ) | |
| | ) | **Oral Argument Requested** |

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP)
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

Dockets.Justia.com

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.   Plaintiffs' Proposed Class Claims Would Encompass Millions of Consumer Transactions Outside Washington. ........................................................................ 2

    B.   The Alleged Misrepresentations at the Center of This Action Were Made and Received Outside Washington. ......................................................................... 3

    C.   Microsoft Did Not Have Any Transactions or Contracts with Consumers Relevant to Plaintiffs' Claims. ............................................................................. 5

III. ARGUMENT ....................................................................................................... 6

    A.   Applying Washington Law Would Violate the United States Constitution. ........... 6

    B.   Washington Choice of Law Principles Require Application of the Laws of the Home State of Each Potential Class Member. ................................................. 7

        1.   The Court Should Evaluate State Contacts Individually in Terms of the Issues to Be Litigated. ............................................................................. 8

        2.   Potential Class Members' Home States Have the Most Significant Relationships to Their Claims. ................................................................. 9

        3.   The Competing State Interests Dictate Application of the Laws of the Potential Class Members' Home States. ................................................... 13

        4.   Plaintiffs' Choice of Law Cases Do Not Control. ...................................... 18

    C.   Laws on Consumer Protection and Unjust Enrichment Differ Materially from State to State, Which Precludes a Nationwide Class. ................................... 20

        1.   Scores of Courts Have Rejected Nationwide Certification Where Plaintiffs Do Not Show an Absence of State Law Variations. ..................... 21

        2.   The Applicable State Laws Vary in Potentially Outcome-Determinative Ways, Foreclosing Certification. ........................................ 22

IV.  CONCLUSION ................................................................................................... 24

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – ii

DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Andrews v. AT&T Co.,*
   95 F.3d 1014 (11th Cir. 1996) ................................................................22

*Castano v. American Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) ....................................................................22

*Clay v. Am. Tobacco Co.,*
   188 F.R.D. 483 (S.D. Ill. 1999) ........................................................23-24

*Cole v. General Motors Corp.,*
   484 F.3d 717 (5th Cir. 2007) ..................................................................22

*Duncan v. Northwest Airlines, Inc.,*
   203 F.R.D. 601 (W.D. Wash. 2001) ........................................................21

*Gariety v. Grant Thornton LLP,*
   368 F.3d 356 (4th Cir. 2004) ..................................................................21

*Georgine v. Amchem Prods., Inc.,*
   83 F.3d 610 (3d Cir. 1996) ................................................................8, 22

*Hewlett-Packard Co. v. Intergraph Corp.,*
   2004 WL 1918892 (N.D. Cal. Aug. 24, 2004) ........................................13

*In re American Med. Sys., Inc.,*
   75 F.3d 1069 (6th Cir. 1996) ..................................................................22

*In re Bridgestone/Firestone, Inc.,*
   288 F.3d 1012 (7th Cir. 2002) ............................................11, 13, 18, 22

*In re First Charter Mortgage, Inc.,*
   42 B.R. 380 (Bankr. D. Or. 1984) ..........................................................16

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
   177 F.R.D. 360 (E.D. La. 1997) ..............................................................11

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
   174 F.R.D. 332 (D.N.J. 1997) ............................................................8, 16

*In re Gen'l Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,*
   966 F. Supp. 1525 (E.D. Mo. 1997) ........................................................23

*In re Prempro,*
   230 F.R.D. 555 (E.D. Ark. 2005) ............................................................23

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ..................................................................22

*In re St. Jude Medical*,
  425 F.3d 1116 (8th Cir. 2005) ..................................................................8

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
  186 F.R.D. 307 (S.D.N.Y. 1999) ..............................................................22

*Klaxon v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ..............................................................................7

*Kona Enters., Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ..................................................................18

*Lantz v. American Honda Motor Co.*,
  2007 WL 1424614 (N.D. Ill. May 14, 2007) ..........................................7, 20

*Lozano v. AT&T Wireless Servs., Inc.*,
  2007 WL 2728758 (9th Cir. Sept. 20, 2007) ............................................22

*Lyon v. Caterpillar, Inc.*,
  194 F.R.D. 206 (E.D. Pa. 2000) ......................................................Passim

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................6-7, 22

*Spence v. Glock, Ges.m.b.H.*,
  227 F.3d 308 (5th Cir. 2000) ........................................................12, 16, 22

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ......................................................................16, 18

*Stirman v. Exxon Corp.*,
  280 F.3d 554 (5th Cir. 2002) ..................................................................22

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) ..........................................................21-22

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................21-22

**STATE CASES**

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ......................................................14-15, 20, 23

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 · Fax: (206) 757-7700

*Baffin Land Corp. v. Monticello Motor Inn, Inc.,*
70 Wn.2d 893 (1967) ................................................................................. 12

*Barbara's Sales, Inc. v. Intel Corp.,*
857 N.E.2d 717 (Ill. App.),
*appeal granted,* 861 N.E.2d 653 (Ill. 2006) ......................................... 7, 20

*Barr v. Interbay Citizens Bank,*
96 Wn.2d 692 (1981)............................................................................ 11, 17

*Caspi v. The Microsoft Network LLC,*
732 A.2d 528 (N.J. Super. Ct. App. Div. 1999) ..................................... 13

*Compaq Computer Corp. v. Lapray,*
135 S.W.3d 657 (Tex. 2004) ....................................................................21

*Erwin v. Cotter Health Ctrs.,*
167 P.3d 1112 (Wash. 2007) ............................................................. 21, 23

*Haberman v. WPPSS,*
109 Wn.2d 107 (1987)...............................................................................17

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
105 Wn.2d 778 (1986).............................................................................. 23

*Henry Schein, Inc. v. Stromboe,*
102 S.W.3d 675 (Tex. 2002) ...................................................................22

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*
___ P.3d ___, 2007 WL 3025836 (Wash. Oct. 18, 2007) .....................9-10

*Johnson v. Allstate Ins. Co.,*
126 Wn. App. 510 (2005)..........................................................................19

*Johnson v. Spider Staging,*
87 Wn.2d 577 (1976).........................................................................Passim

*Landeis v. Nelson,*
808 P.2d 216 (Wyo. 1991) .......................................................................23

*Laurent v. Flood Data Serv., Inc.,*
766 N.E.2d 221 (Ohio Ct. App. 2001) ....................................................23

*Odom v. Microsoft Corp.,*
No. 04-2-10618-4 SEA (King Cty., Apr. 12, 2006) ...........................19-20

*Oliveira v. Amoco Oil Co.,*
726 N.E.2d 51 (Ill. App. 2000) ...............................................................16

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*Petrie-Clemons v. Butterfield,*
    441 A.2d 1167 (N.H. 1982)..........................................................................................23

*Pickett v. Holland America Line-Westours, Inc.,*
    101 Wn. App. 901 (2000)..........................................................................................19

*Pickett v. Holland America Line-Westours, Inc.,*
    145 Wn.2d 178 (2001)....................................................................................14, 18-19

*Pinnacle Data Serv. Inc. v. Gillen.,*
    104 S.W.3d 188,195-96 (Tex. App. 2003) ..............................................................23

*Pioneer First Federal Sav. & Loan Ass'n v. Pioneer Nat. Bank,*
    98 Wn.2d 853 (1983)........................................................................................1, 7, 16-17

*Randolph v. Peterson, Inc. v. J.R. Simplot Co.,*
    778 P.2d 879 (Mont. 1989).......................................................................................23

*Realmark Developments, Inc. v. Ranson,*
    588 S.E.2d 150 (W.Va. 2003) ..................................................................................24

*Rice v. Dow Chem. Co.,*
    124 Wn.2d 205 (1994)..................................................................................9-11, 17

*Richmond Square Capital Corp. v. Ins. House,*
    744 A.2d 401 (R.I. 1999).........................................................................................24

*Schnall v. AT&T Wireless Servs., Inc.,*
    139 Wn. App. 280 (2007)...................................................................................18-19

*Seattle Prof'l Eng'g Employees Ass'n v. Boeing,*
    139 Wn.2d 824 (2000).............................................................................................24

*Seizer v. Sessions,*
    132 Wn.2d 642 (1997).............................................................................................13

*Southwell v. Widing Trans., Inc.,*
    101 Wn.2d 200 (1984)........................................................................................7-8, 13

*State v. Sterling Theaters Co.,*
    64 Wn.2d 761 (1964)...............................................................................................14

*Washington Mut. Bank FA v. Superior Court,*
    15 P.3d 1071 (Cal. 2001).........................................................................................21

*Wilson Area School Dist. v. Skepton,*
    860 A.2d 625 (Pa. Commw. Ct. 2004)......................................................................23

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – vi
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

1

**FEDERAL MATERIAL**

Senate Report on Class Action Fairness Act of 2005, S. Rep. 109-14,
   *reprinted in* 2005 U.S.C.C.A.N. 4 .................................................................................20

**STATE STATUTES**

Illinois Consumer Fraud Act, 805 ILCS 505/10a(a) ........................................................23

RCW 19.86.010 .................................................................................................................14

RCW 19.86.160 .................................................................................................................14

RCW 19.86.170 .................................................................................................................14

RCW 19.86.920 ...........................................................................................................14, 16

RCW 19.867.020 ...............................................................................................................14

RCW 62A.2-106 ................................................................................................................12

**RULES**

Fed. R. Civ. P. 23 .......................................................................................................Passim

**OTHER AUTHORITIES**

John J. O'Connell, *Washington Consumer Protection Act – Enforcement Provisions
   and Policies*, 36 WASH. L. REV. 279, 284 (1961).......................................................14

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971)........................................................9

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 1................................................13

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 6................................................13

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 6(1)...........................................14

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 6(2)(b) ......................................15

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 6(2)(c) ......................................15

RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) § 145 ........................................9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 148.................................................9-11, 18

RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) § 148(2)................................................9, 20

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – viii

DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

# I.    INTRODUCTION

Plaintiffs' Motion for Application of Washington Law asks the Court to hold that Washington law governs the claims of every member of their proposed class, which includes residents of all 50 states and the District of Columbia. Choice of law issues are intertwined with class certification: because the applicable substantive law will dictate the facts that each proposed class member must prove to recover, the chosen law will provide the framework for deciding whether plaintiffs can prove class claims by proving their own. For that reason, the Court cannot decide this motion in the abstract, but instead must incorporate choice of law as part of its rigorous inquiry into whether plaintiffs have satisfied Rule 23's requirements of commonality, typicality, adequacy, predominance and superiority.

As explained below, the laws of the states in which potential class members reside govern the claims against Microsoft arising out of the small "Windows Vista Capable" sticker that original equipment manufacturers ("OEMs") affixed to many PCs in the months before the January 2007 release of Windows Vista to consumers. The Court should deny plaintiffs' motion and reject plaintiffs' request for a nationwide class, for the following reasons:

*First*, the U.S. Constitution limits the ability of courts to apply a forum state's law to resolve non-residents' claims. Here, Washington does not have any connection to the relevant transactions of putative class members who did not live here. They did not shop for PCs in Washington. They did not read advertising or see the supposedly offending "Windows Vista Capable" sticker in Washington. They did not purchase their computers in Washington. And they did not suffer any alleged injury here. In these circumstances, the blanket application of Washington law to residents of all 50 states would offend the Constitution.

*Second*, even if plaintiffs could surmount the constitutional issue, they cannot show that Washington choice of law rules require the application of Washington law to non-resident members of the proposed class. In arguing to the contrary, plaintiffs rely on a series of "contacts" with Washington that arise from the fact that Microsoft maintains its headquarters here. But the authorities recognize that in a case alleging deception, the most significant

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 1
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1  contacts relate to the state where the plaintiff saw the allegedly deceptive statements, reacted

2  to them, and suffered injury – all of which happened in potential class members' home states.

3  Microsoft's presence in Washington bears on only one factor – the defendant's residence –

4  which courts deem insignificant on a deception claim.  Further, the Consumer Protection Act

5  exists to protect Washington residents, not to regulate consumer transactions in other states.

6       *Third*, where uniform state law cannot apply on a blanket basis, the federal appellate

7  courts without exception have refused nationwide certification of state law claims.  Although

8  plaintiffs often seek to avoid this result by arguing that the states have uniform laws on the

9  matters in dispute, plaintiffs here did not even bother to claim uniformity in state consumer

10  protection and unjust enrichment laws; it would be too late for them to argue uniformity on

11  reply.  In any event, consumer protection and unjust enrichment laws differ from state to state,

12  making it impossible to certify a nationwide class to pursue claims on those theories.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs' Proposed Class Claims Would Encompass Millions of Consumer Transactions Outside Washington.

15       Plaintiffs define their proposed class to include consumers who bought PCs that

16  OEMs (1) loaded with the Windows XP operating system and (2) labeled "Windows Vista

17  Capable."  *See* Second Amended Complaint ("SAC") ¶ 2.1 (defining proposed class based on

18  "purchase" of computer).  Each member of the proposed class bought such a PC from a

19  retailer or a computer manufacturer, known as an OEM; none bought directly from Microsoft.

20  Except for those potential class members who happen to live here, none of the putative class

21  members' transactions have any more than a coincidental relationship with Washington.

22       Many members of the proposed class bought their PCs from the comfort of their

23  homes, using Web sites operated by OEMs.  For example, Ms. Kelley bought her computer

24  over the Web while sitting on Camano Island, Washington; the OEM, Dell Inc., based in

25  Round Rock, Texas, processed her order outside Washington.  Other potential class members

26  purchased their computers on retailers' Web sites.  Mr. Hansen, for example, bought his

27  Toshiba computer from CompUSA using a Web site hosted by Amazon.com.  Mr. Hansen

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 2

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1    lives in Chicago, Illinois, where he placed his order and received his computer from Comp

2    USA; CompUSA is based in Dallas, Texas; and Amazon is based in Seattle.  In transactions

3    like these, OEMs located outside Washington shipped computers from locations around the

4    world to purchasers who took delivery in their home states.  *See* Kelley Dep. at 38, 42, 65;

5    Hansen Dep. at 30, 50-51, 78 (excerpts attached to Rummage Decl. as Exhibits D and E).

6         Other potential class members bought their PCs by visiting traditional retail stores,

7    where they had the opportunity to see and use PCs, read marketing material, and talk with

8    trained salespersons.  Indeed, this is how Ms. Kelley bought PCs other than the one at issue

9    here.  Kelley Dep. at 44-45.  Like Internet purchasers, these potential class members had no

10   contact with Washington unless they happened to live here.

11        **B.    The Alleged Misrepresentations at the Center of This Action Were Made**
             **and Received Outside Washington.**

12        Ms. Kelley and Mr. Hansen base their claim on allegedly deceptive PC sales practices.

13   In particular, they allege that the "Windows Vista Capable" designation, which appeared on a

14   small sticker that OEMs affixed to individual computers, misrepresented the capabilities of

15   the PCs they bought.  SAC ¶¶ 1.2, 4.3-4.4.  As discovery has made clear, however, Microsoft

16   did not require OEMs to label *any* PCs as "Windows Vista Capable."  Instead, each OEM

17   made the decision whether to affix the label[1] – and plaintiffs have not given the Court any

18   reason to believe that any OEM made that decision in the State of Washington.

19        In addition to OEMs affixing the stickers on whichever PCs they chose (as long as

20   they met minimum standards), OEMs and retailers decided independently how to market their

21   Windows Vista Capable products.  For some (but not all), the marketing effort included

22   Microsoft-provided materials.  Microsoft designed messaging and marketing tools that OEMs

23   and retailers could use to educate consumers about the different versions of Windows Vista

24   and the capabilities of a Windows Vista Capable PC.  These tools included point-of-purchase

25

26   [1] Plaintiffs persist in declaring that Microsoft "designated" some PCs as "Windows Vista Capable."
     COL Mot. at 2:12-14.  In fact, as plaintiffs know from discovery, Microsoft set only minimum
     standards; OEMs decided whether to participate in the Windows Vista Capable program and, if they

27   did, which (if any) PCs meeting the minimum standards would have a sticker affixed.

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 3

DWT 2132578v10 0025936-000689

1    materials for in-store display; messages that OEMs and retailers could use on their Web sites;

2    question-and-answer sheets and charts comparing the versions of Windows Vista; training for

3    retail sales personnel; and a Web site developed by Microsoft to explain the versions of

4    Windows Vista, as well as the Windows Vista Capable and Express Upgrade programs. *See*

5    Tindall Decl. ¶¶ 2-8; Riquelmy Decl. ¶¶ 5-7 & Exs. 5-8 (Dell); Chim Decl. ¶¶ 4-11 & Ex. 1-8

6    (Hewlett Packard); Rummage Decl. ¶ 3 & Ex. B (other OEMs); Hodges Decl. ¶¶ 3-11 & Ex.

7    1-6 (CompUSA).

8        These materials, along with salespersons who conveyed the same information orally,

9    told prospective buyers that not all Windows Vista Capable computers would provide all

10   features of the Windows Vista premium editions and that they should buy the PC they needed

11   to run the Vista features they wanted – the very information plaintiffs allege Microsoft did not

12   include on the tiny Windows Vista Capable sticker.  Microsoft also briefed journalists and the

13   media so that they could pass this information on to readers and viewers across the country.

14   *See* Burk Decl. ¶¶ 3-5, Exs. A & B.  But Microsoft did not dictate how much information

15   OEMs and retailers would provide, nor did it insist that OEMS and retailers use Microsoft-

16   prepared material – apart from contractually requiring OEMs to place a disclosure on or in

17   their Windows Vista Capable PC boxes, informing PC buyers that not all Windows Vista

18   Capable PCs would provide all features of Windows Vista premium editions – including the

19   new "Aero" user interface.  Some OEMs and retailers produced their own messaging and

20   materials for the Windows Vista Capable program.  Nothing in the record suggests that any

21   OEM or retailer formulated its advertising or marketing strategies (including its decision

22   whether to use Microsoft-generated materials) in Washington; instead, these companies

23   presumably made marketing decisions at their corporate headquarters in Texas (Dell and

24   CompUSA), Japan (Sony, Toshiba), China (Lenovo), Arkansas (Wal-Mart), Minnesota (Best

25   Buy), and so on.

26       Members of the proposed class who saw or heard OEMs' and retailers' marketing

27   messages, or read information that appeared in magazines, newspapers, television shows or on

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 4

DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington  98101

the Internet, overwhelmingly did so in their home states.[2]  Based on whatever information they received, individual proposed class members made individual decisions to buy Windows Vista Capable PCs in their home states.  According to plaintiffs, members of the proposed class suffered injury if the computers they bought proved unable to run the "real" Windows Vista, i.e., a premium edition of Windows Vista that has the glossy "Aero" user interface.  *See* SAC ¶¶ 8.5, 9.2.  Plaintiffs allege that putative class members also suffered injury if they bought Windows Vista upgrades or additional hardware, such as memory needed to provide Windows Vista's premium features – even though neither Ms. Kelley nor Mr. Hansen upgraded to Windows Vista.  *See* SAC ¶¶ 8.5, 9.2.  No matter how one characterizes these alleged injuries, they all occurred in the consumers' home states.

### C.    Microsoft Did Not Have Any Transactions or Contracts with Consumers Relevant to Plaintiffs' Claims.

Plaintiffs devote four pages to listing Microsoft's Washington contacts.  COL Mot. at 2-5.  Nothing they say should come as a surprise.  Because Microsoft has its headquarters here, of course it develops corporate strategy in Washington, maintains records in Washington, and often chooses Washington law to govern its contractual relationships.

Contrary to plaintiffs' implication, however, this case does not involve any contracts or transactions between Microsoft and potential class members.  Instead, Microsoft licensed its Windows XP operating system software to OEMs and authorized the OEMs to pre-install it on their PCs, to license Windows XP to their customers, and to label their PCs "Windows Vista Capable" if they met minimum hardware and software requirements.  The OEMs sold the PCs, either themselves or through retailers, throughout the country.  Thus, Microsoft did not enter into any transactions with potential class members, in Washington or anywhere else.

In an effort to link potential class members to Washington, plaintiffs allude to End User License Agreements ("EULAs") selecting Washington law.  COL Mot. at 3.  But even

---

[2] News about the Windows Vista Capable program did not reach everyone:  Ms. Kelley did not know what Windows Vista was, did not see Windows Vista Capable promotional material, and did not know about the Windows Vista Capable sticker before buying her PC.  Kelley Dep. at 15, 42, 44-45, 49, 64.

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 5
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1    plaintiffs admit that Microsoft is *not* a party to these EULAs, the licenses under which the

2    *OEMs* – not Microsoft – licensed Windows XP to persons who bought their PCs.  For

3    example, Ms. Kelley bought her computer from Dell and entered into a EULA with Dell,

4    which licensed Windows XP to her.  Similarly, Mr. Hansen purchased a Toshiba computer

5    from CompUSA and accepted a EULA under which Toshiba licensed Windows XP to him.[3]

6    *See* Smart Decl. [Dkt. No. 61] Ex. E (EULA between consumer and OEM).

### III.    ARGUMENT

#### A.    Applying Washington Law Would Violate the United States Constitution.

Blanket application of Washington law to all of the proposed class members' claims

would violate the Due Process and Full Faith and Credit Clauses because the transactions at

issue have no meaningful connection with Washington.

Under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), a forum state can apply

its substantive law to a proposed nationwide class action only if it has "a significant contact or

significant aggregation of contacts, creating state interests, such that choice of its law is

neither arbitrary nor fundamentally unfair."  *Id.* at 818 (quoting *Allstate Ins. Co. v. Hague*,

449 U.S. 302, 312-23 (1981)).  The "expectations of the parties" form an "important element"

of the constitutional analysis.  *Id.* at 822.  In terms of class certification, a court "may not take

a transaction with little or no relationship to the forum and apply the law of the forum in order

to satisfy the procedural requirement that there be a 'common question of law.'"  *Id.* at 821.

The vast majority of transactions at issue here have no relationship with Washington.

Unless they happened to live in or visit Washington, putative class members did not shop for

computers in Washington; did not see the allegedly offending sticker or any advertising in

Washington; did not buy their computers in Washington; and did not suffer their supposed

injuries in Washington.  Their only connection with Washington arises from the fact that they

---

[3] None of the putative class members had a contract with Microsoft relevant to this action, much less a contract that chooses Washington law.  Microsoft does have Washington choice of law provisions in its contracts with OEMs and retailers, *see* COL Mot. at 2, but potential class members are not parties to those contracts.

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 6

DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1  bought a product (a PC) that (a) included a component (Windows XP) that a Washington-

2  based company produced and (b) bore a "Windows Vista Capable" sticker that a Washington-

3  based company designed and authorized PC manufacturers (OEMs) to affix. Here, then,

4  Washington is only "casually or slightly related to the action," *Shutts*, 472 U.S. at 819, and its

5  law cannot govern the putative class claims consistent with the Constitution.

6        The cases plaintiffs cite do not stand for a contrary proposition. With one exception,

7  those cases involve claims arising from transactions *directly* between the defendant and

8  members of the proposed plaintiff class. COL Mot. at 8. Only one case, *Barbara's Sales,*

9  *Inc. v. Intel Corp.*, 857 N.E.2d 717 (Ill. App.), *appeal granted*, 861 N.E.2d 653 (Ill. 2006),

10  appears not to fit that paradigm, as it involved a consumer lawsuit against a computer chip

11  manufacturer. But the Illinois Supreme Court granted review in *Barbara's Sales* (it heard

12  argument in May of this year), and the only federal district court to assess the case has

13  described its analysis as "contrary to established Illinois and Seventh Circuit case law." *Lantz*

14  *v. American Honda Motor Co.*, 2007 WL 1424614 at * 6 (N.D. Ill. May 14, 2007).

15        **B.**    **Washington Choice of Law Principles Require Application of the Laws of the Home State of Each Potential Class Member.**

16        Even if plaintiffs could avoid the constitutional issue, they have not satisfied common

17  law choice of law principles for applying a single state's law. When sitting in diversity (as

18  here), this Court applies Washington's choice of law rules. *See Klaxon v. Stentor Elec. Mfg.*

19  *Co.*, 313 U.S. 487, 496 (1941). Washington follows the most significant relationship

20  approach in evaluating choice-of-law questions. *Johnson v. Spider Staging*, 87 Wn.2d 577,

21  580 (1976). This approach involves a two-step analysis: *First*, the Court should conduct "an

22  evaluation of the contacts with each interested jurisdiction," taking into consideration the

23  relative importance of those contacts to the issues involved. *Southwell v. Widing Trans., Inc.*,

24  101 Wn.2d 200, 204 (1984). *Second*, if the contacts evaluated in the first step are "evenly

25  balanced," the Court must examine "the interests and public policies of potentially concerned

26  jurisdictions." *Johnson*, 82 Wn.2d at 582. Under those rules, the Court should not apply

27

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 7
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1  Washington's Consumer Protection Act ("CPA") and unjust enrichment laws to millions of

2  individual consumer transactions throughout the United States.

3      **1.    The Court Should Evaluate State Contacts Individually in Terms**
        **of the Issues to Be Litigated.**

4      Plaintiffs' argument for Washington law points solely to Microsoft's contacts with

5  Washington, COL Mot. at 2-5, claiming that "the central issue is whether the Windows Vista

6  Capable Program was deceptive." COL Mot. at 17.  But plaintiffs do not mention the

7  consumer transactions at the heart of this lawsuit, which define the class and will determine

8  whether any potential class member has the right to recover.

9      Washington law demands that a choice-of-law analysis proceed on an individualized,

10 fact-specific basis, for the outcome "depends on the underlying facts." *Southwell*, 101 Wn.2d

11 at 204.  This is especially so in a class action.  "[D]ue process requires individual

12 consideration of the choice of law issues raised by each class member's case before

13 certification." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348

14 (D.N.J. 1997); *see also In re St. Jude Medical*, 425 F.3d 1116, 1120 (8th Cir. 2005) ("[A]n

15 individualized choice-of-law analysis must be applied to each plaintiff's claim in a class

16 action."); *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 627 (3d Cir. 1996) (same), *aff'd sub*

17 *nom. Amchem Prods., Inc. v. Windsor*, 519 U.S. 1103 (1997).  The choice-of-law analysis

18 here therefore must focus on the individual transactions through which each potential class

19 member purchased his or her computer.

20     As to each proposed class member, the Court should assess the relevant state contacts

21 "according to their relative importance with respect to the particular issue." *Southwell*, 101

22 Wn.2d at 204.  Litigation of the case will require proving what information potential class

23 members had about the Windows Vista Capable program and the PC hardware needed for the

24 features of Windows Vista's premium editions.  Potential class members received that

25 information in their home states from a wealth of marketing and editorial material (some

26 created by Microsoft, some not) and oral statements by salespersons.  Taking that material

27

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 8
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1  into consideration, each potential class member "must establish that, ***but for*** the defendant's

2  unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor*

3  *Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, ___ P.3d ___, 2007 WL

4  3025836, at *12 (Wash. Oct. 18, 2007) (emphasis added). As a result, for choice of law

5  purposes, the Court should focus on those contacts relevant to the requirement that potential

6  class members establish a causal link between (a) Microsoft's alleged deception concerning

7  the Windows Vista Capable program and (b) each potential class member's alleged injury.

8  By its nature, that analysis will turn not on Microsoft's conduct but on the information

9  proposed class members received and their reactions to it, all in their home states.

> **2.    Potential Class Members' Home States Have the Most Significant Relationships to Their Claims.**

11      Washington courts look to the RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) in

12  evaluating the significance of contacts. *Johnson*, 87 Wn.2d at 580-81. In misrepresentation

13  cases, such as this, the Restatement identifies six factors relevant to this evaluation. *See*

14  RESTATEMENT § 148(2).[4] These six factors show that the potential class members' home

15  states have the most significant contacts to the individual consumer transactions at issue:

16      **(a) *The place or places where the plaintiff acted in reliance upon the defendant's***

17  ***representations.*** For purposes of the CPA, this element should focus on the actions taken by

18  the potential class member that would support proof of causation. *See Indoor Billboard*, 2007

19  WL 3025836, at *11 (plaintiff must show that deceptive conduct was "but for" cause of

20  injury); *see also* RESTATEMENT § 148, cmt. f (describing causation in terms of reliance). The

21  purchase of a Windows Vista Capable PC ***because of*** the alleged deceptive practice is the

22  most important causal connection in this case. SAC ¶ 5.1. Proof of "but for" causation

23  connecting Microsoft's alleged deceptive conduct to each individual's claimed injury

24  necessarily will focus on each transaction, including each consumer's purposes in buying the

---

[4] The choice of law rules for misrepresentation claims derive from and vary slightly the Restatement's
basic tort rule. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1989); *Rice v. Dow Chem.
Co.*, 124 Wn.2d 205, 213 (1994). The result would be the same under that rule.

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 9
DWT 2132578v10 0025936-000689

1    PC, the information the consumer had, and the basis of the purchasing decision. *Indoor*

2    *Billboard*, 2007 WL 3025836, at *13 ("A plaintiff must establish that, ***but for*** the defendant's

3    unfair or deceptive practice, the plaintiff would not have suffered an injury.").

4        The individual consumer transactions took place in retail stores and at PCs in homes

5    and businesses throughout the country, pointing to the putative class members' home states as

6    the places with the most significant contacts. *See Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206,

7    215 (E.D. Pa. 2000) ("Here, when putative class members received incorrect information

8    regarding fuel consumption the boats with the subject engines were likely located at the boat

9    dealers."); *see also Rice v. Dow Chem. Co.*, 124 Wn.2d 205 (1994) (Oregon law applied

10   where plaintiff's injury was caused by exposure to pesticide in Oregon).

11       **(b)   *The place where the plaintiff received the representations.***   This element focuses

12   on the places where the proposed class members saw the allegedly deceptive sticker.

13   RESTATEMENT § 148, cmt. g.  Plaintiffs' claims necessarily locate those places throughout the

14   nation.  The Windows Vista Capable sticker (and any additional information about Windows

15   Vista and the Windows Vista Capable program that OEMs, retailers and journalists provided)

16   entered the "stream of commerce," *Rice*, 124 Wn.2d at 214, and dispersed throughout the

17   United States.  Individual consumers surely received this information in the states where they

18   purchased or decided to purchase their computers. *See Lyon*, 194 F.R.D. at 214 ("[P]utative

19   plaintiffs may have received these representations in any state in which they purchased [the

20   products that were subject of misrepresentations].").

21       **(c)   *The place where the defendant made the representations.***   This factor takes on

22   diminished importance where representations are made in two or more states. RESTATEMENT

23   § 148, cmt. h.  Although plaintiffs assume that all of the representations at issue were made in

24   Washington, COL Mot. at 3-4, the record shows something different.  In fact, while Microsoft

25   designed and approved the Windows Vista Capable program in Washington, OEMs decided

26   in their home states whether to apply the Windows Vista Capable sticker and retailers decided

27   in their home states whether to use the marketing and information materials that Microsoft

1  supplied or to develop their own material (as many did). *See, e.g.,* Tindall Decl. ¶ 5 (noting

2  that "majority" of retailers took Microsoft materials). Any representation made by the sticker

3  or other materials created a contact between the retailer or OEM and the consumer in the state

4  where that transaction occurred. *See Lyon*, 194 F.R.D. at 215 ("boat dealers, located in

5  various states, made representations regarding defendant's engines' fuel consumption").

6      Further, even if Microsoft's Washington-based activities mattered, the locus of the

7  defendant's actions has not been dispositive in the Washington Supreme Court's choice-of-

8  law cases. *See Rice*, 124 Wn.2d at 214 (applying Oregon law even though product not

9  designed, tested or marketed in Oregon); *Barr v. Interbay Citizens Bank*, 96 Wn.2d 692, 698

10  (1981) (applying Washington law even though defendant's actions leading to injury occurred

11  in Florida). *But see Johnson*, 87 Wn.2d at 583-84 (applying Washington law to Washington

12  defendant based on states' interest analysis). Microsoft's optional logo program, which was

13  filtered through the decisions of third parties in other states, has far less importance here than

14  the individual consumers' decisions to purchase the computers they purchased.

15      **(d)** ***The residence and place of business of the parties.*** Plaintiffs place great weight

16  on the fact that Microsoft is headquartered in Washington. *See* COL Mot. at 8. But this

17  factor never has been dispositive in Washington. *See Rice*, 124 Wn.2d at 214 (applying

18  Oregon law to defendant not headquartered in Oregon); *Barr*, 96 Wn.2d at 698 (applying

19  Washington law to defendant headquartered in Florida). And in deception cases, "the

20  domicile, residence and place of business of the ***plaintiff*** are more important than are similar

21  contacts on the part of the defendant." RESTATEMENT § 148, cmt. i (emphasis added). If any

22  two factors other than the defendant's residence favor a single state, that state's law usually

23  will apply. *Id.*, cmt. j. As the Seventh Circuit explained, "[i]f recovery for … consumer fraud

24  is possible, the injury is decidedly where the consumer is located, rather than where the seller

25  maintains its headquarters." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir.

26  2002); *see also Lyon*, 194 F.R.D. at 215 ("[P]utative class members' residence is a contact of

27  greater significance than defendant's principal place of business."); *In re Ford Motor Co.*

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 11
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1    *Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 371 (E.D. La. 1997) (rejecting arguments that

2    Michigan law should apply because of Ford's "overwhelming" contacts with that state).

3         **(e)  *The place where the tangible thing which is the subject of the transaction***

4    ***between the parties was situated at the time.***  The transactions at issue involved PCs to which

5    OEMs had affixed small "Windows Vista Capable" stickers.  Consumers found those

6    computers (and the information about them) in retail stores, newspapers, magazines, and on

7    Web sites throughout the country.  Title passed from OEMs or retailers to consumers when

8    the consumers took delivery of those computers – almost surely in their home states.  As the

9    Washington Supreme Court has noted in a choice-of-law analysis concerning sales of chattels,

10   "the point of delivery is that point where the seller has usually completed his major

11   obligations and also that point where, normally, the stage of the transaction most significant to

12   the parties has been reached."  *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d

13   893, 902-03 (1967); *see also Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000)

14   (in case alleging defective guns, "the economic injury occurred when and where plaintiffs

15   bought the guns").  This factor as well favors the potential class members' home states.

16        **(f)  *The place where the plaintiff is to render performance under a contract which***

17   ***he has been induced to enter.***  The only relevant contracts existed between consumers and

18   OEMs or retailers; Microsoft did not have any such contracts.  (Recognizing this point, Ms.

19   Kelley and Mr. Hansen withdrew their breach of contract claim.)  OEMs and retailers offered

20   for sale PCs loaded with Windows XP, to which they had affixed "Windows Vista Capable"

21   stickers.  Plaintiffs accepted those offers and performed their contracts by paying for the

22   computers.  *See, e.g.*, RCW 62A.2-106 (defining contract and sale for purposes of sales of

23   goods); *see* SAC ¶ 5.1 (making "purchase" of computer labeled "Windows Vista Capable" a

24   prerequisite to class membership).  Because potential class members made those payments to

25   the OEMs and retailers in all states, not just Washington, this factor favors the 50 states.

26        **(g)  *Plaintiffs' irrelevant contacts.***  Going well beyond the six factors identified by the

27   Restatement, plaintiffs rely on factors that have no bearing on a choice-of-law analysis,

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 12

DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1    including the location of company spokespersons, sales data, and witnesses in Washington.

2    COL Mot. at 3-5. In so doing, plaintiffs confuse choice of forum and choice of law.[5] In

3    *Johnson*, for example, the court considered the location of witnesses and evidence in deciding

4    the proper forum, but did not consider these factors in its choice-of-law analysis. *Johnson*, 87

5    Wn.2d at 579-80. Choice of *forum* is directed to "practical problems that make trial of a case

6    easy, expeditious and inexpensive." *Id.* at 579 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S.

7    501, 508 (1947)). Choice of *law*, on the other hand, is directed at a respect for the laws of the

8    various states. *See* RESTATEMENT § 1. "Differences across states may be costly for courts

9    and litigants alike, but they are a fundamental aspect of our federal republic and must not be

10   overridden in a quest to clear the queue in court." *Bridgestone/Firestone*, 288 F.3d at 1020.

3.    <b>The Competing State Interests Dictate Application of the Laws of<br>the Potential Class Members' Home States.</b>

11

12   Under the six Restatement factors, potential class members' home states have by far

13   the most significant contacts relevant to this litigation. Because the contacts are not "evenly

14   balanced," the Court need not proceed further to analyze competing state interests. *Johnson*,

15   82 Wn.2d at 582. If the Court were to view the contacts as balanced, however, Washington

16   conflicts principles then would require it to consider "the interests and public policies of

17   potentially concerned jurisdictions." *Southwell*, 101 Wn.2d at 204. This consideration

18   likewise points to the application of the laws of consumers' home states, for reasons set forth

19   in Section 6 of the RESTATEMENT. *See Seizer v. Sessions*, 132 Wn.2d 642, 651-52 (1997)

20   (analyzing state interests under Restatement § 6).

a.    <b>The CPA Does Not Regulate Consumer Transactions<br>Outside Washington.</b>

21

22

23   The Restatement directs courts to give laws only their intended territorial reach. "[I]f

24   the legislature intended that the statute should be applied only to acts taking place within the

25   _____

[5] Plaintiffs also misrepresent the holding of *Caspi v. The Microsoft Network LLC*, 732 A.2d 528 (N.J.

26   Super. Ct. App. Div. 1999), which dealt *only* with a forum selection clause and has no bearing on a
     choice-of-law analysis. COL Mot. at 5. *Hewlett-Packard Co. v. Intergraph Corp.*, 2004 WL 1918892

27   (N.D. Cal. Aug. 24, 2004), *see* COL Mot. at 5, likewise has no bearing here, as it involved a choice-of-
     law clause in a contract between Microsoft and plaintiff – a relationship not present here.

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 13

DWT 2132578v10 0025936-000689

1  state, the statute should not be given a wider range of application." RESTATEMENT § 6(1),

2  cmt. b.  Here, Washington's CPA prohibits deceptive practices in the conduct of "trade or

3  commerce," RCW 19.867.020, and defines trade or commerce as "commerce directly or

4  indirectly affecting *the people of the state of Washington*."  RCW 19.86.010 (emphasis

5  added).  Other sections of the CPA reinforce its limited reach.  For example, the Act permits

6  out-of-state process where a person has engaged in actions that have had "*impact in this*

7  *state*." RCW 19.86.160 (emphasis added).  Section 17 of the Act exempts activities permitted

8  "by any other regulatory body or officer acting under statutory authority *of this state or the*

9  *United States*." RCW 19.86.170 (emphasis added).  By its terms, this section does not

10  contemplate applying the CPA to Illinois transactions, subject to the existence of regulatory

11  authority in Illinois; instead, it leaves Illinois to police activities in Illinois and determine

12  whether that state's consumer protection laws exempt those actions.

13        Commentary contemporaneous with the CPA's 1961 passage emphasized the

14  Legislature's intent to regulate in-state transactions.  Most notably, Washington's Attorney

15  General – at that time, the only person authorized to sue under the CPA – wrote that the

16  statute was "designed to operate on the local or 'intra-state' level" and that it was intended to

17  "complement" federal law by targeting practices "with primarily a local impact."  John J.

18  O'Connell, *Washington Consumer Protection Act – Enforcement Provisions and Policies*, 36

19  WASH. L. REV. 279, 284 (1961); *see also* RCW 19.86.920 (stating that purpose of Act is to

20  "complement" federal law).  In one of its earliest decisions construing the CPA, the

21  Washington Supreme Court noted that the CPA's antitrust provisions govern activities with a

22  "primarily local impact."  *State v. Sterling Theaters Co.*, 64 Wn.2d 761, 764 (1964).  The

23  Washington Court never has given the CPA the broad reach that plaintiffs ascribe to it;

24  instead, the Court has noted "a high degree of uncertainty" as to whether the CPA could be

25  given nationwide effect in a consumer class case.  *See Pickett v. Holland America Line-*

26  *Westours, Inc.*, 145 Wn.2d 178, 199 (2001).

27        Similar considerations recently led the Illinois Supreme Court in *Avery v. State Farm*

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 14        Davis Wright Tremaine LLP
DWT 2132578v10 0025936-000689                                   1201 Third Avenue, Suite 2200
                                                                Seattle, Washington 98101

1    *Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005), to confine the operation of that state's

2    Consumer Fraud Act to actions occurring "primarily and substantially" within Illinois.  Like

3    the CPA, the Illinois act limits its coverage to transactions "directly or indirectly affecting the

4    people of this State."  *Avery*, 835 N.E.2d at 850 (quoting 815 ILCS 505/1(f)).  Finding this

5    language ambiguous, the court turned to a state senator's comment that the act reached only

6    "trade and commerce that is not included within the interstate concept."  *Id.* at 852.  Relying

7    on this statement and the canon of statutory construction holding that "a statute is without

8    extraterritorial effect unless a clear intent in this respect appears from the express provisions

9    of the statute," *id.*, the court held that the Illinois Consumer Fraud Act does not "apply to

10   fraudulent transactions that take place outside Illinois."  *Id.* at 853.  The *Avery* court then

11   concluded that the fraudulent transactions at issue in that case (i.e., an insurer's alleged failure

12   to disclose the quality of certain car parts) took place throughout the United States, making it

13   error to certify a nationwide class action under the Illinois act.  *Id.* at 854, 855.

14            This Court should reach the same conclusion.  The *Avery* court based its ruling on the

15   same statutory limitation that appears in Washington's CPA.  (Indeed, as noted above, the

16   Washington CPA includes additional provisions suggesting the statute's limited geographic

17   scope.)  Further, while the Washington State Archives cannot locate legislative history from

18   the 1961 passage of the CPA, Washington's Attorney General had precisely the same

19   understanding of the intrastate scope of the Act as the Illinois senator quoted in *Avery*.  This

20   contemporaneous interpretation provides a strong indication of the statute's intended reach.

21                    **b.    Other States Have a Strong Interest in Protecting Their
                            Own Consumers.**

22            In the absence of legislative guidance as to the scope of a state's laws, the Restatement

23   directs courts to compare the respective states' interests in applying their laws to the facts.

24   RESTATEMENT § 6(2)(b) & (c); *Johnson*, 87 Wn.2d at 582.  Plaintiffs assume that only

25   Washington has an interest, on the theory that it may wish to regulate the out-of-state

26   commercial activities of one of its largest and most successful companies.  *See* COL Mot. at

27

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 15
DWT 2132578v10 0025936-000689

8. But the CPA exists to "protect the public" of Washington, not to police Washington companies wherever they do business.[6] RCW 19.86.920; *see In re First Charter Mortgage, Inc.*, 42 B.R. 380, 382 (Bankr. D. Or. 1984) ("The Washington legislature passed their [CPA] for the laudatory purpose, among others, of protecting their citizens from unfair and deceptive trade and commercial practices."). Indeed, as the United States Supreme Court explained:

> A state cannot punish a defendant for conduct that may have been lawful where it occurred. … A basic principle of federalism is that each state may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each state alone can determine what measures of punishment, if any, to impose on a defendant who acts within its jurisdiction.

*State Farm v. Campbell*, 538 U.S. 408, 421-22 (2003). Thus, while Washington has a strong interest in protecting its citizens from unfair or deceptive practices, it does not have an equivalent interest in exporting its standards to regulate the conduct of Washington businesses in other states. *See also Oliveira v. Amoco Oil Co.*, 726 N.E.2d 51, 61-62 (Ill. App. 2000), *rev'd on other gds.*, 776 N.E.2d 151 (Ill. 2002) ("Illinois may not impose sanctions on violators of its law with the intent of changing the violator's conduct in other states if [the conduct] was lawful where it occurred and had no impact on Illinois or its residents.").

By contrast, other states have a strong interest in protecting their own consumers. "Every plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws." *Ford Motor Co. Ignition Switch Litig.*, 174 F.R.D. at 348. Consumer protection laws in every state (not just Washington) function to "protect state residents or protect consumers *engaged in transactions within the state*." *Lyon*, 194 F.R.D. at 215 (emphasis added); *see Spence*, 227 F.3d at 314 ("All these 51 relevant jurisdictions are likely to be interested in ensuring that their consumers are adequately compensated in cases of economic loss, but many will have different conceptions of what adequate compensation is.").

---

[6] The other stated purpose, "to foster fair and honest competition," RCW 19.86.920, applies only to those provisions applicable to **competitors**. *Pioneer First Federal Sav. & Loan Ass'n v. Pioneer Nat. Bank*, 98 Wn.2d 853, 862 (1983).

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

Every jurisdiction has passed a consumer protection law and has an interest in seeing it applied to transactions within its borders according to the rules adopted by its own legislature. *See Lyon*, 194 F.R.D. at 211-12. Where claims revolve around alleged deception in consumer transactions, "[t]he state in which the plaintiff received [the] misrepresentation has the paramount interest in protecting its consumers." *Id.* at 217.

Plaintiffs dodge these well-recognized state interests by arguing that every state has an identical "interest in seeing plaintiffs' claims litigated in some forum as opposed to none at all." COL Mot. at 17-18. But plaintiffs are wrong, for three reasons:

*First*, the Washington Supreme Court never has allowed such a result-oriented approach to influence its choice-of-law analysis. Instead, the Court in a principled way has chosen laws that would result in no recovery or reduced recovery to plaintiffs. *Rice*, 124 Wn.2d at 216 (applying Oregon's statute of repose to bar claim of Washington resident); *Barr*, 96 Wn.2d at 700 (applying Washington law to deny claim for punitive damages by Washington resident). The Supreme Court's decision in *Haberman v. WPPSS*, 109 Wn.2d 107 (1987), cited in COL Mot. at 16, does not counsel a contrary result. That case presented a classic "false conflict" because "no party contend[ed] that another state's securities act applies," 109 Wn.2d at 135, and in any event, in *Haberman*, "the fraudulent acts took place in Washington." COL Mot. at 16. Here, the alleged deception occurred throughout the country.

*Second*, legislatures around the country have passed consumer protection laws with private rights of action and incentives to sue, giving their citizens ample ability to seek redress for deceptive practices within each state's borders. If plaintiffs' claims have any merit (a debatable proposition, to be sure), potential class members will be able to sue under state law in their home states, using whatever remedial scheme their representatives have developed. Plaintiffs have not given the Court any reason to believe that meritorious claims would go unresolved absent nationwide application of Washington law.

*Third*, plaintiffs in essence advocate substituting the judgment of the Washington Legislature for the judgment of other state legislatures as to what actions within those states'

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 17
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1  borders should lead to recovery. This patronizing approach to federalism would undermine

2  the comity furthered by choice-of-law principles. *See Campbell*, 538 U.S. at 421-22

3  (punishing defendant for out of state conduct would violate "basic principles of federalism");

4  *Bridgestone/Firestone*, 288 F.3d at 1020 ("State consumer-protection laws vary considerably,

5  and courts must respect these differences rather than apply one state's laws to sales in other

6  states with different rules.").

### 4.    Plaintiffs' Choice of Law Cases Do Not Control.

7

8  This Court must apply the law as it believes the Washington Supreme Court would

9  apply it. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000). The

10  Washington Supreme Court, however, has not applied the CPA to other states' citizens in a

11  nationwide class action, instead suggesting that an effort to give the law extraterritorial effect

12  created "a high degree of uncertainty." *Pickett*, 145 Wn.2d at 199. Faced with this dearth of

13  authority, plaintiffs rely on decisions from Washington intermediate appellate courts and trial

14  courts. COL Mot. at 13-15. The Court should decline to follow these non-binding decisions.

### a.    *Schnall v. AT&T Wireless*

15

16  Plaintiffs rely heavily on Division I's decision in *Schnall v. AT&T Wireless Servs.,*

17  *Inc.*, 139 Wn. App. 280 (2007), in which a Petition for Review to the Supreme Court is

18  pending. Although *Schnall* properly invoked Restatement § 148 in deciding whether to apply

19  the Washington CPA to a nationwide class, the court's cursory, one-paragraph analysis

20  focused on only a few of the Section 148 factors. Indeed, Division I did not even mention

21  four factors deemed central to choice of law under the Restatement, i.e., (a) the place where

22  the plaintiffs acted on the misrepresentation; (b) the place where the plaintiff received the

23  misrepresentation; (d) the plaintiffs' domicile; and (f) the places where the plaintiffs were to

24  render performance. *Schnall*, 139 Wn. App. at 294. Instead, that court relied heavily on the

25  defendant's domicile – even though the Restatement emphasizes that "[t]he domicile,

26  residence and place of business of the ***plaintiff*** are more important than the similar contacts

27  on the part of the defendant." RESTATEMENT § 148, cmt. i (emphasis added). Further, the

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 18
DWT 2132578v10 0025936-000689

1   *Schnall* court focused on the location of evidence and witnesses – factors that bear upon

2   forum selection but have no bearing on choice of law. *See Johnson*, 87 Wn.2d at 579-80.

3       Moreover, this case does not present the facts that Division I deemed dispositive in

4   *Schnall.* In that case, AT&T Wireless, a Washington company, sent the allegedly offending

5   bills from Washington directly to consumers; the consumer class members then sent their

6   payments back to AT&T Wireless in Washington. Not so here. Microsoft had no direct

7   billing or contractual relationship with the potential class members. It did not sell them

8   anything or send them bills at all, much less bills from Washington. Instead, the consumer

9   transactions at issue occurred throughout the country, between consumers and many different

10  OEMs and retailers, who marketed their products in different places in different ways.

**b.    *Pickett v. Holland America ("Pickett I")***

11

12      Plaintiffs improperly rely on Division I's decision in *Pickett v. Holland America Line-*

13  *Westours, Inc.*, 101 Wn. App. 901 (2000) – even though the Supreme Court ***reversed*** this

14  decision and questioned the Court of Appeals' choice of law analysis. *Pickett*, 145 Wn.2d at

15  199. (Just a few weeks ago, the Supreme Court emphasized – albeit in a different context –

16  that continued reliance on *Pickett I* would be, at best, "suspect." *Indoor Billboard*, 2007 WL

17  3025836 at *11.) Moreover, *Pickett I* differs factually in the same way as *Schnall*: that case

18  involved transactions directly between class members and the defendant cruise line, payments

19  directly from plaintiffs to the defendant in Washington, and cruise contracts issued and sent

20  from Washington, which chose Washington law to construe the contract and required any

21  suits or claims to be brought in Washington. None of these Washington contacts exists here.

**c.    *Odom v. Microsoft***

22

23      Finally, plaintiffs rely on the unpublished state trial court decision in *Odom v.*

24  *Microsoft Corp.*, No. 04-2-10618-4 SEA (King Cty., Apr. 12, 2006). But "unpublished

25  opinions are not part of Washington's common law," *Johnson v. Allstate Ins. Co.*, 126 Wn.

26  App. 510, 519 (2005), and the analysis in *Odom* runs counter to Washington law and the

27  Restatement. In any event, like *Schnall* and *Pickett*, *Odom* involved transactions directly

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 19
DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1  between class members and Microsoft, a fact not present here. And the *Odom* trial court

2  refused to certify a "deception" class such as the one that plaintiffs seek here, recognizing that

3  proving the information given to class members at retail stores in all 50 states would require

4  overwhelmingly individual proof. Slip Op. at 6-7 (Smart Decl. [Dkt. No. 61] Ex. N).

### d.    Plaintiffs' Out-of-State Cases

6  Space prevents detailed discussion of the out-of-state cases on which plaintiffs rely.

7  *See* COL Mot. at 18-20. Suffice it to say that *Lyon v. Caterpillar, Inc.,* 194 F.R.D. 206 (E.D.

8  Pa. 2000), presents a more analogous fact pattern than plaintiffs' cases. In *Lyon*, plaintiffs

9  complained that a manufacturer misrepresented the performance of boat engines sold through

10  dealers throughout the country – just as plaintiffs here allege that Microsoft misled consumers

11  as to the performance of OEMs' Windows Vista Capable PCs, sold by OEMs and retailers

12  throughout the United States. Plaintiffs in *Lyon* urged application of the Illinois Consumer

13  Fraud Act to a nationwide class because the defendant was based in Illinois. Analyzing the

14  factors under Restatement § 148(2), as well as the interests of the various states, the court

15  concluded that "the applicable state law may not be limited to the statute in effect in Illinois."

16  194 F.R.D. at 218.[7] This Court should reach the same conclusion.

### C.    Laws on Consumer Protection and Unjust Enrichment Differ Materially from State to State, Which Precludes a Nationwide Class.

18  Because plaintiffs ask only that the Court apply Washington law based on the

19  application of conflicts principles, they do not bother to address state law variations on the

20  matters at issue. Given that plaintiffs cannot show that Washington law should apply, their

21  approach means that they have not satisfied their burden of justifying a nationwide class.

22

23

---

24  [7] Of the three out-of-state cases cited by plaintiffs, one has been accepted for review by the Illinois Supreme Court, whose decision in *Avery* provides ample guidance here. *See Barbara's Sales v. Intel Corp.,* 857 N.E.2d 717 (Ill. App.), *appeal granted,* 861 N.E.2d 653 (Ill. 2006). Further, as noted above, *Barbara's Sales* has been subjected to well-deserved criticism. *See Lantz,* 2007 WL 1424614 at *6. Plaintiffs' other cases come from the District of Minnesota and depart from the mainstream of jurisprudence in this area. "The bottom line is that over the past ten years, the federal court system has not produced any final decisions – not even one – applying the law of a single state to all claims in a nationwide or multi-state class action." S. Rep. 109-14 at 64, Class Action Fairness Act of 2005.

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 20

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1.    **Scores of Courts Have Rejected Nationwide Certification Where Plaintiffs Do Not Show an Absence of State Law Variations.**

Because the putative class claims implicate the laws of many states, plaintiffs bear the burden of conducting an "extensive analysis of state law variances" and either showing the absence of any conflict among the state laws or providing a plan for managing the conflicts at trial. *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 603 (W.D. Wash. 2001). As Justice Ginsburg wrote twenty years ago, a "court cannot accept such an assertion [of uniform state law] 'on faith.' [Plaintiffs], as class action proponents, must show that it is accurate." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (vacating certification); *see Gariety v. Grant Thornton LLP*, 368 F.3d 356, 370 (4th Cir. 2004) (plaintiffs cannot meet burden "when the various laws have not been identified and compared"); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (where plaintiff seeks "a nationwide class for which the law of forty-eight states potentially applies, she bears the burden of demonstrating a suitable and realistic plan for trial of the class claims"); *Washington Mut. Bank FA v. Superior Court*, 15 P.3d 1071, 1086 (Cal. 2001) (same).

Rather than analyze the differences in the 50 states' laws, plaintiffs hope to dispense with the necessary "extensive analysis" by glibly declaring that "every state is interested in fairness to its consumers." COL Mot. at 16. This begs the question. The fact that consumer protection laws exist in all states does not answer whether "a particular issue [would be] different under the law of the [various] states." *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007). Further, the fact that laws may have similar purposes does not discharge plaintiffs' duty to "creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" *Walsh*, 807 F.2d at 1017 (requiring choice of law analysis with respect to state law warranty claims); *see Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672-73 (Tex. 2004) (reversing certification where plaintiff failed to demonstrate absence of state law variations).

Given plaintiffs' tactical decision to place all their eggs in the Washington law basket, certification of a nationwide state-law class would be improper on this record. "State and

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 21

DWT 2132578v10 0025936-000689

Davis Wright Tremaine LLP

1201 Third Avenue, Suite 2200
Seattle, Washington 98101

1    federal courts have overwhelmingly rejected class certification when multiple states' laws

2    must be applied." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698 (Tex. 2002)

3    (collecting over 60 cases). Plaintiffs have not cited a single federal appellate decision

4    affirming certification of a nationwide class based on state-law claims absent a detailed

5    showing of uniformity in state law. In fact, as far as Microsoft can determine, every federal

6    appellate decision since *Shutts* – and there are many – has rejected certification in those

7    circumstances. *E.g.*, *Lozano v. AT&T Wireless Servs., Inc.*, 2007 WL 2728758 at *7-*8 (9th

8    Cir. Sept. 20, 2007); *Cole v. General Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007);

9    *Bridgestone/Firestone*, 288 F.3d at 1018; *Stirman v. Exxon Corp.*, 280 F.3d 554, 564-66 (5th

10   Cir. 2002); *Zinser*, 253 F.3d at 1188-90; *Spence*, 227 F.3d at 316; *Georgine*, 83 F.3d at 627;

11   *Andrews v. AT&T Co.*, 95 F.3d 1014 (11th Cir. 1996); *In re American Med. Sys., Inc.*, 75 F.3d

12   1069, 1086 (6th Cir. 1996); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.

13   1996); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301-02 (7th Cir. 1995).

2.    **The Applicable State Laws Vary in Potentially Outcome-Determinative Ways, Foreclosing Certification.**

15   One can readily understand why plaintiffs elected not to argue uniformity in the state

16   law that would govern their claims: courts repeatedly have stressed the differences in the

17   states' laws governing claims of this nature. Accordingly, any effort to satisfy the test

18   established by *Walsh* and its progeny would have been doomed to failure.[8]

19   The various states' consumer protection laws in particular "present different

20   procedural and substantive elements, including differing requirements of privity, demand,

21   scienter and reliance." *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 312 (S.D.N.Y.

22   1999); *see Bridgestone/Firestone*, 288 F.3d at 1018 ("State consumer-protection laws vary

23   considerably."); *Lyon*, 194 F.R.D. at 219 ("State consumer protection acts vary on a range of

24   fundamental issues."). "Both consumer fraud and unfair competition laws of the states differ

25

26   [8] Page limits preclude a detailed discussion of variations in applicable state laws. Should the Court
prefer such an analysis, Microsoft has prepared a 30-page assessment of the substantive variations in

27   applicable state laws, which it would be pleased to file if the Court believes it would be helpful.

1  with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-

2  fact, available remedies, and reliance, just to name a few differences." *In re Prempro*, 230

3  F.R.D. 555, 564 (E.D. Ark. 2005); *see also In re Gen'l Motors Corp. Anti-Lock Brake Prods.*

4  *Liab. Litig.*, 966 F. Supp. 1525, 1536-37 (E.D. Mo. 1997) (offering examples of variances).

5      The circumstances of the two named plaintiffs illustrate just two of the many

6  fundamental differences. Mr. Hansen purchased his Windows Vista Capable PC in Illinois.

7  If he were to sue under the Illinois Consumer Fraud Act, 805 ILCS 505/10a(a), he would have

8  to prove that Microsoft intended that he rely on the Windows Vista Capable sticker, and the

9  Court would have to instruct the jury to that effect. *Avery*, 835 N.E.2d at 805. Suing under

10  the Washington CPA, however, Ms. Kelley *not* would have to prove that Microsoft intended

11  anything. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

12  785, 719 P.2d 531 (1986). But Ms. Kelley *would* have to prove that Microsoft's actions

13  affect the public interest, *id.*, while Mr. Hansen would not need to make that showing. *See*

14  *Avery*, 835 N.E.2d at 805. Thus, on substantive elements of liability, "the result … [could be]

15  different under the laws of the two states." *Erwin*, 167 P.3d at 1120.

16      Similarly, the elements of unjust enrichment "vary from state to state and require

17  individualized proof of causation." *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 500 (S.D. Ill.

18  1999); *see In re Prempro*, 230 F.R.D. at 563 ("unjust enrichment and consumer fraud/unfair

19  competition … laws cannot reasonably be grouped in a comprehensive manner that does not

20  seriously impinge on the integrity of the law of each state"). For example, many states

21  require a showing of wrongful or fraudulent conduct by the defendant, *see, e.g., Randolph v.*

22  *Peterson, Inc. v. J.R. Simplot Co.*, 778 P.2d 879, 883 (Mont. 1989); *Pinnacle Data Serv. Inc.*

23  *v. Gillen.*, 104 S.W.3d 188,195-96 (Tex. App. 2003); *Laurent v. Flood Data Serv., Inc.*, 766

24  N.E.2d 221, 226 (Ohio Ct. App. 2001), while others allow recovery where the defendant

25  receives a benefit innocently. *Petrie-Clemons v. Butterfield*, 441 A.2d 1167, 1172 (N.H.

26  1982); *Wilson Area School Dist. v. Skepton*, 860 A.2d 625, 630 (Pa. Commw. Ct. 2004);

27  *Landeis v. Nelson*, 808 P.2d 216, 217-18 (Wyo. 1991). Some (including Washington) bar

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 23

DWT 2132578v10 0025936-000689

1   recovery for unjust enrichment where the plaintiff has an adequate remedy at law, *see Seattle*

2   *Prof'l Eng'g Employees Ass'n v. Boeing*, 139 Wn.2d 824, 838-39 (2000), while others permit

3   unjust enrichment claims in addition to overlapping legal causes of action. *Richmond Square*

4   *Capital Corp. v. Ins. House*, 744 A.2d 401, 401 (R.I. 1999); *Realmark Developments, Inc. v.*

5   *Ranson*, 588 S.E.2d 150, 153 (W.Va. 2003). In short, "[t]he claim of unjust enrichment is

6   packed with individual issues and would be unmanageable." *Clay*, 188 F.R.D. at 501.

7        This brief summary cannot do justice to the rich tapestry of the 50 states' laws

8   governing plaintiffs' claims. It does show, however, that plaintiffs' Motion did not meet their

9   burden of showing that the proposed class claims could be adjudicated on a nationwide basis.

## IV.    CONCLUSION

11       For these reasons, Microsoft respectfully requests that the Court deny plaintiffs'

12  motion to have Washington law apply to every consumer purchase of a non-Premium Ready

13  Windows Vista Capable PC in every jurisdiction in the United States.

14       DATED this 20th day of November, 2007.

15                           Davis Wright Tremaine LLP
                             Attorneys for Microsoft Corporation
16
                             By /s/ Stephen M. Rummage
17                              Stephen M. Rummage, WSBA #11168
                                Cassandra Kinkead, WSBA #22845
18                              Charles S. Wright, WSBA #31940
                                1201 Third Avenue, Suite 2200
19                              Seattle, WA  98101-1688
                                Telephone:  (206) 622-3150
20                              Fax:  (206) 757-7700
                                E-mail:  steverummage@dwt.com
21                                       cassandrakinkead@dwt.com
                                         charleswright@dwt.com
22
    Of Counsel:
23
    Charles B. Casper
24  Patrick T. Ryan
    Montgomery, McCracken,
25   Walker & Rhoads, LLP
    123 S. Broad Street
26  Philadelphia, PA  19109
    (215) 772-1500
27

MICROSOFT'S OPPOSITION TO COL MOT. (NO. C07-475 MJP) – 24
DWT 2132578v10 0025936-000689

1

## CERTIFICATE OF SERVICE

2

3
I hereby certify that on November 20, 2007, I electronically filed *Microsoft's*

*Opposition to Plaintiffs' Motion for Application of Washington Law (With Corrected Table of*

4

*Authorities)* to which this certificate is attached with the Clerk of the Court using the CM/ECF

5

6
system, which will send notification of such filing to the following:

7
       Jeffrey I. Tilden:           jtilden@gordontilden.com

8
       Jeffrey M. Thomas:      jthomas@gordontilden.com
       Michael Rosenberger:   mrosenberger@gordontilden.com

9
       Mark A. Wilner:         mwilner@gordontilden.com
       William C. Smart:      wsmart@kellerrohrback.com

10
       Mark A. Griffin:        mgriffin@kellerrohrback.com
       Ian S. Birk:             ibirk@kellerrohrback.com

11

12
DATED this 20th day of November, 2007.

13

14
                  Davis Wright Tremaine LLP
                  Attorneys for Defendant

15

16
                  By */s/ Stephen M. Rummage*
                      Stephen M. Rummage, WSBA #11168

17
                      Davis Wright Tremaine LLP
                      1201 Third Avenue, Suite 2200

18
                      Seattle, WA 98101-3045
                      Telephone: (206) 757-8136

19
                      Fax: (206) 757-7700
                      E-mail: steverummage@dwt.com

20

21

22

23

24

25

26

27