The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT
                                  WESTERN DISTRICT OF WASHINGTON
9                                            AT SEATTLE

10   DIANNE KELLEY and KENNETH HANSEN, )    No.  C 07-475 MJP
                                              )
11                        Plaintiffs,         )    MICROSOFT'S OPPOSITION TO
            v.                                )    PLAINTIFFS' MOTION FOR
12                                            )    CLASS CERTIFICATION
     MICROSOFT CORPORATION, a Washington )
13   corporation,                             )    *Noted for Consideration:*
                                              )    December 19, 2007
14                        Defendant.          )
                                              )    *Oral Argument Requested*
15   _____ )

16

17
      *FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER (DKT. 57)*
18                *AND PENDING MOTION TO SEAL*

19

20

21                          REDACTED VERSION

22

23

24

25

26

27

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION          Davis Wright Tremaine LLP
FOR CLASS CERTIFICATION (No. C07-475 MJP)                     LAW OFFICES
                                                       Suite 2200 · 1201 Third Avenue
                                                      Seattle, Washington 98101-3045
                                                   Phone: (206) 622-3150 · Fax: (206) 757-7700

Dockets.Justia.com

1

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...............................................................................1

II.  STATEMENT OF FACTS ...................................................................2

     A.   Microsoft, OEMs, Retailers and the Press Informed Consumers about
          What "Windows Vista Capable" Meant. ......................................2

     B.   Windows Vista Home Basic Edition Provides Material Improvements
          over Microsoft's Earlier Windows XP Home Edition. ...................9

     C.   Ms. Kelley's and Mr. Hansen's Dissimilar PC Buying Experiences
          Illustrate the Inevitable Variations in Potential Class Members' Claims. ........10

III. ARGUMENT .....................................................................................12

     A.   Individual Fact Questions Concerning Causation and Injury Will
          Predominate over Any Common Questions in This Litigation. ......12

          1.   The Combination of Information Made Available to Consumers
               by Microsoft, OEMs, Retailers and the Media Requires Denial
               of Certification. ............................................................14

          2.   The Fact That Many Potential Class Members, Including Ms.
               Kelley, May Not Have Seen the "Windows Vista Capable"
               Logo before Buying Their PCs Forecloses Certification. ...........17

          3.   Plaintiffs' Arguments That This Case Involves a "Defective"
               Product and "Fraud on the Market" Do Not Cure Their Inability
               to Establish Causation and Injury with Common Evidence. ........20

     B.   The Named Plaintiffs' Claims Are Not Typical of Any Claim That
          Potential Class Members in the Express Upgrade Program May Have. .........21

     C.   Individual Questions of Law Predominate. ..................................23

     D.   Plaintiffs Fail to Satisfy Rule 23(b)(3)'s Superiority Requirement. ................23

IV.  CONCLUSION ..................................................................................24

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – i

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1

2

## TABLE OF AUTHORITIES

3

**FEDERAL CASES**

4

*Alabama v. Blue Bird Body Co.,*
    573 F.2d 309 (5th Cir. 1978) ...................................................................12

5

*Castano v. Am. Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) ....................................................................12

6

7

*Cummings v. Connell,*
    402 F.3d 936 (9th Cir. 2005) ..................................................................12

8

*Gariety v. Grant Thornton, LLP,*
    368 F.3d 356 (4th Cir. 2004) ..................................................................21

9

10

*Gartin v. S&M Nutec LLC,*
    2007 WL 1424654 (C.D. Cal. Apr. 4, 2007) ...........................................23

11

*Gen. Tel. Co. v. Falcon,*
    457 U.S. 147 (1982) ...............................................................................12

12

13

*Gonzalez v. Proctor and Gamble Co.,*
    2007 WL 2700954 (S.D. Cal. Sept. 12, 2007) ...............................18, 22

14

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ..................................................................22

15

16

*In re Hotel Telephone Charges,*
    500 F.2d 86 (9th Cir. 1974) ....................................................................24

17

*In re PolyMedica Corp. Secs. Litig.,*
    432 F.3d 1 (1st Cir. 2005) ......................................................................21

18

19

*In re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.,*
    2003 WL 1589527 (D. Minn. Mar. 27, 2003) .........................................20

20

*LaCasse v. Wash. Mut., Inc.,*
    198 F. Supp. 2d 1255 (W.D. Wash. 2002) (Zilly, J.)...............................12

21

22

*Lozano v. AT&T Wireless Services, Inc.,*
    2007 WL 2728758 (9th Cir. Sept. 20, 2007) (Robart, J.) ................15-16

23

*O'Connor v. Boeing N. Am., Inc.,*
    197 F.R.D. 404 (C.D. Cal. 2000) ...........................................................22

24

*Oshana v. The Coca-Cola Co.,*
    225 F.R.D. 575 (N.D. Ill. 2005), *aff'd,* 472 F.3d 506 (7th Cir. 2006) .........16-17, 23

25

26

*Poulos v. Caesars World, Inc.,*
    379 F.3d 654 (9th Cir. 2004) ............................................................15, 17

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1   *Prohias v. Pfizer, Inc.,*
        485 F. Supp. 2d 1329 (S.D. Fla. 2007) ..................................................................21

2
    *Villasenor v. American Signature, Inc.,*
3       2007 WL 2025739 (N.D. Ill. July 9, 2007).............................................................15

4   *Wright v. Fred Hutchinson Cancer Research Ctr.,*
        2001 WL 1782714 (W.D. Wash. Nov. 19, 2001) (Lasnik, J.).....................12, 15, 17
5
    *Zinser v. Accufix Research Inst.,*
6       253 F.3d 1180 (9th Cir. 2001) ......................................................................12, 23

7

8   **STATE CASES**

9   *Bailie Commc'ns, Ltd. v. Trend Bus. Sys. Inc.,*
        61 Wn. App. 151 (1991) ........................................................................................13
10
    *Davies v. Philip Morris U.S.A., Inc.,*
11      2006 WL 1600067 (Wash. Super. Ct. 2006) .........................................................19

12  *Fink v. Ricoh Corp.,*
        839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ................................................18, 21
13
    *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
14      105 Wn.2d 778 (1986) .....................................................................................13, 17

15  *Hutson v. Rexall Sundown, Inc.,*
        837 So.2d 1090 (Fla. Dist. Ct. App. 2003) ......................................................17, 22
16
    *Indoor Billboard/Washington, Inc. v. Integra Telecom,*
17      2007 WL 3025836 (Wash. Oct. 18, 2007)......................................................1, 13, 17

18  *Microsoft Corp. v. Manning,*
        914 S.W.2d 602 (Tex. Ct. App. 1995) ...................................................................20
19
    *Oliveira v. Amoco Oil Co.,*
20      776 N.E.2d 151 (Ill. 2002)..............................................................................18, 21

21  *Philip Morris USA Inc. v. Hines,*
        883 So.2d 292 (Fla. Dist. Ct. App. 2003) ..............................................................19
22
    *Pratt v. Panasonic Consumer Elec. Co.,*
23      2006 WL 1933660 (N.J. Super. Ct. Law Div. July 12, 2006) .................................19

24  *Robinson v. Avis Rent A Car System, Inc.,*
        106 Wn. App. 104 (2001) ......................................................................................14
25
    *Shannon v. Boise Cascade Corp.,*
26      805 N.E.2d 213 (Ill. 2004) .....................................................................................15

27  *Sheldon v. American States Preferred Ins. Co.,*
        123 Wn. App. 12 (2004) ........................................................................................14

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – iii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

*Solomon v. Bell Atl. Corp.,*
   777 N.Y.S.2d 50 (N.Y. App. Div. 2004) .......................................................... 17-18

*Weinberg v. Sun Co., Inc.,*
   777 A.2d 442 (Pa. 2001) ...............................................................................18, 21

**STATE STATUTES**

RCW 19.86.010 *et seq.* ...............................................................................13

**RULES**

Fed. R. Civ. P. 11 ...............................................................................20

Fed. R. Civ. P. 23 ...............................................................................12

Fed. R. Civ. P. 23(a) ...............................................................................2

Fed. R. Civ. P. 23(a)(3) ...............................................................................21

Fed. R. Civ. P. 23(b)(3) ...............................................................................2, 12, 17, 23

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – iv

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

## I.    INTRODUCTION

In their Motion for Class Certification [Dkt. No. 65], plaintiffs ask the Court to certify a nationwide class of anyone who bought (a) a PC that had a "Windows Vista Capable" sticker on it but was not designated as "Premium Ready" and/or (b) a PC with an "Express Upgrade" to Windows Vista Home Basic. Plaintiffs' Motion, however, discusses only a single element of the Windows Vista Capable ("WVC") program, focusing on a small (less than a square inch) sticker that PC manufacturers ("OEMs") affixed to some PCs sold before Windows Vista launched in January 2007. But Microsoft, OEMs, retailers and the media disseminated a wealth of other information concerning the WVC program—on Web sites, in stores, in newspapers, in periodicals, and on the boxes containing "Windows Vista Capable" PCs—publicizing the very facts plaintiffs say the three-word sticker misrepresented. PC buyers had access to detailed information about the various editions of Windows Vista, the meaning of the "Windows Vista Capable" sticker, the significance of the "Premium Ready" designation, and the specific Windows Vista features that a particular PC could run.

Microsoft does not claim that every member of the putative class read every one of these resources about the WVC program—or even saw the sticker on which plaintiffs rest their case. But that is exactly the point: as the depositions of Ms. Kelley and Mr. Hansen show, one cannot tell who saw what, and what role the information played in a particular purchasing decision, without individual examinations and fact-finding. On this record, then, the Court should deny class certification for four reasons:

*First*, as the Washington Supreme Court held last month in *Indoor Billboard/Washington, Inc. v. Integra Telecom*, 2007 WL 3025836 (Wash. Oct. 18, 2007), a plaintiff cannot recover for allegedly deceptive conduct without establishing that, *but for* that conduct, the plaintiff would not have suffered the claimed injury. This requirement of "but for" causation presents uniquely individual issues here. PC purchasers act with individual motivations and base purchasing decisions on information and criteria specific to their personal needs and budgets. In adjudicating plaintiffs' claims, a finder of fact would have to decide which

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 1

1    proposed class members bought PCs without knowing about the Windows Vista Capable

2    sticker; which ones bought after reading some of the available information and got what they

3    wanted; which ones bought without ever intending to upgrade to a new operating system at

4    all; and which ones bought based on an incomplete investigation and wound up with less than

5    they hoped.  The need for an inquiry into each putative class member's purchase decision

6    means that plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement.

7        ***Second***, neither plaintiff bought a PC with an "Express Upgrade" to Windows Vista

8    Home Basic.  Disposition of the plaintiffs' claims therefore will not shed light on the claims

9    of proposed class members who have complaints about the "Express Upgrade" promotion.

10    Plaintiffs cannot satisfy Rule 23(a)'s "typicality" requirement for certification of those claims.

11        ***Third***, as explained in Microsoft's Opposition to Plaintiffs' Motion for Application of

12    Washington Law, courts routinely decline to certify nationwide classes on state law claims.

13    Because the Court cannot apply Washington law to the class claims, the Court should join

14    most courts in holding that plaintiffs cannot litigate on behalf of a nationwide class here.

15        ***Fourth***, plaintiffs have not satisfied Rule 23(b)(3)'s requirement that a class action be

16    "superior to other available methods for the fair and efficient adjudication of the controversy."

17    If this case were certified for class treatment, the Court would spend most of its time resolving

18    issues peculiar to each individual class member.

19                    **II.    STATEMENT OF FACTS**

20    **A.    Microsoft, OEMs, Retailers and the Press Informed Consumers about
21           What "Windows Vista Capable" Meant.**

22        Microsoft does not sell PCs.  Instead, it licenses operating system software to PC

23    manufacturers ("OEMs"), who preinstall the operating system and sell their PCs to

24    consumers, online and through retail stores such as CompUSA, Staples, and Office Depot.

25    PC purchasers run the gamut from consumers who want only the basic PC functions that a

26    bargain PC provides, to sophisticated users who require advanced hardware to run complex

27    applications.  Microsoft therefore created different editions of the Windows Vista operating

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1  system, so that OEMs could make available a basic version to buyers of inexpensive PCs who

2  want the ability to send e-mail, create documents, play music and videos, and browse the

3  Internet, while making premium versions available to those who want to perform more

4  sophisticated tasks on more advanced and expensive PCs. *See* Gatchalian Decl. ¶ 3.

5        Plaintiffs ignore the comprehensive marketing campaigns through which Microsoft,

6  OEMs, retailers and others provided consumers with detailed information on the different

7  versions of Windows Vista and the "Windows Vista Capable" program. Instead, plaintiffs

8  focus on the tiny three-word logo that played only a small role in that process. In fact,

9  Microsoft created, and OEMs and retailers used, marketing materials, sales aids and training

10  materials that described what features the different Windows Vista editions would provide—

11  and explained that not every WVC computer would be able to provide every advanced feature

12  available in every edition of Windows Vista, including the new "Aero" user interface.

13        ***Microsoft:*** Months before Ms. Kelley and Mr. Hansen bought their laptops, Microsoft

14  implemented an extensive media plan to tell consumers about the upcoming release of its new

15  Windows Vista operating system. Burk Decl. ¶¶ 3, 4. On May 18, 2006, Microsoft issued a

16  press release announcing (a) the WVC program to assist consumers in identifying PCs that

17  could be upgraded to the new operating system when it was released, and (b) the Windows

18  Vista "Get Ready" Web site to educate consumers about the different editions of Windows

19  Vista and Windows Vista Capable PCs. *Id.* ¶¶ 4-5 & Ex. A. The press release, backed by

20  briefings to reporters and analysts, referred the public to Microsoft's "Get Ready" Web site

21  for "a variety of information and tools customers can use to prepare for Windows Vista,"

22  including "information on Windows Vista Capable and Windows Vista Premium Ready

23  PCs ... and background on the different editions of Windows Vista." *Id.* ¶¶ 4-11 & Ex. A.

24        From the inception of the WVC program, Microsoft emphasized that not all Windows

25  Vista Capable PCs were equal. Every edition of "Windows Vista will deliver innovations in

26  core operating system experiences, including security, reliability and management of the PC,

27  organizing, managing and finding information, and methods for connecting with people,

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1    places and devices." *Id.*, Ex. A. But, as Microsoft *repeatedly* told the public, "premium

2    features and advanced experiences," such as Windows Aero (the new user interface plaintiffs

3    say their PCs could not support) would require a PC labeled "Premium Ready":

4            Premium editions of Windows Vista—such as Windows Vista Home
        Premium, Windows Vista Business or Windows Vista Ultimate—will
5            offer even more value by delivering premium features and advanced
        experiences ....
6

7            A Premium Ready designation ensures that the PC will deliver even
        better Windows Vista experiences, including Windows Aero™, a new
8            user experience designed to deliver a productive, high-performing
        desktop interface.

9            ***Microsoft recommends that customers seeking the best experiences
        with Windows Vista ask for PCs that are Premium Ready or choose***
10           ***PCs that meet or exceed the Premium Ready requirements.***

11   *Id.* (emphasis added). Neither plaintiff chose to pay for a Premium Ready PC.

12          Microsoft's "Get Ready" Web site remained available to consumers from May 2006

13   until months after these plaintiffs bought their PCs. The Web site told potential PC buyers

14   that "the Windows Vista experience" could "vary on different PCs," explaining that although

15   "[a]ll Windows Vista Capable PCs will be able to run at least the core experiences of

16   Windows Vista," all "Windows Vista Premium Ready PCs can deliver even better Windows

17   Vista experiences, including the new Windows Aero user experience." *See* Therrien Decl.,

18   Ex. A. The "Get Ready" Web site included links to pages that identified which Windows

19   Vista features would be available only in premium editions. *Id.* (identifying "Windows Aero,

20   Windows Flip 3D navigation, Scheduled and Network Backup, Windows Meeting Space, and

21   Tablet Technology" as available *only* in premium editions of Windows Vista).

22          On October 24, 2006, Microsoft issued a press release and briefed reporters and

23   analysts about the Express Upgrade to Windows Vista program. Burk Decl. ¶¶ 12-13 & Ex.

24   B. Rather than promote the sale of bargain PCs, the press release featured Microsoft's

25   recommendation that "buyers consider Windows Vista Capable PCs that are designated

26   Premium Ready" because those PCs "can deliver the core Windows Vista experiences, plus

27

1  features such as the Windows Aero™ user experience and Media Center." *Id.*, Ex. B. The

2  press release noted that "[s]ome functionalities require specific hardware components." *Id.*

3     ***OEMs:*** OEMs had the option to use the Windows Vista Capable logo on PCs that met

4  the program's specifications.

6  REDACTED

8     Toshiba, for example, designed a Web page that answered the question "What is

9  the Windows Vista Capable Logo?"     REDACTED

> *Not all Windows® Vista™ features are available for use on all
> Windows® Vista™ Capable PCs. All Windows® Vista™ Capable
> PCs will run the core experiences of Windows® Vista™, such as
> innovations in organizing and finding information, security, and
> reliability. **Some features available in premium editions of
> Windows® Vista™ -- like the new Windows® Aero™ user interface
> -- require advanced or additional hardware. Check
> www.windowsvista.com/getready for details.**

Rummage Decl. ¶ 3 & Ex. B at 63 (italics in original; bold added). Other OEMs took

comparable steps. *See, e.g.,* Riquelmy Decl. ¶¶ 5-7 & Exs. 5-8 (Dell); Chim Decl. ¶¶ 4-11 &

Ex. 1-8 (Hewlett Packard); Rummage Decl. ¶ 3 & Ex. B at 60, 62, 70, 71, 74, 80-81, 82, 87

(other OEM disclosures).

     OEMs provided consumers with ample information about the WVC program.

REDACTED

                          OEMs posted information on

their Web sites. For example, Dell created several Web pages about Windows Vista and

"Windows Vista Capable" systems. *See* Riquelmy Decl. ¶¶ 3-6 & Exs. 1-7. Long before Ms.

Kelley bought her Dell laptop, Dell's Web site explained that "[s]ystems without the required

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1    graphics driver or enough system memory can still meet the minimum requirements for

2    running Vista, just *without the new Windows Aero visual experience*." *Id.* ¶ 4 & Ex. 1

3    (emphasis added); *see also id.* Ex. 2-4.  Dell also explained the difference between a

4    "Windows Vista Capable" PC and one that was also designated "Premium Ready." *Id.* ¶ 5 &

5    Ex. 5.  Dell's Web site included links to pages describing the WVC program and one entitled

6    "How Can I Be Sure I Get a PC that Meets the Windows Vista and Windows Aero

7    Requirements?" *Id.* ¶¶ 4-5 & Ex. 1-2, 4-5.  Dell's Web site even showed consumers which of

8    its computers could run the "Basic Windows Vista Experience" and which could run the

9    "Windows Aero Experience." *Id.* ¶ 4 & Ex. 2.[1]  Dell was not alone:  other OEMs likewise

10   told consumers which of their computers were "Windows Vista Capable" and which were

11   "Windows Vista Premium Ready." *See, e.g.*, Rummage Decl. ¶ 3 & Ex. B at 58-59

12   (eMachines); 66-67 (Acer); 78-79 (Fujitsu); 85-86 (Lenovo).

        ***Retailers***:  Although Microsoft did not have a direct relationship with retailers, it gave

14   them marketing materials designed to "[e]nsure that consumers are purchasing the right PC in

15   order to get the Windows Vista experience and feature set that was right for them" should

16   they decide to upgrade in the future.  Tindall Decl. ¶¶ 1, 2, 6.  Microsoft prepared Point of

17   Purchase (or "POP") and training materials for retailers and engaged Mosaic Sales Solutions

18   to bring and position the POP materials at retailers' stores.  Tindall Decl. ¶ 6.  Participating

19   retailers included CompUSA, Wal-Mart, Office Depot, Staples, Sam's Club, J&R Music and

20   Computer World, BJ's Wholesale Club, Fred Meyer, Fry's Electronics, and Nebraska

21   Furniture Mart, a Midwestern retailer. *Id.; see* Hodges Decl. ¶¶ 3-11 & Ex. 1-6 (CompUSA).

        These POP materials were neither subtle nor hidden.  They included brochures, fact

23   cards, "monitor blades" (affixed to the screens of PCs on display), and "tent cards" (which

24   stood on PC display shelves), all designed to grab attention and inform customers about the

25   WVC program.  Rather than promote low-end computers that could run only the core features

---

[1] Dell identified the Dell Inspiron B130—the laptop that Ms. Kelley purchased—as capable of running the "Basic Windows Vista Experience," as long as it had 512 MB of system memory, but specifically noted that it could *not* deliver the "Windows Aero Experience." Riquelmy Decl. Ex. 2.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1  of Windows Vista (as plaintiffs imply), the POP materials touted Premium Ready PCs for the

2  more advanced Windows Vista experiences they could deliver.  The brochures, tent cards, and

3  facts cards, for example, explained that:

> When you purchase a PC with the Windows Vista Capable sticker on
> it, your PC will deliver core experiences such as innovations in
> organizing and finding information, security, and reliability.  All
> Windows Vista Capable PCs will run these core experiences at a
> minimum.  For even better experiences that come with the premium
> editions of Windows Vista, *including the Windows Aero user
> experience, ask for Windows Vista Premium Ready PCs*.  Premium
> editions are Windows Vista Home Premium, Windows Vista Business
> and Windows Vista Ultimate.

9  Tindall Decl. ¶ 4 & Exs. B-D (emphasis added); *see also* Hodges Decl. ¶¶ 4-10 & Ex. 2-6

10  (CompUSA).  All of these materials provided Microsoft's "Get Ready" Web site address,

11  where customers could obtain more information about Windows Vista editions and determine

12  which features their PCs would support if they decided to upgrade, and most included a chart

13  summarizing the features of each Windows Vista version.  *See* Tindall Decl. ¶ 4 & Exs. B-D.

14  (Plaintiffs' counsel prematurely referred to such a chart at argument on the Motion to

15  Dismiss, tacitly admitting that it accurately compared Windows Vista Home Basic to

16  Windows Vista Home Premium.)  Retail store employees were trained to use these materials

17  to assist customers in deciding which PC to buy.  Hodges Decl. ¶¶ 5-11 (CompUSA).

18  　　Like OEMs, many retailers also provided detailed information on "Windows Vista

19  Capable" and "Premium Ready" PCs on their Web sites.  *See* Hodges Decl. ¶¶ 12-13 & Ex. 7-

20  8 (CompUSA); Rummage Decl. ¶ 3 & Ex. B at 82-83 (Staples).

21  　　*The Press*:  As one would expect, the press covered (and critiqued) Windows Vista

22  and the WVC program.  After Microsoft announced a delay in the release of Windows Vista

23  in March 2006, scores (possibly hundreds) of journalists published articles about Windows

24  Vista and the WVC Program.  The press highlighted the variations in Windows Vista editions

25  and offered advice to the purchasing public.  For example, a March 31, 2006 issue of *PC

26  World*, entitled "No Vista, but 'Vista Capable' Stickers Instead," explained that

27

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

the requirements met by Windows Vista Capable PCs will allow customers to run Windows Vista Home Basic, according to Microsoft. *However, they do not represent the minimum hardware requirements for higher-end versions of Vista,* requirements Microsoft says it will provide in the future as the program expands.

\* \* \*

[A] machine branded "Windows Vista Capable" that is a high-end Media Center PC with superior graphics capabilities will be ready for even the most feature-intensive versions of Vista ... *But if it's a low-cost PC and it has a "Capable" sticker on it, "it will probably run the features of Home Basic but not anything else,"* [one expert] warns.

Rummage Decl. ¶ 2 & Ex. A at 25 (emphasis added).[2]  For those not as tech-savvy, daily newspapers ran similar stories. *The New York Times* "Technology" section on April 20, 2006 advised whether consumers should "wait until the new version of Windows comes out":

If you don't want to wait, you can look for a new computer that has been qualified as "Windows Vista Capable," *which means that it has the minimum hardware components necessary to run the most basic versions of Windows Vista.*

Like Windows XP, though, the new operating system will be available in several different versions for business and home users, and each version may have slightly different requirements. *Some higher-end versions of Vista may require a more robust processor and graphics card than the most basic edition needs.*

Rummage Decl. ¶ 2 & Ex. A at 23 (emphasis added).  The article directed readers to Microsoft's Web site, which outlined the "good, better and best hardware to use with a future Vista system." *Id.*  Similarly, articles in the November 2006 and January 2007 issues of *Consumer Reports* carefully distinguished between Windows Vista Capable PCs and "[s]ystems called Windows Vista Premium Ready," which can "run Vista's Aero interface." *Id.* Ex. B at 9.  "Look for either a Windows Vista Capable or Premium Ready logo.  The former provides enough power to run the Basic version of Vista, while the latter lets you effectively run higher-end Vista versions—Home Premium and Ultimate." *Id.,* Ex. B at 16.

---

[2] Even one of the articles plaintiffs attach to their motion, titled "PC maker fumes at Vista price hike," advises consumers of the difference between Vista Home Basic and other versions of the operating system.  In particular, the article tells readers that the "Basic" version of Windows Vista includes "no [Aero] graphics, no Media Center, no remote control." Tilden Decl. [Dkt. No. 66] Ex. E.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150  ·  Fax: (206) 757-7700

**B.    Windows Vista Home Basic Edition Provides Material Improvements over Microsoft's Earlier Windows XP Home Edition.**

Inevitably influenced by the wealth of information available, [REDACTED] people have acquired Windows Vista Home Basic, either as the pre-installed operating system on a newly purchased PC or as an upgrade to their existing Windows XP operating system. *See* Moline Decl. ¶ 5. (Indeed, to this day, OEMs and retailers advertise Windows Vista Home Basic as the pre-installed operating system on bargain PCs. *See* Rummage Decl., Ex. C.) Plaintiffs cannot plausibly claim that, despite the widespread publicity, all [REDACTED] knew nothing about the meaning of the Windows Vista Capable logo or the Premium Ready designation.[3]

Windows Vista Home Basic represents a major advancement over Microsoft's earlier operating systems, delivering improvements in core PC functions, including "innovations in organizing and finding information, security, and reliability." Gatchalian Decl. ¶¶ 6-7. In addition, Windows Vista Home Basic contains attractive extras such as "gadgets" on the screen to show time, weather, and traffic conditions, and more advanced parental controls to restrict and monitor children's PC usage and Web browsing. *Id.* The Court need not decide whether *every* potential class member had full knowledge of (or even cared about) these capabilities of Windows Vista Home Basic. Based on the record, the Court has every reason to believe that many members of the proposed class (including Ms. Kelley) bought a Windows Vista Capable PC that was not Premium Ready for the most elemental of reasons: a non-Premium Ready PC costs less and effectively performs the functions important to most home users, including Web browsing, e-mail, playing music and video, and running common applications such as word processing software. And for those interested in eventually upgrading their operating system, Windows Vista Home Basic would cost less than the

---

[3] Unlike the extensive consumer education efforts that occurred during the time that most of the proposed class (including the named plaintiffs) purchased their "Windows Vista Capable" PCs, plaintiffs' DVD containing a Windows Vista television commercial has no bearing on this lawsuit: the type of commercial for Windows Vista that plaintiffs submitted did not even begin airing until February 2007—after the class period. *See* Chan Decl. ¶¶ 3-5. Further, the actual commercial plaintiffs submitted did not air until April 20, 2007, many months after they bought their PCs. *Id.* ¶ 4.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

premium Windows Vista editions, while still providing these material improvements and

extra features. *See* Gatchalian Decl. ¶¶ 6-7.

### C.  Ms. Kelley's and Mr. Hansen's Dissimilar PC Buying Experiences Illustrate the Inevitable Variations in Potential Class Members' Claims.

Dianne Kelley bought a Dell laptop so her daughter could use it while attending Skagit

Valley College. Kelley Dep. 22-23. (The Rummage Declaration attaches excerpts of the

named plaintiffs' depositions as Exhibits D and E.)  Her daughter does not play advanced

games that require premium graphics hardware, but instead uses her PC for basic tasks, such

as surfing the Web, e-mail, homework, and one game. *Id.* 23, 35-36.

Ms. Kelley shopped for her daughter's PC for a year, visiting retail stores and OEM

Web sites. Kelley Dep. 33-34.  She admitted that she did not see the "Windows Vista

Capable" sticker before she bought her Dell Inspiron B130 laptop on November 24, 2006, and

it therefore played *no* role in her decision to purchase that computer. *See* Kelley Dep. 42, 65.

In fact, the Dell laptop's price was the principal reason she bought that bargain PC. *Id.* 38.

(*Consumer Reports* in November 2006 described this PC as a "great choice for a rudimentary

laptop or a second PC." Rummage Decl., Ex. A at 14.)  She knew nothing about Windows

Vista when she bought her PC, and she had no expectation that her new PC would run

Windows Vista or any feature that Windows Vista might offer, including Aero. *Id.* 15, 42,

44-45, 49, 64.  Although her claim (and that of the proposed class) centers on the allegedly

misleading "Windows Vista Capable" sticker, Ms. Kelley did not even see the sticker until

long *after* buying the PC when her sister (calling at the behest of her husband, a lawyer

working on this case) asked if her laptop had a "Windows Vista Capable" sticker. *Id.* 6, 50,

64.  The question (and the sticker) meant nothing to her even then. *Id.* 50, 64.

Later, in the spring of 2007, Ms. Kelley bought two Acer PCs with Windows Vista

Home Premium pre-installed. *Id.* 44-45.  Her daughter was impressed with Ms. Kelley's new

Aero user-interface. Ms. Kelley then consulted the "upgrade advisor" on Microsoft's Web

site (which had been available since May 2006) and learned her daughter's computer could

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1    not support Aero. *Id.* 11, 45-46. Even though her daughter's inexpensive PC continues to

2    perform every function she hoped it would perform when Ms. Kelley bought it, *id.* 45, she

3    nevertheless permitted her brother in law's co-counsel to bring this lawsuit in her name.

4          By contrast, Mr. Hansen testified that he saw the "Windows Vista Capable" logo

5    before he bought his Toshiba laptop from CompUSA through Amazon.com on December 22,

6    2006. *See* Hansen Dep. 42-43. He visited some Web sites—possibly Toshiba's and

7    Microsoft's—before making his purchase. *Id.* 38-39. Mr. Hansen does not recall seeing the

8    pages on either of those Web sites that explained what "Windows Vista Capable" meant. *Id.*

9    40, 87-88. Mr. Hansen subscribed to and read *PC World* monthly and read a daily PC

10   newsletter e-mailed to him. *Id.* 26. At least three articles about the WVC Program were

11   featured in PC World and that newsletter. *See* Rummage Decl. ¶ 2 & Ex. A at 25, 40, 46, 48.

12         Mr. Hansen now has a Premium Ready PC: he spent $74.99 for additional memory in

13   April 2007 to improve the performance of his $799 PC—though he admitted that he could

14   have purchased enough memory to make his PC Premium Ready for $49.99. Hansen Dep.

15   57. (The record does not show how much more Mr. Hansen would have had to pay for a

16   Premium Ready PC in the first place.) He bought the memory because "the trade articles and

17   everybody said you really need to put more memory in if you're gonna run Vista." *Id.*

18         Neither Ms. Kelley nor Mr. Hansen participated in the Express Upgrade program,

19   which gave some buyers of Windows XP-based PCs the right to a free or discounted upgrade

20   to Windows Vista. *See* Kelley Dep. 56; Hansen Dep. 84. Indeed, neither plaintiff has ever

21   installed or used Windows Vista on their PCs. Kelley Dep. 47; Hansen Dep. 29. Because he

22   bought additional memory, Mr. Hansen could upgrade to Windows Vista Home Premium if

23   he wished. But as he is currently unemployed, he does not want to spend the money. *Id.* 19,

24   58. His PC, with Windows XP pre-installed, does everything he needs satisfactorily. *Id.* 35.

25         Despite the stark contrasts in what these two named plaintiffs saw and understood

26   before purchasing their PCs, and despite their different reasons for buying the PCs they chose,

27   they claim to be similarly situated with each other and with every person who bought a PC

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1   that had a small "Windows Vista Capable" sticker on it.  Not true.  In fact, as their testimony

2   shows, only individual examination of each potential class member can answer the questions

3   central to this case, i.e., (a) Did the purchaser see the WVC sticker?  (b) Did the purchaser

4   know what "Windows Vista Capable" meant from the resources created to educate

5   consumers? (c) Did the WVC sticker play any role in the purchaser's decision to buy the PC?

6                                **III.   ARGUMENT**

7         Plaintiffs have not met their burden of satisfying all the requirements of Rule 23.  *See*

8   *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (moving party bears

9   burden on each element of Rule 23).  Before certifying a class, a court must conduct a

10  "rigorous analysis" to ensure that plaintiffs have satisfied the Rule 23 factors. *Gen. Tel. Co. v.*

11  *Falcon*, 457 U.S. 147, 161 (1982).  In doing so, the Court must look beyond the pleadings to

12  "understand the claims, defenses, relevant facts, and applicable substantive law in order to

13  make a meaningful determination of the class certification issues." *Castano v. Am. Tobacco*

14  *Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *LaCasse v. Wash. Mut., Inc.*, 198 F. Supp. 2d 1255,

15  1260-61 (W.D. Wash. 2002) (Zilly, J.).  The fact that plaintiffs propose a class action "does

16  not in any way alter the substantive proof required to prove up a claim for relief .... [E]ach

17  plaintiff must still prove that [the alleged violation occurred] and that it did in fact cause him

18  injury." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 327 (5th Cir. 1978). *See also*

19  *Cummings v. Connell,* 402 F.3d 936, 944 (9th Cir. 2005) ("It is axiomatic that Rule 23

20  cannot 'abridge, enlarge or modify any substantive right' of any party to the litigation.").

21        **A.    Individual Fact Questions Concerning Causation and Injury Will**
22        **Predominate over Any Common Questions in This Litigation.**

          Plaintiffs ask the Court to certify a class under Rule 23(b)(3), which requires a court to
23
      find that "questions of law or fact common to the members of the class predominate over any
24
      questions affecting only individual members."  Under this subsection, a court may not certify
25
      a class when "determin[ing] causation and damages [requires] many triable individual issues
26

27

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 12

1    [to be] presented." *Zinser*, 253 F.3d at 1189; *see also Wright v. Fred Hutchinson Cancer*

2    *Research Ctr.*, 2001 WL 1782714 (W.D. Wash. Nov. 19, 2001) (Lasnik, J.) (same).

3    Plaintiffs' proposed class would pursue a claim of damages under the Consumer

4    Protection Act ("CPA"), RCW 19.86.010 *et seq.*, and a claim of unjust enrichment.  Second

5    Am. Compl. [Dkt. No. 29] ¶¶ 8.6, 9.2.  To prove their statutory claim, plaintiffs would have to

6    show, *inter alia*, that (1) every class member was subject to a deceptive act that (2) caused his

7    or her injury.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

8    792-93 (1986).  To prove unjust enrichment, plaintiffs must establish, *inter alia*, that each

9    class member conferred a benefit on Microsoft "under such circumstances as to make it

10   inequitable for the defendant to retain the benefit without payment of its value." *Bailie*

11   *Commc'ns, Ltd. v. Trend Bus. Sys. Inc.*, 61 Wn. App. 151, 159-60 (1991) (quotation omitted).

12   A plaintiff must prove causation on a claim for damages under the CPA.  "A causal

13   link is required between the unfair or deceptive acts and the injury suffered by the plaintiff."

14   *Indoor Billboard*, 2007 WL 3025836, at *12; *see also Hangman Ridge*, 105 Wn.2d at 793.  In

15   *Indoor Billboard*, the Supreme Court explained that "[a] plaintiff must establish that, but for

16   the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."

17   2007 WL 3025836, at *12 ; *see also* Wash. Pattern Jury Instr. Civ., WPI 310.07 (5th ed.

18   2004) (proximate cause for CPA is a "cause which in direct sequence produces the injury

19   complained of and without which such injury would not have happened").  The *Indoor*

20   *Billboard* court expressly rejected the causation argument that plaintiffs make here, i.e., that

21   causation "inhere[s] in the very act of purchasing Microsoft's product." Pls.' Mot. at 22.

22   Responding to the same argument, the Supreme Court explained:

23       Indoor Billboard [the plaintiff] urges us to adopt a per se rule and hold
         that payment of Integra's invoice is per se sufficient to establish the
24       proximate cause of plaintiff's damages.  We reject Indoor Billboard's
         per se rule because mere payment of an invoice may not establish a
25       causal connection between the unfair or deceptive act or practice and
         plaintiff's damages.
26

     2007 WL 3025836, at *12.

27

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1         Here, plaintiffs allege they "suffered harm" as a result of "Microsoft's alleged unfair

2    and deceptive marketing." Pls.' Mot. at 14.  They contend that all class members suffered

3    "harm" because they bought "a PC certified ... as 'Windows Vista Capable' when the PC, in

4    fact," did not have the capacity to run the features of the premium editions of Windows

5    Vista.[4]  *Id.*  But plaintiffs cannot show causation (or, for that matter, unjust enrichment) on a

6    classwide basis, for they cannot prove through their own cases that *every* potential class

7    member would not have suffered the claimed harm—*i.e.*, they would not have purchased the

8    exact same PC—but for "Microsoft's alleged unfair and deceptive marketing."

9    REDACTED

10    *See* Moline Decl. ¶¶ 6, 7.  Because of that, one cannot presume that the "Windows Vista

11    Capable" logo—which denotes a PC's ability to be upgraded to a new operating system—

12    made a difference in PC buyers' purchasing decisions.  Proving causation, injury and unjust

13    enrichment therefore would require proof that each proposed class member saw the WVC

14    sticker, each did not know what it really meant, and each bought a PC that they would not

15    have bought had they known that its operating system in the future could not be upgraded to

16    run a premium edition of Windows Vista, which had not yet been released.  These questions

17    present intrinsically individual issues that the Court cannot resolve on a classwide basis.

18        **1.    The Combination of Information Made Available to Consumers by Microsoft, OEMs, Retailers and the Media Requires Denial of Certification.**

19

20        Microsoft, OEMs, retailers, and journalists made extensive and frequent public

21    disclosures about the WVC program.  Any potential class member who read these disclosures,

22    and thus knew and understood what it meant for a PC to be "Windows Vista Capable," cannot

23    establish that the WVC program was the "but for" cause of any harm.  *See Sheldon v.*

24    *American States Preferred Ins. Co.*, 123 Wn. App. 12 (2004) (policyholders could not

25    establish harm under CPA when challenged service fee was fully disclosed and voluntarily

---

[4] Plaintiffs spin the issues by calling the premium editions of Windows Vista the "real version[s] of Vista," as if they had the right to define Microsoft's products. Pls.' Mot. 14. In fact, Windows Vista Home Basic remains a distinct product commonly preinstalled by OEMs. *See* Rummage Decl., Ex. C.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 14

1    paid); *Robinson v. Avis Rent A Car System, Inc.*, 106 Wn. App. 104 (2001) (plaintiffs could

2    not establish causal connection under CPA where undisputed evidence showed that

3    defendants disclosed separate concession charge).[5]  But the fact of any potential class

4    member's knowledge can be established only on an individual basis.  That being the case,

5    common issues do not predominate, as many courts have held in similar circumstances.

6            In *Wright*, for example, plaintiffs alleged that the Fred Hutchinson Cancer Center

7    violated the CPA by misrepresenting in advertisements and promotional materials facts about

8    a bone marrow transplant study.  Judge Lasnik denied class certification and explained:

> 9       Although plaintiffs correctly point out that there are common issues
>         of law or fact regarding almost all of their claims, the number of
> 10      individual issues that would have to be determined before any
>         particular class member could establish liability and/or recover
> 11      damages outweighs the common issues.  For example, if the
>         factfinder were to determine that advertising or promotional materials
> 12      disseminated by defendant … were deceptive, issues would arise
>         regarding whether the decedents relied on those deceptive practices,
> 13      whether they caused injury to the individual plaintiffs, and the amount
>         of damages.

14   2001 WL 1782714, at *3(citing *Hangman Ridge*, 105 Wn.2d at 784-93).

15           Other courts likewise have denied class certification where the record showed that

16   individual inquiries would be necessary to determine whether an allegedly deceptive ad

17   caused harm to a putative class member.  For example, in *Poulos v. Caesars World, Inc.*, 379

18   F.3d 654 (9th Cir. 2004), the Ninth Circuit affirmed the denial of class certification because

19   individual issues predominated in proving proximate causation.  Potential class members had

20   to prove damage caused by alleged misrepresentations concerning electronic poker and slot

21   machines.  As here, they could do so only individually because their reasons for gambling,

22   their information about the machines at issue, and whether the alleged misrepresentations had

23   any effect on their decisions to use those machines necessarily varied from person to person.

24

---

25   [5] *See also Villasenor v. American Signature, Inc.*, 2007 WL 2025739, *4 (N.D. Ill. July 9, 2007)
     (dismissing claim under Illinois Consumer Fraud Act where plaintiff "knew the truth" about finance
26   charges that defendant allegedly failed to disclose); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213
     (Ill. 2004) (homeowners who brought action against siding manufacturer unable to recover under
27   Illinois Consumer Fraud Act where deception not a cause of their damages "because they knew that
     siding damage had occurred and, therefore, that it was subject to deterioration").

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

*Id.* at 665-66. *See also Lozano v. AT&T Wireless Services, Inc.*, 2007 WL 2728758, at *14

(9th Cir. Sept. 20, 2007) (Robart, J.) (trial court denied certification on deception claim under

California Consumers Legal Remedies Act ("CLRA") because court "would have to conduct

an individualized review as to each class member's awareness and knowledge of out-of-cycle

billing and [AT&T's] disclosures to determine whether its representations were material").[6]

In *Oshana v. The Coca-Cola Co.*, 225 F.R.D. 575 (N.D. Ill. 2005), plaintiff alleged

that Coca-Cola engaged in a deceptive marketing scheme and was unjustly enriched by

misleading consumers into believing that Diet Coke from a fountain was the same as Diet

Coke in a can or bottle. *Id.* at 578. In fact, bottled Diet Coke is sweetened exclusively with

aspartame, while fountain Diet Coke is sweetened with a mixture of aspartame and saccharin.

*Id.* The court rejected plaintiff's argument that "the mix of representations seen by the class

members is irrelevant and insufficient to preclude certification." *Id.* at 586. "To establish

proximate causation," the *Oshana* court wrote,

> each individual must provide evidence of his or her knowledge of the
> deceptive acts and purported misstatements. ***This showing requires
> an individual analysis of the extent to which Coca-Cola's marketing
> played a role in each class member's decision to purchase fountain
> diet Coke. Without determining what each member heard, saw, or
> knew, it is impossible to assign liability.*** ... Each potential class
> member likely had varying degrees of knowledge, if any, regarding
> fountain diet Coke's contents due to varying exposure to various
> representations. These highly individualized factual determinations
> preclude certification.

*Id.* (emphasis added). "The same analysis applies to Oshana's unjust enrichment claim." *Id.*

The Seventh Circuit affirmed, explaining that "Oshana's proposed class ... could include

millions who were not deceived and thus have no grievance under the ICFA. Some people

may have bought fountain Diet Coke *because* it contained saccharin, and some people may

have bought fountain Diet Coke *even though* it had saccharin. Countless members of

---

[6] The Ninth Circuit in *Lozano* affirmed certification under the abuse of discretion standard of an
unfairness claim brought under California's Unfair Competition Law ("UCL"), even though it "might
have decided the issue differently." Because the UCL claim was limited to uniform written
disclosures made to all customers, the district court found that individual circumstances did not
destroy predominance. *Id.* at *16. Here, as with the CLRA claim that was not certified, the Court must
consider evidence of the many different disclosures potential class members might have received.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1    Oshana's putative class could not show any damage, let alone damage proximately caused by

2    Coke's alleged deception." 472 F.3d 506, 514 (7th Cir. 2006) (emphasis in original).

3        Similarly, in *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090 (Fla. Dist. Ct. App.

4    2003), plaintiffs alleged that the labeling and advertising of products known as "Calcium 900"

5    and "Calcium 1200" deceptively misrepresented that each tablet contained 900 and 1200

6    milligrams of calcium, respectively, and that these practices unjustly enriched the defendant.

7    *Id.* at 1091. The trial court denied certification because those "who read the labels could not

8    claim damages because they had actual knowledge of the specific number of tablets needed to

9    be taken per serving." *Id.* at 1092-93. The Court of Appeal affirmed, holding that "a person

10   who had actual knowledge of the number of [tablets] needed to be taken per serving [to

11   receive 900 or 1200 milligrams of calcium] would not have suffered any damages as a result

12   of the alleged deceptive trade practice and, therefore, would have no cause of action." *Id.*

13       *Wright, Poulos, Oshana* and *Hutson*, as well as many other cases, instruct that where

14   the mix of information available to consumers shows that some class members probably were

15   made aware of the truth and nevertheless went ahead with the transaction (*i.e.*, bought the

16   "Windows Vista Capable" PC), a court cannot certify a class under Rule 23(b)(3). In these

17   circumstances, only individual inquiries could distinguish between those who acted knowing

18   exactly what they were getting and those (if any) who acted because of the supposed

19   deception. *Indoor Billboard*, 2007 WL 3025836 at *12; *Hangman Ridge*, 105 Wn.2d at 793.

20           **2.    The Fact That Many Potential Class Members, Including Ms.**
                     **Kelley, May Not Have Seen the "Windows Vista Capable" Logo**
21                   **before Buying Their PCs Forecloses Certification.**

22       Ms. Kelley's testimony shows that she decided to buy her PC without seeing the

23   "Windows Vista Capable" sticker, which is not surprising given its size and location. *See*

24   Kelley Dep. Exs. 4, 5 (showing sticker in lower right hand corner of Ms. Kelley's laptop).

25   That fact provides yet another reason to find a lack of predominance: when plaintiffs cannot

26   prove on a classwide basis that all class members even *saw* the allegedly deceptive

27   advertising, individual issues of causation and injury make class certification inappropriate.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1    Many cases stand for this common sense proposition. In *Solomon v. Bell Atl. Corp.*,

2  777 N.Y.S.2d 50 (N.Y. App. Div. 2004), plaintiff alleged deceptive advertising against

3  Verizon concerning claims Verizon allegedly made about its DSL Internet access service. *Id.*

4  at 53. New York's intermediate appellate court reversed certification because "[p]laintiffs

5  have not demonstrated that all members of the class saw the same advertisements" and thus

6  could not show that all class members had been misled. *Id.* at 55-56. Like Ms. Kelley, "some

7  saw no advertisements at all," and "the content of defendants' DSL advertising varied widely

8  and not all the advertisements contained the alleged misrepresentations. Thus, questions of

9  individual members' exposure to the allegedly deceptive advertising predominate." *Id.*

10  Further, the putative class members had "alternative sources of information about DSL

11  service," including word of mouth, "computer magazines," the subscriber agreement, and a

12  free trial period. *Id.* As here, "individual trials would be required to determine whether a

13  reasonable consumer acting reasonably in each plaintiff's circumstances would have been

14  misled by defendants' representations." *Id.* (citations omitted).

15    Similarly, in *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002), a consumer

16  brought a putative class action against Amoco under Illinois' Consumer Fraud Act, alleging

17  that the company deceptively advertised premium gasoline. Plaintiff argued that each

18  putative class member was injured simply by purchasing the gasoline, regardless of whether

19  the class member saw the advertisements. The Illinois Supreme Court disagreed, holding that

20  "to properly plead the element of proximate causation in a private cause of action for

21  deceptive advertising brought under the Act, a plaintiff must allege that he was, in some

22  manner, deceived." *Id.* at 164; *see also Gonzalez v. Proctor and Gamble Co.*, 2007 WL

23  2700954 (S.D. Cal. Sept. 12, 2007) (plaintiff could not pursue deceptive advertising claims

24  absent evidence she saw allegedly deceptive commercials); *Weinberg v. Sun Co., Inc.*, 777

25  A.2d 442, 446 (Pa. 2001) ("[T]here is no authority which would permit a private plaintiff to

26  pursue an advertiser … when the plaintiff was neither deceived nor influenced"); *Fink v.*

27  *Ricoh Corp.*, 839 A.2d 942, 959-60, 975-76 (N.J. Super. Ct. Law Div. 2003) (denying

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

certification of nationwide class absent "proof that all or even a substantial number of ...

purchasers ... had read and interpreted the ... advertisements in a manner similar to that of

plaintiffs in this case or that their purchases were caused to any extent by [the] allegedly false

representations or concealments of material facts").[7]

Here, Ms. Kelley's testimony shows that she—like at least some of the proposed

class—never saw the WVC sticker that plaintiffs claim was deceptive. Before buying her PC,

Ms. Kelley had never even heard of Vista or the term "Windows Vista Capable":

> Q.   Now, a few minutes ago I asked you the question of whether
> during your shopping you came across the term 'Windows Vista
> Capable.' ... And I believe you said that you didn't think you did; is
> that right?
>
> A.   Yes.
>
> Q.   When you purchased the Dell Inspiron that Friday after
> Thanksgiving, were you aware that it was labeled a Windows Vista
> Capable PC?
>
> A.   I had no idea what Vista was.
>
> Q.   So the answer to that is you were not aware it was labeled a
> Windows Vista Capable PC?
>
> A.   I was not aware of anything involving Vista because Vista had
> not been released. I didn't know anything about it.

Kelley Dep. 41-42.

Microsoft has the right to cross-examine every member of the putative class to

determine whether they, like Ms. Kelley, never saw the WVC logo and did not buy with

Windows Vista in mind. And if Microsoft established that fact on cross-examination, the jury

---

[7] Even assuming a potential class member saw the small WVC logo before buying a PC and came to a conclusion as to what it meant, the jury would need to determine whether the logo was the proximate cause of the alleged harm. The potential class member could have purchased the PC for reasons having nothing to do with Windows Vista, including (most obviously) price and a disinclination to pay for more advanced hardware. *See, e.g.*, *Philip Morris USA Inc. v. Hines*, 883 So.2d 292, 294 (Fla. Dist. Ct. App. 2003) ("the smoker's reasons for choosing to smoke 'light' cigarettes" presents individual issue defeating certification); *Davies v. Philip Morris U.S.A., Inc.*, 2006 WL 1600067, *3 (Wash. Super. Ct. 2006) (same); *Pratt v. Panasonic Consumer Elec. Co.*, 2006 WL 1933660, *8 (N.J. Super. Ct. Law Div. July 12, 2006) (denying certification of a class allegedly deceived into purchasing defective DVD players: "Plaintiff failed to provide any evidence of what, or even whom, caused the prospective class members to purchase the subject DVD player").

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1  could well find in Microsoft's favor based on that individual testimony. Because plaintiffs

2  cannot prove on a classwide basis that all putative class members saw the sticker, let alone

3  were influenced by it, the Court should deny certification.

3.  **Plaintiffs' Arguments That This Case Involves a "Defective" Product and "Fraud on the Market" Do Not Cure Their Inability to Establish Causation and Injury with Common Evidence.**

6  Having known all along what Microsoft just discovered, *i.e.*, that Ms. Kelley bought

7  her PC without knowing anything about Windows Vista and without seeing the WVC sticker,

8  plaintiffs attempt to deflect attention from the individual nature of their claims by implying

9  that this case revolves around the allegation that Windows Vista Home Basic—which neither

10  plaintiff has ever installed or used on the PCs at issue—was a "defective" operating system.

11  Although this claim does not appear anywhere in their complaints, plaintiffs cite *Microsoft*

12  *Corp. v. Manning*, 914 S.W.2d 602, 611-12 (Tex. Ct. App. 1995), for the proposition that "a

13  Texas court of appeals held that alleged defects in a prior Microsoft operating system and

14  Microsoft's alleged omission to end-users regarding the same were common factual

15  questions." Pls.' Mot. at 11. Plaintiffs also cite *In re St. Jude Medical, Inc. Silzone Heart*

16  *Valves Prods. Liab. Litig.*, 2003 WL 1589527 (D. Minn. Mar. 27, 2003), asserting that "the

17  factual question whether a defendant manufactured a defective heart valve sufficed to

18  establish commonality supporting certification of a nationwide consumer class under

19  Minnesota's CPA" relating to allegedly deceptive marketing of the product. *Id.*

20  Plaintiffs' reliance on *Manning* and *St. Jude*, including their attempt to recast their

21  claim as one involving a "defective" operating system, is both misleading and ineffective.

22  Unlike in *Manning* and *St. Jude*, plaintiffs' complaint does not allege that Microsoft produced

23  a "defective" operating system (nor could they make such an allegation consistent with Rule

24  11). *See Manning*, 914 S.W.2d at 605 (alleging Microsoft released operating system with

25  faulty disk compression software that destroyed data); *St. Jude Medical, Inc.*, 2003 WL

26  1589527, at *2 (claiming that defendant manufactured defective heart valve). Moreover,

27  plaintiffs fail to mention that the trial court in *Manning **decertified the class sua sponte***

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 20

1    shortly after the Texas Supreme Court granted Microsoft's request for further review,

2    negating the significance of that case. *See* Yoxall Decl. ¶¶ 9, 10 & Ex. E.

3          Plaintiffs also obliquely invoke a "fraud on the market" or "price inflation" theory of

4    causation lifted from securities cases, in hopes of avoiding the individual issues that their

5    claims inevitably create. According to plaintiffs, "Microsoft's unfair and deceptive conduct

6    regarding 'Vista' capability—conduct common to all claims—also created artificial demand,

7    at artificially maintained prices, for PCs that were not truly 'Vista capable' and, thus, were

8    rendered less valuable or obsolete upon the release of Vista." Pls.' Mot. at 14.

9          The courts have rejected this theory in these circumstances: *Oliveira*, *Weinberg*, and

10   *Fink* each discusses and rejects the "fraud on the market" theory of causation in deceptive

11   advertising cases.[8] The record shows that Microsoft, OEMs, and retailers throughout the class

12   period *did* disclose to the consumer market extensive information about what "Windows Vista

13   Capable" meant. Thus, even if plaintiffs could prove that the personal computer market is

14   "efficient" in the sense that prices of WVC PCs, like securities, respond quickly to

15   disclosures—which they could not and have not tried to establish—the market would have

16   absorbed this information and the price of WVC PCs would have adjusted accordingly, so

17   they would have suffered no damage. Plaintiffs' passing reference to an undeveloped "fraud

18   on the market" theory does not give them a shortcut around causation.

19        **B.    The Named Plaintiffs' Claims Are Not Typical of Any Claim That
              Potential Class Members in the Express Upgrade Program May Have.**

20        Rule 23(a)(3) provides that the "claims or defenses of the class representative must be

21   typical of the claims or defenses of the class." A plaintiff's claim satisfies this requirement if

22   all other members of the proposed class have the same injuries, the action is based on conduct

23   which is not unique to the named plaintiffs, and other class members have been injured by the

24

---

25   [8] The "fraud on the market" theory requires plaintiffs to allege, and make a threshold showing at the
     class certification stage, that the market at issue is "efficient" (that is, that it quickly absorbs

26   information thus causing price to move promptly in response to that information). *See, e.g.*, *Gariety v.
     Grant Thornton, LLP*, 368 F.3d 356, 364-69 (4th Cir. 2004); *In re PolyMedica Corp. Secs. Litig.*, 432

27   F.3d 1, 17 (1st Cir. 2005); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336-37 (S.D. Fla. 2007).
     Here, plaintiffs have not made any such allegation or showing.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

same conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In practical terms, "'[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.' Where the premise does not hold true, class treatment is inappropriate." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 412 (C.D. Cal. 2000) (quoting *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998)).

Courts frequently find typicality lacking where a named plaintiff's deceptive advertising claim relates to a different product or transaction than the product or transaction asserted by proposed class members. For example, plaintiff in *Gonzalez* alleged that Pantene hair products did not strengthen hair as advertised. 2007 WL 2700954 at *1. The court denied class certification on the ground that plaintiff's claim was not typical of the claims of proposed class members "because the evidence in the record shows that the product Plaintiff purchased was not the subject of specific hair strengthening claims during the proposed class period." *Id.* at *3. Thus, even though Pantene's maker may have made representations about other hair products, plaintiff's claim was not typical because she did not purchase those products. *See also Hutson*, 837 So.2d at 1093 (plaintiffs who bought Calcium 900 but not Calcium 1200 could not maintain an action on behalf of those who bought Calcium 1200 "because [plaintiffs] could not have maintained such an action individually").

This Court should reach the same result here. Neither Ms. Kelley nor Mr. Hansen bought a PC that came with an "Express Upgrade" to Windows Home Basic. A proposed class member who complains that the "Express Upgrade" program was deceptive—because, for example, that person alleges being misled about the Windows Vista edition for which he or she was getting a free or reduced-price upgrade—is asserting a different claim than the named plaintiffs' claim here (*i.e.*, that the WVC sticker deceived them about the capabilities of their PCs). The jury could not possibly decide the claims of these named plaintiffs and thereby decide whether *every* person who received a reduced-price upgrade to Windows Vista Home Basic believed that the operating system included features available only in Windows Vista Home Premium.

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 22

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

Plaintiffs' Express Upgrade claims present the same individual causation and injury questions as their claims about the WVC program generally (because, as the record shows, Microsoft, OEMs, retailers, and others disseminated a wealth of information about the Express Upgrade program). But because Ms. Kelley and Mr. Hansen do not have standing to assert the separate claims of the proposed "Express Upgrade" class, and because Express Upgrade claims will not rise or fall with the claims of Ms. Kelley and Mr. Hansen, the named plaintiffs also do not satisfy the "typicality" requirement for "Express Upgrade" claims.

### C.    Individual Questions of Law Predominate.

Microsoft incorporates its Opposition to Plaintiffs' Motion for Application of Washington Law, which explains why the inability to apply a single state's law forecloses certification of a nationwide class.

### D.    Plaintiffs Fail to Satisfy Rule 23(b)(3)'s Superiority Requirement.

Under Rule 23(b)(3), plaintiffs must show that that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192 (finding no superiority where "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually").

Plaintiffs' conclusory arguments do not meet their burden. The bulk of the work in this case—for the Court, jury, and parties—will be spent on the myriad individual issues that arise from the claim that a supposedly deceptive act by Microsoft operated as the "but for" cause of harm to an individual who bought a computer bearing the WVC logo. Certifying a class will not relieve the parties of the burden of proving or disproving these individual issues and would force this Court to conduct countless mini-trials before the same jury to resolve all the claims and defenses. *Oshana*, 255 F.R.D. at 586 (denying certification in deceptive advertising case because of "[t]he obvious difficulties in managing" an action where each class member's claims would require individual inquiries); *Gartin v. S&M Nutec LLC*, 2007

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

WL 1424654, *10 (C.D. Cal. Apr. 4, 2007) (denying certification in deceptive advertising case where, inter alia, individual causation issues would make the case unmanageable); *see also In re Hotel Telephone Charges*, 500 F.2d 86, 90-91 (9th Cir. 1974) (reversing class certification on manageability grounds where proposed class "virtually insured that the litigation would be intolerably time-consuming and, because of the legal nature of the claims, involve a great variety of individual questions").

## IV.    CONCLUSION

For the foregoing reasons and the additional reasons set forth in Microsoft's Opposition to Plaintiffs' Motion to Apply Washington Law, Microsoft respectfully asks the Court to deny Plaintiffs' Motion for Class Certification.

DATED this 19th day of November, 2007.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation

By */s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
Cassandra Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Of Counsel:

Charles B. Casper
Patrick T. Ryan
Montgomery, McCracken,
Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109

MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (No. C07-0475 MJP) – 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2007, I electronically filed the foregoing redacted version of Microsoft's Brief in Opposition to Plaintiffs' Motion for Class Certification with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey I. Tilden: | jtilden@gordontilden.com |
| Jeffrey M. Thomas: | jthomas@gordontilden.com |
| Michael Rosenberger: | mrosenberger@gordontilden.com |
| Mark A. Wilner: | mwilner@gordontilden.com |
| William C. Smart: | wsmart@kellerrohrback.com |
| Mark A. Griffin: | mgriffin@kellerrohrback.com |
| Ian S. Birk: | ibirk@kellerrohrback.com |

DATED this 5th day of December, 2007.

Davis Wright Tremaine LLP
*Attorneys for Microsoft Corporation*

By /s/ Stephen M. Rummage
    Stephen M. Rummage, WSBA #11168
    Davis Wright Tremaine LLP
    Suite 2200
    1201 Third Avenue
    Seattle, WA 98101-3045
    Telephone: (206) 757-8136
    Fax: (206) 757-7136
    E-mail: steverummage@dwt.com