# Exhibit B

Dockets.Justia.com

No. 103287

## IN THE SUPREME COURT OF ILLINOIS

| | |
|---|---|
| BARBARA'S SALES INC., DONALD BRADDY, MICHAEL BUNDY, BUNDY & ASSOCIATES INC., RHONDA BYINGTON, REBECCA S. CHANDLER, VERNON ANTHONY DUENAS, CHRISTOPHER R. GROUT, DEANNA L. NEUBAUER, SANDRA PYLE, and RICHARD RODRIGUEZ, individually and on behalf of all others similarly situated, | On Leave to Appeal from the Fifth District Appellate Court |
| Plaintiffs-Appellees, | There heard on Appeal from Third Judicial Circuit Madison County, Illinois Law No. 02-L-788 |
| vs. | The Honorable Ralph J. Mendelsohn, Associate Judge Presiding. |
| INTEL CORPORATION | |
| Defendant-Appellant, | |
| and | |
| HEWLETT-PACKARD COMPANY and HP DIRECT, INC. | |
| Defendants. | |

---

### BRIEF OF CONFLICT-OF-LAWS PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES

Robert J. Sprague
Sprague & Urban
26 E Washington St
Belleville, IL 62220-2101
(618) 233-8383
*Attorney for Amici Curiae*

FILED

MAR 1 3 2007

SUPREME COURT CLERK

### POINTS AND AUTHORITIES

AMICI CURIAE.................................................................................................4

STATEMENT OF INTEREST OF *AMICI*..................................................4

QUALIFICATIONS OF *AMICI* ...................................................................5

    PETER HAY........................................................................................................5

    EUGENE F. SCOLES .......................................................................................6

    RUSSELL J. WEINTRAUB...............................................................................6

QUESTIONS PRESENTED...............................................................................7

STATEMENT OF FACTS .................................................................................7

ARGUMENT .....................................................................................................10

WEINTRAUB, RUSSELL J., COMMENTARY ON THE CONFLICT OF LAWS (5th ed. 2006).......10


I. Constitutional Issues in Choice of Law................................................11

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ..................................11, 12, 14

*Avery v. State Farm Mut. Auto. Ins. Co.*, 321 Ill.App.3d 269 (5th Dist. 2001), *rev'd on other grounds*, 216 Ill.2d 100 (2005) ............................................................14

*Bunting v. Progressive Corp.*, 348 Ill.App.3d 575 (1st Dist. 2004) ...................14

*Clark v. Tap Pharm. Prod. Inc.*, 343 Ill.App.3d 538 (5th Dist. 2003) ...............14

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (Ct.App.1987).............11

*CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987)..........................16

*Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741 (M.D. Fla. 1998)...............15

*Farmers Ins. Exch. v. Leonard*, 125 S.W.3d 55 (Tx.App.2003) .......................18

*Hanson v. Denckla*, 357 U.S. 235 (1958)..........................................................14

HAY, PETER RUSSELL J. WEINTRAUB & PATRICK J. BORCHERS, CONFLICT OF LAWS – CASES AND MATERIALS (12th ed. 2004)........................................................17

Horowitz, Harold W., *The Commerce Clause as a Limitation on State Choice-of-Law Doctrine*, 84 Harv. L. Rev. 806 (1971) ............................................................16

*In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D.Cal. 1986)..............................11

*Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J. Ct. App. 2006) ..........................................................................................14

Issacharoff, Samuel, *Settled Expectations in a World of Unsettled Law: Choice of Law after the Class Action Fairness Act*, 106 Colum. L. Rev. 1839 (2006)........................15

*Lee v. Allstate Life Ins. Co.*, 361 Ill.App.3d 970 (2d Dist. 2005)......................................14

*Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67 (1987) ...............................................14

*Perry v. Household Retail Serv., Inc.*, 953 F. Supp 1378 (M.D. Ala. 1996).....................14

*Peterson v. BASF Corp.*, 618 N.W.2d 821 (Minn. App. 2001)...................................15, 18

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985)...............................................11, 12, 14

*Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. Dist. Ct. App. 1999)..........15

SCOLES, EUGENE F. PETER HAY, PATRICK J. BORCHERS & SYMEON C. SYMEONIDES, CONFLICT OF LAWS (4th ed. 2004) .............................................................................15, 16

*Vantagepoint Venture Partners v. Examen, Inc.*, 871 A.2d 1108 (Del. 2005)..................17

WEINTRAUB, RUSSELL J., *COMMENTARY ON THE CONFLICT OF LAWS* (5th ed. 2006) ..........16

*Wershba v. Apple Computer Inc.*, 110 Cal.Rptr.2d 145 (Ct.App. 2001)...........................11

*Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618 (Okla. 2003)....................................15, 18

**II. Choice of the Applicable Law**...............................................................................18

*Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999) ...25

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (Ct.App.1987)............................25

*Coats v. Hertz Corp.*, 296 IllApp.3d 607 (5th Dist. 1998) ................................................21

*Curran v. Ho Sung Kwon*, 153 F.3d 481 (7th Cir. 1998) ...................................................21

*Esser v. McIntyre*, 169 Ill.2d 292 (1996).....................................................................20, 21

*Estate of Barnes*, 133 Ill.App.3d 361 (1st Dist. 1985) ................................................20, 21

*Horwitz v. Bankers Life*, 319 Ill.App.3d 390 (1st Dist. 2001)......................................21, 22

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 686 (N.D. Cal. 1986)..................24

*In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D.Cal. 1986) ...............................24

*Ingersoll v. Klein*, 46 Ill.2d 42 (1970) ..............................................................................19

*Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill.App.3d 903 (1st Dist. 1997) ............20, 21

*Leane v. Joseph Entm't Group*, 267 Ill.App.3d 1036 (1st Dist. 1994) ...............................21

*Li Fu et al. v. Hong Fu et al.*, 160 N.J. 108 (1999) ...........................................................25

*Malatesta v. Mitsubisha Aircraft Int'l, Inc.*, 275 Ill.App.3d 370 (1st Dist. 1995) .......20, 21

*Miller v. Miller*, 22 N.Y.2d 12 (1968) ................................................................................21

*Mitchell v. United Asbestos Corp.*, 100 Ill.App.3d 485 (5th Dist. 1981) ..............20, 21, 22

*Morris B. Chapman & Assoc. Ltd., v. Kitzman*, 193 Ill.2d 560 (2000) .............................21

*Morris B. Chapman & Assoc. Ltd., v. Kitzman*, 307 Ill.App.3d 92 (5th Dist. 1999), *aff'd*, 193 Ill.2d 560 (2000) ..........................................................................................20, 22

*Nelson v. Hix*, 122 Ill. 2d 343 (1988) ................................................................................21

*Purizer Corp., v. Battelle Mem'l Inst.*, 2002 WL 22014 (N.D.Ill. 2002) ..........................25

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971) ........................................19, 20

RESTATEMENT (SECOND) CONFLICT OF LAWS § 148 (1971) ........................................19, 25

*Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189 (1985) .........................................25

SCOLES, EUGENE F. PETER HAY, PATRICK J. BORCHERS & SYMEON C. SYMEONIDES, CONFLICT OF LAWS (4th ed. 2004) ..............................................................................19

Symeon C. Symeonides, *Choice of Law in the American Courts in 2006: Twentieth Annual Survey*, forthcoming 55 Am.J.Comp.L. __ (2007), *available at* http://www.willamette.edu/wucl/wlo/conflicts/surveys/2006.pdf, .............................19

*Townsend v. Sears, Roebuck & Co.*, 368 Ill.App.3d 902 (1st Dist. 2006) ...................21, 23

*Vickrey v. Caterpillar Tractor Co.*, 146 Ill.App.3d 1023 (4th Dist. 1986) .................20, 21

*Wreglesworth v. Arctco, Inc.*, 316 Ill.App.3d 1023 (1st Dist. 2000) ..................................20

CONCLUSIONS ...................................................................................................................26

## AMICI CURIAE

[*Amici* listed in alphabetical order] [1]

Peter Hay

L.Q.C. Lamar Professor of Law

Emory University School of Law

Eugene F. Scoles

Max L. Rowe Professor of Law Emeritus

University of Illinois and

Distinguished Professor Emeritus

University of Oregon School of Law

Russell J. Weintraub

Professor of Law and holder of the Powell Chair Emeritus,

The University of Texas School of Law

## STATEMENT OF INTEREST OF *AMICI*

*Amici* are law professors who teach and write about conflict-of-laws at law schools in the United States. We care deeply about the fundamental principles underlying conflicts law and are committed to ensuring that conflicts law and policy continue to develop in accordance with these principles. We have no interest in the outcome of this litigation except as it pertains to these concerns. We do not write to address the merits of

---

[1] *Amici* do not represent or speak for their institutions in this matter, and institutional affiliations are listed for identification purposes only.

claims below. We write only to address the important questions concerning the

interpretation, constitutionality and application of conflict-of-laws principles implicated

by the matter before the Court.

## QUALIFICATIONS OF *AMICI*

### PETER HAY

Professor Peter Hay's background and qualifications are briefly summarized herein

and fully enumerated in his complete *curriculum vitae* and Bibliography, contained in the

appendix. Professor Hay received his B.A. and J.D. degrees (with highest honors) from

Michigan in 1958. Currently, Professor Hay is the L.Q.C. Lamar Professor of Law at

Emory University (Atlanta) and has held this chaired professorship since 1991. He

served as the Interim Dean from 2001-2002. Professor Hay was formerly a Professor at

the University of Illinois for almost 30 years (1963 to 1991) and served as Dean of the

Law School for 10 of those years (1979 to 1989). He has been an Honorary Professor at

the University of Freiburg, Germany since 1975. He is also a recurrent Visiting Professor

at Central European University, Budapest, Hungary, annually since 1993. He has served

as a visiting professor at Michigan, Stanford, Bonn, Freiburg. From 1994 to 2000, he was

a chaired Professor of Civil Law and Conflict of Laws (full-time, alternating with Emory)

at the University of Dresden, Germany. In 2000, Professor Hay reached German

mandatory retirement age. He served as Consultant to U.S. State Department (1975-1977)

on the Hague Conference Convention on the Law Applicable to Agency (representing the

U.S. in the Group of Experts).

Professor Hay is the co-author (now senior author) of EUGENE F. SCOLES, PETER HAY,

PATRICK J. BORCHERS & SYMEON C. SYMEONIDES, CONFLICT OF LAWS (4th ed. West

5

2004) and the senior author of PETER HAY, RUSSELL J. WEINTRAUB & PATRICK J. BORCHERS, CONFLICT OF LAWS – CASES AND MATERIALS (12th ed. Foundation Press 2004). He has also authored over 70 articles on conflict of laws and other subjects (U.S. and European law) in American and Continental publications.

### EUGENE F. SCOLES

Professor Scoles has a national and international reputation as a legal educator and scholar. His career includes professorial appointments at leading universities and tenure as dean of the University of Oregon School of Law from 1968 to 1974. Professor Scoles then served as a distinguished professor of law at Oregon until his retirement in 1981. A life member of the American Law Institute, his work with the Hague Conference on Private International Law, the National Conference on Uniform Laws, and the National Conference of Bar Examiners demonstrate his efforts to improve the law and the legal profession. He is a past president of the Association of American Law Schools. Professor Scoles' complete *curriculum vitae* is contained in the appendix.

### RUSSELL J. WEINTRAUB

Professor Weintraub received his B.A. from New York University and his J.D. from Harvard. Professor Weintraub currently holds the position of Professor of Law and the Ben H. and Kitty King Powell Chair *Emeritus* in Business and Commercial Law at the University of Texas School of Law where he has taught Conflict of Laws, Contracts, International Litigation and Arbitration. Professor Weintraub has also served as the Ronald Graveson Memorial Lecturer, King's College, London, 2000; and Lecturer, Hague Academy of International Law, 1984. He received the Carl H. Fulda Award in International Law in 1993. Professor Weintraub is a life Member American Law Institute

6

and a Life Member American Bar Foundation. Professor Weintraub is extensively

published on the subject of conflict-of-laws including RUSSELL J. WEINTRAUB,

COMMENTARY ON THE CONFLICT OF LAWS (5th Ed. 2006) and PETER HAY, RUSSELL J.

WEINTRAUB, PATRICK J. BORCHERS, CONFLICT OF LAWS – CASES AND MATERIALS (12th

ed. 2004). Professor Russell Weintraub's complete *curriculum vitae* is contained in the

appendix.

## QUESTIONS PRESENTED

1.  May Illinois, consistent with the United States Constitution, apply a single law –
its own or that of a sister state – to a nationwide class of claimants, *i.e.* resident and non-
resident claimants alike and, if so, in which circumstances?

2.  If application of a single law to a nationwide class action is permissible, is it
desirable to do so in a case like the one at bar and if so, which state law should be applied
as a matter of choice of law?

## STATEMENT OF FACTS

In the underlying action, Plaintiffs, Illinois and Missouri consumers, allege that

Intel Corporation ("Intel"), from its California headquarters, engaged in unfair business

practices through the omission, suppression and concealment of material facts relating to

its products. Plaintiffs allege that this conduct gives rise to actions under two California

statutes – one regulating unfair competition and the other a California consumer

protection statute. Plaintiffs pled violation of the Illinois consumer protection statute in

the alternative.

Because the parties agreed that an outcome determinative conflict existed between

the implicated laws, the trial court was required to decide what law or laws to apply.

Plaintiffs argued that California had the most significant relationship to the action and
thus California law should apply to all members of the class – nationwide. Intel argued
that the state with the most significant relationship is where each individual class member
resides or acted in reliance. Intel further argued that it would be a violation of the Due
Process and Commerce clauses of the Constitution to apply California law nationwide.

In its Order, the trial court characterized the interests of each implicated state as
seeking to "protect state residents or protect consumers engaged in transactions within the
state or to promote business within the state." After noting that it considered sections 6
and 148 of the Second Restatement of Conflicts, the court construed the issue before it by
asking the following question: "Does Illinois have a legitimate interest in applying
California law to adjudicate this dispute and to ensure that California residents (Intel)
comply with California Consumer Protection laws while serving Illinois and other state
consumers?" The trial court answered this question in the negative stating that "Illinois
does not have a legitimate interest in applying California law to adjudicate this dispute."
The trial court went on to certify a class of Illinois residents and purchasers applying
Illinois law.

Both parties sought interlocutory review of this ruling and the trial court certified
the following question for review:

> Whether the circuit court erred in certifying a class of Illinois consumers
> under Illinois law, rather than certifying a nationwide or Illinois class
> under California law (as plaintiffs requested) or holding that the action
> should not proceed as a class action (as Intel requested).

8

The Appellate Court concluded that the trial court's choice-of-law analysis was "fatally flawed." The court then examined the contacts between the litigation and the parties in light of the relevant interests and policies of concerned states. That analysis led the Appellate Court to conclude that California has the "most significant relationship" to the litigation and that California law ought therefore be applied.

9

## ARGUMENT

The federal constitution does not dictate any particular set of choice-of-law rules. Rather, the constitution's Due Process and Full Faith and Credit Clauses impose only "modest restrictions" on the choice of law in any given case. The state whose law is chosen must have a significant contact or significant aggregation of contacts such that the choice of its law is neither arbitrary nor fundamentally unfair. Because of California's contacts with the defendant and the conduct at issue here and thus each plaintiff, the application of California law to non-Californians in this case would not run afoul of these undemanding limitations.

In addition, the "most significant relationship" test of the Restatement (Second) Conflict of Laws requires a court to evaluate contacts and their relative importance in light of the interests and policies of other concerned states (something which the trial court in this litigation conspicuously bypassed).

A dozen contacts with an occurrence may fail to give a state any interest in having its rule applied to determine the consequences of that occurrence. One contact may make the policies underlying a state's rule directly and rationally applicable to the case being decided. Once two or more states have contacts that give those states interests in having different rules applied to determine controversies flowing from an occurrence, there is a real conflict that should be resolved rationally and not by counting contacts.

RUSSELL J. WEINTRAUB, COMMENTARY ON THE CONFLICT OF LAWS § 6.10, at 382-83 (5th ed. 2006), hereinafter: WEINTRAUB.

10

Evaluation of the interests and policies of the concerned states points to the application of California law in the present case. Here, the enactment of consumer protection laws in every single state attest to each state's dual interests and policies of protecting their citizens from unfair business practices and of deterring businesses within their jurisdiction from engaging in such practices. The conduct of which the plaintiffs complain in the present case occurred largely within a single state – California. As discussed more fully below, California's contacts with the alleged misconduct in this case give that state a paramount interest in having its law applied to this controversy. To us, it is clear that the Appellate Court's opinion is sound both as a matter of choice-of-law jurisprudence and as a matter of sound conflicts policy.

## I.    Constitutional Issues in Choice of Law

It is without question that California law may be constitutionally applied to tortious conduct committed by a California-based defendant in California, causing injury or loss there as well as to non-resident plaintiffs elsewhere. *See e.g., Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (Ct.App.1987); *Wershba v. Apple Computer Inc.*, 110 Cal.Rptr.2d 145 (Ct.App. 2001); *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D.Cal. 1986).

The Constitutional limits for a state's choice of the applicable law were defined by the U.S. Supreme Court in *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) and then applied in the class action context in *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985). In *Allstate*, the Court wrote that it is unconstitutional to apply the law of a state that has only an insignificant contact with the parties and the occurrence or transaction stating "implicit in this inquiry is the recognition, long accepted by this Court, that a set of facts

11

giving rise to a lawsuit ... may justify, in constitutional terms, application of the law of more than one jurisdiction. ... As a result, the forum State may have to select one law from the laws of several jurisdictions having some contact with the controversy." *Allstate*, 449 U.S. at 307-8. In *Shutts*, the Court reaffirmed that standard and noted again that, "in many situations a state court may be free to apply one of several choices of law." *Shutts*, 472 U.S. at 823.

The place of the tortious conduct and the defendant's principal place of business are both one of the available choices of law because each are "significant contacts" creating a state interest in regulating conduct, so that application of the law of that state to the defendant is "neither arbitrary nor unfair" (because the application of that state's law is foreseeable) (paraphrasing *Allstate* and *Shutts*). They gain added significance in the instant case in that these elements coincide. Application of California law to *all* claimants – by California or any other state – will therefore comply with the strictures of *Allstate* and *Shutts*.

Intel contends, however, that it is unconstitutional to apply California law on behalf of all members of the class, citing *Phillips Petroleum Co. v. Shutts*. *Shutts* simply does not support such a claim. In *Shutts* less than 1,000 of the over 28,000 class members resided in Kansas and only one quarter of one per cent of the gas leases were on Kansas land, yet the Kansas court applied Kansas law to plaintiffs regardless of residence. The *Shutts* court found that it was unconstitutional to select the law of a state having no relationship with the vast majority of claims to a national class action when the laws of other states have a more significant relationship with the other class members and with the defendant. It is not unconstitutional in a national class action to apply the law of a

single state if that is the state where the defendant's wrongful acts were centered. Whose constitutional rights are violated? The state where the defendant misbehaved has an interest in punishing and deterring such conduct and it is not unfair to the defendant to apply the law of its home state even in favor of nonresident plaintiffs.

Likewise, the rights of non-resident plaintiffs are protected. First of all, it is unlikely that members of the class would recover more under the law of their home state. The California UCL allows restitution as a remedy. In this case that would allow for the return of the entire cost of the computer processor. This amount is more than a plaintiff would recover under a statute that authorizes recovery of "damages," which in this case are likely to be the difference between a Pentium 4 and a Pentium III. In addition, the California UCL does not require reliance, causation, or damages as conditions for recovery.

Moreover, the class members are requesting the application of California law. Any class members who believe they can recover more under the laws of their home states, perhaps punitive damages, can opt-out. That is simply a matter of notice to the class. Realistically in this case the claims of any individual class member or even of a state-wide class are so small as to make a national class action the only feasible route to recovery. Thus, the requirements of Due Process are clearly satisfied by application of California law in this case.

Intel argues however that seeking to apply one state's law nationwide is "bootstrapping." This argument is also misplaced. The "bootstrapping," with which the *Shutts* Court was concerned, was the Kansas Supreme Court's rationale that "it had much greater latitude" as a matter of constitutional due process law to apply its own law "by

13

reason of the fact that it was adjudicating a nationwide class action" *Shutts*, 472 U.S. at 820. This is what the United States Supreme Court called "a 'bootstrap' argument." *Id.* at 821. The Court held that the fact that the Kansas court had jurisdiction to assume jurisdiction over the nationwide class action could not be used "as an added weight in the scale when considering the permissible constitutional limits on choice of substantive law." *Id.* "Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair.'" *Id. citing Allstate*, 449 U.S. at 312-13. This rule is not new, the requirement of keeping choice of law and jurisdiction separate was a point first made – emphatically – in *Hanson v. Denckla*, 357 U.S. 235 (1958).

There is also ample support for the application of a single law in a nationwide class action so long as its application satisfies the constitutional test of *Allstate/Shutts*. This Court so held in *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67 (1987), followed by *Lee v. Allstate Life Ins. Co.*, 361 Ill.App.3d 970, 980 (2d Dist. 2005); *Avery v. State Farm Mut. Auto. Ins. Co.*, 321 Ill.App.3d 269 (5th Dist. 2001), *rev'd on other grounds*, 216 Ill.2d 100 (2005), *Bunting v. Progressive Corp.*, 348 Ill.App.3d 575 (1st Dist. 2004), and *Clark v. Tap Pharm. Prod. Inc.*, 343 Ill.App.3d 538 (5th Dist. 2003). *See also, Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc.*, 894 A.2d 1136 (N.J. Ct. App. 2006), *appeal granted*, 902 A.2d 1232 (N.J. 2006) (discussing *Wershba* and *Clark* in affirming application of the New Jersey Consumer Fraud Act in a nationwide class action); *Perry v. Household Retail Serv., Inc.*, 953 F. Supp 1378, 1382-83 (M.D. Ala. 1996) ("In *Martin*, for example, the court held that Illinois law – both the

Illinois Consumer Fraud Act and the Illinois law of fiduciary responsibility – would be applied to all members of the class because Illinois had a substantial interest in seeing that companies operating in the state operate lawfully"); *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436, 439 (Fla. Dist. Ct. App. 1999) (discussing *Martin* at length and then applying Florida law to all class members' claims because defendant's principal place of business was in Florida and defendant's business operations were controlled and carried out in Florida "[f]or the most part"); *Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741 (M.D. Fla. 1998) (finding that the law of Iowa, the principal place of business of the defendant, is likely to apply and citing to *Martin* for support.); Samuel Issacharoff, *Settled Expectations in a World of Unsettled Law: Choice of Law after the Class Action Fairness Act*, 106 Colum. L. Rev. 1839, 1844 (2006) ("To hold a defendant accountable under a legal standard that applies clearly to a significant part of the defendant's activity, and to impose market-wide liability on that basis, violates neither due process nor any settled expectation in choice of law, regardless of the constitutional status of the latter."). To the same effect, *see Peterson v. BASF Corp.*, 618 N.W.2d 821 (Minn. App. 2001), and *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 625-26 (Okla. 2003) (with respect to warranty claims).[2]

Likewise, the Commerce Clause poses no impediment to the application of California law to this action. The Commerce Clause "may control choice of law when 'the principle of facilitating multistate transactions would require that a single state's law or a group of compatible state laws, should govern' – *e.g.*, rights of shareholders of an interstate enterprise – or when application of one state's law rather than that of another 'would

---

[2] For further discussion of due-process limitations on choice of law, *see* Eugene F. Scoles, Peter Hay, Patrick J. Borchers & Symeon C. Symeonides, Conflict of Laws §§ 3.21-3.23, 3.26-3.29 (4th ed. 2004), hereinafter: Scoles.

facilitate interstate commercial activity'." WEINTRAUB, at 525-26 n.158 *quoting from* Horowitz, Harold W., *The Commerce Clause as a Limitation on State Choice-of-Law Doctrine*, 84 Harv. L. Rev. 806, 814 (1971). Perhaps the Commerce Clause, in cases such as the internal affairs of a corporation, can prevent choice of law from imposing an unreasonable burden on interstate commerce.

Commerce Clause cases address situations in which states imposed conditions on out-of-state businesses doing business locally, thereby impacting the way they do business elsewhere. The idea is that one state should not shape the business laws of another: state law may not undertake to regulate *extraterritorially*. Even so, however, for instance in small consumer loans, a state may well regulate how an out-of-state enterprise conducts business with residents (which may have an impact on its conduct of business elsewhere). *Id.* In the case at hand, regulation (including liability for disregard of such standards) addresses *in*-state conduct – California is perfectly free to regulate Intel's activities in California. Thus, although the California statute may burden a company in its ability to do business elsewhere, this does not make California's regulation of Intel unconstitutional. The Commerce Clause seeks to keep commerce unburdened/unhindered from restrictions imposed by the *recipient* state of services or goods supplied by out-of-state enterprises engaged in interstate commerce. It does not impose free-trade incentive requirements on the state of incorporation. In contrast, the Supreme Court now permits states to regulate – nationwide – the internal affairs of locally chartered companies: *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987), discussed in SCOLES at §§ 23.2, 23.5, 23.6, and 23.9. For some additional discussion, *see also*, PETER HAY, RUSSELL

WEINTRAUB & PATRICK J. BORCHERS, CONFLICT OF LAWS – CASES AND MATERIALS 997-999 nn. 2-5 (12th ed. 2004).

Given the development of the Due Process cases, the Commerce Clause would not seem to add any limitations on choice of law that could arguably apply in the present case. Application of California law would not regulate the defendant's conduct elsewhere (in the way that, in *Shutts*, the application of Kansas law would have impacted the defendant's conduct with respect to its oil leases in other states). The application of California law would address the defendant's conduct in California. The Commerce Clause is likely to have the effect of compelling the application of the law of a single state to avoid an otherwise chaotic clash of state laws. For example, in *Vantagepoint Venture Partners v. Examen, Inc.*, 871 A.2d 1108 (Del. 2005), the Delaware Supreme Court reviewed a dispute arising from the imminent merger of two Delaware corporations. A preferred shareholder of one of the corporations claimed that the corporation was a "quasi-California corporation" under the California Corporation Code because more than 50% of its property, payroll payments, sales, and stockholders were in California. As a quasi-California corporation the shareholder claimed that that the corporation was governed by California law under which, unlike Delaware law, preferred shareholders were entitled to vote as a separate class on the merger. The Delaware Supreme Court held that Delaware law controlled and that the Due Process and Commerce Clauses of the U.S. Constitution mandated this result. For this case, the Due Process Clause alone appears to be relevant, and it poses no problem.

In practice, more often than not, the single law sought to be applied in a given case will be the law of the forum. This is because claims are often brought in the state

that has the most significant relationship. That state has not only an interest in providing a forum to the plaintiff but also a strong regulatory interest in the subject matter of the particular claims presented (see the *Martin* line of cases and their counterparts in other jurisdictions). However, the single law can also be the law of another jurisdiction, *e.g.*, in recognition of the latter's regulatory interest. *See, e.g., Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 625-26 (Okla. 2003) (applying Michigan law in Oklahoma class action as to warranty claims); *Farmers Ins. Exch. v. Leonard*, 125 S.W.3d 55 (Tx.App.2003) (California law in Texas class action as to contract claims), *Peterson v. BASF Corp.*, 618 N.W.2d 821 (Minn. App. 2001) (applying New Jersey law in Minnesota class action as to fraud claims). The constitutional test is the same. When such application is permissible, as here, the question turns then to the forum's choice of law methodology.

**Conclusion**: California law may be applied constitutionally to tortious conduct committed by a California-based defendant in California, causing injury or loss there as well as to non-resident plaintiffs elsewhere. Whether California law would or should be applied in another state's courts are choice-of-law questions for the forum court and may include an inquiry into the intended beneficiaries of California's laws and the extent to which choice-of-law rules pointing to the forum should yield to the interests of another state (here: California).

## II. Choice of the Applicable Law

Traditional law (until about 1970) was governed by predictable principles, ably summarized in the territorial application rules of the RESTATEMENT (FIRST) CONFLICT OF LAWS. In a system with fixed choice-of-law rules for specified legal problems, it was

18

important to *characterize* the problem first (as one sounding in tort – and which one? – contract, etc.) In tort, under that approach, either the law of conduct or of injury would apply.

Illinois, along with twenty-three other states, has adopted the conflicts methodology of the RESTATEMENT (SECOND). Symeon C. Symeonides, *Choice of Law in the American Courts in 2006: Twentieth Annual Survey*, forthcoming 55 Am.J.Comp.L. __ (2007) at 14, *available at* http://www.willamette.edu/wucl/wlo/conflicts/surveys/2006.pdf; for tort: *Ingersoll v. Klein*, 46 Ill.2d 42 (1970); SCOLES, *supra*, §§ 2.20 Table 4, 2.23 Table 7 and n. 1, 17.26 (for an earlier tally). Under this modern conflicts analysis the choice of the applicable law is functional; it is no longer so territorially defined. "Simple territorial rules, such as that selecting the law of the place of the injury to apply to torts, have been replaced by rules that take account of the content and purposes of the competing laws." WEINTRAUB at 5. The RESTATEMENT (SECOND) and interest analysis substitute evaluation, in the particular case, for predetermined mechanical rules. SCOLES at 127. For an evaluation, the *content* of the law to be selected is of relevance. *Id.* at 126.

For torts, the RESTATEMENT (SECOND), adopts a number of presumptions for different torts or tort issues (*e.g.*, §§ 146 et seq., 156-160, 162, 164-166, 172). Intel's submissions and some of Barbara's Sales' responses address whether this case is to be evaluated under general tort provision (§ 145) or under the more specific section (§ 148), dealing with misrepresentation, of the RESTATEMENT (SECOND). In its Appellate Court brief, Barbara's Sales correctly urged that "§ 148(2) not … be applied uncritically as though it were written for statutory consumer protection cases instead of the common law fraud cases for which it was intended to apply." Plaintiffs' 4/26/2005 Choice of Law Brief at 18-19.

19

The RESTATEMENT (SECOND) itself draws no sharp distinction. Its Comment (c) to § 148(2) acknowledges that the place of the false representation is an important factor, while Comment (f) to § 145 states that the place of conduct should be accorded greatest weight in cases of false advertising. The obvious reason the RESTATEMENT (SECOND) draws no sharp distinction here – or, for that matter, with respect to other particular torts – is the overarching importance it assigns to the general principles of its § 6 which are to be taken into account in determining the applicable law in *all* cases pertaining to tort (as well as to contract: see § 188). In _all_ cases, the fall-back is the principal rule of § 145 (application of the law of the "most significant relationship" to the parties and the "particular issue"), as evaluated/determined by reference to the general "principles" of § 6. The determination of the applicable law should therefore proceed on the basis of the RESTATEMENT (SECOND)'s most-significant-relationship test as applied in accordance with the general principles of its § 6.

　　Illinois courts have consistently applied this approach. *See Mitchell v. United Asbestos Corp.*, 100 Ill.App.3d 485 (5th Dist. 1981); *Estate of Barnes*, 133 Ill.App.3d 361 (1st Dist. 1985); *Vickrey v. Caterpillar Tractor Co.*, 146 Ill.App.3d 1023 (4th Dist. 1986); *Malatesta v. Mitsubisha Aircraft Int'l, Inc.*, 275 Ill.App.3d 370 (1st Dist. 1995)(citing *Mitchell* and quoting the New York interest-focused decision in *Miller v. Miller*, 22 N.Y.2d 12, 237 N.E.2d 877 (1968)); *Esser v. McIntyre*, 169 Ill.2d 292 (1996); *Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill.App.3d 903, 918 (1st Dist. 1997); *Morris B. Chapman & Assoc. Ltd., v. Kitzman*, 307 Ill.App.3d 92 (5th Dist. 1999), *aff'd*, 193 Ill.2d 560 (2000); *Wreglesworth v. Arctco, Inc.*, 316 Ill.App.3d 1023 (1st Dist. 2000);

*Horwitz v. Bankers Life*, 319 Ill.App.3d 390 (1st Dist. 2001); *Townsend v. Sears,*

*Roebuck & Co.*, 368 Ill.App.3d 902 (1st Dist. 2006).

In the overwhelming number of cases (*e.g.*, the *Martin/Avery* line of cases) – but

not in all – it was the Illinois forum's interest that prevailed. *Townsend, supra. See also,*

*Esser v. McIntyre*, 169 Ill.2d 292 (1996); *Morris B. Chapman & Assoc. Ltd., v. Kitzman*,

193 Ill.2d 560 (2000); *Mitchell v. United Asbestos Corp.*, 100 Ill.App.3d 485 (1981);

*Malatesta v. Mitsubishi Aircraft Int'l, Inc.*, 275 Ill.App.3d 370 (1st Dist. 1995), citing

*Mitchell, supra*, and quoting the New York interest-focused decision in *Miller v. Miller*,

22 N.Y.2d 12 (1968).

In some cases, numerically fewer because the court found no strong countervailing

forum policy, Illinois courts have applied the law of another jurisdiction. *See Nelson v.*

*Hix*, 122 Ill. 2d 343 (1988) (interspousal tort; Ontario has a great interest in the marital

relationship of its domiciliaries); *Estate of Barnes*, 133 Ill.App. 3d 361, 368-69 (1st Dist.

1985) (Michigan law applies to distribution in probate in wrongful death action); *Vickry*

*v. Caterpillar Tractor Co.*, 146 Ill.App.3d 1023 (4th Dist. 1986) (Missouri law); *Leane v.*

*Joseph Entm't Group*, 267 Ill.App.3d 1036 (1st Dist. 1994) (Wisconsin law applies as

situs of the tort in the absence of a more significant relationship to Illinois); *Jones v. State*

*Farm Mut. Ins. Co.*, 289 Ill.App.3d 903 (1st Dist. 1997) (Ohio law applies, not as a result

of "contact counting," but on the basis of a "more sophisticated interest analysis"); *Coats*

*v. Hertz Corp.*, 296 IllApp.3d 607 (5th Dist. 1998) (New York applies because of its

interest in providing remedies for its citizens, citing *Esser*). For the application of another

law (France) in a contract action, with reference to the principles of § 6, in combination

with § 188, see *Curran v. Ho Sung Kwon*, 153 F.3d 481 (7th Cir. 1998); *Horowitz v.*

*Bankers Life*, 319 Ill.App.3d 390, 399 (1st Dist. 2001) (Colorado has the more significant relationship to the insurance contract.)

The process for applying § 6 was clearly stated in *Morris B. Chapman & Assoc., Ltd. v. Kitzman*, 307 Ill. App. 3d 92, 100-101 (5th Dist. 1999), *aff'd*, 193 Ill. 2d 560, 568-72 (2000):

[W]e employ an interest-analysis approach in determining each factor's degree of significance for choice-of-law purposes:

'This approach is based on the conclusion that '[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.' [Citations.] Instead of a mere counting of contacts, what is therefore required is a 'consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.'' [*Mitchell v. United Asbestos Corp.*, 100 Ill. App. 3d 485, 492-93, 426 N.E.2d 350, 355 (5th Dist. 1981)].

Guided by our decision in *Mitchell*, we construe [Restatement] sections 6 and 221 together as giving rise to a three-step process for our conflict-of-laws analysis in this case: (1) isolate the issue and define the conflict, (2) identify the policies embraced in the conflicting laws, and (3) examine the contacts of the respective jurisdictions in order to determine which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.

Recently the First District employed this approach in a products liability case that implicated Illinois and Michigan interests. *Townsend v. Sears, Roebuck & Co.*, 368 Ill.App.3d 902 (1st Dist. 2006). There the court addressed whether Illinois' strict liability law (the principal place of business of the defendant) or Michigan's negligence law (the residence of the plaintiff, place of purchase and site of the incident) would determine whether Sears defectively designed a lawn tractor that caused personal injuries to the plaintiff's minor child. The court first examined the respective polices underlying the two state's laws and found that "[t]he policies that underlie the law of strict liability in Illinois reflect a consumer protective and a corporate regulatory policy.... In contrast, Michigan's negligence law reflects a producer protective policy designed to protect domiciled producers from excessive financial liability."

The Court then weighed these competing polices, writing:

> Although Sears certainly does business in Michigan as a retailer, Michigan's corporate protective products law would not materially advance the goal of protecting its resident producers from strict liability in this case. Nor would its interest be impaired by applying a stricter standard of liability on a New York corporation with its principle place of business in Illinois. Furthermore, Michigan's policy cannot be said to promote the welfare of injured Michigan plaintiffs. Nor is its policy designed to punish its plaintiffs. Thus, Michigan would have no interest in denying its residents easier proofs at trial for the purpose of benefitting [sic] a foreign producer or designer. ...

23

In contrast, Illinois has a strong interest in applying its products liability law to regulate culpable conduct occurring within its borders, induce the design of safer products, and deter future misconduct. Therefore, Illinois, Sears' principal place of business, the place where the decision was allegedly made to design the lawn tractor without an NMIR feature, and where the decision was allegedly made to place the product into the stream of commerce, has a significant interest in applying its design defect standards to effectuate the regulatory policy reflected in its law. Consequently, although generally the law of the place of injury determines the liability law of the parties, since Illinois has a more significant relationship to this issue, Illinois' strict product liability law applies in the present case.

As the California precedents aptly demonstrate, California has an interest in applying its law. *See In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 18 (N.D. Cal. 1986) ("California has a strong interest in the allegedly fraudulent conduct of its corporations and residents, and in protecting its residents and others from such fraud."); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 686 (N.D. Cal. 1986) (same). Much like *Townsend*, the question presented in this case is thus whether other states like Illinois in which the plaintiffs are domiciled and/or have purchased their computers have a countervailing or superior interest in applying their home state's law. The answer to this question would be affirmative only if it is shown that those other states have laws that protect their domiciliary consumers to a greater extent than California law. It is doubtful that this is the case given that Plaintiffs here are seeking to invoke California law. In

fact, California consumer law may be the most consumer-friendly in the nation. *See, e.g.,* *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999). Moreover, California's concern for the *regulation of conduct* underlies a number of its decisions. *See e.g., Clothesrigger, supra. See also, Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 480 N.E.2d 679 (1985); *Li Fu et al. v. Hong Fu et al.*, 160 N.J. 108, 123, 733 A.2d 1133, 1141 (1999): "The interests underlying the field of tort law require courts to consider the degree to which deterrence and compensation, the fundamental goals of tort law, would be furthered by the application of a state's local law."

For California to have its standards undercut by the application of more permissive standards, under some other law, to conduct in California by California businesses would, in California's view, no doubt amount to a serious impairment. As a result, California would most probably apply its law (if it were the forum), notwithstanding the initial guidance offered by *comment j* to RESTATEMENT (SECOND) § 148 (place of reliance, *but see: Purizer Corp., v. Battelle Mem'l Inst.*, 2002 WL 22014 (N.D.Ill. 2002)). Likewise, Illinois might prefer to apply its law if it would better protect Illinois consumers. However, such has not been shown. In fact, California law seems to be exceedingly strict – in liability standards and in establishing liability. Consumers may be better protected under California law. Thus, there does not appear any interest on the part of Illinois in the application of its standards in preference to California's.

Certainly Illinois' interest does not conflict with California's expressed interest in regulating the conduct of California defendants in California, especially when it could result in lesser protection for Illinois consumers. Consequently, California's interest in

applying its law remains unchallenged and the application of California law is not only constitutionally permissible but also appropriate from a choice-of-law perspective.

## CONCLUSIONS

(1) There is no constitutional impediment to the application of California law by the Illinois Court under the particular facts presented by this case if the Court were to find that California has the most "significant relationship" with this action for choice of law purposes.

(2) A choice-of-law analysis that weighs interests leads us to conclude that the interests of California in the application of its law as to how local companies conduct their business (whether that is in-state or nationwide is irrelevant, see above) outweigh any contrary Illinois interest, if indeed there is any. Application of California law will therefore advance the principles of § 6(2)(c), (e), (f), and (a) of the RESTATEMENT (SECOND).

Illinois choice-of-law decisions correctly require evaluation of *any* state's interests (including subordination of the forum's own). In the particular circumstances of the case at bar, consideration of California's paramount interest in regulating the conduct of California companies (particularly in California) would also be good conflicts *policy* because it will permit the application of a *single* law and thereby permit consideration of the certification of a nationwide class, which may be the only way to provide plaintiffs an effective way to pursue a remedy.

The suggested conclusion comports with important principles embodied in § 6 of the RESTATEMENT (SECOND). These are the interests in uniformity of result for all claimants who do not opt out, ease and economy in the administration of justice, predictability for the defendant, and – most importantly – vindication of California's interests in regulating the conduct of its companies by making its remedies available and applicable to all injured by misconduct. California's interest – as that of states similarly situated – is expressed by its adoption of *legislation* regulating conduct and providing remedies for its violation. We therefore agree with the Fifth District Appellate Court, *Barbara's Sales, Inc. et al. v. Intel Corp.*, 367 Ill.App.3d 1013 (5th Dist. 2006), and suggest that it be affirmed.

March 5, 2007                    Respectfully submitted on behalf of *Amici*:

Rober J. Sprague  #2693690
Sprague & Urban
26 E Washington St
Belleville, IL 62220-2101
(618) 233-8383
*Attorney for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to the requirements of Rules 341(a) and (b). The

length of this brief, excluding the appendix, is 26 pages.

Robert J. Sprague
Sprague & Urban
26 E Washington St
Belleville, IL 62220-2101