UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY and KENNETH HANSEN, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Case No. C07-475MJP <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SEAL |

This matter comes before the Court on Plaintiffs' motion to seal. (Dkt. No. 111.) This motion is a "placeholder" motion filed by Plaintiffs pursuant to the parties' protective order. Plaintiffs actually oppose sealing. Microsoft seeks to have most of the material maintained under seal. (Dkt. No. 119.) Having considered the motion, response, and reply (Dkt. No. 123), all documents submitted in support thereof and the record herein, the Court GRANTS IN PART and DENIES IN PART Defendant's request that the Court keep the at-issue documents sealed.

**Background**

This action challenges Microsoft's marketing of its new Windows Vista operating system. In early 2006, nearly a year before Microsoft released its new Vista operating system, Microsoft authorized original equipment manufacturers ("OEMs") to place a sticker on personal computers ("PCs") indicating that the PCs had been certified by Microsoft as "Windows Vista Capable." (Dkt. No. 29, Second Amended Compl. [hereinafter "Compl."] ¶ 1.2.) In fact, Plaintiffs allege, a large number of the PCs certified as "Windows Vista Capable" can only operate "Vista Home Basic," which does not include any of the enhanced features unique to Vista and which make

ORDER — 1

Vista attractive to customers.

Plaintiffs allege that Microsoft engaged in deceptive practices to boost holiday sales of personal computers after delaying the release of Vista from March 2006 to early 2007. (Compl. ¶ 4.2-4.3.) Because Microsoft and manufacturers were concerned that consumers looking to buy a new computer would delay their purchases until the release of Vista (and therefore after the holiday season), Microsoft endeavored to assure consumers that their new computers would run the soon-to-be released Vista operating system. Plaintiffs offer evidence suggesting that Microsoft included PCs that could only run Vista Home Basic within the "Windows Vista Capable" marketing program because Microsoft was concerned that few PCs on the market at the time could run the more premium versions of Vista. (See Thomas Decl., Ex. A. at 22117, 21978-79, 16845, 23209-10, 19346-62, 25711.) Microsoft did this even though, internally, Microsoft employees expressed concern that consumers would be confused about whether their PCs could run the "real" Vista operating system. (Id. at 29335, 40428, 19351.) OEMs and retailers complained to Microsoft that Microsoft had made a mistake when it lowered the "Vista Capable" marketing requirements to include Vista Home Basic. (Id. at 40427, 40446-47, 18624.) Plaintiffs allege that Microsoft's assurances that PCs marked "Windows Vista Capable" could run Vista were false and deceptive.

Named plaintiffs Dianne Kelley and Kenneth Hansen moved to certify a nationwide class and requested that the Court apply Washington law to the class claims. In support, Plaintiffs filed materials, including evidence of the dialogue about the marketing program, that Microsoft has designated "Confidential" pursuant to the parties' protective order. Plaintiffs' reply briefing also contains excerpts from materials containing Microsoft's confidentiality designations. Microsoft requests that all of these materials, except for Plaintiff's Reply in Support of the Motion for Application of Washington Law, remain under seal. Plaintiffs do not oppose sealing Exhibit A to the Smart Declaration, but argue that the other documents should not be sealed.

ORDER — 2

**Discussion**

Microsoft asks the Court to seal the following documents:

1) **Dkt. No. 112, Plaintiffs' Reply to Plaintiffs' Motion for Class Certification**, which contains references to and quotes from the "confidential" materials in the exhibits;

2) **Dkt. No. 117, Ex. A to Smart Decl.**, which contains pages from Microsoft's Desktop Operating System License Agreement for OEMs and Microsoft's Business Terms Document for OEMs;

3) **Dkt. No. 114, Ex. A to Thomas Decl.**, which contains internal Microsoft emails, emails between Microsoft and OEMs and retailers, news articles, a marketing bulletin to OEMs, a memo from Microsoft to OEMs, and some web communications.

In order to overcome the strong presumption in favor of access to court documents, a party seeking to seal a judicial record must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure. Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). In Kamakana, the Ninth Circuit held that a movant must offer "compelling reasons" to seal documents attached to a dispositive motion but only "good cause" to seal docs attached to a non-dispositive motion. 447 F.3d at 1180. "Compelling reasons . . . exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Id. at 1179. In Nixon v. Warner Communications, Inc., the Supreme Court suggested that courts may also deny public access to judicial documents where such records constitute "sources of business information that might harm a litigant's competitive standing." 435 U.S. 589, 598 (1978); see also Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. 504, 506 (E.D.N.Y. 1999) ("Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing

ORDER — 3

1   information, and the like."); Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1035 (S.D.N.Y.
2   1993) (sealing internal documents which "constitute potential negative publicity about
3   [defendant's] marketing tactics" because of "their potential to do commercial harm").

4         The Ninth Circuit has not delineated the distinction between dispositive and non-
5   dispositive motions. But the distinction, at least for purposes of a motion to seal, should turn on
6   whether the motion goes to the merits of the case. See Kamakana, 447 F.3d at 1179 ("[T]he
7   public has less of a need for access to court records attached only to non-dispositive motions
8   because those documents are often unrelated, or only tangentially related, to the underlying cause
9   of action."). At least one district court in the Ninth Circuit has concluded that a motion for class
10  certification is a dispositive motion. In re DRAM Antitrust Litig., No. M02-1486 PJH, 2007 U.S.
11  Dist. LEXIS 20570, at *32 (N.D. Cal. March 6, 2007). Given the importance of class
12  certification to the outcome of a case and the local rules expanding the briefing length and
13  schedule for such motions (see Local CR 7(e)(3)), the Court concludes that the motion for class
14  certification is dispositive.

15        The question here is whether Microsoft has provided "compelling reasons" to keep sealed
16  the at-issue documents. Microsoft asks the Court to seal more than 170 pages of documentation
17  that include various types of information — license agreements, internal Microsoft emails
18  regarding development of the "Windows Vista Capable" marketing plan, emails between
19  Microsoft employees and OEMS or retailers about the marketing plan, OEM marketing bulletins,
20  and news articles. The Court has attempted to group these documents into manageable
21  categories.

22        **Ex. A to the Smart Decl**. Plaintiffs do not oppose sealing this exhibit. This licensing
23  document should be sealed because it reveals the terms and strategies under which Microsoft
24  licenses its software. Microsoft's request to seal this exhibit is GRANTED.

25        **Ex. A to the Thomas Decl**. Exhibit A to the Thomas Declaration includes (1) internal
26  emails among Microsoft employees discussing development of the Vista marketing plan (19353-
27

ORDER — 4

1  69, 21867, 21978-81, 22117-21, 24864-66, 27648-53, 29051-52, 30049-51, 40314-16), technical
2  requirements for Vista capability (18961, 19316), OEM feedback on the "Windows Vista
3  Marketing" program (19346-50, 23134-35, 25048-56, 25076-77, 25709-14, 27694-95, 40427-
4  28, 40446-47), and employee frustration with the program (19351-52, 25335-38, 28659-60,
5  29334-37, 30692-99); (2) external emails between Microsoft employees and retailers or OEMs,
6  discussing development of the marketing program (18797-18800, 21971-74, 27068-69); and (3)
7  external documents, including OEM Marketing Bulletins (23209-12, 26522-39), Vista Ready
8  Roadtour "Proposed Messaging" (25519-24), and quotes from news articles regarding the
9  marketing program (36587).

10       The Court will only seal the OEM Marketing Bulletins and the Vista Ready Roadtour
11  "Proposed Messaging." The OEM Marketing Bulletin explains to OEMs Microsoft's marketing
12  strategy and was only issued, under a non-disclosure agreement, to OEMs eligible to participate in
13  the "Windows Vista Capable" marketing program. The Vista Ready Roadtour materials lay out
14  the goals of the Vista Marketing program and potential issues and solutions with the program.
15  Both of these documents warrant sealing because they reveal Microsoft's formalized marketing
16  plans. The news articles will not be sealed because they have presumably already been publicly
17  distributed.

18       The remainder of the documents in Exhibit A to the Thomas Declaration will be unsealed.
19  These internal and external emails contain informal dialogue regarding the marketing program.
20  They do not contain trade secrets or other confidential information that should be kept secret
21  from Microsoft's competitors and the public. Microsoft suggests that the external emails with
22  OEMs and retailers should be kept secret because "[i]f Microsoft's competitors knew the details
23  of the process by which Microsoft develops its products and/or marketing programs, they could
24  use that information to their advantage, and Microsoft's disadvantage, in developing and
25  marketing their own products." (Def.'s Resp. at 7; see also Totton Decl. ¶¶ 17-20.) This vague
26  assertion — regarding a presumably common and expected dialogue among partnering businesses
27

ORDER — 5

1  — will not suffice to overcome the strong presumption in favor of public access.  The external
2  emails shall be UNSEALED.

3  Likewise, the internal emails among Microsoft employees do not warrant sealing.
4  Microsoft argues that it considers these emails highly confidential and suggests that their public
5  disclosure could be used to Microsoft's disadvantage by chilling frank speech among Microsoft
6  employees and aiding competitors in developing and marketing their own products. (Def.'s Resp.
7  at 9.)  Again, this vague and conclusory assertion will not suffice to warrant sealing.  The Court is
8  also unpersuaded that other businesses will use these internal discussions to their competitive
9  advantage.  Disclosure of employees' internal dialogue regarding development of the marketing
10 program may be embarrassing to Microsoft, but it will not reveal any proprietary or competitive
11 commercial information that should be kept secret from the public.  The internal emails shall be
12 UNSEALED.

13 The Court acknowledges that some of the documents in Exhibit A to the Thomas
14 Declaration are long email chains that include non-sensitive information and information that is
15 arguably sensitive.  The Court will not go through over 150 pages of documents line-by-line to
16 determine which lines warrant sealing.  The Court has erred on the side of public disclosure where
17 documents contain a mix of non-sensitive and potentially sensitive information.

**Conclusion**

19 The motion to seal is GRANTED IN PART and DENIED IN PART.  The clerk is
20 directed to immediately unseal Docket. No. 115.  Docket Nos. 112, 114, and 117 shall remain
21 permanently sealed.  Within ten (10) calendar days, Plaintiffs shall file redacted versions of Docket
22 Nos. 112 and 114 that comport with this order.

23 Dated: February 26, 2008.

Marsha J. Pechman
United States District Judge

ORDER — 6