Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DIANNE L. KELLEY and KENNETH HANSEN,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>　　　　　　　　Defendant. | NO. C07-0475 MJP<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br>*Redacted Version\** <br><br>CLASS ACTION<br><br>NOTE ON MOTION CALENDAR:<br>December 19, 2007<br><br>ORAL ARGUMENT REQUESTED |

*\* These redactions have been made pursuant to Microsoft's confidentiality designations and the Court's Order Granting in Part and Denying in Part Motion to Seal (Dkt. No. 129), entered on February 26, 2008.*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1

II. DISCUSSION ................................................................................................................1

    A.    What Is and Is Not in Dispute..................................................................................1

    B.    Liability Will Not Depend Upon What Each Class Member Saw at the Point of Sale; Plaintiffs and All Class Members Paid for Vista Capability, Yet None Received It. ..........................................................................2

        1.    The Court Should Look to Plaintiffs' Allegations, Not the Merits. ..........................................................................................................2

        2.    Microsoft Knew That PCs That Could Run Home Basic Were *Not* Capable of Upgrading to Vista..............................................................2

        3.    To Increase Sales of Windows XP, Microsoft's Marketing Department "Lowers the Bar" to Vista Capability to Make Home Basic "Vista Capable."..........................................................................3

        4.    Microsoft Received Harsh Criticism—Internally and Externally—to "Lowering the Bar" to Vista Capability..................4

        5.    Despite Major Objections, Microsoft Kept the Low Bar for Vista Capability. ..................................................................................................6

        6.    Microsoft Strategically Withheld Information From Consumers About Vista Before its Launch. ......................................................7

        7.    Consumer Reaction After Vista's Launch Was Exactly What Microsoft Had Predicted: Dissatisfaction Upon Realizing That Home Basic Was Not Vista. ..........................................................7

    C.    *Predominance*: Causation Does Not Raise Individual Issues Either for Plaintiffs' CPA Claim or Plaintiffs' UE Claim...........................................8

        1.    Common Issues Predominate in Plaintiffs' CPA Claim..................8

        2.    Common Issues Predominate in Plaintiffs' UE Claim. ..................10

        3.    Microsoft Ignores Nationwide Consumer Class Action Cases Plaintiffs Cited. ..........................................................................................11

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - i
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

        4.     A Class Should Be Certified No Matter How the Court's Rules on Plaintiffs' Motion for Application of Washington Law. ..........11

   D.   *Superiority*: A Single Class Action Pursuing Either CPA Claims, UE Claims, Or Both Claims is Superior to Individual Litigation of Such Claim. ......................................................................................................12

   E.   *Typicality*: Claims of Class Members Participating in Microsoft's Express Upgrade Promotion are "Typical" of the Claims of Other Class Members and the Plaintiffs. ............................................................12

III.   CONCLUSION..................................................................................................12

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - ii
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# TABLE OF AUTHORITIES

**Cases**

*Bailie Comm. Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 810 P.2d 12 (1991) ..................... 10

*In Re St. Jude Med.*, 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ..................... 11, 12

*Indoor Billboard v. Integra Telecom*, -- Wn.2d --, 170 P.3d 10 (2007) ......................................... 9

*Microsoft Corp. v. Manning*, 914 S.W.2d 602 (Tex. App. 1995) ..................................................11

*Riensche v. Cingular Wireless LLC*, No. C06-1325Z, 2007 U.S. Dist. LEXIS 83921
   (Nov. 9, 2007) ............................................................................................................................ 9

*Schnall v. AT&T Wireless Servs., Inc.*, 139 Wn. App. 280, 161 P.3d 395 (2007) ......................... 9

*Scott v. Cingular Wireless*, 160 Wn.2d 843, 161 P.3d 1000 (2007) .............................................. 9

*Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 991 P.2d 1126 (2000) ........... 10

*State v. Ralph Williams' N. W. Chrysler Plymouth*, 87 Wn.2d 298, 553 P.2d 423 (1976) ............. 9

**Other Authorities**

Washington Pattern Jury Instruction 303.08 ................................................................................. 10

James M. Fischer, *Understanding Remedies* § 50 (1999) ............................................................10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - iii
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## I. INTRODUCTION

Plaintiffs did not get what they paid for. Plaintiffs and all potential class members paid for Vista capability but did not receive it. Microsoft mischaracterizes plaintiffs' claims to suit its purposes. It argues that plaintiffs' Consumer Protection Act ("CPA") and unjust enrichment ("UE") claims "center" on the Vista Capable sticker—that plaintiffs must be treated individually due to why they purchased, where they purchased, how they purchased, and what they saw when they purchased. Whether any class member saw the sticker at the time of sale is irrelevant. All paid for Vista capability. None received it.

Microsoft, on the other hand, profited enormously from passing off "Home Basic capability" as "Vista capability"—despite knowing that Home Basic was *not* Vista. Microsoft's last-minute decision to "lower the bar" of Vista capability to include Home Basic was a marketing ploy even its own employees (among others) adamantly counseled against:

> ***Based on objective criteria that exist today for [Vista] capable even a piece of junk will qualify. . . . For the sake of Vista customers, it will be a complete tragedy if we allowed it.***

Declaration of Jeffrey M. Thomas ("Thomas Decl."), Exhibit A at MS-KELL 29335.

## II. DISCUSSION

### A. What Is and Is Not in Dispute

Microsoft does not oppose the Rule 23 requirements of numerosity, commonality, or adequacy of representation. It disputes predominance and superiority by arguing that liability depends on proof of what class members subjectively thought at the time of sale. It also disputes typicality by arguing that plaintiffs' claims are atypical of the CPA and UE claims of participants in Microsoft's Express Upgrade promotion. Microsoft's arguments are meritless.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 1
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**B.     Liability Will Not Depend Upon What Each Class Member Saw at the Point of Sale; Plaintiffs and All Class Members Paid for Vista Capability, Yet None Received It.**

**1.     The Court Should Look to Plaintiffs' Allegations, Not the Merits.**

Plaintiffs allege they paid for Vista capability and did not receive it. Instead, they received the capability to run "Home Basic," an operating system ("OS") that Microsoft did not develop to bear the Vista name. Microsoft spends much of its opposition on the merits of whether Home Basic can be considered "Vista." But the Court should analyze the Rule 23 factors by looking to plaintiffs' allegations. Mot. at 8-9. The relevant question is whether the allegations are amenable to classwide treatment, not whether they have been proven. *Id.*

Although Microsoft does not dispute the standard for reviewing this motion, it does not adhere to the standard either. Presumably to avoid the argument that it failed to produce the documents on which its opposition relies, Microsoft produced—well *after* plaintiffs filed their motion—nearly 39,000 pages of merits-related documents. Thomas Decl. ¶ 2. Even what is likely only the tip of the iceberg of merits discovery, however, has generated a document trail that tells a story much different than what Microsoft would have the Court believe.

**2.     Microsoft Knew That PCs That Could Run Home Basic Were *Not* Capable of Upgrading to Vista.**

As early as July 2005, concern was expressed that announcing Vista's release would "kill[] sales" of existing XP PCs because only "few" such PCs were Vista ready. *Id.*, Ex. A at 30051, 29051. The "Vista Capable" program was then known as "Vista Ready." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 25520.

Home Basic—then known as "Windows 2006"—was deemed *not* Vista Ready. Very much *unlike* Vista, a graphics-intensive OS that required newer, state-of-the-art hardware, Windows 2006 (Home Basic) was designed to work on two to three year-old PCs. *Id.* at 25054,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 2
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

19351 ("make 'capable' just related to 'old' type hardware"). In Summer 2005, Microsoft determined that the Longhorn Display Driver Model ("LDDM") was required to run Vista and, thus, was required for "Vista Ready" capability.[1] *Id.* at 19316, 18961, 25522. Windows 2006 (Home Basic) could not use LDDM; Microsoft never intended to put a "Vista Capable" sticker on these PCs because they could not run what it considered to be "Vista." (No LDDM, not Vista Ready). These Home Basic PCs would continue to use the *XP logo. Id.* at 17893-97.

> Since ***Windows Vista name is reserved for premium SKUs***, this lines up well with our LDDM story. For Windows 2006 (***read Home Basic***), we can educate the retail folks that PCs with [non-LDDM] 915 are upgradeable ***to Windows 2006***. But while ***that protects the investment of PC buyers in sub $600 price point, we are not diluting Windows Vista Ready program***.

*Id.* at 17894 (emphasis added); *see also id.* at 19351. Dell, among others, agreed with Microsoft's intention to reserve the Vista name to *non*-Home Basic product lines:

> ***Dell is in alignment with containing the Vista name to outside . . . Home Basic.***

*Id.* at 18800 (emphasis added).

### 3. To Increase Sales of Windows XP, Microsoft's Marketing Department "Lowers the Bar" to Vista Capability to Make Home Basic "Vista Capable."

While Vista was $5 billion and five years in development, Home Basic became "Vista" at the eleventh hour and virtually overnight. *Id.* at 19361 ("We need good messaging for the elimination of WDDM in Capable, as we have had this as a requirement since inception over 18 months ago."). This last-minute re-characterization of Home Basic was not the result of any last-minute technological achievement by Microsoft's research and development division. *Id.* at 25049 (Home Basic has "[n]o quality improvements" and "[w]orks exactly like XP"). Home

---

[1] LDDM later was known as Windows Vista Display Driver Model or "WDDM." *Id.* at 29051. Only LDDM/WDDM PCs would run Vista's "Aero" user interface, which Microsoft considered "critical" for customer experience." *Id.* at 19136, 29051-52; 30694 ("it's just a souped up XP logo'ed system" if not Vista Ready); 30695 ("That's just bad" if consumer buys Vista Ready PC but does not have Vista experience).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 3
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Basic became "Vista" through a decision made by Microsoft's marketing department. What happened? Microsoft belatedly discovered that *only 4%* of PCs in the market would be deemed "Vista Capable" under the then-current Vista Capable requirements. *Id.* at 22117, 21978-9. The widely-used Intel 915 chipset did not support the graphics-intensive Vista OS and its Aero user interface. *Id.* at 19346, 23134, 17893. Microsoft viewed this problem as a marketing problem with a marketing solution: drop the bar for Vista capability low enough to cover more PCs on the market. *Id.* at 16845, 21979, 23209-10, 19346-62. The more PCs Microsoft could say were "Vista Capable," the more that would be sold *and priced* as upgradeable to "Vista." *Id.* at 25711 (non-Vista Capable PCs sold at lower price). Thus, Microsoft decided it would stretch the Vista name to encompass even those XP-based PCs upgradeable only to Home Basic—despite having determined "18 months ago since inception" that such PCs were *not* Vista Capable. *Id.* at 19361.

### 4. Microsoft Received Harsh Criticism—Internally and Externally—to "Lowering the Bar" to Vista Capability.

Microsoft's representation to this Court that Home Basic was "created" purposely as an entry-level version of Vista (Opp'n at 2-3) is not accurate. It *knew in advance* that passing off Home Basic as Vista would result in a "bad experience" and "complete tragedy" for an entire group of consumers. *Id.* at 29335. The truth was well-known within Microsoft as to just how far the Vista-capability bar had to be lowered to achieve the goal of maximizing XP sales prior to the Vista launch. Microsoft acknowledged internally in March 2006 that:

> Based on objective criteria that exist today for [Vista] capable *even a piece of junk will qualify* ☺ . . . *For the sake of Vista customers, it will be a complete tragedy if we allowed it.*

*Id.* at 29335 (emphasis added); *see also id.* at 16845, 25336, 27694, 28660. Microsoft's upper management overruled those internally who had objected to putting the Vista name on these non-

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 4
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Vista-capable PCs. Employees questioned whether marketing should "rethink" its decision:

> Please give this some consideration; *it would be a lot less costly to do the right thing for the customer now rather than spend dollars on the back end trying to fix the problem.*

*Id.* at 40428 (emphasis added). One "passionate" plea to a senior executive advised:

> I am passionate about this and believe *this decision is a mistake.* . . . These three things just don't add up to me. We are allowing Intel to drive our consumer experience. The OEMs support our goals here and they've made graphics investments to drive the [user interface] experience with consumers. *I don't understand why we would cave on this when the potential to drive the full [user interface] experience is right in front of us.*

*Id.* at 19351 (emphasis added). Although admitting "we really botched this," the response simply was that it would be too "hard . . . to step in now and reverse everything." *Id.*

It was not just internal criticism Microsoft received after "relaxing" the Vista Capable requirements to include Home Basic to maximize XP sales. *Id.* at 25660, 26184. In late-2005/ early-2006, Microsoft unveiled the Vista Capable program to OEMs and major retailers. They "consistently" reacted strongly and negatively. *Id.* at 40427. For example, a Microsoft employee relayed the "vocal" complaints of Wal-Mart, the world's largest retailer:

> *They are extremely disappointed in the fact that the standards [for Vista capability] were lowered and feel that customer confusion will ensue.* They would like to see Microsoft reconsider the program and allow for use of 2 different logos; *one that is strictly a Windows Vista Home Basic Capable, and the other Windows Vista Capable.* They also went so far as to say that *they wished that Windows Home Basic was not even in the [product] line up.*

*Id.* at 40427 (emphasis added). A few weeks later, another Microsoft employee relayed Office Depot's "feedback" on "sensitive Vista issues:"

> o   Home Basic will not possess the major feature sets that MS is focusing on, such as Aero and Flip. *Concerned that we advertise "Vista" with these features, but there will be cust[omer] dissatisfaction & returns when they buy Home Basic & don't get those features*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 5
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

- *They would have preferred that MS not have a Home Basic.* They see this Vista variant as selling down.

*Id.* at 40446-47 (emphasis added).

### 5. Despite Major Objections, Microsoft Kept the Low Bar for Vista Capability.

Despite receiving this criticism and knowing that Home Basic was not Vista, Microsoft nonetheless launched the downwardly-revised Vista Capable program in March 2006. From its perspective, this was the best way to help liquidate what it viewed as "old channel" XP PCs in the market that could not run what it developed as "Vista." Microsoft knew that the only way these soon-to-be obsolete PCs would have value to justify their sale in the months leading up to Vista's actual release would be if they could be sold as—*and priced as*—"Vista Capable." *Id.* at 25711; *see also id.* at 21973-4. Thus, Microsoft would say these PCs were capable of upgrading to Vista when, both within and outside Microsoft, it was common knowledge that they were not.

Indeed, the very next day after it launched Vista, Microsoft referred to Vista Capable PCs as what they really were: "old channel inventory" of XP PCs now being "liquidate[d]" "at a discount." *Id.* at 24864-5. This is a far cry from what Microsoft said about *the same PCs*, pre-launch. *See, e.g., id.* at 26536 ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"), 36587 ("There's no reason to wait"). This underscores how deceptive the Vista Capable program was. In retrospect, at least one Microsoft executive acknowledged that "it was a mistake" to lower the Vista Capable requirements following the Intel 915 issue, but there was "really nothing we can do" after the fact "to ease the customer pain." *Id.* at 19346; 19348 (email to Steve Ballmer) (lowering bar was not "a good call"). Dell, likewise, advised Microsoft in a March 25, 2007 "Vista Post Mortem" that "the bar was set too low when Aero was dropped as a requirement for Vista Capable." *Id.* at 18624.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 6
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### 6. Microsoft Strategically Withheld Information From Consumers About Vista Before its Launch.

There was no realistic way for consumers to know the otherwise hidden truth about Home Basic until after Vista was released. Contrary to Microsoft's ostensible "extensive consumer education efforts," while the Vista Capable program was in effect, Microsoft directed OEMs and retailers to maintain *low visibility* for Vista so as not to "stall" XP sales:

> *MS is not changing our strategy of doing very little to drive demand and awareness for Windows Vista* until [January 7-11, 2007 Consumer Electronics Show] as *we do not want to do anything that would stall XP PC . . . sales during the Holidays.*

*Id.* at 27068 (emphasis added); *see id.* at 27652 ("Minimal or no signage about Windows Vista in the PC and software isles."); 25076 (major retailers not taking point-of-purchase displays). Moreover, Microsoft knew that any of the so-called "education efforts" that did exist were of no value to those, like plaintiffs, who purchased their PCs *before* Microsoft launched Vista in any event. *See, e.g., id.* at 40315 (no "context" for Vista feature descriptions during "months prior to Vista launch; no "benefit" of providing features list to consumers; "educating" them may "confuse them and may cause them to delay their purchase – the exact opposite of what we want to see"). The only inference to be drawn is that Microsoft believed consumers would not fall for the Vista Capable program if they were too educated about Vista.

### 7. Consumer Reaction After Vista's Launch Was Exactly What Microsoft Had Predicted: Dissatisfaction Upon Realizing That Home Basic Was Not Vista.

After Vista launched, what Microsoft and others predicted would happen, did happen—consumers realized Home Basic was not Vista. The point-of-purchase displays (or Microsoft's disclaimers about Home Basic that had been tossed into shipping boxes after purchase) made no difference. *See also id.* at 21867. Even today, Microsoft maintains that the term "Vista features" is too unclear for even it to compare Home Basic with Vista Home Premium. *Id.*, Ex. B at 13.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 7
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

The expected consumer dissatisfaction after Vista's release is the same dissatisfaction experienced by plaintiffs. Ms. Kelley testified she discovered being "deceived" only *after* she had seen Vista Home Premium operate on another PC she purchased, and later discovering that the Vista capability she received with her "Vista Capable" PC was to Home Basic only, which lacked the features that made Vista "Vista." *Id.*, Ex. C at 14:8-15:6, 49:10-50:24. Ms. Kelley put it succinctly when asked what she thought "Microsoft did wrong":

> A. I think they represented this computer as being able to do something it can't.
> Q. And what's that?
> A. Operate the real Vista.

*Id.* at 5:1-6. Mr. Hansen is more computer savvy than Ms. Kelley, *id.*, Ex. D at 12:7-13:20, 14:4-16:23, yet, like Ms. Kelley, only discovered Microsoft's deceptive conduct regarding Home Basic after-the-fact. *Id.*, at 27:5-25. He "knew to look for the Vista sticker." *Id.* at 85:13-14. When he found it on his PC, he thought "[t]his is something that can take Vista." *Id.* at 85:23-25; 43:9-17. Like others, he would only "find out later" that upgradeable to Home Basic was not the same as being "Vista Capable." *Id.* at 39:15-18. Many others *still* may be in the dark.

Even employees *within Microsoft* were deceived by Microsoft's conduct:

> I personally got burned by the Intel 915 chipset issue on a laptop that I PERSONALLY [bought] (eg with my own $$$). *Are we seeing this from a lot of customers?* I know that that I chose my laptop . . . because it had the vista logo and was pretty disappointed that it not only wouldn't run [Aero] Glass, but more importantly wouldn't run Movie Maker. *I now have a $2100 email machine.*

*Id.*, Ex. A at 19347 (emphasis added).

C. ***Predominance*: Causation Does Not Raise Individual Issues Either for Plaintiffs' CPA Claim or Plaintiffs' UE Claim.**

1. **Common Issues Predominate in Plaintiffs' CPA Claim.**

Microsoft's predominance argument focuses on CPA causation after *Indoor Billboard v.*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 8
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

*Integra Telecom*, -- Wn.2d --, 170 P.3d 10 (2007). *Indoor Billboard* has nothing to do with UE. As it relates to the CPA, Microsoft misstates the effect of the case. We advised the Court of *Indoor Billboard* when it heard Microsoft's motion to dismiss. *See* Dkt. 34. The Washington Supreme Court had not yet published its decision, but we informed the Court of what we thought the holding would be—no reliance element, and the standard WPI on proximate cause would remain the law. *Id.* This is precisely what happened. *Indoor Billboard*, at ¶¶ 43-57.

Microsoft still argues that understanding each class member's "individual motivations" or "knowledge" is required for causation. Opp'n at 1, 15. Microsoft's version of causation inserts reliance into the test, despite *Indoor Billboard* having rejected that element. Also, were Microsoft's view of causation correct, the end of CPA class actions in Washington would be upon us—this, despite clear evidence to the contrary from Washington courts earlier this year. *See, e.g.,* Mot. at 1 (citing *Scott v. Cingular Wireless*, 160 Wn.2d 843, 161 P.3d 1000 (2007); *Schnall v. AT&T Wireless Servs., Inc.*, 139 Wn. App. 280, 161 P.3d 395 (2007)). Every case would turn on "actual deception," a requirement Washington courts consistently reject. *See, e.g., State v. Ralph Williams' N. W. Chrysler Plymouth*, 87 Wn.2d 298, 317, 553 P.2d 423 (1976).

Further, as the Court recognized on Microsoft's motion to dismiss, in light of Microsoft's nondisclosure of the severe limitations of Vista Capable PCs, class members' purchases of PCs with "Vista capability" would be sufficient evidence of causation even were reliance required.[2] *See also Riensche v. Cingular Wireless LLC*, No. C06-1325Z, 2007 U.S. Dist. LEXIS 83921, at *38 (Nov. 9, 2007) (distinguishing *Indoor Billboard* on facts "because it dealt with affirmative

---

[2] Microsoft argues *Indoor Billboard* rejected a causation argument based on the mere payment of an invoice. Opp'n at 13. This is only half-true and is misleading. The court rejected (properly so) a "per se" rule that CPA causation *always* inheres in paying an invoice. The court recognized that, in some cases, payment may be enough evidence on causation. It depends on the facts. *Id.* ¶ 56 (rejecting "per se" rule, noting causation is fact issue, holding "[p]ayment of an invoice *may or may not* be sufficient to establish a causal connection") (emphasis added).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 9
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

misrepresentation rather than a failure to disclose"). Moreover, regardless whether a plaintiff saw a sticker at the point of sale, plaintiffs have presented substantial, common evidence establishing a proximate cause link between Microsoft's conduct and plaintiffs' loss:

- Each consumer was subjected to Microsoft's concealment of the true nature of Vista Capable PCs (obsolete upon Vista launch);

- Home Basic was not Vista (which Microsoft knew);

- No plaintiff reasonably could have known what Vista was (or understood descriptions of "Vista features") as the OS had not been released; and

- Each plaintiff paid extra for "Vista capability."

This is the crux of proximate cause here: "but for" Microsoft's unfair and deceptive conduct in palming off Home Basic as Vista, neither plaintiffs nor any person who purchased a so-called "Vista Capable" PC, and thereby paid for Vista capability, would have suffered any injury.

### 2. Common Issues Predominate in Plaintiffs' UE Claim.

Microsoft does not meaningfully address plaintiffs' separate UE claim. UE elements include: (a) a benefit conferred on Microsoft; (b) appreciation or knowledge of the benefit; and (c) retention of the benefit would be unjust under the circumstances. *Bailie Comm. Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12 (1991). There is no tort-concept of proximate cause. *Id.* As with the CPA claim, plaintiffs' theory of UE liability is predicated on classwide evidence. UE damages are more amenable to common proof because the measure of recovery is based on the "gain" *to Microsoft*, not on the "loss" suffered by any individual plaintiff. *See also* WPI 303.08; *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 838, 991 P.2d 1126 (2000); James M. Fischer, *Understanding Remedies* § 50 (1999).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 10
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### 3. Microsoft Ignores Nationwide Consumer Class Action Cases Plaintiffs Cited.

Microsoft turns a blind eye to all but two of the nationwide consumer class action cases we discussed, and distinguishes those two on grounds that make no difference. Microsoft asserts our reliance on *Microsoft v. Manning* and *St. Jude Medical* is an attempt to "recast" our claim as one for product-defect. Opp'n at 20. XP and Home Basic may well operate without defects. That is not our claim, and these cases were not cited for that proposition. They were cited for principles of class certification law as applied to nationwide consumer classes—Microsoft's omissions regarding its OS may be a common factual question that justifies certifying a nationwide class under the Washington CPA; a single common issue may warrant a finding of predominance; and certifying a nationwide consumer class may be appropriate even where different types of CPAs were held to govern. Mot. at 11, 17, 19-22.

Microsoft also tries to distance itself from the *published* Texas Court of Appeals opinion in *Manning*, by attaching *unpublished* letters and orders that show, for some unknown reason, the trial court later *sua sponte* decertified the class. Microsoft contends this behind-the-scenes evidence "negat[es] the significance of" *Manning*. However, the published opinion certifying a nationwide consumer class action against Microsoft under the CPA has been cited *81 times*— including numerous times by Texas appellate courts. *See* Thomas Decl., Ex. E.

### 4. A Class Should Be Certified No Matter How the Court's Rules on Plaintiffs' Motion for Application of Washington Law.

Washington law should govern the claims of Washington and non-Washington plaintiffs. The arguments in support of this view are set forth in our choice-of-law papers. If we prevail on this issue, a nationwide class should be certified. If we do not prevail, the Court still should grant our motion to certify a class, but should defer a ruling on class scope until it has had an

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 11
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

opportunity to review briefing on how many states other than Washington should be included.[3]

**D.    *Superiority*: A Single Class Action Pursuing Either CPA Claims, UE Claims, Or Both Claims is Superior to Individual Litigation of Such Claim.**

Microsoft's argument against superiority is nothing other than restating its misguided position on CPA causation—that individual issues of causation will require "mini-trials" for each class member, making case management impossible. Opp'n at 23-24. Microsoft presents no argument for why a UE class would unmanageable, or that procedural devices like separate jury instructions would not counteract any perceived management difficulties should more than one set of laws apply to either the CPA or UE claims of non-Washington class members.

**E.    *Typicality*: Claims of Class Members Participating in Microsoft's Express Upgrade Promotion are "Typical" of the Claims of Other Class Members and the Plaintiffs.**

Microsoft argues that proposed class members with "complaints about the 'Express Upgrade' promotion" are not typical of plaintiffs' claims because plaintiffs did not take part in the promotion. Opp'n at 2, 22. The argument (again) is predicated on misstating plaintiffs' core allegation. All class members, Express Upgrade participants or not, paid for Vista capability that they did not receive. The Express Upgrade promotion entitled participants to acquire the Home Basic upgrade software at no, or a reduced, cost. Those participants, like those who did not participate in the promotion, paid for Vista capability they did not receive. Thus, Microsoft's conduct equally affected all such class members—Express Upgrade participants or not.

### III.    CONCLUSION

Plaintiffs' motion should be granted.

---

[3] Microsoft states it has prepared a 30-page "assessment" of state law variations. Dkt. 101 at 30 n.8. If necessary, we will submit our "assessment" of how the laws of the states may be grouped into categories and how the case could be tried as a multi-state action with carefully drafted jury instructions and verdict forms. *See In Re St. Jude Med.*, 2006 U.S. Dist. LEXIS 74797 at *13 (D. Minn. Oct. 13, 2006) (nationwide consumer class properly governed by Minnesota CPA, but noting lack of substantive conflicts among CPAs of 33 jurisdictions including Washington); Mot. at 24 (separate jury instructions and verdict forms manage case even if multiple state laws were to govern).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 12
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 27th day of February, 2008.

**GORDON TILDEN THOMAS & CORDELL LLP**

By _____
Jeffrey I. Tilden, WSBA #12219
Jeffrey M. Thomas, WSBA #21175
Mark A. Wilner, WSBA #31550

**KELLER ROHRBACK L.L.P.**

By _____
William C. Smart, WSBA #8192
Ian S. Birk, WSBA #31431

Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 13
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant Microsoft Corporation

Stephen M. Rummage, WSBA #11168
Cassandra L. Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
Davis Wright Tremaine LLP
1201 Third Avenue Suite 2200
Seattle, Washington 98101-3045
steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Counsel for Defendant Microsoft Corporation
– *Admitted Pro Hac Vice*

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA  19109
ccasper@mmwr.com

**GORDON TILDEN THOMAS & CORDELL LLP**

By _____
Mark A. Wilner, WSBA #31550
Attorneys for Plaintiff
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154-1007
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: mwilner@gordontilden.com

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION - 14
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292