The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIANNE L. KELLEY, et al., )
)
                        Plaintiffs, )  No. C07-0475 MJP
)
        v. )  CR 37 JOINT SUBMISSION RE:
)  ASSERTION OF PRIVILEGE AS TO
MICROSOFT CORPORATION, a Washington )  PRICEWATERHOUSECOOPERS
Corporation, )
)  CLASS ACTION
                        Defendant. )
)  NOTE ON MOTION CALENDAR:
)  September 30, 2008
)
_____ )

**Filed Under Seal**

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.    MOVING PARTIES' INTRODUCTORY STATEMENT

Plaintiffs seek a ruling on the legal issue of the applicability of the attorney-client privilege and the work product doctrine to PricewaterhouseCoopers ("PwC") as applied to Microsoft's counsel's communications with PwC in this case.  Microsoft asserts that PwC serves as the functional equivalent of a Microsoft employee, and is therefore within the privilege. Plaintiffs assert that Microsoft's counsel hired PwC to be a witness in the case, and that counsel's communications with PwC therefore do not serve the purpose of counsel providing legal advice to Microsoft and are not privileged.  Plaintiffs believe that the particular relationship among PwC, Microsoft, and Microsoft's counsel in this particular case is one of first impression, and one to which the asserted immunities do not, or should not, attach.

The moment that PwC abandoned its behind-the-scenes consultant role and stepped onto the center stage of this litigation, by offering testimony for Microsoft containing analyses and assertions of fact regarding damages and damages calculations, any arguable basis for the protection of its communications with Microsoft's counsel was lost.  As a third party to the attorney-client relationship, PwC falls within the protection of the privilege only if the communications with PwC served the purpose of assisting Microsoft's counsel to provide *legal advice* to Microsoft.  Here, however, the communications with PwC have served the different purpose of educating PwC as a so-called "fact witness" uniquely aligned with Microsoft *and its counsel*.  Indeed, Microsoft offered PwC as what counsel acknowledged was a "fact witness," to testify as to what PwC has concluded from its investigation of Microsoft databases.  Microsoft affirmatively offered PwC partner Robert L. Moline as a witness in Microsoft's opposition to plaintiff's motion for class certification.  Microsoft offered PwC manager Kathryn Griffith as its 30(b)(6) designee in response to plaintiffs' discovery on damages and damages calculations.

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

Microsoft also served written answers to plaintiff's 30(b)(6) topics ostensibly based on PwC's fact-intensive work. PwC's role as a third-party *testifying* witness for Microsoft should not permit Microsoft and/or its counsel to hide their communications to or from the witness, just as much as such communications would not be privileged when made to or from other third-party fact or expert witnesses.

## II.     RESPONDING PARTY'S INTRODUCTORY STATEMENT

Microsoft invoked the attorney-client privilege and the work product doctrine with respect to various documents that PwC prepared and received in the course of its work on this case. But that does not mean that Plaintiffs lack information about PwC's work. PwC and Microsoft produced the data underlying the calculations about which PwC testified. PwC and Microsoft produced the worksheets PwC used in compiling that data and making the calculations, as well as email exchanges between PwC and Microsoft employees through which PwC learned the facts about which its employees testified. PwC and Microsoft even produced the summaries PwC prepared of calls in which its employees learned the facts, even if Microsoft's counsel were on the calls. All told, PwC and Microsoft produced more than 63,000 pages of documents relating to PwC's work, as well as numerous spreadsheets too voluminous to produce as numbered pages.

Despite this, Plaintiffs ask the Court to assist them in probing communications that Microsoft and its litigation counsel had with PwC. Settled law, however, makes clear that Plaintiffs have no right to those communications. But for PwC's engagement, Microsoft employees would have performed the work that PwC did—and communications between Microsoft's litigation counsel and those employees plainly would have been privileged. The fact that Microsoft hired a third party to handle the same functions does not strip the communications

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 2

DWT 11833206v6 0025936-000689

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    of their intended confidentiality and privilege. Courts protect these communications under two

2    theories, each of which applies here:

3        *First*, where a consultant or independent contractor acts as the "functional equivalent" of

4    a corporate party's employees, the privilege attaches to communications between the party's

5    lawyers and the consultant. *See, e.g.*, *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994).

6    Microsoft and its counsel engaged PwC to collect, analyze and translate from Microsoft's

7    databases data regarding purchases of licenses for Microsoft's operating systems and other data

8    so that Microsoft and its counsel could defend Microsoft in this action. Microsoft also engaged

9    PwC to serve as a fact witness on behalf of Microsoft under Rule 30(b)(6). In fulfilling these

10    roles, PwC employees were "embedded" at Microsoft and functioned like Microsoft employees:

11    they had access to Microsoft's data and employees, maintained offices at Microsoft, had

12    Microsoft email accounts, and stored their work papers on a "shared" server hosted by Microsoft.

13    Indeed, Microsoft began engaging PwC in 2001 to relieve Microsoft employees from the

14    demands of responding to discovery and testifying in complex litigation like this case—demands

15    that were preventing Microsoft employees from doing their jobs.

16        *Second*, courts extend the attorney-client privilege to agents of attorneys who "translate"

17    a client's data to the attorney so that the attorney may provide legal advice to the client. *See,*

18    *e.g.*, *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). Here, Microsoft's litigation

19    counsel initially engaged PwC to handle complex accounting tasks so that Microsoft's litigation

20    counsel could advise Microsoft. PwC performed subsequent work in support of Microsoft's

21    defense. PwC performed all of its work at the direction of Microsoft's litigation counsel. PwC,

22    Microsoft and its counsel communicated about those matters with an expectation of

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 3

DWT 11833206v6 0025936-000689

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  confidentiality and privilege.  PwC made those communications to facilitate the provision of

2  legal advice.  They are therefore privileged.

3      In any event, not even Plaintiffs deny that the documents in question all were prepared in

4  anticipation of litigation.  For that reason, regardless whether the attorney-client privilege

5  attaches, the work product doctrine protects the documents from production.

6

7  ### III.    DISPUTED DISCOVERY REQUESTS

8  **A.    Moving Parties' Argument**

9      **1.    Relevant Facts**

10          **a.    Engagement of PwC by Counsel**

11      Microsoft's counsel retained PwC through an engagement letter dated May 1, 2007,

12  approximately one month after this action was commenced.  Birk Decl., Ex. A.  As originally

13  contemplated, the engagement was to help Montgomery McCracken Walker & Rhoads LLP in

14  giving legal advice to Microsoft:

> This letter confirms that PricewaterhouseCoopers LLP, a Delaware limited
> liability partnership ("PricewaterhouseCoopers" or "we") has been retained by
> you, Montgomery McCracken, Walker & Rhoads, LLP on your own behalf and as
> counsel for your client Microsoft Corporation ("you Client") to provide the
> services ("Services") described below to assist you in connection with your giving
> legal advice to your Client.
>
>             * * *
>
> You have engaged us to perform the following litigation advisory services. . . .
> [T]he Services shall include litigation consulting and discovery assistance in the
> dispute between Microsoft and Dianne L. Kelley.
>
>             * * *
>
> We agree that Microsoft will be responsible for paying fees and costs incurred
> under this agreement.
>
> The total cost will be based upon the time necessarily spent in providing the
> Services.  Our billing rates for staff which we expect to utilize range from $185 to
> $435 per hour.

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 4

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

1    *Id.* at MS-KELL 70027, 70030-31.  The original engagement—no further understandings have

2    been produced to plaintiffs—was ambiguous on the precise relationship between PwC, counsel,

3    and Microsoft.  While the engagement as quoted here was clearly to be between PwC and

4    counsel, the engagement later stated, "[i]t is the parties' intent that the relationship established

5    under this Agreement be solely between PwC and Client."  *Id.* at MS-KELL 70030.  The original

6    engagement also contemplated modification through "addendum" if PwC was requested to serve

7    as an expert or 30(b)(6) witness.  *Id.* at MS-KELL 70027.  At the time of the engagement,

8    plaintiffs had not yet served discovery requests on Microsoft.

9

10                      **b.    Moline Declaration**

11          On November 19, 2007, Microsoft filed its papers in opposition to plaintiffs' motion for

12   class certification.  Microsoft's submissions included the Declaration of Robert L. Moline [Dkt.

13   No. 89].  Mr. Moline is a PwC partner and attested to having worked on Microsoft matters full-

14   time since 1999.  *Id.* at 1.  Mr. Moline described PwC's role in this litigation as follows:

15

16          3.     . . . Because of my background and experience, I am often asked
       by Microsoft to serve as a *fact witness* on behalf of Microsoft with respect to
17     historical accounting and financial information.  To date, I have served as a *fact
       witness* on behalf of Microsoft related to such topics on approximately 19
18     occasions.  As such, I have personal knowledge of the facts set forth herein,
       except as to those facts where I state that my understanding is based on
19     information available to me in my position at PwC.

20          4.     PwC was retained to assist Microsoft related to the production of
       financial and sales data in the matter of *Kelley v. Microsoft Corporation* (the
21     "Services"). . . . [2]

22
       [2] Our Services were performed and my declaration was developed in accordance
23     with our engagement letter dated May 1, 2007, and are subject to the terms and
       conditions included therein.  Our Services were performed in accordance with
24     Standards for Consulting Services established by the American Institute of
       Certified Public Accountants ("AICPA").
25

26

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 5

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

*Id.* at 2: 1-10, 22-23 (emphasis added).  In his professed role as a "fact witness," Mr. Moline

testified to PwC's calculations of the number of "upgradeable" PCs sold during the Windows

Vista Capable program period, and the number of upgrade licenses Microsoft sold after Vista

was launched—in order to provide support for Microsoft's then-stated argument that relatively

few purchasers of Windows Vista Capable PCs *actually* bought upgrade licenses to Vista when

Vista became available.  *Id.* at 2-4.

### c.    30(b)(6) Deposition

On May 9, 2008, plaintiffs served a 30(b)(6) notice and notice to produce seeking

information about Microsoft's documents relating to key issues, including counts and sales data

for PCs within the class period.  *See* Birk Decl., Ex. B.  The state of affairs going into the

deposition was as follows:  Microsoft was working on calculations relating to certain 30(b)(6)

topics, and would produce a witness who could testify to the state of the work in progress.  *Id.*,

Ex. C.  (It was plaintiffs' contention that identifying documents and facts already in Microsoft's

custody was ripe for discovery regardless of the state of the work in progress.)  The assignment

of testifying pursuant to the notice was given to Kathryn Griffith, a PwC manager reporting to

Mr. Moline.  *Id.*, Ex. D (Griffith Dep.) at 91:6-11.

Ms. Griffith described PwC's work as follows:

Q.    And what is Mr. Moline's responsibility at PricewaterhouseCoopers for the Microsoft work that you do?

A.    He oversees the engagement.

Q.    Tell me what it means to oversee the engagement.

A.    He assists in strategy on responding to document requests.

* * *

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 6

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

Q.    Is it standard practice for employees of PricewaterhouseCoopers to be involved in developing strategy for the response to request for production of documents?

A.    It's standard for a team of PricewaterhouseCoopers' employees to evaluate the documents that Microsoft has and be thoughtful about what's available and what would be relevant.

* * *

A.    And I would answer, given the—my understanding of the word strategy to mean understand the documents that are available and help to educate Microsoft's counsel about what is available and in what form and then to gather those documents, then, yes.

*Id.* at 16: 22-17: 4; 18: 7-14; 19: 22-20: 1.  Ms. Griffith proceeded to testify as to PwC's methodology and work in answering plaintiffs' 30(b)(6) topics, and Microsoft later provided written answers to the 30(b)(6) notice ostensibly based on that work.  *See id.*, Ex. E.  In connection with its work on this case, PwC generated dozens of spreadsheets based on Microsoft's internal documents and databases.

Microsoft's counsel later added that *Microsoft* engaged PwC "[t]hrough its counsel," and that "Microsoft did not retain PwC as a testifying or a consulting expert; rather, it engaged PwC as an independent contractor to provide litigation support and act as a *fact witness* where necessary." *Id.*, Ex. F.  Counsel explained, "[i]n particular, Microsoft engaged PwC to *develop*, as the need might arise, financial and accounting *facts* available within certain of Microsoft's databases and elsewhere." *Id.* (emphasis added).

d.    **Assertion of Privilege**

Plaintiffs take issue with Microsoft's assertion of attorney client privilege and work product protection as to its counsel's instructions to PwC in connection with PwC's work. Microsoft's counsel asserted the privilege at the 30(b)(6) deposition:

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

Q.    And what is the reason that you did not bring the booklets with you here today?

A.    I didn't think it was necessary.

Q.    And who told you it wasn't necessary?

MR. CASPER:    I am going to object to any communications between Ms. Griffith and her lawyers and Microsoft's lawyers and instruct her not to answer on the basis of the attorney-client privilege.

*Id.*, Ex. D (Griffith Dep.) at 13: 3-10.  Later, PwC asserted the privilege at Microsoft's request.

*Id.*, Ex. G.  Finally, Microsoft produced a privilege log asserting attorney-client privilege and work product protection as to certain documents exchanged with PwC.  *Id.*, Ex. H.

## 2.    The Law

### a.    Privileges in Diversity Cases

Where, as here, federal jurisdiction is based on diversity, "Washington law applies to claims of attorney client privilege, while federal law governs assertions of work product protection." *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007).

### b.    Attorney-Client Privilege as to Third Parties

#### (i)    PwC's Status is Novel.

PwC's status in this case is unlike the status of the third-party in any of the cases Microsoft has cited in support of the privilege.  Here, Microsoft's counsel retained PwC to become a witness in the case.  Microsoft cites three cases: *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001); and *Davis v. City of Seattle*, No. C06-1659Z, 2007 WL 4166154 (W.D. Wash. Nov. 20, 2007).  In *Kovel*, the third-party was an accountant employed in the attorney's firm to assist with cases involving accounting.  In *Copper Market* the third party was an independent contractor public relations firm, and in *Davis* the third party was an independent contractor human resources investigator—

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   in each case a third party hired by the client to perform a business function.  By contrast, PwC

2   was a stranger to the facts of *this case* until Microsoft's counsel hired it to testify for Microsoft.

3   PwC's involvement thus is not serving the purpose of aiding counsel's communications with the

4   client, but rather serving the purpose of arguing Microsoft's position to the Court.  Counsel's

5   communications with PwC therefore should not be within the privilege.

6

7                    **(ii)    General Principle**

8           Washington has cited to *Kovel* in stating the general rule as to third parties (in that case a

9   language interpreter), and acknowledging the limited extent of Washington law on this subject:

10              We analogize to cases holding that the attorney-client privilege extends to third
11              parties **indispensable to an attorney's provision of legal services to the client**,
                such as legal secretaries and accountants.  While there are no Washington cases
12              on point, other courts and legal authorities have concluded that an interpreter who
                is necessarily present during attorney-client communications is precluded from
13              testifying about matters disclosed under the attorney-client privilege.  *United*
                *States v. Kovel*, 296 F.2d 918, 920, 96 A.L.R. 2d 116 (2d Cir. 1961); [citations
14              omitted].

15  *State v. Aquino-Cervantes*, 88 Wn. App. 699, 707, 945 P.2d 767 (1997) (emphasis added); *see*

16  *also* 5A Karl B. Tegland, Washington Practice, Evidence § 501.12 (5th ed. 2007) ("Washington

17  courts have seldom had occasion to address" communications with persons employed by, or

18  aligned with, attorney or client.).  In *Kovel*, where the "interpreter" in question was an

19  accountant employed by the attorney's law firm to whom the client had conveyed confidential

20  information, the court extended the privilege to a third party who is:

21

22              necessary, or at least highly useful, for the effective consultation between the
23              client and the lawyer which the privilege is designed to permit. . . . What is vital
                to the privilege is that the communication be made in confidence for the purpose
24              of obtaining legal advice from the lawyer.

25  296 F.2d at 922 (quoted in *Aquino-Cervantes*, 88 Wn. App. at 708).  In other words, the test is

26  whether the disclosure to the third party is made for the purpose of securing legal advice, and

---

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

1   *primarily* for that purpose. *See In re Vioxx Prods. Liability Litig.*, 501 F. Supp. 2d 789, 797-805

2   (E.D. La. 2007) (based on report by noted academic authority on attorney-client privilege serving

3   as special master, communications serving *both* business and legal purposes not privileged).

4   Microsoft does not argue PwC was hired to facilitate communications with counsel as in *Kovel*.

### (iii)    Further Applications

6   Microsoft relies on *In re Copper Market Antitrust Litig.*, in which the court extended the

7   privilege to communications between a foreign antitrust defendant's attorneys and the public

8   relations firm the defendant hired to deal with the U.S. media following public revelation of the

9   facts leading to the antitrust litigation. 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001). In *Copper*

10  *Market*, the court extended the privilege because the public relations firm "was, essentially,

11  incorporated into Sumitomo's staff to perform a corporate function that was necessary in the

12  context of the government investigation, actual and anticipated private litigation, and heavy press

13  scrutiny." *Id*. at 219.

14  Similarly, in *Davis*, a Seattle City Light employee had complained of discrimination

15  when City Light received an anonymous complaint that the employee had violated City Light

16  procedures. 2007 WL 4166154 at *1. City Light retained an outside attorney to investigate,

17  rather than relying on internal personnel. *Id*. The court held that communications with the City

18  Attorney's office before the attorney's report was finalized were privileged, because the attorney

19  was the "functional equivalent of an employee of Seattle City Light." 2007 WL 4166154 at *4.

20  The court relied on *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994), in which the court

21  extended the privilege to a non-employee who worked closely with the client on the matter at

22  issue in the litigation, and served as the client's "representative." *Davis* and *Bieter* are based on

23  the rule of *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981), that the privilege will

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 10

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

1   extend to all communications between employees and counsel of a corporate client that are

2   within the scope of the employee's duties and supplied in confidence for the purpose of the

3   corporation obtaining legal advice. *Davis* and *Bieter* stand for the proposition that when a

4   corporate client retains a third party to accomplish its business purposes, the third party will be

5   within the privilege regardless of its status as employee, independent contractor or otherwise.

6   But they do not deal with the case presented here, where the lawyer hires a third party to be a

7   witness.

8

9       **3.    In This Case, PwC's Role Is Different.**

10          Here, neither the original engagement of PwC, nor subsequent assertions of privilege,

11   suggest that PwC was retained in order to facilitate communications between Microsoft and its

12   counsel. Nor did Microsoft retain PwC to perform a business function separate from this case.

13   Instead, *counsel* retained PwC to work on this case, and, whether part of the *original* intent of the

14   engagement or not, to be a "fact witness" in it. While Mr. Moline's declaration makes a point of

15   his past experience with Microsoft, neither he nor PwC had any experience with the facts of *this*

16   *case* until Microsoft's counsel hired them to work on it in May 2007. Thus, the situation with

17   which the Court is presented is one in which an attorney hand-picks a stranger to the case, after

18   the fact, to investigate the case, and be a witness. It is beyond dispute that if counsel had hired

19   an *expert*—such as Mr. Moline or one of his colleagues at PwC—to do the same things PwC is

20   doing in this case, counsel's instructions to the expert would be discoverable.

21

22          We anticipate the rejoinder that *if* PwC had not assisted with document collection,

23   testified to the facts set forth in the Moline declaration, prepared the spreadsheets, and testified at

24   the 30(b)(6) deposition, employees of Microsoft would have had to fulfill those functions.

25   However, the danger in extending the privilege in the manner requested by Microsoft is that

26

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

1   counsel ultimately is given too free a hand to shape factual testimony (notwithstanding we have

2   no reason to impugn Microsoft's counsel in this case), when counsel both (a) hires the "fact

3   witness" and (b) instructs the witness under the cloak of privilege.  In short, while we do not take

4   a position on what the analysis would be if PwC had never been offered as a witness in this case,

5   where PwC is offered as a witness the communications with counsel do not primarily serve the

6   purpose of counsel providing legal advice to Microsoft, but rather serve the purpose of arguing

7   Microsoft's position to the Court.  Communications with a third party to the attorney-client

8   relationship to serve this latter purpose are not, and should not be, protected by the privilege.

9

10      **4.    Work Product**

11      Microsoft asserts that all the PwC documents it has withheld are protected from

12  discovery because they are work product.  *See* Birk Decl., Ex. H (privilege log).  We do not

13  understand Microsoft to mean that it may disclose most of PwC's work (as we understand it has

14  done), but reserve the work product objection as to work it prefers not to disclose—i.e.,

15  improperly use the work product protection as "both a sword and a shield."  *United States ex rel.*

16  *Parikh v. Premera Blue Cross*, No. C01-0476MJP, 2006 U.S. Dist. LEXIS 79456 *3 (W.D.

17  Wash. Oct. 31, 2006).  Rather, we interpret Microsoft's work product assertion as objecting to

18  disclosure of its counsel's attorney opinion work product, to the extent it has been shared with

19  PwC and would therefore be disclosed through production of counsel's instructions to PwC.  *See*

20  *generally Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

21      But what counsel says to a fact witness is discoverable from the witness.  *Ricoh Co., Ltd.*

22  *v. Aeroflex Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003) (work product protection waived "when

23  counsel shared his observations with a third party who was likely to be an independent witness in

24  the case").  Even disclosure of work product to a *client* risks rendering it discoverable if it

25

26

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 12

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025596-000689

refreshes the client's recollection.  *See Sprock v. Peil*, 759 F.2d 312, 318-19 (3d Cir. 1985); *In re Joint Eastern and Southern District Asbestos Litig.*, 119 F.R.D. 4, 5-6 (S.D.N.Y. 1988).  Here, Microsoft's assertions of privilege and work product both rise or fall on the characterization of PwC's involvement in the case.  Counsel's instructions to PwC on the work it was to do became discoverable when PwC was offered as a fact witness in the case, just as much as a consulting expert's file becomes discoverable when the expert is disclosed as a testifying expert.

**5.    Conclusion**

Plaintiffs therefore respectfully request that the Court rule that PwC is not within the attorney-client privilege, and that counsel's communications with PwC are discoverable.

**B.    Responding Party's Argument**

**1.    PwC's Engagement**

At the outset of this action, Microsoft's counsel, acting "on [its] own behalf ***and*** as counsel for … Microsoft Corporation," engaged PwC to provide "litigation advisory services" here.  Birk Decl., Ex. A at MS-KELL 70027.  (PwC does not provide auditing services to Microsoft.  *Id.* & MS-KELL 70028.)  The purpose of the initial engagement was so that PwC could perform complex accounting calculations from Microsoft data that would allow Microsoft's litigation counsel to advise Microsoft regarding the allegations in Plaintiffs' complaint.  *Id.* at MS-KELL 70027; Griffith Decl. ¶ 3.

The initial engagement also created a relationship between Microsoft and PwC.  Microsoft agreed to performed "all management functions and make all management decisions" with regard to the engagement, *id.* at MS-KELL 70028; Microsoft was responsible for paying PwC under the engagement, *id.* at MS-KELL 70030; Microsoft owns the work product that PwC produced in the course of this engagement, *id.* at MS-KELL 70029; and Microsoft agreed to

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 13

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

indemnify PwC for its work during this engagement. *Id.* The work PwC performed under the engagement letter carried an express expectation of confidentiality. *Id.* at MS-KELL 70033. Both Microsoft and its counsel agreed to the engagement. *Id.* at MS-KELL 70032. PwC agreed to be bound by Microsoft's vendor guidelines. *Id.* at MS-KELL 70031.

Subsequent to its initial work at counsel's request, PwC provided analysis directly in support of Microsoft's defense. Working with other PwC managers and associates, PwC partner Robert Moline investigated and provided factual testimony as to the estimated number of "upgradeable" PCs sold during the Windows Vista Capable program in support of Microsoft's opposition to class certification. Moline Decl. [Dkt. No. 89, filed under seal] at 2-4. PwC also provided calculations and estimates from Microsoft's data to permit Microsoft to respond to Plaintiffs' discovery requests. *See, e.g.*, Birk Decl. Ex. E (Second Supplemental Responses to 30(b)(6), with calculations provided by PwC). As Mr. Moline explained, he has fulfilled the same role in approximately nineteen other lawsuits. Moline Decl. at 1-2. Indeed, Mr. Moline has worked for (and at) Microsoft essentially full time since 1999. *Id.* By 2001, Microsoft began engaging PwC to relieve Microsoft employees from the demands of providing sales and other business data in litigation. Donohue Decl. ¶ 5.

The initial engagement letter contemplated that Microsoft might later engage PwC to provide factual testimony under Rule 30(b)(6). Birk Decl., Ex. A at MS-KELL 70027. Microsoft did in fact later engage PwC to provide such testimony. Contrary to Plaintiffs' assertion that "no further understandings have been produced to plaintiffs," *supra* at 5:15-16, PwC produced the letter reflecting that engagement, and Plaintiffs submitted it in support of their motion. Birk Decl., Ex. G at PWC 1-2. In that letter, PwC confirmed that Microsoft asked PwC to serve as a Rule 30(b)(6) witness, confirmed that Microsoft authorized PwC to provide answers

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 14

DWT 11833206v6 0025936-000689

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

in deposition as Microsoft's designated witness, and confirmed that Microsoft would represent PwC in the deposition as Microsoft's designee. *Id.* at PWC 1. Microsoft, not its litigation counsel, signed that engagement letter. *Id.* at PWC 2. PwC manager Kathryn Griffith provided that Rule 30(b)(6) testimony on behalf of Microsoft. Griffith Decl. ¶ 5. In all of these activities, PwC acted at the direction of Microsoft's litigation counsel. *Id.* ¶ 4; Donohue Decl. ¶ 6.

In the course of this engagement, PwC employees acted as Microsoft employees would have acted performing the same tasks. PwC employees had unfettered access to Microsoft's accounting and financial records and other proprietary information within Microsoft. Griffith Decl. ¶ 6; Donohue Decl. ¶ 6. As part of their investigations, PwC employees worked with and discussed their inquiries with Microsoft employees. Griffith Decl. ¶ 6. PwC employees maintained Microsoft email accounts, stored their documents on Microsoft servers, and even maintained offices at Microsoft. *Id.* ¶¶ 2, 6. PwC employees perform the same work that Microsoft employees once performed and would perform but for PwC. Donohue Decl. ¶¶ 5-6. In terms of this work, there is no effective difference between PwC employees and Microsoft employees. *Id.*

### 2.    The Production and the Assertion of Privilege

Microsoft and PwC produced to Plaintiffs the data and calculations supporting PwC's testimony. In his November 2007 declaration, Mr. Moline identified the data supporting his calculations, and Microsoft produced those data when Plaintiffs got around to requesting them in June 2008. Wright Decl. ¶ 2. Microsoft and PwC produced the data, including work papers and other documents, underlying Ms. Griffith's testimony on behalf of Microsoft, and the work PwC performed in assisting Microsoft provide written answers to the financial and accounting questions asked in Plaintiffs' discovery requests to Microsoft. *Id.* ¶ 3. PwC also produced

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 15

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

extensive email communications between its employees and Microsoft employees regarding

PwC's work on behalf of Microsoft. *Id.* PwC and Microsoft even produced the summaries PwC

prepared of calls in which its employees learned the facts. *Id.* Altogether, Microsoft and PwC

produced more than 63,000 pages of material relating to PwC's engagements, as well as many

lengthy spreadsheets in native format. *Id.*

Microsoft asserted claims of privilege and work product over only three narrow

categories of documents: (1) communications between PwC employees and Microsoft's

litigation or in-house counsel, and working drafts prepared at counsel's request of documents

later provided in final form to Plaintiffs' counsel in this action; (2) communications between

PwC employees and Microsoft employees acting at the direction of Microsoft's counsel for

purposes other than informing PwC of the facts to which it was asked to testify; and (3) PwC's

work papers and other documents that did not inform PwC of the facts on which it was asked to

testify, such as documents created in the context of exploring unused theories and strategies

contemplated by Microsoft's litigation counsel. Wright Decl. ¶ 4. Microsoft provided privilege

logs identifying all of these documents. *Id.*[1]

### 3.    Legal Argument

PwC filled two well-accepted and privileged roles: PwC acted as the "functional

equivalent" of Microsoft employees in responding to discovery and providing testimony on

Microsoft's behalf, and PwC provided litigation support to Microsoft's outside counsel. The

attorney-client privilege protects communications with Microsoft's lawyers in both roles. In

addition, because PwC and Microsoft created those communications solely as a result of this

litigation, the work product doctrine protects them from disclosure.

---

[1] Out of sheer coincidence, Microsoft provided an additional privilege log to Plaintiffs the day they served their Rule 37 submission on Microsoft.

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 16

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

a.    **PwC Acted as the Functional Equivalent of Microsoft Employees.**

If Microsoft employees performed the tasks that PwC partners, managers and staff performed here, communications between Microsoft's employees and its litigation counsel undoubtedly would be privileged. *E.g., Wright by Wright v. Group Health Hosp.*, 103 Wn.2d 192, 195, 691 P.2d 564 (1984) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)). But a company does not lose the benefit of the attorney-client privilege merely because it retains a consultant or independent contractor to perform the same function that employees might. As the Eighth Circuit explained in upholding the privilege for communications between a client's attorney and an independent real estate consultant who worked closely with the client:

> When applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors.

*In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994). Where the independent contractor fills a role for the client that employees otherwise would perform, the law does not strip the privilege from communications between the contractor and the client's attorneys, especially where the contractor performs functions intertwined with legal strategy. For example, in *FTC v. Glaxosmithkline*, 294 F.3d 141 (D.C. Cir. 2002), the court found that the privilege attached to communications involving public relations and governmental affairs consultants hired by the client because the client's lawyers worked with the consultants as if they were employees:

> The consultants acted as part of a team with full-time employees regarding their particular assignments and as a result, the consultants became integral members of the team assigned to deal with issues that were completely intertwined with GSK's litigation and legal strategies.

294 F.3d at 148; *see also Twentieth Century Fox Corp. v. Marvel Enters., Inc.*, 2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002) (no waiver because contractor was "functional equivalent" of employee); *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001)

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 17

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

(applying functional equivalent doctrine to public relations firm). Judge Zilly has applied this

doctrine to an investigation performed by an independent contractor on behalf of Seattle City

Light. *Davis v. City of Seattle*, 2007 WL 4166154, at *4 (W.D. Wash. Nov. 20, 2007).

This doctrine applies here. Microsoft, both directly and through counsel, hired PwC to

supply accounting and financial information to Microsoft's litigation counsel that Microsoft

employees otherwise would have supplied. Donohue Decl. ¶¶ 5-6. PwC provided nearly

identical services to Microsoft for seven years. *Id.* ¶ 5; Moline Decl. ¶ 2. PwC had unfettered

access to Microsoft's data and employees while performing these roles. Microsoft also engaged

PwC directly to provide testimony on its behalf, as PwC has done in other lawsuits. Microsoft

gave PwC permission to answer on its behalf and agreed that its attorneys would represent PwC

and its employees during that testimony. Seen in this light, Plaintiffs' assertion that Microsoft's

lawyers "hand-pick[ed] a stranger to the case" to be a witness, *supra* at 12:10, amounts to a mere

rhetorical flourish. PwC has extensive experience with Microsoft's financial and accounting

data, and has regularly provided analysis and testimony about that data for the purposes of

litigation since 2001. Indeed, it has vastly more ongoing involvement with the client than did the

investigating attorney in *Davis*.

The fact that PwC personnel testified as Microsoft's Rule 30(b)(6) designees does not

destroy the privilege any more than if an employee testified. Plaintiffs suggest that recognizing

the privilege in these circumstances will pervert discovery by giving counsel "too free a hand to

shape factual testimony." *Supra* at 12:19. But as the functional equivalent of Microsoft

employees, PwC personnel present no greater risk of purported "shaped testimony" than would

Microsoft employees. Further, if Plaintiffs' position were correct, the attorney-client privilege

never would apply to communications between a party who will testify and its attorney. The

---

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025496-000689

law, however, holds to the contrary. *See, e.g., Soter v. Cowles Pub'l Co.*, 131 Wn. App. 882,

906, 130 P.3d 840 (2006), *aff'd*, 174 P.3d 60 (2007) ("[D]isclosing facts contained in privileged

documents … does not mean the other party gets the document itself."); *State v. Vandenberg*, 19

Wn. App. 182, 187, 575 P.2d 254 (1978) (factual testimony does not waive privilege).

In any event, Plaintiffs point to no evidence suggesting that Microsoft's use of PwC as a

witness shielded relevant facts from Plaintiffs.  Instead, as in *Davis*, Plaintiffs have had the

opportunity to depose PwC.  Further, Microsoft and PwC produced over 63,000 pages of

documents relating to this engagement.  Invocation of the privilege "did not prevent [Plaintiffs]

from learning the underlying facts." *Davis*, 2007 WL 4166154, at **3-4.  At the very least,

Plaintiffs cannot demonstrate the prejudice necessary to show a waiver of privilege. *Pappas v.

Holloway*, 114 Wn.2d 198, 207-08, 787 P.2d 30 (1990).

### b.    PwC Acted as an Agent of Microsoft's Litigation Counsel.

Plaintiffs concede that communications with third parties hired by an attorney to provide

litigation support fall within the attorney-client privilege.  In the seminal case, *United States v.

Kovel*, 296 F.2d 918 (2d Cir. 1961), the Second Circuit held that the privilege extends to an

accountant hired by a law firm to assist the firm in providing legal advice. *Id.* at 922; *see also

FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980) ("[T]he attorney-client privilege can

attach to reports of third parties made at the request of the attorney or the client where the

purpose of the report was to put in usable form information obtained from the client.").  The case

law treats accountants, such as PwC, as primary examples of the proper application of this

doctrine. *See United States v. Judson*, 322 F.2d 460, 462-63 (9th Cir. 1963) (privilege attached

to work papers prepared by accountant to assist in attorney's representation); *Kovel*, 296 F.2d at

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 19

DWT 11833206v6 0025936-000689

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

922 (analogizing accountant to an interpreter relaying information from client to attorney);

*United States v. Davis*, 636 F.2d 1028, 1043 n.17 (5th Cir. 1981).

Washington recognizes this rule. *State v. Aquino-Cervantes*, 88 Wn. App. 699, 707-08,

945 P.2d 767 (1997) (relying upon *Kovel*); *see also State v. Jones*, 99 Wn.2d 735, 749, 664 P.2d

1216 (1983) ("[C]ommunications between a defendant and a defense psychiatrist are protected

by the attorney-client privilege … and this is in accord with the rule in the vast majority of other

jurisdictions"); *cf. Soter v. Cowles Publishing Co.*, 162 Wn.2d 716, 174 P.3d 60 (2007) (notes of

private investigator hired by attorneys in the course of representation "should be treated no

differently from the attorneys' [notes]" for purposes of work product analysis).

For this "intermediary" doctrine to apply, the client or its lawyer must hire the third party

for the purpose of facilitating legal advice. *See Kovel*, 296 F.2d at 922. The material facts here

closely resemble those in *Kovel*. Microsoft's litigation counsel hired PwC to provide litigation

support and relieve Microsoft employees from the burden of collecting and distilling financial

information. PwC "translated" Microsoft's raw data about various topics into information that

Microsoft's trial counsel could use in advising and defending Microsoft. PwC's assistance to

Microsoft's counsel enhanced Microsoft's ability to defend itself and respond to Plaintiffs'

inquiries about topics such as the number of licenses purchased within the Windows Vista

Capable period. PwC worked at the direction of Microsoft's litigation counsel. PwC was not

hired to audit Microsoft's financial statements or otherwise provide accounting advice to

Microsoft. In other words, Microsoft and its counsel retained PwC ***not*** for a business purpose

but solely to facilitate legal representation. PwC's involvement here was "necessary, or at least

highly useful, for the effective consultation between the client and the lawyer which the privilege

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    is designed to permit." *Kovel*, 296 F.2d at 922 (noting that "[a]ccounting concepts are a foreign

2    language to some lawyers in almost all cases, and to almost all lawyers in some cases").

3        Plaintiffs suggest that PwC actually served as an "expert witness," which supposedly

4    forecloses assertion of the privilege as to communications between PwC and Microsoft's

5    litigation counsel. *Supra* at 12. But Microsoft has not identified PwC as an expert; it has not

6    asked PwC to render an expert opinion; and Plaintiffs point to no expert opinion testimony in

7    Mr. Moline's declaration or Ms. Griffith's deposition.[2] Microsoft's counsel hired PwC to

8    investigate, analyze, and translate financial and accounting data relevant to this action so that

9    Microsoft's litigation counsel could defend the company. The *Kovel* doctrine applies.

10

        **c.**    **The Work Product Doctrine Protects Communications to and from PwC, As Well As Its Drafts.**

13        Work product protection applies to documents that are "prepared in anticipation of

14    litigation or for trial, and … prepared by or for another party or by or for that other party's

15    representative." *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2003). The work

16    product doctrine applies to documents created by investigators or other consultants working for

17    attorneys. *Id.* at 907 (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975)); *In re Cendant*

18    *Corp. Sec. Litig.*, 343 F.3d 658, 665-66 (3d Cir. 2003). Here, Microsoft and it counsel hired

19    PwC to provide litigation support. As a result, PwC, Microsoft and Microsoft's counsel prepared

20    drafts of litigation documents and communications in anticipation of litigation.

21

22        Plaintiffs do not appear to argue that the documents withheld as work product were

23    prepared for a reason other than litigation. Instead, they appear to claim that sharing the

24    documents with PwC waived the protection afforded by the work product doctrine. *See supra* at

25

26    [2]  Because PwC has provided no expert opinion testimony here, it could not possibly be anything more than a consulting expert—if it was an expert at all. Even in that event, communications between PwC and Microsoft's counsel would be work product discoverable only under "exceptional circumstances." Fed. R. Civ. P. 26(b)(4)(B).

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 21

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

13. But the cases do not support such a narrow reading of the work product doctrine. PwC worked at the direction of Microsoft's litigation counsel. Indeed, even if PwC were a disinterested third party, its discussions with Microsoft's litigation counsel would not be discoverable where those discussions would reveal counsel's trial strategy. *See Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 96 (S.D. Cal. 1987) ("[A] party cannot discover what an attorney said to a witness in interviewing him or in preparation for his deposition because such statements are likely to reveal the attorney's mental impressions, opinions and theories of the case."); *see also Smart v. General Electric Co.*, 149 F.R.D. 578, 582 (N.D. Ill. 1993); *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 692 (E.D. Pa. 1986); *Ford v. Phillips Electronics Co.*, 82 F.R.D. 359, 361 (E.D. Pa. 1979).

Plaintiffs' appeal to Fed. R. Evid. 612 has no bearing here. *Supra* at 13. That Rule allows (but does not require) a court "in its discretion" to direct production of particular documents that a witness used to refresh recollection before testifying. But Plaintiffs have not laid the necessary foundation for application of Rule 612, i.e., they have not pointed to anything suggesting that a PwC witness used any particular withheld document to refresh recollection. *See Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985). Even if Plaintiffs had laid the foundation, reviewing privileged documents or work product in preparation for a Rule 30(b)(6) deposition does not necessarily result in waiver. *In re Rivastigamine Patent Litig.*, 486 F. Supp. 2d 241, 244 (S.D.N.Y. 2007); *In re Managed Care Litig.*, 415 F. Supp. 2d 1378, 1381 (S.D. Fla. 2006); *Medtronic Xomed, Inc. v. Gyrus ENT, LLC*, 2006 WL 786425, at **5-7 (M.D. Fla. Mar. 27, 2006); *Suss v. MSX Intern. Engineering Services, Inc.*, 212 F.R.D. 159, 165 (S.D.N.Y. 2002). Plaintiffs are way off base here, in any event, because Microsoft and PwC produced the

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

1    calculations, data, and documents containing the facts on which PwC testified. This record does

2    not justify the Court's intervention under Rule 612.

### d.    Plaintiffs Have Not Demonstrated Their Entitlement to a Blanket Ruling Abrogating the Privilege.

5    Plaintiffs also seek overbroad relief. Plaintiffs ask the Court to make a sweeping

6    determination that no privilege may attach to *any* communication between PwC and Microsoft's

7    litigation counsel. But even if the Court had a generalized concern about the invocation of the

8    privilege and the work product doctrine (which it should not), Plaintiffs have not shown that

9    *every* document withheld from production necessarily falls outside the attorney-client privilege

10   and the work product doctrine. Having declined to undertake the effort to distinguish between

11   documents within the privilege and those that purportedly fall outside it, Plaintiffs have no right

12   to the relief they seek—relief that improperly would undermine the embedded role that PwC has

13   undertaken for Microsoft for the last seven years.

### 4.    Conclusion

16   PwC employees communicated with Microsoft's litigation counsel as both the functional

17   equivalent of Microsoft employees and as agents of Microsoft's litigation counsel. Those

18   communications were made for the purpose of defending Microsoft in this action. Because those

19   communications are privileged and work product, the Court should deny Plaintiffs' motion.

### C.    Moving Parties' Reply

21   Counsel retained PwC to work on the case and testify, not to facilitate communications.

22   *Kovel* does not apply. There the government *subpoenaed* the accountant hired by counsel;

23   counsel did not *offer* him as a witness. The PwC engagement does not establish a *Kovel*-like

24   communications role. Ms. Griffith's declaration (¶¶ 3 and 7) on *Microsoft's* or its *counsel's*

25   purpose is hearsay not based on personal knowledge that must be stricken. Whether PwC is the

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 23

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DWT 11833206v6 0025936-000689

functional equivalent of a Microsoft employee is close:  yet the privilege has not been extended

to such a witness *retained by counsel*, and should not be.  Counsel should not be entitled to retain

a surrogate "client."  Could counsel retain an actor, a community leader, Jerry Seinfeld?  We are

not concerned to discover opinion work product (items (2) and (3) described by Microsoft at

16:8-16, *supra*).  We do seek drafts exchanged, and instructions to PwC (roughly item (1)

*supra*), which are more extensive than we knew:  the new privilege log is not three, but 61 pages

long.  Those instructions are highly important where PwC is providing key testimony in the case.

### IV.    CERTIFICATION

I certify that the full response by the responding party has been included in this

submission, and that prior to making this submission the parties conferred to attempt to resolve

this discovery dispute in accordance with CR 37(a).

DATED this 30th day of September, 2008.

KELLER ROHRBACK L.L.P.


By /s/ Ian S. Birk _____
    William C. Smart, WSBA #8192
    Ian S. Birk, WSBA #31431
    Attorneys for Plaintiff

GORDON TILDEN THOMAS & CORDELL
L.L.P.


By /s/Ian S. Birk for: _____
    Jeffrey I. Tilden, WSBA #12219
    Jeffrey M. Thomas, WSBA #21175
    Mark A. Wilner, WSBA #31550
    Attorneys for Plaintiff

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 24

DWT 11833206v6 0025936-000689

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant Microsoft Corporation

Stephen M. Rummage, WSBA #11168
Cassandra L. Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
Davis Wright Tremaine LLP
1201 Third Avenue Suite 2200
Seattle, Washington 98101-3045
steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Counsel for Defendant Microsoft Corporation
– Admitted Pro Hac Vice

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA  19109
ccasper@mmwr.com

By _____
Shannon McKeon

CR 37 JOINT SUBMISSION RE: ASSERTION OF PRIVILEGE AS
TO PRICEWATERHOUSECOOPERS (C07-0475 MJP) Page - 25

DWT 11833206v6 0025936-000689

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384