The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY and KENNETH HANSEN, <br><br>    Plaintiffs, <br>    v. <br><br>MICROSOFT CORPORATION, a Washington corporation, <br><br>    Defendant. | No. C 07-475 MJP <br><br>MICROSOFT'S MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF STEVEN A. BALLMER <br><br>*Noted for Consideration:* <br>October 15, 2008 |

*FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER (DKT. 57) AND PENDING MOTIONS TO SEAL*

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-475 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND................................................................................................1

    A. The Windows Vista Capable Program and Plaintiffs' Claims ........................1

    B. Present Dispute .................................................................................................3

    C. Mr. Ballmer's Telephone Call with Intel..........................................................4

III. ARGUMENT ........................................................................................................................6

    A. Mr. Ballmer Has No Unique or Superior Knowledge of the Facts at Issue. ...................................................................................................................8

    B. Plaintiffs Can Obtain the Information Sought through Other Sources............10

    C. Any Unique Knowledge Mr. Ballmer Might Have Is Irrelevant.....................11

IV. CONCLUSION...................................................................................................................12

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – i

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Baine v. General Motors Corp.*,
    141 F.R.D. 332 (M.D. Ala. 1991) ................................................................................ 7, 9-10

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
    2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ............................................................................ 7

*Evans v. Allstate Ins., Co.*,
    216 F.R.D. 515 (N.D. Okla. 2003) ................................................................................ 7-8, 10

*Folwell v. Hernandez*,
    210 F.R.D. 169 (M.D.N.C. 2002) ............................................................................................ 7

*Gauthier v. Union Pac. R.R. Co.*,
    2008 U.S. Dist LEXIS 47199, at * 14 (E.D. Tex. June 18, 2008) ........................................... 7

*Lewelling v. Farmers Ins. of Columbus, Inc.*,
    879 F.2d 212 (6th Cir. 1989) ................................................................................................... 7

*McDowell v. Calderon*,
    197 F.3d 1253 (9th Cir. 1999) (*en banc*) .............................................................................. 7

*Mulvey v. Chrysler Corp.*,
    106 F.R.D. 364 (D.R.I. 1985) .................................................................................................. 7

*Reif v. CNA*,
    248 F.R.D. 448 (E.D. Pa. 2008) ..................................................................................... 7-8, 10

*Roman v. Cumberland Ins. Group*,
    2007 U.S. Dist. LEXIS 96775, at * 3-4 (E.D. Pa. Oct. 26, 2007) ........................................... 7

*Salter v. Upjohn Co.*,
    593 F.2d 649 (5th Cir. 1979) ......................................................................................... 7-8, 10

*Thomas v. IBM Corp.*,
    48 F.3d 478 (10th Cir. 1995) ............................................................................................. 7, 10

**RULES**

Fed. R. Civ. P. 26 .................................................................................................................. 6-7, 11

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................................ 7

Fed. R. Civ. P. 26(b)(2)(C)(iii) .................................................................................................... 11

Fed. R. Civ. P. 26(c) ...................................................................................................................... 7

Fed. R. Civ. P. 26(c)(1)(A) & (C) .................................................................................................. 7

Fed. R. Civ. P. 30(b)(6) ...................................................................................................... 6, 8, 11

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – ii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

## I.  INTRODUCTION

Microsoft asks the Court to follow settled law and issue a protective order relieving it of the obligation to produce its Chief Executive Officer, Steven A. Ballmer, for a day of deposition testimony. Mr. Ballmer has no unique personal knowledge of any facts at issue. He was not involved in the decisions with respect to the Windows Vista Capable program that Plaintiffs challenge; instead, he learned of those decisions only after the fact from subordinate Microsoft employees. In the next two weeks, Plaintiffs will take the depositions of the senior Microsoft executives responsible for and most familiar with the decisions at issue. Mr. Ballmer's deposition would add nothing.

Courts impose a strict standard on parties seeking to depose the heads of corporations, so-called "apex officers." Courts recognize that apex officers have enormous responsibilities and time demands, and that litigants too easily can use depositions as tools of harassment. As a result, courts require that a party seeking to subject an apex officer to a deposition must show that the officer has unique or superior knowledge that the party cannot obtain through less invasive means. Plaintiffs cannot make that showing here.

## II.  FACTUAL BACKGROUND

### A.    The Windows Vista Capable Program and Plaintiffs' Claims

Plaintiffs challenge Microsoft's Windows Vista Capable program, which informed consumers who bought PCs loaded with Windows XP whether their PCs could run comparable versions of the yet-to-be-released Windows Vista, in the event they later chose to upgrade their operating system. (As the Court knows, only a small percentage of consumers actually upgrade.) Plaintiffs claim the program was unfair and deceptive under Washington's Consumer Protection Act. They assert that Microsoft set the technical requirements for computers to be designated "Windows Vista Capable" too low, so that some low-end Windows Vista Capable PCs could, if upgraded, run only Windows Vista Home Basic and could not run the enhanced features of premium editions of Windows Vista. Plaintiffs make this claim even though Microsoft never told anyone that every computer qualifying as

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

"Windows Vista Capable" would run those enhanced features. To the contrary, Microsoft, OEMs and retailers repeatedly announced—on Web sites, in print advertisements, in marketing materials, and in many other contexts—that machines labeled "Windows Vista Capable" might not run enhanced or premium features unless the PCs were designated "Premium Ready."

On February 22, 2008, this Court entered a class certification order that "narrow[ed] and limit[ed] the theory on which Plaintiffs may pursue class claims." Order Granting Plaintiffs' Motion for Class Certification [Dkt. 128] at 17. The Court rejected Plaintiffs' request to certify their core claim that the Windows Vista Capable Program deceived consumers into buying budget PCs. Instead, the Court allowed Plaintiffs to pursue only a "price inflation" theory – i.e., a claim that the Windows Vista Capable Program "artificially" increased demand for affordable PCs that capably ran core elements of Vista but did not support advanced features such as Aero, which allegedly caused PC manufacturers and retailers to increase the prices of lower-end PCs over a nine-month period. Order [Dkt. 128] at 18, 20, 21-22. "Analyzing Plaintiffs' claims through the lens of the 'price inflation' theory," the Court found that two common issues predominate: (1) Whether Microsoft's Windows Vista Home Basic product offering "in truth" is fairly called "Vista"? (2) Whether the "Windows Vista Capable" marketing campaign artificially inflated demand for "Windows Vista Capable" PCs? Order [Dkt. 128] at 20.

Based on their recent motion for partial summary judgment, it appears that Plaintiffs at this late juncture in the case intend to advance yet another legal theory and introduce new issues that the Court has not certified for class treatment. Plaintiffs now claim that the technical requirements for the Windows Vista Capable program were unfair and deceptive simply because Microsoft decided only to recommend (instead of require) that PCs labeled "Windows Vista Capable" have graphics hardware that could support "WDDM" (the "Windows Display Driver Model"). Microsoft has not yet had an opportunity to respond to

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

this new theory, which Plaintiffs did not allege in their original complaint or any amended complaints.

### B. Present Dispute

Mr. Ballmer is the CEO of Microsoft. He was not involved in any of the operational decisions about the Windows Vista Capable program. Ballmer Decl. ¶ 3. Mr. Ballmer was not involved in establishing the technical requirements that PCs must satisfy to qualify for the Windows Vista Capable label. *Id.* He had no role in the decisions regarding the timing of that program. *Id.* He was not involved in formulating any marketing strategy or any public messaging surrounding the Windows Vista Capable program. *Id.* Mr. Ballmer has no unique knowledge of, and had no unique involvement in, any decisions regarding the Windows Vista Capable program. *Id.* All of his knowledge about those decisions came through others at Microsoft, most notably Jim Allchin, Microsoft's then Co-President, Platform Products & Services, and Will Poole, Microsoft's then Senior Vice President, Windows Client Business. *Id.*

On September 19, 2008, Plaintiffs' counsel wrote Microsoft's counsel and requested dates for Mr. Ballmer's deposition (as well as for the depositions of Messrs. Allchin and Poole, and another Microsoft employee). Rummage Decl. ¶ 2. Microsoft attempted to persuade Plaintiffs that such a deposition was unnecessary and, under the prevailing case law, inappropriate. *Id.* ¶ 3. Microsoft's counsel explained that Mr. Ballmer had no unique knowledge of any facts at issue, requested that Plaintiffs rethink their desire to depose him, and advised that (not surprisingly) Mr. Ballmer did not have any free days on his calendar before the discovery cut-off. *Id.* Plaintiffs said that their review of the documents produced by Microsoft led them to believe there was at least one phone call about which only Mr. Ballmer could testify. *Id.* Although Plaintiffs did not point to any other unique knowledge they believed Mr. Ballmer might possess, they insisted that he be made available for a full day of deposition. *Id.* Microsoft told Plaintiffs it would seek a protective order from the Court to preclude Mr. Ballmer's deposition, and Plaintiffs agreed that the Court should decide this

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1  dispute.  *Id.*  Thereafter, on September 26, 2008 (before Plaintiffs had deposed Mr. Allchin
2  and Mr. Poole to determine if they had a valid reason for requesting Mr. Ballmer's
3  deposition), Plaintiffs served a deposition notice for Mr. Ballmer, noting his deposition for
4  October 22, 2008 – long before Mr. Ballmer has a free day on his calendar.  Rummage Decl.,
5  Ex. A.
6         The parties have fulfilled their meet and confer obligations.

       **C.**     **Mr. Ballmer's Telephone Call with Intel**

Plaintiffs did not identify the phone call that piqued their interest in Mr. Ballmer or the documents allegedly evidencing it.  Microsoft surmises, however, that Plaintiffs have in mind a call between Mr. Ballmer and the CEO of Intel Corporation in January 2006.  In any event, the documents Microsoft has produced in this action with respect to that call illustrate the nature of Mr. Ballmer's role with respect to the Windows Vista Capable Program.

In January 2006, Microsoft was reviewing the timing and technical requirements for the Windows Vista Capable program.  Intel had concerns that it would not be able to produce enough microprocessors in the required time frame to support Microsoft's exacting technical requirements for graphics hardware.  Birk Decl. [Dkt. No. 164 (under seal)], Ex. A at 146 (MS-KELL 75291).  On the other hand, Intel had a sufficient supply of microprocessors to support a less demanding graphics requirement; it requested that Microsoft delay the start of the Windows Vista Capable program two months until PCs with Intel's high-end graphics microprocessors could be widely available in stores.  *Id.*  These discussions took place between Will Poole, then Senior Vice President of the Windows Client business of Microsoft and Renee James, his primary contact at Intel.  *Id.*, Ex. A at 76, 146 (MS-KELL 48377 & 75291).

At one point, Ms. James told Mr. Poole that Intel's CEO Paul Otellini wanted to mention to Mr. Ballmer "as a courtesy" that the two companies had "agree[d] to disagree." *Id.*, Ex. A at 66 (MS-KELL 48294).  Mr. Otellini then called Mr. Ballmer, who did not even have a chance to report the call to Mr. Poole before Mr. Poole had resolved the concerns.  *Id.*,

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

Ex. A at 267 (MS-KELL 99306 ("I had not even had a chance to report [Otellini's] issues when Will told me he had solved them")). When Mr. Poole wrote Mr. Ballmer to explain the resolution, Mr. Poole explained, "This change completely resolves their problem … No further action is required from you. If you're interested in understanding the entire story, I'm happy to write it up for you." *Id.*, Ex. A at 82 (MS-KELL 48478). When Mr. Poole later explained that all of Intel's concerns had been satisfied, Mr. Ballmer responded "I know nothing of the details please advise." *Id.*, Ex. A at 80 (MS-KELL 48476). Mr. Ballmer also immediately wrote to Jim Allchin, Microsoft's Co-President of Platform Products & Services, and explained, "I had nothing to do with this Will handled everything. … I am not even in the detail of the issues." *Id.*, Ex. A at 267 (MS-KELL 99306). Even Intel was aware that the decision on the technical requirements had been Mr. Poole's, as Ms. James of Intel sent Mr. Poole a note stating, "Paul did send a note to Steve thanking him for listening and making these changes (I know you did it)." *Id.*, Ex. A at 140 (MS-KELL 74381).

As this narrative illustrates, Mr. Ballmer had no involvement in the details of the Windows Vista Capable program. In 2006 Mr. Ballmer had brief discussions about technical requirements and timing for the Windows Vista Capable program with executives from Microsoft's business partners, including Intel. Ballmer Decl. ¶ 4. Those discussions took place at a general level. *Id.* Based on those discussions, Mr. Ballmer relayed the concerns of Microsoft's business partners (such as Intel) to members of Microsoft's management (such as Messrs. Allchin and Poole) responsible for making decisions regarding timing and technical requirements. *Id.* Mr. Ballmer did not direct Mr. Allchin or Mr. Poole to reach any particular business decisions in response to those discussions; instead, Mr. Allchin and Mr. Poole remained responsible for making and executing those decisions. *Id.* Mr. Ballmer's knowledge of those decisions is entirely derivative and duplicative of Mr. Allchin's and Mr. Poole's knowledge. *Id.*

Plaintiffs requested the depositions of Mr. Poole and Mr. Allchin, and Microsoft agreed to make them available for depositions on mutually convenient dates in early October.

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 5

1  Rummage Decl. ¶ 6. Although Plaintiffs previously took days of deposition testimony from
2  Microsoft under Rule 30(b)(6), they did not ask any questions about the facts surrounding Mr.
3  Ballmer's telephone call with Mr. Otellini of Intel. Similarly, Plaintiffs have propounded
4  over 200 requests for admission and several interrogatories to Microsoft, but have not asked a
5  single question about the facts surrounding Mr. Ballmer's phone call with Mr. Otellini.

Finally, without the benefit of Mr. Ballmer's deposition, Plaintiffs filed a motion for partial summary judgment in which they request a ruling that Mr. Poole's decision regarding the technical requirements of the Windows Vista Capable program satisfies the first element of their CPA claim (i.e., that lowering the technical requirements for PCs to be labeled Windows Vista Capable was unfair or deceptive). Plaintiffs' motion makes clear that the decision on the technical requirements and timing for the Windows Vista Capable program fell to Mr. Poole. Plaintiffs mention Mr. Ballmer in passing in three places: once to note that the CEOs of Microsoft and Intel "exchanged pleasantries" after Mr. Poole told Intel of the new requirements, Motion [Dkt. No. 163] at 17:4; once to note that Mr. Ballmer asked Mr. Allchin to follow up with Mr. Poole about the decision, *id*. at 20:23; and once in reference to a press release from January 2007. *Id.* at 4:10-11. Having brought their summary judgment motion before seeking deposition testimony on the point, Plaintiffs obviously thought the Court could rule on this question regardless of what Mr. Ballmer said about the matter.

### III.    ARGUMENT

Although the Federal Rules of Civil Procedure contemplate broad discovery, Rule 26 requires courts to balance the potential benefits of proposed discovery against its burdens:

> [T]he court *must limit* the … extent of discovery otherwise allowed by these rules … if it determines that:
>
> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient [or] less burdensome;
>
> (ii)   the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)  the burden … of the proposed discovery outweighs its likely benefits … .

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

1  Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).  Rule 26 also permits the court to issue

2  protective orders "to protect a party or person from annoyance, embarrassment, oppression, or

3  undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Among other things, Rule 26 expressly

4  contemplates orders in appropriate circumstances "forbidding the disclosure or discovery" or

5  "prescribing a discovery method other than the one selected by the party seeking discovery."

6  Fed. R. Civ. P. 26(c)(1)(A) & (C).  "District courts have very broad discretion in fashioning

7  discovery orders under Fed. R. Civ. P. 26(c)."  *McDowell v. Calderon*, 197 F.3d 1253, 1256

8  (9th Cir. 1999) (*en banc*).

9        "Virtually every court that has addressed deposition notices directed at an official at

10  the highest level or 'apex' of corporate management has observed that such discovery creates

11  a tremendous potential for abuse or harassment."  *Celerity, Inc. v. Ultra Clean Holding, Inc.*,

12  2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007); *see also Mulvey v. Chrysler Corp.*, 106

13  F.R.D. 364, 366 (D.R.I. 1985) (board chairman "singularly unique and important individual

14  who can be easily subjected to unwarranted harassment and abuse").  Thus, courts properly

15  exercise their discretion under Rule 26 when they issue orders protecting senior or "apex"

16  executives within a corporation.  *E.g.*, *Thomas v. IBM Corp.*, 48 F.3d 478, 483-84 (10th Cir.

17  1995) (affirming protective order preventing deposition of IBM's chairman); *Lewelling v.*

18  *Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (chairman & CEO); *Salter*

19  *v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (president).  Indeed, many courts have

20  issued protective orders or quashed deposition notices to protect apex executives from

21  depositions.  *E.g.*, *Reif v. CNA*, 248 F.R.D. 448, 454 (E.D. Pa. 2008); *Gauthier v. Union Pac.*

22  *R.R. Co.*, 2008 U.S. Dist LEXIS 47199, at * 14 (E.D. Tex. June 18, 2008); *Roman v.*

23  *Cumberland Ins. Group*, 2007 U.S. Dist. LEXIS 96775, at * 3-4 (E.D. Pa. Oct. 26, 2007);

24  *Celerity*, 2007 WL 205067, at * 5; *Evans v. Allstate Ins., Co.*, 216 F.R.D. 515, 517 (N.D.

25  Okla. 2003); *Folwell v. Hernandez*, 210 F.R.D. 169, 173 (M.D.N.C. 2002); *Baine v. General*

26  *Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991); *Mulvey*, 106 F.R.D. at 366.

27

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

Courts have not provided these protections to insulate apex officers from the fact-finding process. Rather, courts simply balance the need for and utility of depositions of apex officers against the disruption to those officers' time demands and responsibilities, and the potential for harassment inherent in such depositions (as well as the potential impacts to the shareholders who depend on the complete attention of those officers). Courts therefore require that before subjecting an apex officer to a deposition, the party seeking the deposition must show that (1) the officer has unique or superior knowledge (2) that cannot be obtained through other, less invasive sources, such as interrogatories, depositions of lower-ranking employees, or a corporate deposition under Rule 30(b)(6). *E.g.*, *Reif*, 248 F.R.D. at 451. And even if the party makes that showing, courts generally take a "wait and see" approach, initially deferring the deposition without prejudice to taking the deposition at a later time if alternate sources prove insufficient. *Id.* at 451-52 (discussing *Salter*, 593 F.2d at 551-52).

Plaintiffs cannot make the required showing here. Mr. Ballmer has no knowledge of the facts that is superior or unique such that Plaintiffs could not obtain the same information from other sources. Indeed, within the next two weeks, Plaintiffs will have the opportunity to take the depositions of the Microsoft senior executives actually responsible for the decisions at issue. Further, Plaintiffs could ask interrogatories about those decisions and/or Mr. Ballmer's involvement in them (but have not); could serve requests for admission about the same topics (but have not); or could request a corporate deposition under Rule 30(b)(6) on the same topics (but have not). Balancing Mr. Ballmer's limited, duplicative knowledge against his responsibilities managing all business aspects of one of the world's leading software companies, and considering Plaintiffs' ability to obtain the same information from other sources, the Court should enter a protective order with respect to Mr. Ballmer's deposition.

**A.   Mr. Ballmer Has No Unique or Superior Knowledge of the Facts at Issue.**

To be subjected to a deposition, an apex officer must have personal knowledge of the facts and issues giving rise to a suit. *See Evans*, 216 F.R.D. at 519 (granting protective order where apex officers had no knowledge of facts of case). And even if the apex officer has

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

personal knowledge relevant to the suit, the party seeking discovery must show that the officer's knowledge is so superior or unique that the party seeking the deposition could not obtain the same information through other means. *See Baine*, 141 F.R.D. at 335.

*Baine* illustrates the general reluctance of courts to allow apex depositions to proceed absent a strong showing of superior or unique knowledge. *Baine* arose out of an allegedly defective passenger restraint system. During discovery, plaintiffs noticed the deposition of Edward Mertz, a vice president of General Motors and the executive in charge of the Buick division. Plaintiffs argued that the deposition was necessary because, during the development of the restraint system, Mr. Mertz used a prototype of the system and sent a memo to the engineering team detailing his impressions. The court, however, quashed the deposition notice, stating that "[t]he legal authority is fairly unequivocal in circumstances such as these" and finding that the plaintiffs had not "demonstrated that [the vice president] has any superior or unique personal knowledge of the restraint system or of the accident." 141 F.R.D. at 334-35. In other words, it was insufficient for the plaintiffs to demonstrate that the vice president had some personal knowledge of the restraint system; instead, they had to show that the vice president had knowledge of the restraint system so superior or unique compared to the information obtainable from other sources (such as the engineers who designed the product) that to prohibit the deposition would deprive the plaintiffs of the information altogether. Because the vice president's superficial comments about the restraint system in the memo demonstrated neither superior nor unique knowledge, the court concluded that the vice president should not be subjected to a deposition. *Id*. at 335-36.

Here, Mr. Ballmer has even less knowledge of the decisions regarding the technical requirements for and timing of the Windows Vista Capable program than the vice president of General Motors in *Baine*. Mr. Ballmer was not involved in those decisions. The documents surrounding the telephone call that Plaintiffs cited to justify the deposition confirm Mr. Ballmer's recollection: after being told of the decision to relax the Windows Vista Capable requirements, Mr. Ballmer said he knew nothing of the details, which caused Mr. Poole—who

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
 (No. C07-0475 MJP) – 9

made the decisions—to offer to provide a written account if he was interested. In short, Mr. Poole made the decisions; Mr. Ballmer merely tried to relay general concerns from Intel's CEO to Mr. Poole, an attempt eclipsed when Mr. Poole implemented new Windows Vista Capable requirements before Mr. Ballmer could talk with him. Whatever Intel's CEO might have said to Mr. Ballmer makes no difference, because Mr. Poole made the decisions at issue before Mr. Ballmer had a chance to relay Mr. Otellini's comments.

### B.    Plaintiffs Can Obtain the Information Sought through Other Sources.

The Court also should grant a protective order because courts uniformly prohibit the deposition of apex officers where, as here, the party seeking the deposition may obtain the information by other means. Indeed, courts almost uniformly disallow depositions of apex officers until *after* the party seeking discovery exhausts less intrusive means of getting the information. *See, e.g.*, *Thomas*, 48 F.3d at 483 (upholding order requiring depositions of lower-level employees before plaintiff would be permitted to depose defendant's chairman); *Salter*, 593 F.2d at 651 (upholding a protective order barring the deposition of a company's president until plaintiff could demonstrate that all other sources of information had been exhausted); *Reif*, 248 F.R.D. at 454 (requiring deposition of 30(b)(6) witness before plaintiffs could depose CEO); *Evans,* 216 F.R.D. at 519 (prohibiting deposition of CEO and senior vice presidents because the information sought should "be obtained from other sources without deposing these 'apex' officers"); *Baine*, 141 F.R.D. at 335 (quashing deposition of company vice president because "it has not been established that the information necessary cannot be had from [other individuals], interrogatories, or the corporate deposition").

Plaintiffs will have ample opportunities to explore Microsoft's reasons for setting the technical requirements and timing of the Windows Vista Capable program. Within the next week, they will take the depositions of the person responsible for these decisions (Mr. Poole, then a Senior Vice President) and his supervisor (Mr. Allchin, then the Co-President of the Platform Products & Services who reported to Mr. Ballmer). The following week Plaintiffs will take the deposition of Rajesh Srinivasan, another Microsoft employee involved in these

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

decisions. If Plaintiffs believe the results of those depositions are insufficient, they can seek additional depositions of others familiar with the decisions, including a Rule 30(b)(6) representative. Any of these deponents would have more knowledge of these facts than Mr. Ballmer.

### C. Any Unique Knowledge Mr. Ballmer Might Have Is Irrelevant.

In balancing the costs and benefits of discovery under Rule 26, the Court must consider "the importance of the issues at stake, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Even if Mr. Ballmer had unique knowledge about some matter at issue that Plaintiffs could not obtain less intrusively from some other source (which he does not), that knowledge would be irrelevant to any issue in this action. Mr. Ballmer's conversation with Intel's CEO amounted to high-level generalities that Mr. Ballmer intended to relay to the responsible decision-makers for the Windows Vista Capable program. Ballmer Decl. ¶ 4. In any event, Mr. Poole made the decision regarding the technical requirements and timing of the Windows Vista Capable program *before* Mr. Ballmer could relay his conversation with Intel's CEO to Mr. Poole. Thus, nothing Mr. Otellini might have said to Mr. Ballmer, or Mr. Ballmer to Mr. Poole, had any bearing on Mr. Poole's decision. The fact that Plaintiffs moved for partial summary judgment based on the documentary evidence of Mr. Poole's decision confirms that Mr. Ballmer has no information vital to their case.

Perhaps more important, the decisions themselves have no bearing on the remaining issues here. The Court narrowed the case to Plaintiffs' "price inflation" theory and found two common issues germane to that claim: whether Windows Vista Home Basic is fairly called "Vista" and whether OEMs' decisions (not required by Microsoft) to apply the Windows Vista Capable label to PCs that could run only Windows Vista Home Basic "artificially" increased demand and thereby inflated the price of computers that class members purchased. On these two issues, Microsoft's reasoning in deciding how to structure the Windows Vista Capable Program has no bearing on the relevant proof. The price inflation theory that the

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

Court certified for class treatment *assumes* the minimum specifications that limited OEMs' discretion in deciding whether to affix the Windows Vista Capable label; asks whether Windows Vista Home Basic can fairly be called "Vista"; and then (if Plaintiffs can show that Windows Vista Home Basic *cannot* fairly be called "Vista") requires proof of a causal connection between the supposed mischaracterization, demand, and the prices consumers paid to retailers or directly to OEMs. The many variables that Plaintiffs must address in connection with that theory include the pricing decisions of OEMs and retailers, the information that Microsoft and retailers placed in the market about Windows Vista Capable computers, and the impact of the technical requirements for the Windows Vista Capable program on the pricing of non-Premium Ready Windows Vista Capable PCs.

What Mr. Ballmer and Intel's CEO may have said to each other in a courtesy call has no bearing on any of those variables.

### IV.   CONCLUSION

Microsoft requests that the Court issue a protective order precluding Plaintiffs from taking the deposition of its CEO, Mr. Ballmer.

DATED this 3rd day of October, 2008.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation

By */s/ Stephen M. Rummage*
   Stephen M. Rummage, WSBA #11168
   Cassandra Kinkead, WSBA #22845
   Charles S. Wright, WSBA #31940
   E-mail: steverummage@dwt.com
          cassandrakinkead@dwt.com
          charleswright@dwt.com
   Of Counsel:

Charles B. Casper
Patrick T. Ryan
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA  19109

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
 (No. C07-0475 MJP) – 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2008, I electronically filed the foregoing Microsoft's Motion for Protective Order with the Clerk of the Court using the CM/ECF system, and I further hereby certify that pursuant to agreement with plaintiffs' counsel, I have caused the same to be sent in .pdf format by e-mail to the following:

| | |
|---|---|
| Jeffrey I. Tilden: | jtilden@gordontilden.com |
| Jeffrey M. Thomas: | jthomas@gordontilden.com |
| Michael Rosenberger: | mrosenberger@gordontilden.com |
| Mark A. Wilner: | mwilner@gordontilden.com |
| William C. Smart: | wsmart@kellerrohrback.com |
| Mark A. Griffin: | mgriffin@kellerrohrback.com |
| Ian S. Birk: | ibirk@kellerrohrback.com |

DATED this 3rd day of October, 2008.

Davis Wright Tremaine LLP
Attorneys for Defendant

By */s/ Stephen M. Rummage*
   Stephen M. Rummage, WSBA #11168
   Davis Wright Tremaine LLP
   1201 Third Avenue, Suite 2200
   Seattle, WA 98101-3045
   Telephone: (206) 622-3150
   Fax: (206) 757-7700
   E-mail: steverummage@dwt.com

MICROSOFT'S MOTION FOR PROTECTIVE ORDER
(No. C07-0475 MJP) – 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
Phone: (206) 622-3150 · Fax: (206) 757-7700