1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DIANNE L. KELLEY, KENNETH HANSEN,
JIM WALTERS, MATT MORALES,
RUSSELL HALL, and DON SCHRODER,
individually and on behalf of others similarly
situated,

                   Plaintiffs,

     v.

MICROSOFT CORPORATION, a Washington
Corporation,

                  Defendant.

NO. C07-0475 MJP

PLAINTIFFS' OPPOSITION TO
MICROSOFT'S MOTION FOR A
PROTECTIVE ORDER PRECLUDING
THE DEPOSITION OF STEVEN A.
BALLMER

*Filed Under Seal**

CLASS ACTION

*\* Filed Under Seal Pursuant to Microsoft's Confidentiality Designations,*

*Protective Order (Dkt. 57), and Corresponding Pending Motion to Seal*

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# I.    INTRODUCTION

On January 30, 2006, Microsoft abruptly eliminated WDDM as a requirement for Vista Capable certification, despite its consistent position since the inception of the Vista Capable program that WDDM was fundamental to the Vista experience. Microsoft's decision to eliminate the WDDM requirement is a focal point in this litigation—whether on plaintiffs' pending partial summary judgment motion that addresses one particular unfair or deceptive act by Microsoft, the "unjustness" in unjust enrichment, or treble damages under the WCPA.

Until January 29, 2006, WDDM was required for every version of Vista, including Home Basic. On January 30, 2006, it no longer was—that is, until January 29, 2007 when Microsoft reinstated the WDDM requirement for the Vista launch. The *only* purchasers affected in the interim were class members. In sum, non-WDDM PCs that Microsoft certified as Vista Capable during the Vista Capable program (prior to the launch of Vista) were prohibited by Microsoft from being sold as even Vista Home Basic compliant once Vista was launched—*because they lacked WDDM*. After launch, *the same non-WDDM computers* were no longer deemed "Vista Capable," and indeed could be sold only with a "Designed for Windows XP" sticker. This is like certifying umbrellas as "waterproof"—*but only until it starts raining*.

In connection with Microsoft's critical January 30, 2006 decision, and on that same day, the CEO of the world's largest chipmaker (Intel) called the CEO of the world's largest software company (Microsoft) to discuss the billion-dollar-plus loss that Intel faced if Microsoft were unwilling to make changes to its Vista Capable program. Despite the near-panic atmosphere within Intel at the time, Microsoft would have the Court believe that the telephone call between CEO Paul Otellini and CEO Steve Ballmer amounted to nothing more than a "courtesy call." But this was not a spur-of-the-moment interaction between the two CEOs. Mr. Otellini had been

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 1
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

planning the call for a week or more and insisted on making it happen to "close the deal." What did Mr. Otellini say? Why had the issues escalated so far? How did Mr. Ballmer react? What did he say? The only way for plaintiffs to know the answers to these and other questions is to ask the participants on the call. Microsoft's position is that we are not entitled to ask, or, if we insist, we must first depose the CEO of a non-party. However, the law, including the "apex" line of cases, does not preclude deposing a CEO where, as here, the CEO is a key fact witness. It also does not require a party to depose a non-party executive.

The Ballmer-Otellini phone call only scratches the surface of Mr. Ballmer's involvement in the Vista Capable program. Mr. Ballmer met with industry analysts, talked to the media, and held conferences and private meetings with OEMs, retailers, and others who had concerns about the program. Microsoft's position is fundamentally at odds with the record.

Mr. Ballmer's deposition is vitally important to this litigation. To avoid an "all or nothing" approach to the issue, we will commit to a three-hour limitation. We can begin the deposition early in the day, at local defense counsel's Bellevue office or at Microsoft headquarters in Redmond. This should allow Mr. Ballmer to be back in his office before lunch. Or we can do it at the end of the day if he prefers. Or on the weekend.[1]

## II.    STATEMENT OF FACTS

### A.    Mr. Ballmer Had Direct, Pertinent Involvement in the Windows Vista Capable Program and the Largest Software Release in Microsoft's History.

Mr. Ballmer's connection to the Vista Capable program is not limited to a single—albeit significant—telephone call with Intel's CEO. Mr. Ballmer was an active participant before,

---

[1] We request that plaintiffs be given the opportunity to petition the Court for additional time in the event that something unexpected arises during the three hours that is contrary to the purported lack of knowledge and recollection sworn to by Mr. Ballmer in his declaration.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 2
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

during, and after the program. The program contributed to record earnings reported by Microsoft (Wilner Decl., Ex. A at 12), and constituted a key part of the unveiling of what Mr. Ballmer repeatedly called the "biggest launch in [the] company's history" (id., Ex. L, Ex. F at 76).

### 1. OEMs and Retailers

OEMs and retailers who had concerns about the Vista Capable program and the Express Upgrade promotion contacted Mr. Ballmer *directly*. Two examples include:

- *Best Buy-Ballmer in 2006:* Best Buy sought to "escalate" its concerns over the Express Upgrade program "to a senior level" and scheduled a meeting between its Executive VP Ron Boire and Mr. Ballmer. *Id.*, Ex. B at MS-KELL 25706-08. It was Best Buy's "MO" "to escalate to Ballmer." *Id.* at MS-KELL 25706.

- *HP CEO-Ballmer in 2007*: HP CEO Mark Hurd emailed Mr. Ballmer complaining about HP's "call lines being overrun" with customers' difficulties upgrading, adding "I'm sure you're aware of this." *Id.* at MS-KELL 102019. Mr. Ballmer responded to others on his team indicating that he already replied, *id.*, but Microsoft has not produced any written response. Presumably the two CEOs had a telephone conversation.

### 2. Industry Analysts [2]

Industry analysts also contacted Mr. Ballmer *directly* about problems with the Vista Capable program. For example:

- *Enderle-Ballmer in 2005*: By August 2005, analyst Rob Enderle had developed a major concern that Microsoft's planned release of four versions of Vista included a "crippled product at full price" in the form of Home Basic. *Id.* at MS-KELL 51262. Mr. Enderle reported that Microsoft needed to "bring 'Basic' up" to provide a meaningful upgrade path for XP Home users. *Id.* Mr. Enderle reported to Mr. Ballmer that Dell shared these and other concerns but had been reticent to confront Microsoft directly. *Id.* at MS-KELL 51265.

- *Enderle-Ballmer in 2006*. Nearly a year later, Mr. Enderle provided Mr. Ballmer an exhaustive list of concerns that he saw with the Vista launch and the research and marketing at issue. *Id.*, Ex. C at 65-67. Mr. Enderle stated: "Right now a lot of folks are thinking that the executive staff at Microsoft has massive problems.

---

[2] These are software analysts, not financial analysts.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 3
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

So far you haven't been named but, I'll bet that will change. I've been reporting growing concerns for some time . . . . It is never fun to clean house, but think it is time and also think you need to send a signal that you take this seriously and are doing something about it." *Id.* at 65.

- **Gartner-Ballmer in 2006**: In October 2006, Mr. Ballmer met with analyst Gartner Group and explained "how MS will measure Vista success" and agreed that "MS lacks a consistent consumer strategy." *Id.*, Ex. B at MS-KELL 97807.

### 3.    Directors and Senior Executives

Of course, Mr. Ballmer also communicated *directly* with Microsoft insiders and his team about problems with the Vista Capable program. Below are just two examples:

- **Windows Chief-Ballmer in 2007**. In February 2007, then-Windows Chief Steven Sinofsky told Mr. Ballmer about problems with the Vista Capable program, *e.g.*, Intel chipset issues, and questioned whether lowering the bar was a "good call." *Id.* at MS-KELL 19348. Mr. Ballmer's response: "Righto thanks." *Id.* at MS-KELL 19347.

- **Shirley-Ballmer in 2007**. On February 22, 2007, former Microsoft president and COO, and then-board member, Jon Shirley emailed Mr. Ballmer advising that, when others ask him whether they should upgrade to Vista, he (Shirley) says "never." *Id.* at MS-KELL 61327. Mr. Ballmer responded: "I do not disagree." *Id.* In a subsequent email to others on the Microsoft team, Mr. Ballmer acknowledged his lack of surprise by the issues. *Id.* at MS-KELL 61326.

### 4.    Media

Mr. Ballmer presented Microsoft's position on the Vista Capable program and Express Upgrade issues in interviews with the media. *See id.* at MS-KELL 93310-11. For example:

- **Ballmer on XP Sales During Program (2006)**: Mr. Ballmer told the press in November 2006 that releasing consumer versions of Vista (including Basic) after the holidays will not hurt Christmas sales due to the Vista Capable program and upgrade paths: "Basically, you get a Vista machine now and still get Vista later. That will help maintain strong sales volume through Christmas." *Id.*, Ex. D at 70.

- **Ballmer on Demand for Vista (2006)**. Mr. Ballmer told the press in late 2006 that, among other things, he was optimistic about demand for Vista that he expects "a faster upgrade to Vista than to Windows XP." *Id.*, Ex. E at 74.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 4
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

- ***Ballmer 2007 Press Release.*** In a January 29, 2007 press conference called by Mr. Ballmer, he underscores that the very purpose of the Vista Capable program is to "avoid sales slowdowns."[3] *Id.*, Ex. F at 77.

### 5.    Documents Produced by Microsoft

Mr. Ballmer's name appears over 5,000 times in the documents Microsoft produced in this case.[4] Karlsen Decl. ¶ 2. Presumably, Microsoft produced these documents because it believed they were responsive to our discovery requests and were relevant under Rule 26(b)(1). For Microsoft now to take the position that Mr. Ballmer—a CEO governing the largest software release in history—has no relevant connection to this case lacks all credibility.

## B.    The Private Phone Call Between the Two CEOs Regarding the Vista Capable Program is Critical.

When Mr. Otellini called Mr. Ballmer, Intel's CEO was not merely having a "courtesy call" with Microsoft's CEO. Intel viewed Mr. Otellini as its "#1 sales person," and that the telephone call with Mr. Ballmer "closed the deal" with Microsoft and resulted in Microsoft lowering the bar for Vista capability. Wilner Decl., Ex. H at 406DOC000048. Mr. Otellini was planning the call with Mr. Ballmer for at least a week. *Id.*, Ex. B at MS-KELL 48376. On January 23, 2006, in a "CONFIDENTIAL" email seven days prior to the call, Intel executive Renee James made clear to Microsoft that the Intel CEO wanted to "ensure MS management

---

[3] This purpose, consistent with OEM Marketing Bulletin and other documents produced in this case, conflicts with the deposition testimony of Jim Allchin—one of two people Mr. Ballmer names in his declaration as those with "[a]ll of his knowledge" of Vista Capable program. Ballmer Decl. ¶ 3. Mr. Allchin testified that, in his view, the Vista Capable program served a different purpose. *See* Wilner Decl., Ex. G at 79:15-18, 89:20-91:10.

[4] We submit only a handful of these documents with this opposition to avoid highlighting all of our topics for Mr. Ballmer's deposition. This is an unfortunate position to be in. It may be a position Microsoft knew it would put us in by filing its motion. On the one hand, to prevail on the motion, we need to show the Court enough for it to see why Mr. Ballmer has pertinent factual knowledge. On the other hand, we do not want to provide Microsoft's team of attorneys with an advance copy of our outline for Mr. Ballmer's deposition.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 5
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

understands the impact to [Intel's] business." *Id.* at MS-KELL 48377. At least four days before

the call, Mr. Otellini gave "feedback" to other Intel executives, which Ms. James stated the CEO

"wants to share with Steve [Ballmer]." *Id.* at MS-KELL 48294. The "feedback" centered on

Mr. Otellini's understanding that Intel and Microsoft "had agreed to partner on Vista marketing

making this a great upgrade/ramp for both of us" and that Microsoft and Intel were "misaligned"

on these issues. *Id.* at MS-KELL 48294.

    The call itself lasted for an unknown length of time. Mr. Otellini raised numerous

"issues" with Mr. Ballmer. *Id.* at MS-KELL 99306. They discussed "lowering the bar" to Vista

capability by marketing Vista as compatible with Intel's 915 chipset. *Id.* at MS-KELL 48478.

Microsoft now advises the Court that others responded to the call and fully resolved the "issues."

Mot. at 5. However, the record suggests the opposite—indeed, that Mr. Ballmer himself had

concerns that "other issues" were **not** resolved:

> I thought they [Intel] had *other issues   certainly paul described other (non*
> *graphics) issues   is this really resolved*   check with her.  thanks.

Wilner Decl., Ex. B at MS-KELL 48478 (emphasis added). While saying he "know[s] nothing

of the details," Mr. Ballmer knew enough that Intel had other unresolved issues with the program

and that Mr. Allchin was "apoplectic" about how the entire situation was handled. *Id.*

    After the call and Microsoft's decision to "lower the bar" to Vista capability, there of

course was no more disagreement (with Intel). However, others, such as HP, who were heavily

invested in the previously higher requirements for Vista capability, were furious. *Id.* at MS-

KELL 99306-07. Jim Allchin emailed Mr. Ballmer stating his understanding that "this mess"

"all started with a call between you and Paul [Otellini]." *Id.* at MS-KELL 99306. Mr. Ballmer

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 6
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

responded hours later saying that, in his view, the "issues" Mr. Otellini expressed on the phone

remain unresolved and that "you [Mr. Allchin] better get [W]ill [Poole] under control." *Id.*

## C.    Questions Raised, But To Date Not Answered.

As the documents reveal, there are many questions for which Mr. Ballmer should have

answers. Some are:

- What were the "other issues" raised by Mr. Otellini?
- What precisely did the two CEOs talk about on this significant call?
- Why did Mr. Ballmer believe Mr. Allchin was "apoplectic" after-the-fact?
- If Mr. Ballmer did not handle "the details," who did he appoint to do so?
- What did Mr. Ballmer mean by saying Will Poole was out of control?
- Why did Mr. Ballmer believe that Mr. Poole did not resolve all issues with Intel?
- What occurred during Mr. Ballmer's various meetings, conferences, and calls with others, *e.g.*, HP, Best Buy, and other OEMs and retailers who were expressing concerns about the Vista Capable program?
- What did Mr. Ballmer do (if anything) when posed with problems relating to the Vista Capable program by industry analysts and high-level Microsoft insiders?
- What are Mr. Ballmer's own views of the successes/failures of the Vista Capable program and Express Upgrade promotion?

## III.    ARGUMENT AND AUTHORITIES

### A.    The Discovery Rules Permit Depositions of High-Ranking Corporate Personnel.

"The Federal Rules set very liberal limits on the scope of discovery. A party may inquire

about 'any matter, not privileged, that is relevant to a claim or defense.'" *Six West Retail*

*Acquisition, Inc. v Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (2001) (quoting Fed. R. Civ.

P. 26(b)(1)). A party may choose to depose any person, and a deposition of an officer or agent

does not require court authorization. *Folwell v. Hernandez*, 210 F.R.D. 169, 172-73 (2008).

"[H]ighly-placed executives are not immune from discovery[, and] the fact that [an executive]

has a busy schedule cannot shield that witness from being deposed." *Six West*, 203 F.R.D. at

102. Evidence in the possession of a so-called "apex" officer is fair game for discovery:

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> [I]f Mr. Iacocca has any information, albeit inadmissible as evidence reasonably calculated to lead to the discovery of admissible evidence, *he must be required to reveal the same*. His prestigious position is an unimpressive paper barrier from the judicial process.

*Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (1985) (emphasis added). "[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (1997).[5]

"Generally, the courts' rationale for barring [apex] depositions absent the required showing [of personal involvement] is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *In re: Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (2002). "But the bare possibility of abuse does not afford an appropriate basis on which to block the deposition entirely." *Naftchi*, 172 F.R.D. at 133. A party's showing of the connection between the apex official and the evidence and issues in the lawsuit contradicts "in large measure" the concern that the deposition is being used to harass. *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140, 142 (D. Mass. 1987); *Six West*, 203 F.R.D. at 105 ("any threat of harassment in this case is minimal because the plaintiff has been able to articulate specific claims that will ultimately provide the basis for the depositions").

---

[5] Even the seminal case addressing apex depositions recognizes, "It is very unusual for a court to prohibit the taking of a deposition altogether and *absent extraordinary circumstances, such an order would likely be in error*." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (1979) (emphasis added). Indeed, the majority of cases Microsoft relies upon do *not* prohibit the apex deposition: one court expressly permitted it, *Folwell v. Hernandez*, 210 F.R.D. 169 (2002), and others merely deferred it, *Salter*, 593 F.2d at 651; *Mulvey*, 106 F.R.D. 364 (1985); *Baine v. General Motors Corp.*, 141 F.R.D. 332 (1991); *Gauthier v. Union Pac. R. Co.*, 2008 U.S. Dist. LEXIS 47199 (E.D. Tex. June 18, 2008); *Reif v. CNA*, 248 F.R.D. 448, 454 (2008).

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 8
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Here, plaintiffs have demonstrated many of the connections between Mr. Ballmer and the issues in the lawsuit, making it clear that there is more than a good-faith basis for his deposition. Mr. Ballmer's testimony will be pertinent to unfairness, deception, and treble damages under the CPA, as well as unjustness on the unjust enrichment claim.[6] Further, procedural protections will shield Mr. Ballmer. Plaintiffs need only a single, short deposition, scheduled according to Mr. Ballmer's availability.[7] Because fact discovery will be nearly completed, plaintiffs have honed in on the issues specifically involving Mr. Ballmer and can refine the lines of questioning for him. *Bridgestone/Firestone*, 205 F.R.D. at 537.

Even Microsoft's assertion Mr. Ballmer's testimony will be duplicative and cumulative (which it will not) is not grounds for quashing an apex deposition; it must be *unreasonable*:

> [T]he discovery is somewhat duplicative and cumulative, but because of the nature of the inquiry at issue, I do not believe that the discovery is *unreasonably* so.

*Travelers*, 116 F.R.D. at 145. *Accord, Six West*, 203 F.R.D. at 105 (deposition "may be cumulative to some degree, but not unreasonably so"). To the extent we question Mr. Ballmer about issues others have covered, there may be some overlap. But this would not be "unreasonably cumulative or duplicative." In any event, the majority of his testimony will not be duplicative, and it cannot be duplicated by others. No other witness can testify regarding Mr. Ballmer's knowledge regarding the many unanswered questions, including those detailed above.

---

[6] Like the defendant in *Six West*, 203 F.R.D. at 106, Microsoft attempts to unilaterally redefine our claims to narrow the scope of discovery to a point where virtually no fact development would be necessary on the above-referenced elements of our claim. Mot. at 11-12. The portions of the Court's order on class certification that Microsoft cites in doing so, however, only refer to the element of causation.

[7] We gave Microsoft advance notice of our intent to depose Mr. Ballmer and requested a date at his convenience. When Microsoft failed to provide a date, we noted the deposition for October 22, a month after serving the notice, to allow Microsoft to present its motion without causing prejudicial delay to us. The discovery cutoff is November 14, 2008. Wilner Decl. ¶ 4 and Ex. I.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF STEVEN A. BALLMER - 9
No. C07-0475 MJP

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**B.    High-Ranking Officials Who Are Key Fact Witnesses May Be Deposed.**

A corporate official with personal knowledge regarding the issues in the case is subject to

deposition. *Travelers*, 116 F.R.D. at 142. The cases Microsoft cites do not establish a "rigid rule

applicable in all cases" to bar apex depositions. *Bridgestone/Firestone*, 205 F.R.D. at 536. The

inquiry is fact-specific, and a key issue is whether the apex official has personal knowledge or

involvement. *Id.*; *Six West*, 203 F.R.D. at 102. In *Six West*, the plaintiff "presented sufficient

evidence to infer [the deponent] has some unique knowledge on several issues related to its

claims." 203 F.R.D. at 102. One apex official was subject to deposition, although he "may not

have had any inkling of the specific day-to-day management decisions which resulted in the

plaintiff's injuries" where, for instance, he was present at key meetings and was "well-informed"

about the allegedly unlawful pricing scheme. *Id.* at 102-03.

In *Bridgestone/Firestone*, the court permitted the deposition of Ford's board chair,

because the "conduct and knowledge at Ford's highest corporate levels may well be relevant."

*Id.* at 536; *accord Travelers*, 116 F.R.D. 142-43 (permitting four apex depositions because

evidence showed officials had read reports, approved documents and plans, or administered and

implemented plans). The same is true here. In addition to various reports made to Mr. Ballmer,

he has personal and direct knowledge about the facts, issues, and concerns of others on the Vista

Capable program, notwithstanding his declaration to the contrary.

Finally, citing our written discovery requests, including 200+ requests for admission,[8]

Microsoft argues that we should first exhaust other available avenues of discovery before

deposing Mr. Ballmer. By the time of Mr. Ballmer's deposition (even as currently noted), there

will be less than a month before the discovery cutoff. We will have deposed fact witnesses, and

---

[8]Microsoft does not cite its extensive objections and attempts to avoid answering these requests.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 10
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

conducted 30(b)(6) depositions with eight designees. Wilner Decl. ¶ 5 and Ex. J. None of these

witnesses, including 30(b)(6) designees, could appropriately answer questions about Mr.

Ballmer's personal knowledge. *Id.* Moreover, other methods of finding out about Mr. Ballmer's

personal knowledge are impractical, especially where, as here, the witness has now professed a

lack of both knowledge and recollection. *Id.* As the *Travelers* court pointed out: "Forms of

discovery other than a deposition are ill-suited to probe a failure of recollection and to effectuate

a refreshing of failed recollection." 116 F.R.D. at 144.

## C.    Mr. Ballmer's Asserted Absence of Involvement Is Relevant In and Of Itself.

Mr. Ballmer's declaration, together with some documents Microsoft has produced, reveal

a CEO trying to distance himself from decisions on the Vista Capable program. However, the

document trail shows Mr. Ballmer was directly involved. If Microsoft's position now is that he

was not involved at all—or was involved only at a meaningless, irrelevant, "very general level"

(Dkt. No. 196 ¶ 4)—plaintiffs still should be entitled to explore this remarkable position. Putting

aside issues of credibility (Mr. Ballmer's declaration versus the documents), his desire to avoid

taking responsibility in and of itself is telling.

Microsoft wrongly views Mr. Ballmer's "know nothing" declaration as a "get out of

deposition free card." Where, as here, a plaintiff can overcome the "know nothing" declaration

with a showing of the apex officer's knowledge or potential knowledge, or by casting doubt on

the credibility of the declaration, the deposition should go forward:

> Ford responds to plaintiff's recital of facts indicating involvement of these four
> persons in the resale program with "know nothing" affidavits of each. Perhaps
> they could better be described as "remember nothing" affidavits. In the face of
> the showing made by the plaintiff, they are plainly insufficient to support a
> motion to quash. *The plaintiff is entitled to "test" the claim of lack of
> knowledge or lack of information by deposing the witness*.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 11
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

\*       \*       \*

[T]he lack of knowledge claimed by these high executives may, in and of itself, be relevant evidence. It is not beyond the realm of possibility that a corporation, when engaging in potentially illegal activities, would act in such a way as to make it seem that top executives had no knowledge or very limited knowledge of the allegedly illegal activities . . . . *[I]t would be improper for the Court to require that Travelers accept these officials' affidavits of limited knowledge and virtually no recollection at face value with no opportunity for testing at depositions.*

*Travelers*, 116 F.R.D. at 143 (emphasis added). *Accord*, *Bridgestone/Firestone*, 205 F.R.D. at 536 ("plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters"); *Six West*, 203 F.R.D. at 102 ("Even where . . . a high-ranking corporate officer denies personal knowledge of the issues at hand, this claim . . . is subject to testing by the examining party."); *Naftchi*, 172 F.R.D. at 133 (carefully-worded declaration overcome by entitlement to test the asserted lack of knowledge).

## IV.    CONCLUSION AND PROPOSED ORDER

Microsoft's motion should be denied. A proposed order is submitted herewith.

DATED this 9th day of October, 2008.

**GORDON TILDEN THOMAS & CORDELL** LLP

By _____
    Jeffrey I. Tilden, WSBA #12219
    Jeffrey M. Thomas, WSBA #21175
    Mark A. Wilner, WSBA #31550

**KELLER ROHRBACK L.L.P.**

By _____
    William C. Smart, WSBA #8192
    Ian S. Birk, WSBA #31431

Attorneys for Plaintiff

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 12
No. C07-0475 MJP

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant Microsoft Corporation

Stephen M. Rummage, WSBA #11168
Cassandra L. Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940
Davis Wright Tremaine LLP
1201 Third Avenue Suite 2200
Seattle, Washington 98101-3045
steverummage@dwt.com
cassandrakinkead@dwt.com
charleswright@dwt.com

Counsel for Defendant Microsoft Corporation
– Admitted Pro Hac Vice

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA 19109
ccasper@mmwr.com


Jacqueline Lucien, Legal Secretary

PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION
FOR A PROTECTIVE ORDER PRECLUDING THE
DEPOSITION OF STEVEN A. BALLMER - 13
No. C07-0475 MJP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292