The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE KELLEY, et al.,<br><br>                    Plaintiffs,<br>    v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>                    Defendant. | Case No. C07-0475 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR CLASS DECERTIFICATION AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's motions for class decertification and summary judgment. (Dkt. Nos. 252, 253.) The Court has considered the motions, the responses (Dkt. Nos. 266, 267), the replies (Dkt. Nos. 287, 292), and all other pertinent documents in the record. In addition, the Court has considered the parties' presentations at oral argument on January 22, 2009. For the reasons set forth below, the Court GRANTS Defendant's motion to decertify Plaintiffs' class and DENIES Defendant's motion for summary judgment.

## Background

Plaintiffs challenge various aspects of Microsoft's marketing of its Windows Vista ("Vista") operating system. (Dkt. No. 139, Third Amended Compl. [hereinafter "Compl."] ¶ 1.2.) In early 2006, nearly a year before releasing Vista, Microsoft authorized original equipment manufacturers ("OEMs") to place a sticker on personal computers ("PCs") indicating they were "Windows Vista Capable" ("WVC" or "Vista Capable") PCs. (Compl. ¶ 4.3.) At the time, the computers manufactured by OEMs were sold with Windows XP, Vista's predecessor. Plaintiffs allege that a large number of PCs labeled WVC can only operate "Windows Home Basic" ("Basic"), which lacks certain core features of Vista. Plaintiffs further challenge Microsoft's "Express Upgrade Guarantee Program," which allowed customers purchasing WVC PCs to upgrade from Windows XP to Vista for little to no cost. (Compl. ¶ 4.5.) Plaintiffs complain that some customers participating in Express Upgrade were only able to transition to Basic.

Microsoft released four versions of Vista: Basic, Premium, Business, and Ultimate. Plaintiffs purchased computers that had "Vista Capable" labels, but did not have "Premium Ready" labels. Vista Capable PCs that did not have the "Premium Ready" designation could generally only run Basic. Plaintiffs allege that Basic cannot fairly be called "The Real Vista." (Compl. ¶ 4.4.) Plaintiffs complain that Basic lacks the Aero graphics interface Microsoft used to promote Vista. (Dkt. No. 267 at 1.) Other technical distinctions between Basic and Premium include a file backup system, the media center, DVD-making capability, and tablet-PC capability. (See Dkt No. 253 at 7-8.) Defendant responds that Basic provides customers with a number of benefits over XP and is a part of the Vista line. (Id. at 7-8; Dkt. No. 292 at 5.) Moreover, Defendant points to its own marketing materials and argue that the distinctions

ORDER DECERTIFYING CLASS – 2

between levels of Vista were made clear throughout the Vista Capable campaign. (Dkt. No. 253 at 9-10; Tindall Decl., Exs. B, C, D.)

Plaintiffs initially asserted four causes of action; however, they voluntarily dismissed their breach of contract claim and the Court dismissed their Magnusson-Moss Warranty Act Claim. (See Dkt. Nos. 29, 39.) Plaintiffs moved for class certification on their remaining two causes of action: (1) a claim under Washington Consumer Protection Act ("CPA") or other state consumer protection acts and (2) a claim for unjust enrichment. (Dkt. No. 65.) On February 22, 2008, after determining that Washington law applied to this dispute, this Court certified a class comprised of:

> All persons and entities residing in the United States who purchased a personal computer certified by Microsoft as "Windows Vista Capable" and not also bearing the "Premium Ready" designation.
>
> Excluded from this class are: (a) Defendant, any entity in which defendant has a controlling interest or which has a controlling interest in defendant; (b) Defendant's employees, agents, predecessors, successors or assigns; and (c) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

Kelley v. Microsoft Corp. 251 F.R.D. 544, 560 (W.D. Wash. 2008). In analyzing whether common issues of law and fact predominate over individual issues, the Court limited Plaintiffs' theory of causation. Id. at 557-60. With respect to Plaintiffs' CPA claims, the Court determined that class treatment was inappropriate for a deception-based theory of causation. Instead, the Court allowed the class to proceed under a "price inflation" theory of causation where Plaintiffs would demonstrate a CPA violation by showing:

> Microsoft artificially inflated demand for computers only capable of running Vista Home Basic, causing Plaintiffs to pay more for those PCs than they would have without the 'Windows Vista Capable' campaign.

Id. at 558. Similarly, the Court ruled that "Plaintiffs may maintain an unjust enrichment claim

ORDER DECERTIFYING CLASS – 3

on the theory that Microsoft's marketing campaign artificially inflated the demand for and price of 'Windows Vista Capable' PCs." <u>Id.</u> at 559 (further noting that common issues predominated as to whether Defendant retained a benefit, whether Defendant knew of that benefit, and whether Plaintiffs paid more than they should have for WVC PCs).

For the purpose of these motions, the main development since this Court certified the class has been the exchange of expert reports. (<u>See</u> <u>e.g.</u> Leffler Decl.; Allepin Decl.) With discovery now complete, Defendant asks the Court to decertify the class and grant summary judgment because Plaintiffs have failed to develop their price inflation theory and, therefore, have no viable method of proving class-wide causation. (Dkt. No. 252 at 1.) Much of Defendant's argument rests on its deconstruction of the analysis presented by Dr. Keith Leffler, Plaintiffs' expert. (<u>See</u> Leffler Decl.) Furthermore, Defendant contends summary judgment is appropriate on the issue of whether Basic can fairly be called "Vista." (See Dkt. No. 253 at 15.)

## Discussion

Because Defendant's motions are two sides of the same coin, the Court believes it is appropriate to analyze both simultaneously. First, the Court will describe the standards for class decertification and summary judgment. Next, the Court will analyze Defendant's arguments within the context of Plaintiffs' substantive claims.

I.  Class Decertification

Under Fed. R. Civ. P. 23, a district court may revisit its decision to certify a class in order to address developments that arise during the course of litigation. <u>Dukes v. Wal-Mart, Inc.</u>, 509 F.3d 1168, 1176 (9th Cir. 2007); <u>see</u> <u>also</u> <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify

ORDER DECERTIFYING CLASS – 4

it in light of subsequent developments in the litigation."). A court's power to revisit certification is "a vital ingredient in the flexibility of courts to realize the full potential benefits from the judicious use of the class action device." 3 Alba Conte & Herbert Newberg, Newberg on Class Actions § 7:47 (4th ed. 2002).

Defendant's motion focuses on the predominance requirement of Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) classes must demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." If individual issues predominate, the economy and efficiency rationale for class treatment is absent. See Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1778 at 535-39 (2d ed. 1986)). Courts have recognized that consumer fraud cases may present unique considerations when determining predominance. See 5 James W. Moore, et al., Moore's Federal Practice § 23.45[5][b] (3rd ed. 1997) (collecting cases). Moreover, other courts have decertified classes when it becomes apparent that the predominance factor can no longer be satisfied. Marlo v. United Parcel Service, Inc., 251 F.R.D. 476, 485-87 (C.D. Cal. 2008) (decertification appropriate where plaintiffs' proof was limited to individual testimony and a single company policy that could not "support extrapolation from individual experiences to class-wide judgment . . ."). As the Court details below, decertification is appropriate in this matter because Plaintiffs cannot demonstrate that common questions of law and fact predominate over individualized concerns.

II. Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

III. Consumer Protection Act

To prevail on a CPA claim, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive act; (2) that the act occurred in the conduct of the defendant's trade; (3) that the practice affected the public interest; (4) that the plaintiff was injured; and, (5) that the defendant's act or practice was the proximate cause of the plaintiff's injury. Washington Pattern Instruction (hereinafter "WPI") 310.01; see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 787-93 (1986). The parties' arguments in the present motions focus the deception and causation elements.

   a. Unfair or Deceptive Act

Though the CPA does not define "unfair or deceptive act," Washington courts have determined that, for a plaintiff to prove that a defendant committed an unfair or deceptive act,

it is sufficient to show that the act or practice "had the capacity to deceive a substantial portion of the public." Hangman Ridge, 105 Wn.2d at 785; see also WPI 310.08. "The purpose of the capacity-to-deceive test is to deter deceptive conduct before injury occurs." Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30 (1997). The Court may only decide whether an act was unfair or deceptive as a matter of law where "there is no dispute about what the parties did." Indoor Billboard v. Integra Telecom of Washington, Inc., 162 Wn.2d 59, 75 (2007).

Microsoft argues in its motion for summary judgment that it did "not portray 'Windows Vista' in such a way that it would make it unfair to include Windows Vista Home Basic in the Windows Vista family." (Dkt. No. 253 at 20.) In support, Microsoft details the technical development of Vista and points to its own WVC marketing materials cataloguing the distinctions between Basic and Premium. (Id. at 6-10.) Microsoft concedes it had "robust internal" discussions analyzing the coordination between Vista requirements and OEM hardware limitations, but insists that "[w]hat matters is what the company tells the public about the product it chooses to market." (Dkt. No. 253 at 20.) In response, Plaintiffs point to statements from Microsoft executives, including Jim Allchin who e-mailed his colleagues:

> I believe we are going to be misleading customers with the Capable Program. OEMs will say a machine is Capable and customers will believe that it will run core Vista features.

(Tilden Decl., Ex. A, MS-KELL 87386.)

Simply put, Microsoft's argument misses the issue. The question is not whether Basic can be called "Vista" based on computer code similarity or whether Microsoft as a software developer has the right to offer multiple permutations of its product; it is whether Microsoft's use of the "Vista Capable" designation had the capacity to deceive. See Hangman Ridge, 105

Wn.2d at 785. In this sense, Microsoft's internal communications raise a serious question about whether customers were likely to be deceived by the WVC campaign. Summary judgment is inappropriate on this issue. Microsoft's motion for decertification is silent on this element of Plaintiffs' CPA claim.

      b. Causation

To establish CPA causation, a plaintiff must show that the deceptive act was a cause which "in direct sequence . . . produce[d] the injury complained of and without which such injury would not have happened." WPI 310.07; see also Indoor Billboard, 162 Wn.2d at 84 ("plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."). In Indoor Billboard, the Washington Supreme Court held that, in CPA cases where a defendant is accused of making affirmative misrepresentations of fact, a plaintiff must establish that the misrepresentation was a proximate cause of the injury. 162 Wn.2d at 83-84 (rejecting plaintiff's argument that it only needed to demonstrate a causal link between the unfair practice and the injury). In so doing, the Court expressly adopted the proximate cause instruction set forth in the pattern instruction for general negligence claims. Id. at 84 (citing WPI 15.01); see also WPI 310.07 at Comment (comparing WPI 310.07 to WPI 15.01).

Because of Indoor Billboard, this Court found that a deception-based theory of causation would:

> necessarily require the trier of fact . . . to determine whether individual class members were actually deceived and whether they would have purchased their PCs but for Microsoft's marketing of them as "Windows Vista Capable."

Kelley, 251 F.R.D. at 558 (listing individualized questions of fact). Plaintiffs had, however,

articulated "price inflation" as another theory to demonstrate class-wide causation.[1] Recognizing that other courts had rejected similar theories of causation, the Court noted the absence of Washington CPA cases addressing the theory. Id. at 558-59. The Court found that common issues could predominate as to "whether Vista Home Basic, in truth, can be called 'Vista' and whether Microsoft's 'Windows Vista Capable' marketing campaign inflated demand market-wide" for WVC PCs. Id. The Court found class treatment was appropriate on the theory that:

> Plaintiffs paid more than they would have for their PCs had Microsoft's 'Windows Vista Capable' marketing campaign not created artificial demand for and/or increased prices of PCs only capable of running Vista Home Basic.

Id. at 560.

Microsoft's decertification motion argues that Plaintiffs have failed to develop proof of any class-wide demand or price effect based on the WVC campaign.

      i. Demand Effects

Because Plaintiffs' price inflation theory is novel in the context of consumer protection claims, Defendant analogizes to other areas of the law where a plaintiff may establish causation by demonstrating an artificial increase in demand. (Dkt. No. 252 at 16.) In McLaughlin v. American Tobacco Company, the Second Circuit reversed certification of a class of plaintiffs asserting civil RICO claims against tobacco companies for their marketing and branding of "light" cigarettes. 522 F.3d 215, 220 (2d Cir. 2008). As part of their burden, plaintiffs had to demonstrate they suffered an economic loss and that factors other than the

---

[1] The Court notes that Plaintiffs now label the theory "price maintenance." (Dkt. No. 267 at 7.) The Court does not believe there is any substantive difference between an attempt to artificially inflate a falling price and an attempt to maintain price in the face of falling demand. For consistency's sake, the Court retains the "price inflation" label used in the Order granting certification.

ORDER DECERTIFYING CLASS – 9

defendant's deception were not intervening direct causes of the loss. Id. at 226. Because the McLaughlin plaintiffs could not isolate the shift in demand caused by deceptive "light" labeling on cigarettes, common issues could not predominate on the issue of reliance. Id. at 227. Defendant also cites In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d. 6 (1st Cir. 2008), where the First Circuit reversed in part the certification of a class of automobile purchasers asserting antitrust violations against car manufacturers. The appellate court found that the district court had failed to complete a sufficiently searching analysis of predominance where the plaintiffs' expert, despite having completed regression analysis, had failed to isolate the price impact caused by impermissible actions from the impact caused by permissible actions. Id. at 28. Without specifically distinguishing the impact of the offensive conduct, plaintiffs could not maintain class treatment in the "'but-for' world" theory. Id. at 27. Microsoft argues that Plaintiffs' evidence falls short of the standard set forth in either McLaughlin or New Motor Vehicles.

Plaintiffs' evidence fails to establish class-wide causation because it does not attempt identify a specific shift in the demand for Vista Capable PCs. Dr. Leffler did not attempt any regression analysis, much less an econometric analysis of the impact of "Vista Capable" on demand. (Rummage Decl., Ex. I at 30:23-25, 31:6-14 (hereinafter "Leffler Dep.").) Dr. Leffler concedes he could "not think of a way that one could quantify in the needed way the number . . . of individuals who—who would not have bought a Vista Capable but not Premium Ready but for the program." (Leffler Dep. at 30:24-25, 31:1-3) (emphasis added) Without a sense of the number of consumers who changed their purchases as a result of WVC, Dr. Leffler did not "have the variable that does the change in demand." (Id. at 31:12-13.) Instead, Dr. Leffler offers exclusively testimonial evidence in support of his conclusion

ORDER DECERTIFYING CLASS – 10

that WVC artificially increased demand. (See Leffler Decl., Ex. A at ¶ 15.) Citing internal Microsoft documents that describe the goals of the WVC campaign, Dr. Leffler asserts there is "clear evidence that the Vista Capable Program increased demand for XP based PCs." (Id. at ¶¶ 15-17; see also Dkt. No. 267 at 13; MS-KELL 39, 25520.) The problem with Dr. Leffler's conclusion is that it merely assumes that Microsoft realized its goals. The Court cannot apply an assumption as class-wide proof of causation.

Dr. Leffler also bases his demand-side conclusion on testimonial evidence from some class members who claim they did not delay their PC purchases because of the WVC program. (Leffler Decl., Ex. A at ¶ 15, n. 29.) The problem with relying on this testimonial evidence is that it would extrapolate individual claims of "but for" causation to the entire class. This is precisely the issue the Court intended to avoid by certifying a class based a price inflation theory. See Kelley, 251 F.R.D. at 560.

In addition, Plaintiffs' evidence is problematic because it fails to isolate Vista Capable as a cause of a shift in demand in the market for non-Premium Ready PCs from other potential demand factors. Dr. Leffler concedes that he could not—with the data available—quantitatively isolate a demand effect in this dispute. (Leffler Dep. at 110:12-16.) This is particularly concerning because Microsoft does not sell PCs; it sells the operating system software pre-loaded on PCs sold by OEMs. It is therefore critical to Plaintiff's theory of proof to isolate Microsoft's purportedly deceptive efforts to increase demand from promotions OEMs had in the run up to the holiday season. (See Dkt. No. 252 at 20 (listing promotions manufacturers and retailers use to boost sales).) For instance, named plaintiff Dianne Kelley purchased her non-Premium Ready Dell laptop at a $200.00 discount during a temporary day-after-Thanksgiving promotion. (Rummage Class Decl., Ex. D at 38:9-18.) Dr. Leffler

ORDER DECERTIFYING CLASS – 11

recognizes that OEMs and retailers use marketing to influence demand, but did not study the efforts OEMs took during the class period. (Leffler Dep. at 142:14-19; 53:10-13, 54:6-12.) As the New Motor Vehicles court observed, the failure to isolate the impact on demand from the offensive conduct is critical for establishing "but for" causation. See 522 F.3d at 27. By failing to observe any isolated demand effect, Plaintiffs cannot offer the trier of fact any viable method for determining class-wide causation.

Plaintiffs attempt to distinguish New Motor Vehicles and McLaughlin on the strength of the testimonial evidence in this case. (See Dkt. No. 267 at 25 ("We have smoking gun documents. We have evidence of actual intent to commit a straight-over tackle tort.").) Plaintiffs do cite several documents where some Microsoft or OEM employees attribute sustained PC sales to the WVC program. (See Tilden Decl., Ex. A, MS-KELL 92849 (e-mail from Hewlett Packard employee) ("We've worked together [with OEMs] to make sure holiday sales of XP devices remain strong, through . . . Vista Capable."); see also MS-KELL 96313 (claiming the objective of the Express Upgrade program had been met).) While these statements observe the correlation between Vista Capable and sustained sales, the excerpted portions offer no context as to why or how the program succeeded. Moreover, none of these descriptions isolate the impact of WVC in comparison to other factors, such as the OEMs' holiday promotions. Plaintiffs' failure to adequately describe Vista Capable's impact on demand precludes a class-wide determination of CPA causation.

        ii.   Price Effects

Next, with respect to price effects, Microsoft argues that Plaintiffs cannot establish predominance because Dr. Leffler cannot isolate any single price effect caused by Vista Capable. In J.B.D.L. v. Wyeth-Ayerst Laboratories, Inc., 485 F.3d 880, 890 (6th Cir. 2007)

ORDER DECERTIFYING CLASS – 12

(en banc), the Sixth Circuit analyzed the challenges of demonstrating class-wide causation in the context of a Sherman Act claim against Wyeth. Plaintiffs there bore the burden of demonstrating that Wyeth's injurious conduct "was directly related to an increase in the price" of the product plaintiffs purchased. Id. at 888. The J.B.D.L. court analyzed an expert report (also authored by Dr. Leffler) arguing, based on "'basic' economic principles," that Wyeth achieved larger price increases than they would have absent the offensive conduct. Id. at 889-90. The court found that the report was defective because it did not "account for the numerous alternative explanations" for the demonstrated pricing data. Id. at 890.

In this case, Dr. Leffler states that regression analysis estimating the amount of price inflation is impracticable. (See Leffler Dep. at 30:17-31:09.) Instead, relying on discussions predating the Vista Capable campaign and deposition testimony from certain named Plaintiffs, Dr. Leffler concludes that "fundamental and non-controversial economic principles" imply an increase in price for non-Premium Ready PCs. (Leffler Decl., Ex. A at ¶ 17.) It does not appear as if Dr. Leffler tested this assumption against any real pricing data for PCs, nor did he survey consumers of non-Premium Ready PCs. (Leffler Dep. at 133:1-2, 137:2.) Dr. Leffler is certain that there was a "qualitative impact of the Vista Capable Program on the price of these PCs," even if he cannot even estimate a "quantitative impact." (Leffler Decl., Ex. A at ¶ 17, n. 34.) As in J.B.D.L., Dr. Leffler's analysis fails to provide an actual analysis of price effects or isolate the impact of WVC in comparison to other variables.

Viewing Plaintiffs' demand and price arguments as a whole, it is clear they rely on anecdotal evidence to demonstrate class-wide causation. If the Court accepts Plaintiffs' evidence, it runs the danger of violating the rationale of Indoor Billboard. See 162 Wn.2d at 84. The plaintiffs in Indoor Billboard wanted to enter evidence of their payment of a

ORDER DECERTIFYING CLASS – 13

challenged fee as evidence they were deceived by the charge on their bill. Id. at 78. In this matter, Plaintiffs offer evidence of an internal debate among Microsoft employees as evidence that Vista Capable caused their injuries. Both types of evidence are based on presumptions which cannot establish CPA causation. Plaintiffs have not shown that WVC was a cause in a "direct sequence" sense because they have not isolated other potential price and demand pressures. See WPI 310.07.

At this juncture, the Court believes the most appropriate remedy for Plaintiffs' failure to present evidence suggesting class-wide causation is decertification. Absent evidence of class-wide price inflation, Plaintiffs cannot demonstrate that common questions predominate over individual considerations. See Fed. R. Civ. P. 23(b)(3). Because it is now clear that Plaintiffs must demonstrate causation through evidence of individual deception, they can no longer rely on the economy and efficiency rationale for class treatment. See Zinser, 253 F.3d at 1189; Kelley, 251 F.R.D. at 556. The Court does not, however, believe that Microsoft is entitled to summary judgment on the issue. Pursuing their claims individually, Plaintiffs are not bound by the price inflation theory of causation. While Defendant has demonstrated the absence of evidence demonstrating class-wide causation, they have not demonstrated that no material issue of fact exists for Plaintiffs' individual claims. See Adickes, 398 U.S. at 159.

IV. CPA Damages

Microsoft further seeks decertification and summary judgment because of the type of class-wide damages Plaintiffs seek. (See Dkt. No. 252 at 26.) Plaintiffs respond by observing that courts have broad latitude in determining damages for CPA violations. (Dkt. No. 267 at 20 (citing Allen v. American Land Research, 95 Wn.2d 841, 845 (1981).) Because the Court

has determined that class-wide treatment is not appropriate on the issue of causation, it need not definitively determine the measure of damages in this case.

V.  Unjust Enrichment

The elements of an unjust enrichment claim in Washington are: (1) a benefit conferred on defendant by plaintiff; (2) appreciation or knowledge of that benefit; and, (3) that retention of the benefit would be unjust under the circumstances. Ballie Commc'ns Ltd. v. Trend Bus. Sys. Inc., 61 Wn.App. 151, 160 (1991). Even though unjust enrichment does not require proof of causation, this Court observed:

> [i]f the inequity is that Microsoft deceived consumers, the trier of fact will
> need to inquire whether Microsoft actually deceived consumers (an
> individualized inquiry) to determine whether any benefit conferred on
> Microsoft was unjust.

Kelley, 251 F.R.D. at 559. The Court determined that Plaintiffs could pursue a class-wide unjust enrichment claim because the question of whether Microsoft received "a benefit (increased or sustained XP license sales)" predominated. Id. at 559. In addition to the shortcomings of Dr. Leffler's price analysis detailed above, his calculations of unjust enrichment focus on the total number of XP licenses sold on computers that lacked Premium capability. (See Leffler Decl., Ex. A at ¶ 26 ("I have been asked by Plaintiffs' counsel to estimate the amount of revenue earned by Microsoft from the licensing of Windows XP on Vista Capable but not Vista Premium Ready PCs sold to Plaintiffs.").) This analysis is too broad because it does not isolate the increased or sustained XP license sales from those sales Defendant would have made without the Vista Capable program. Dr. Leffler's estimations, therefore, cannot address those issues which the Court stated predominate for the purposes of class treatment. Plaintiffs cannot demonstrate that class-wide issues predominate on their unjust enrichment claim. The Court believes decertification of Plaintiffs' unjust enrichment

ORDER DECERTIFYING CLASS – 15

claim is necessary.

VI. Motions to Strike

Plaintiffs' response to Microsoft's motion for summary judgment contains several motions to strike. (Dkt. No. 266 at 27.) The Court strikes the Muzzey Declaration. (Dkt. No. 257.) The Court also strikes Exhibit A of the Rummage Declaration (Dkt. No. 256-2) and the letter from Dell's counsel contained in Exhibit G of the Rummage Declaration. The Court has not considered any of these documents in reaching its decision.

**Conclusion**

Approximately one year ago, this Court certified a class in this matter and allowed Plaintiffs "to further develop their 'price inflation' theory." Kelley, 251 F.R.D. at 559. It is now apparent that class treatment is no longer appropriate. While the Court decertifies the class today, it is careful to note that this ruling makes no comment on the merits or veracity of Plaintiffs' individual CPA and unjust enrichment claims. Defendant is mistaken to equate Plaintiffs' failure to provide class-wide proof of causation with a failure to present an issue for trial. The Court orders as follows:

1. Defendant's motion for class decertification (Dkt. No. 252) is GRANTED; Plaintiffs may only pursue their CPA and unjust enrichment claims individually.
2. Defendant's motion for summary judgment (Dkt. No. 253) is DENIED.
3. Plaintiffs' motion for subclass certification and designation of class counsel (Dkt. No. 184) is MOOT.
4. Plaintiffs' motion for approval of a class notice program (Dkt. No. 186) is MOOT.
5. Plaintiffs' motion to strike is GRANTED.

It is SO ORDERED.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated this 18th day of February, 2009.

Marsha J. Pechman
United States District Judge