The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANNE L. KELLEY, et al., | ) |
| Plaintiffs, | ) Case No. C07-0475 MJP |
| v. | ) ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: WDDM |
| MICROSOFT CORPORATION, a Washington Corporation, | ) |
| Defendant. | ) |

This matter comes before the Court on Plaintiffs' motion for partial summary judgment. (Dkt. No. 163.) The Court has considered the motion, the response (Dkt. No. 212), the reply (Dkt. No. 229), and all other pertinent documents in the record. For the reasons set forth below, the Court DENIES Plaintiffs' motion for partial summary judgment.

**Background**

Plaintiffs challenge various aspects of Microsoft's marketing of its Windows Vista ("Vista") operating system.[1] (See Dkt. No. 139.) For the purposes of this motion, Plaintiffs

---

[1] In previous rulings, the Court has described the factual allegations in greater detail than it does today. (See Dkt. Nos. 128, 316.) In this Order, the Court focuses on the facts relevant to Plaintiffs' motion for partial summary judgment.

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1

argue Microsoft's decision regarding the technical requirements for Windows Vista Capable ("WVC" or "Vista Capable") personal computers ("PCs") constituted an "unfair or deceptive act or practice" under Washington's Consumer Protection Act ("CPA"). (Dkt. No. 163 at 5.)

PCs contain graphics processing units ("GPUs") that support different device drivers to manage the computer's video display. (Allepin Decl. ¶ 4; Wallent Decl. ¶¶ 2, 4.) The driver is a software program that allows an operating system, such as XP or Vista, to communicate with the GPU. (Wallent Decl. ¶ 4.) While actual device drivers are often written by the other equipment manufacturers (OEMs) that package the GPUs, Microsoft developed driver models to offer guidance for engineers who design the devices installed in Windows PCs. (Id. ¶¶ 4, 5.) The graphics device driver employed by Windows XP computers was the XP Driver Model ("XPDM"). The XPDM's successor was the Windows Device Driver Model (equivalently, "WDDM" or "LDDM"), which supposedly offered a number of improvements over previous iterations. (Id. ¶ 6 (crash protection, "GPU scheduler," security enhancements, updated plug-and-play).)

In April 2005, Microsoft indicated to OEMs that it would require WDDM compatibility in all Vista Capable PCs. (Birk Decl., Ex. A at MS-KELL 51052, 77578 (sealed).) Some Microsoft employees viewed the display driver standard to be a "core requirement" for Vista functionality. (Id. at MS-KELL 57590) Between June 2005 and January 2006, several OEMs asked Microsoft to alter its WDDM compatibility requirement. (Id. at MS-KELL 46467-68 (Dell), 77168-70 (Sony), 46017 (Fujitsu).) Later in January 2006, Microsoft changed the start date for the Vista Capable program from May 1, 2006 to April 1, 2006. (Id. at MS-KELL 75288.) Certain employees from Intel objected to the change given their supply of non-WDDM compatible Intel "915" chipsets. (Id. at MS-KELL 75291.) On January 31, 2006, Microsoft

informed OEMs that it would not require WDDM for Vista Capable PCs, thereby allowing the Intel 915 setup to qualify as Vista Capable. (See id. at MS-KELL 99307, 99308-10 (sealed).) Plaintiffs argue that this shift in the graphics requirement was deceptive because customers purchasing "Vista Capable" computers were guaranteed a WDDM-enabled Vista experience.

The Court notes that all the communications Plaintiffs cite were either internal Microsoft discussions or discussions with OEMs predating any public Vista Capable campaign. In contrast, Defendant presents its factual background with an emphasis on the disclosures made to the press and public beginning on May 18, 2006. (See Dkt. No. 212 at 7; Burk Decl., Ex. A.) A press release on that date listed the minimum technical requirements for Vista Capable PCs and "recommended" customers purchase WDDM-supported systems. (Burk Decl., Ex. A at 4.) Microsoft's "Get Ready" website stated that "Vista Premium Ready" PCs must have a graphic processor "that runs Windows Aero." (Therrien Decl., Ex. A (noting that Aero requires the WDDM driver).) The website further announced:

> Windows Vista is the first Windows operating system with a user experience that adapts to take advantage of the capabilities of the hardware on which it is installed. All Windows Vista Capable PCs will be able to run at least the core experiences of Windows Vista.

(Id.) Microsoft asserts that all Vista Capable PCs provided "core" Vista upgrades including improved organization, search capability, security, and system stability. (Id.; see also Burk Decl., Ex. A.) Defendant further catalogues the Vista features that non-WDDM Vista Capable PCs can operate. (Wallent Decl. ¶¶ 12-15 (listing improvements such as "the Windows 'Sidebar' and Gadgets," Windows Firewall, and Windows Resource Protection).)

**Discussion**

Plaintiffs move for summary judgment on one element for which they bear the burden of proof at trial: the issue of whether Microsoft's decisions regarding the WDDM requirement were unfair or deceptive acts under the CPA.

I. Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

II. Washington Consumer Protection Act

To prove that a defendant violated the CPA, a plaintiff must show:

(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business property, and (5) a causal link between the unfair or deceptive act and the injury suffered.

Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74 (2007); RCW 19.86.920. An act can be an "unfair or deceptive act or practice" if it has "the capacity to deceive a substantial portion of the public." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785 (1986).

The Court may decide "'whether the conduct constitutes an unfair or deceptive act . . . as a question of law'" where there is no disagreement about "what the parties did." Indoor Billboard, 162 Wn.2d at 75 (quoting Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150 (1997)). For instance, in Indoor Billboard, the Washington Supreme Court could decide the question as a matter of law because there was no dispute over how the defendant

listed the offensive fee.  Id.; see also Dwyer v. J.I. Kislak Mortgage Corp., 103 Wn. App. 542, 545-46 (2000) (parties agreed that defendant placed a "Misc Service Chgs" listing on fee statements and the court could decide whether the charge gave rise to a CPA violation as a matter of law); Griffith v. Centex Real Estate Corp., 93 Wn. App. 202, 214 (1998) ("Whether a party committed an act is reviewed for substantial evidence; but whether an act gives rise to a CPA violation is a question of law.").

Plaintiffs ask the Court to "determine that marketing PCs without WDDM as 'Vista Capable' is both unfair and deceptive . . . because WDDM was a 'core requirement.'"  (Dkt. No. 163 at 27.)  Defendant opposes summary judgment arguing (1) a material issue of fact exists as to the adequacy of Microsoft's disclosures regarding WDDM and (2) genuine issues of fact exist as to whether WDDM is a materially important Vista requirement.

      a.  Adequacy of Disclosures

Defendant argues that the Court should deny summary judgment because there are issues of fact relating to the adequacy of Microsoft's public disclosures.  (Dkt. No. 212 at 17.)  In the cases Plaintiffs cite, the courts could determine whether an act had the capacity to deceive because there were relatively straightforward statements made from defendants to plaintiffs.  See, e.g., Dwyer, 103 Wn. App. at 546 (fee statement placed on plaintiffs' bills); Travis v. Wash. Horse Breeders Assoc., Inc., 111 Wn.2d 396, 406 (1988) (publications in media describing a horse for sale).  The conduct in this matter, however, is an entire marketing campaign that, Plaintiffs allege, produced a "pattern of unfair and deceptive conduct pursuant to a common policy."  (Dkt. No. 139 at ¶ 8.2.)  Plaintiffs point to internal Microsoft discussions or discussions with OEMs and ask the Court to make the inference that these discussions render the "Vista Capable" label deceptive.  Defendant repeatedly points to its press release and "Get Ready"

website as examples of non-deceptive disclosure. (See Dkt. No. 212 at 17.) Plaintiffs characterize Microsoft's disclosure as deceptive because it "does not disclose the functionality gap between" Vista on computers with and without WDDM compatibility.[2] (Dkt. No. 229 at 9.)

Unlike the situations in Indoor Billboard or Dwyer, where there were single fee statements on a bill, here are there are a wide range of disclosures coming from a variety of sources. In the recent Order decertifying Plaintiffs' class and denying Microsoft's motion for summary judgment, the Court observed the relevance of Microsoft's internal debate and stated those communications "raise a serious question about whether customers were likely to be deceived by the WVC campaign." (Dkt. No. 316 at 8.) Today, the Court adds that—however relevant—these communications do not establish that Microsoft's actions, as a matter of law, had a capacity to deceive a substantial portion of the public. A trier of fact must analyze both internal discussions and public disclosure to determine whether the Vista Capable campaign had a capacity to deceive.

   b. Materiality of WDDM

Plaintiffs' motion is predicated on the assumption that WDDM is critical to Vista functionality and, by extension, that a non-WDDM computer running Vista Basic is not running a "real" Vista. Courts have held that deception depends on the misrepresentation of a "material" fact. See Stephens v. Omni Ins. Co., 128 Wn. App. 151, 166 (2007) (citations omitted). A fact may be "material" if, when communicated to the buyer, it would "render the goods unacceptable

---

[2] The Court observes that Plaintiffs now analyze Microsoft's actions regarding the WDDM requirement as a material omission rather than an affirmative misrepresentation. (See Dkt. No. 325 at 2 ("Microsoft's behind-the-scenes decision to deceptively drop the WDDM requirement without notice constitutes a material omission—a proximate cause concept Indoor Billboard does not address.").) Nevertheless, Microsoft's affirmative disclosure is relevant for the purposes of this motion because Plaintiffs question the veracity of Microsoft's disclaimer regarding core functionality on Vista Capable Computers. (See Dkt. No. 229 at 8.)

or, at least, substantially less desirable." Testo v. Russ Dunmire Oldsmobile, Inc., 16 Wn. App. 39, 51 (1976).

Plaintiffs offer no evidence about the acceptability of non-WDDM computers to consumers and, instead, analyze the issue from the perspective of concerned Microsoft employees. (See Dkt. No. 163 at 8.) Defendant points out that Dianne Kelley (the only named Plaintiff who purchased a non-WDDM PC), would not have been affected by disclosure of the WDDM decision because she did not know she was purchasing a Vista Capable computer at the time of sale. (Dkt. No. 212 at 23.) Plaintiffs' summary of Microsoft's employees' thoughts on the WDDM requirement is relevant, but not conclusive as to what an average consumer might believe. There is evidence in the record describing impact of WDDM on Vista functionality, but none of it offers the Court a concrete description of the performance gap between non-WDDM and WDDM Vista Basic. (See Allepin Decl. ¶¶ 5-6; Wallent Decl. ¶ 11.) Thus, there is a question of fact as to whether the WDDM requirement was material to the Vista experience. Summary judgment on the issue is inappropriate.

## Conclusion

Plaintiffs cannot establish that Microsoft's decision to drop the WDDM requirement was an unfair or deceptive act within the ambit of the CPA without establishing that WDDM was material to consumers. On the evidence presented, the Court cannot conclude that WDDM was material. The Court DENIES Plaintiffs' motion for partial summary judgment.

Dated this 18th day of March, 2009.

Marsha J. Pechman
United States District Judge