

| USCA DOCKET # (IF KNOWN) |
|---|
| 09-35699 |

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL: | DISTRICT: W.D. Wash. | JUDGE: Pechman |
|---|---|---|
| Dianne L. Kelley, Kenneth Hansen, Jim Walters, Matt Morales, Russell Hall and Don Schroder, Plaintiffs-Appellants, v. Microsoft Corporation, a Washington corporation, Defendant-Respondent. | DISTRICT COURT NUMBER: C07-0475MJP | |
| | DATE NOTICE OF APPEAL FILED: TBD | IS THIS A CROSS-APPEAL? ☐ YES |
| | IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY): 08-80030, 09-80070 | |

**BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:**

Plaintiffs assert that defendant violated the Washington Consumer Protection Act and was unjustly enriched by certifying PCs as "Vista Capable" when such PCs could only run Windows Vista Home Basic, and by dropping its WDDM requirement to facilitate the dumping of millions of soon-to-be obsolete so-called "Vista Capable" PCs on unsuspecting consumers.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

Whether the district court erred in declining to certify the action as a class action.

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST JUDGMENT MOTIONS):**

Schnall v. AT&T Wireless, 139 Wn. App. 280, 161 P.3d 395 (2007), review granted, 163 Wn.2d 1022, 185 P.3d 1194 (2008), pending in the Washington Supreme Court, may address relevant proximate cause issues.

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ Possibility of settlement

☒ Likelihood that intervening precedent will control outcome of appeal

☐ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify) _____

☐ Any other information relevant to the inclusion of this case in the Mediation Program _____

_____  ☐

Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |
| ☐ FEDERAL QUESTION | ☐ FINAL DECISION OF DISTRICT COURT | ☐ DEFAULT JUDGMENT | ☐ DAMAGES: SOUGHT $_____ AWARDED $_____ |
| ☒ DIVERSITY | ☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT | ☐ DISMISSAL/JURISDICTION ☐ DISMISSAL/MERITS | ☐ INJUNCTIONS: |
| ☐ OTHER (SPECIFY): | ☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY): | ☐ SUMMARY JUDGMENT ☐ JUDGMENT/COURT DECISION ☐ JUDGMENT/JURY VERDICT ☐ DECLARATORY JUDGMENT ☐ JUDGMENT AS A MATTER OF LAW | ☐ PRELIMINARY ☐ PERMANENT ☐ GRANTED ☐ DENIED |
| | ☒ OTHER (SPECIFY): Appeal pursuant to Fed. R. Civ. Pro. 23(f) | ☒ OTHER (SPECIFY): Order denying class certification | ☐ ATTORNEY FEES: SOUGHT $_____ AWARDED $_____ ☐ PENDING ☐ COSTS: $_____ |

## CERTIFICATION OF COUNSEL

I CERTIFY THAT:

1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.

2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).

3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.

4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

_____          _____
Signature                                    7/30/09
                                                    Date

## COUNSEL WHO COMPLETED THIS FORM

| | |
|---|---|
| NAME: | Ian S. Birk |
| FIRM: | Keller Rohrback L.L.P. |
| ADDRESS: | 1201 Third Avenue, Suite 3200, Seattle, WA 98101 |
| E-MAIL: | ibirk@kellerrohrback.com |
| TELEPHONE: | (206) 623-1900 |
| FAX: | (206) 623-3384 |

**✳THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL✳**
**✳IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS✳**

The Honorable Marsha J. Pechman

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

DIANNE KELLEY, et al.,                    )    Case No. C07-0475MJP
                                          )
10                                        )
                          Plaintiffs,     )    ORDER DENYING PLAINTIFFS'
11                                        )    MOTION FOR NARROWED
          v.                              )    CLASS CERTIFICATION
12                                        )
MICROSOFT CORPORATION, a Washington       )
13   corporation,                         )
                                          )
14                        Defendant.      )
                                          )
15                                        )
                                          )
16

17        This matter comes before the Court on Plaintiffs' motion for narrowed class

18   certification. (Dkt. No. 319.)  The Court has considered the motion, the response (Dkt. No.

19   326), the reply (Dkt. No. 330), and all other pertinent documents in the record.  The Court has

20   also considered the parties' presentations at oral argument on March 25, 2009.  For the

21   reasons set forth below, the Court DENIES Plaintiffs' motion for narrowed class certification.

22
                                   **Background**

23

24        Plaintiffs challenge various aspects of Microsoft's marketing of its Windows Vista

25   ("Vista") operating system. (Dkt. No. 139, Third Amended Compl. [hereinafter "Compl."]

26   ¶ 1.2.)  In early 2006, nearly a year before releasing Vista, Microsoft authorized original

27

equipment manufacturers ("OEMs") to place a sticker on personal computers ("PCs") indicating they were "Windows Vista Capable" ("WVC" or "Vista Capable") PCs. (Compl. ¶ 4.3.) At the time, OEMs sold computers with the Windows XP operating system. Plaintiffs allege that a large number of PCs labeled WVC can only operate "Windows Home Basic" ("Basic"), which lacks certain core features of Vista. Plaintiffs further challenge Microsoft's "Express Upgrade Guarantee Program," which allowed customers purchasing WVC PCs to upgrade from Windows XP to Vista for little to no cost. (Compl. ¶ 4.5.)

Microsoft released four versions of Vista: Basic, Premium, Business, and Ultimate. Plaintiffs purchased computers that had "Vista Capable" labels, but did not have "Premium Ready" labels. Vista Capable PCs that did not have the Premium Ready designation could, in general, only run Basic. Plaintiffs allege that Basic cannot fairly be called "The Real Vista." (Compl. ¶ 4.4.) Defendant responds that Basic provides customers with a number of benefits over XP and is a part of the Vista line. (Id. at 7-8; Dkt. No. 292 at 5.) Moreover, Defendant points to its own marketing materials and argues that the distinctions between levels of Vista were made clear throughout the Vista Capable campaign. (Dkt. No. 253 at 9-10; Tindall Decl., Exs. B, C, D.)

Plaintiffs initially asserted four causes of action; however, they voluntarily dismissed their breach of contract claim and the Court dismissed their Magnusson-Moss Warranty Act Claim. (See Dkt. Nos. 29, 39.) Plaintiffs moved for class certification on their remaining two causes of action: (1) a claim under Washington Consumer Protection Act ("CPA") or other state consumer protection acts and (2) a claim for unjust enrichment. (Dkt. No. 65.) On February 22, 2008, after determining that Washington law applied to the dispute, this Court certified a class comprised of:

> All persons and entities residing in the United States who purchased a personal computer certified by Microsoft as "Windows Vista Capable" and not also bearing the "Premium Ready" designation.
>
> Excluded from this class are: (a) Defendant, any entity in which defendant has a controlling interest or which has a controlling interest in defendant; (b) Defendant's employees, agents, predecessors, successors or assigns; and (c) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

Kelley v. Microsoft Corp., 251 F.R.D. 544, 560 (W.D. Wash. 2008).

The Washington Supreme Court's decision in Indoor Billboard/Wash., Inc. v Integra Telecom of Wash., Inc., 162 Wn.2d 59 (2007), informed this Court's analysis of predominance for the purposes of Plaintiffs' CPA claim. In Indoor Billboard, the court held, in cases involving an affirmative misrepresentation of fact, a plaintiff must show that the defendant's misrepresentation proximately caused plaintiff's injury. 162 Wn.2d at 83-84 ("A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."). While the Court agreed with Defendant that a deception-based theory of causation would require the trier of fact to determine whether individual class members were actually deceived, the Court found that common issues could predominate with an alternative theory of causation. Id. at 558. The Court allowed the class to proceed under a "price inflation" theory of causation where Plaintiffs would demonstrate a CPA violation by showing:

> Microsoft artificially inflated demand for computers only capable of running Vista Home Basic, causing Plaintiffs to pay more for those PCs than they would have without the 'Windows Vista Capable' campaign.

Id. Similarly, the Court ruled that "Plaintiffs may maintain an unjust enrichment claim on the theory that Microsoft's marketing campaign artificially inflated the demand for and price of 'Windows Vista Capable' PCs." Id. at 559 (further noting that common issues predominated

ORDER DENYING PLAINTIFFS' MOTION
FOR NARROWED CLASS CERTIFICATION - 3

1    as to whether Defendant retained a benefit, whether Defendant knew of that benefit, and

2    whether Plaintiffs paid more than they should have for WVC PCs).

3           After the parties concluded discovery and exchanged expert reports, Defendant moved

4    for decertification and summary judgment arguing Plaintiffs had failed to develop their price

5    inflation theory. (Dkt. No. 252 at 1.) The Court granted the motion for decertification

6    because Plaintiffs failed to identify any demand or price effects attributable to the "Vista

7    Capable" designation. (Dkt. No. 316 at 10-14.) Plaintiffs' expert, Dr. Keith Leffler,

8    determined he could not numerically calculate the number of individuals "who would not

9    have bought a Vista Capable but not Premium Ready [computer] but for the program."

10   (Rummage Decl., Ex. I. at 30:24-25, 31:1-3.) Instead, without attempting a regression-type

11

12   analysis, Dr. Leffler drew his conclusions from testimonial evidence. (See Leffler Decl.) The

13   Court reasoned that Plaintiffs' anecdotal evidence of price inflation could not demonstrate

14   that Vista Capable was a cause which "in direct sequence" produced Plaintiffs' injury. (Dkt.

15   No. 316 at 8 (quoting Wash. Pattern Jury Instruction ("WPI") 310.07).) Without evidence of

16   class-wide price inflation, Plaintiffs could not demonstrate that common questions

17   predominated for the purposes of their CPA claim. (Id. at 14.) Similarly, the Court found that

18   common issues did not predominate for Plaintiffs' unjust enrichment claim because Dr.

19   Leffler did not isolate the benefit Microsoft retained as a result of the Vista Capable program.

20   (Id. at 15.) In light of the Court's Order decertifying the class, Plaintiffs have filed a motion

21   to certify two narrowed classes that purportedly cure the deficiencies of the initial class.

22           First, Plaintiffs ask the Court to certify an "Express Upgrade Guarantee" class of

23

24   individuals who purchased a Vista Capable computer and participated in the Express Upgrade

25

26

27

ORDER DENYING PLAINTIFFS' MOTION
FOR NARROWED CLASS CERTIFICATION - 4

Program.[1]  The Express Upgrade Program allowed purchasers of Vista Capable PCs to receive an upgrade to Vista when Microsoft released the new operating system.  (See Dkt. No. 220 at 3.)  Plaintiffs complain that, because these consumers were only able to upgrade to Basic, they did not receive the "real" Vista.  The Court previously observed that the Express Upgrade group may suffer a different injury than individuals who purchased a Vista Capable PC without participating in the program.  See Kelley, 251 F.R.D. at 555 ("The 'Express Upgrade' program participants' injury is correlated to the amount spent on the cost of the upgrade program, not the allegedly inflated price of the 'Windows Vista Capable' PCs.").  Plaintiffs claim participation in the program "is common, class-wide evidence that each class member intended to purchase a PC that had the capability to run Vista," which would satisfy Indoor Billboard's proximate cause requirement.  (Dkt. No. 319 at 4.)

Second, Plaintiffs urge the Court to certify a "WDDM" class of individuals who purchased Vista Capable computers lacking the capability to run the Windows Device Driver Model ("WDDM") graphics driver.[2]  (Dkt. No. 319 at 10.)  The driver is a software program that allows an operating system, such as XP or Vista, to communicate with the computer's graphics processing unit.  (Wallent Decl. ¶ 4.)  Microsoft initially instructed OEMs that Vista Capable computers would have to support WDDM, but it later dropped the requirement.  (Birk Decl., Ex. A at MS-KELL 51052; 99307.)  The Court recently denied Plaintiffs' motion

---

[1] Plaintiffs propose the following Express Upgrade class: "All persons and entities residing in the United States who: (a) purchased a personal computer certified by Microsoft as 'Windows Vista Capable;' (b) participated in Microsoft's Express Upgrade Guarantee program to Windows Vista; and (c) received a software upgrade to Windows Vista Home Basic." (Dkt. No. 319 at 9.)

[2] Plaintiffs propose the following WDDM class: "All persons and entities residing in the United States who purchased a personal computer that was certified by Microsoft as 'Windows Vista Capable,' but lacked the ability to support Microsoft's Windows Device Driver Model ("WDDM")." (Dkt. No. 319 at 10.)

for partial summary judgment declining to rule as a matter of law that Microsoft's decision to drop the WDDM requirement was an "unfair or deceptive act" under the CPA. (Dkt. No. 339.)  Plaintiffs claim non-WDDM compatible computers lack the ability to run all the features in Basic. (Dkt. No. 319 at 5 ("Their Vista Home Basic was not even the 'real' Vista Home Basic.").)  Plaintiffs characterize the WDDM requirement shift as a series of material omissions which, unlike affirmative misrepresentations, do not need to fulfill Indoor Billboard's proximate cause requirement.

## Discussion

Class certification is governed by Federal Rule of Civil Procedure 23.  The party seeking class certification bears the burden of demonstrating that he or she has met all for requirements in Rule 23(a) and at least one of the requirements of Rule 23(b).  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  To satisfy subsection (a), Plaintiffs must show (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  Plaintiffs assert they satisfy Rule 23(b)(3), which requires the Court to find:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3) (further listing factors relevant to the inquiry).   For the purposes of this motion, the parties focus on the predominance requirement of Fed. R. Civ. P. 23(b)(3). (See Dkt. No. 319 at 14; Dkt. No. 326 at 13.)

ORDER DENYING PLAINTIFFS'MOTION
FOR NARROWED CLASS CERTIFICATION - 6

I.    Timeliness

As a preliminary matter, Defendant argues the Court should not reach the merits of Plaintiffs' motion because it is untimely. (Dkt. No. 326 at 7-8.) While the question of certification must normally be settled "[a]t an early practicable time after a person sues," the Court is free to amend an order granting or denying certification at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(A)-(C). Defendant urges the Court to deny Plaintiffs' motion as a prudential matter because Plaintiffs have not pointed to any new factual developments justifying reconsideration. (Dkt. No. 326 at 7.) The Court finds that its decision to decertify the class (Dkt. No. 316) is a unique development that justifies consideration of alternative class certification.

II.    Predominance

The parties appear to agree that the certification question turns on the predominance requirement of Rule 23(b)(3). Rule 23(b)(3) classes must demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The Ninth Circuit has explained: "[i]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Zinser, 253 F.3d at 1189 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986) (hereinafter "Wright, Miller & Kane, Federal Prac. & Proc.")). There is no single "qualitative or quantitative test" for predominance; rather, the Court pursues a "pragmatic" inquiry as to whether "common questions represent a significant aspect of the case." 7AA Wright, Miller & Kane, Federal Prac. & Proc. § 1778 (3d ed. 2005) (collecting cases).

Though the parties do not address the substantive elements of Plaintiffs' claims in

their most recent round of briefs, the Court must, of course, analyze the issue of predominance in the context of Plaintiffs' burden. See Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996) (a court must be aware of the "applicable substantive law" in determining predominance). After setting out the elements of each claim, the Court will turn to the issue of predominance for each proposed class.

      a. Washington's Consumer Protection Act

To prevail on a CPA claim, a plaintiff must show: (1) the defendant engaged in an unfair or deceptive act; (2) the act occurred in the conduct of defendant's trade; (3) the practice affected the public interest; (4) plaintiff was injured; and (5) the defendant's act or practice was the proximate cause of plaintiff's injury. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 787-93 (1986); see also WPI 310.01. An act is "unfair or deceptive" if it "had the capacity to deceive a substantial portion of the public." Hangman Ridge, 105 Wn.2d at 785; see also WPI 310.08. For cases involving affirmative misrepresentations, a plaintiff "must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Indoor Billboard, 162 Wn.2d at 84 (adopting WPI 15.01).

      b. Unjust Enrichment

To state a claim for unjust enrichment in Washington, a plaintiff must show: (1) plaintiff conferred a benefit upon defendant; (2) defendant had an "appreciation or knowledge" of the benefit; and (3) that retention of the benefit would be unjust under the circumstances. Ballie Commc'ns Ltd. v Trend Bus. Sys. Inc., 61 Wn. App. 151, 160 (1991). Even though unjust enrichment does not require proof of causation, this Court observed:

> [i]f the inequity is that Microsoft deceived consumers, the trier of fact will
> need to inquire whether Microsoft actually deceived consumers (an

individualized inquiry) to determine whether any benefit conferred on Microsoft was unjust.

Kelley, 251 F.R.D. at 559.

    c.  Proposed Express Upgrade Class

Plaintiffs contend common questions predominate with respect to an "Express Upgrade" class because, merely by participating in the program, customers have demonstrated a "subjective desire to obtain Vista." (Dkt. No. 319 at 14.) They argue that they can demonstrate actual reliance, which is sufficient to establish causation. (Id. (citing Schnall v. AT&T Wireless Services, Inc., 139 Wn. App. 280, 292 (2008).) Under their theory, common issues predominate by virtue of Plaintiffs' upgrades alone. The Court disagrees.

First, Plaintiffs' argument is misplaced because it conflates Plaintiffs' decisions to upgrade their PCs with common evidence of causation. In Indoor Billboard, the Washington Supreme Court rejected plaintiffs' argument that a payment of an invoice was "per se sufficient" to demonstrate a causal link between the defendant's misrepresentations and the alleged injury. 162 Wn.2d at 83-84. Instead, the Court found that "payment of the invoice may be considered with all other relevant evidence on the issue of proximate cause." Id. at 84. As in Indoor Billboard, Plaintiffs' decision to participate in the Express Upgrade program is relevant to the question of causation, but it is not the most important evidence on the issue. See 7AA Wright, Miller & Kane, Federal Prac. & Proc. § 1778 ("it is not sufficient that common questions merely exist, as is true for the purposes of Rule 23(a)(2) . . ."). As Defendant points out, a host of individualized questions exist regarding Plaintiffs' personal knowledge about the Express Upgrade Program. (Dkt. No. 326 at 13-15 (analyzing the disclosures each of the named Plaintiffs received with respect to Express Upgrade).) Even if Plaintiffs all participated in the program to receive an upgrade, the individual Plaintiffs'

ORDER DENYING PLAINTIFFS' MOTION
FOR NARROWED CLASS CERTIFICATION - 9

different knowledge about the upgrade is the dominant inquiry.  Plaintiffs who participated in the Express Upgrade Program knowing they would only upgrade to Vista Home Basic may not have suffered any injury at all.

Second, Plaintiffs' proposed Express Upgrade class suffers from the same flaws as its original deception-theory based Vista Capable class.  Plaintiffs assert Microsoft deceived class members into purchasing a version of Vista that was not the "real Vista."  (Dkt. No. 319 at 14.)  The Court found that Plaintiffs' original deception-based Vista class was defective:

> A deception-based theory of causation would necessarily require the trier of fact here to determine whether individual class members were actually deceived . . . a trier of fact would want to know (1) whether the consumer saw the "Windows Vista Capable" sticker; (2) whether the consumer was aware, through other education or advertising, of the differences between Home Basic and Vista Premium; **(3) whether the consumer only wanted Home Basic or was interested in a more sophisticated operating system**; and (4) whether the consumer's choice was predominately informed by price.  **Because an individualized analysis is necessary to determine what role Microsoft's "Windows Vista Capable" marketing program played in each class members' purchasing decision**, individualized issues predominate and class treatment is inappropriate for a CPA claim utilizing a deception-based theory of causation.

Kelley, 251 F.R.D. at 558 (emphasis added).  Plaintiffs have not demonstrated how this analysis fails to apply with equal force for the Express Upgrade class.  As before, Plaintiffs' underlying claim is that they were deceived by the Vista marketing campaign.  Because evidence relating to each Plaintiffs' consumer choice is not amenable to class-wide analysis, an Express Upgrade class is inappropriate.  Likewise, common questions cannot predominate on Plaintiffs' unjust enrichment claim because the question of inequity turns on "whether Microsoft actually deceived consumers (an individualized inquiry)."  Id. at 559.

Third, Plaintiffs' analogy to Klay v. Humana, 382 F.3d 1241 (11th Cir. 2004), is unpersuasive.  In Klay, the Eleventh Circuit affirmed certification of a class of physicians

ORDER DENYING PLAINTIFFS' MOTION
FOR NARROWED CLASS CERTIFICATION - 10

pursuing RICO claims against HMOs accused of underpaying for medical care provided. 382 F.3d at 1246-47. Even though Plaintiffs were required to demonstrate individual reliance, the court found common issues predominated because "based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class." Id. at 1259. Unlike the plaintiffs in Klay, who were all motivated by a common purpose of being paid by the HMOs, Plaintiffs here may have been motivated by Microsoft's representations or by the fact that an upgrade was bundled with their purchase. (See Dkt. No. 220 at 2-3.) Furthermore, the circumstantial evidence in Klay was sufficient because the physicians entered into a contract for services with the HMOs. 382 F.3d at 1259. The relationship between Plaintiffs and Microsoft does not approach the depth necessary to support similar circumstantial evidence.

Common issues do not predominate with respect to Plaintiffs' proposed Express Upgrade class because the class suffers from the same defects as the original deception-theory class. For the purposes of a CPA claim, the predominant questions would relate to Plaintiffs' subjective understanding of the Express Upgrade program and their individual belief in Microsoft's Vista advertising campaign. Such proof is not amenable to class-wide treatment. Similarly, the proposed class cannot assert an unjust enrichment claim because the trier of fact would have to determine whether Microsoft's profit was inequitable in light of any actual individual deception.

d.  Proposed WDDM Class

Plaintiffs frame their WDDM claim as one that "primarily" alleges material omissions

of fact, rather than affirmative misrepresentations.[3] (Dkt. No. 319 at 15.)  Indoor Billboard's

causation analysis does not apply to cases of material omissions.  See 162 Wn.2d at 81

(distinguishing between "failure to disclose" cases and "affirmative misrepresentation" cases).

In consumer fraud cases alleging omissions of fact, courts have recognized that it is "virtually

impossible to prove reliance."  Schnall, 139 Wn. App. at 291 (quoting Morris v. Int'l Yogurt

Co., 107 Wn.2d 314, 328 (1986)).  Analogizing to securities cases where reliance may be

presumed upon proof that an omission is material, some courts have adopted a rebuttable

presumption of reliance in the consumer protection context.  See Grays Harbor Adventist

Christian School v. Carrier Corp., 242 F.R.D. 568, 573 (W.D. Wash. 2007) (Leighton, J.)

(citing Binder v. Gillespie, 184 F.2d 1059, 1064 (9th Cir. 1999)).   The presumption of

reliance shifts the focus from the plaintiffs' subjective knowledge to what a defendant

"allegedly concealed in light of what consumers reasonably expect."  Id. at 573.  Thus, under

Plaintiffs' theory, common issues predominate because the presumption of reliance creates an

objective inquiry. (Dkt. No. 330 at 9.)

   In Schnall, a Washington Court of Appeals reversed a trial court's denial of class

certification where plaintiffs alleged AT&T failed to disclose the true nature of fees charged

for wireless service.  139 Wn. App. at 291-92.  The Schnall court reasoned that, if plaintiffs

could only prove causation through reliance, "many meritorious cases could not be brought."

---

[3] There may be some tension between Plaintiffs' previous motion for summary judgment (Dkt. No. 163) and their current characterization of the WDDM class as one primarily involving omissions. In their prior motion, Plaintiffs urged the Court to find Microsoft's actions related to WDDM were deceptive or unfair within the scope of the CPA by analogizing to a number of cases involving affirmative misrepresentations. (Dkt. No. 163 at 27 (citing Dwyer v. J.I. Kislak Mortgage Corp., 103 Wn. App. 542, 545-46 (2000); Griffith v. Centex Real Estate Corp., 93 Wn. App. 202, 214 (1998); Travis v. Wash. Horse Breeders Assoc., Inc., 111 Wn.2d 396, 406 (1988) (representations by the seller that a horse was "one of the best yearlings in the state")).)

<u>Id.</u> at 291. The <u>Schnall</u> court never formally adopted a presumption of reliance; it merely held that reliance was not the exclusive method of establishing causation.[4] <u>Id.</u> In <u>Morris v. Int'l Yogurt Co.</u>, the Washington Supreme Court adopted a rebuttable presumption of reliance in an action under the Franchise Investment Protection Act where a plaintiff demonstrated defendant's omissions were material. 107 Wn.2d 314, 40-41 (1986) (citing <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128, 153-54 (1972) (adopting a presumption of reliance in Securities § 10b-5 material omission cases)). The <u>Morris</u> court reasoned: "a plaintiff who was required to prove reliance would have to show that he believed the opposite of the omitted fact, and this would be practically impossible to prove." <u>Id.</u> at 41 (citations omitted); <u>see also</u> <u>Blackie v. Barrack</u>, 524 F.2d 891, 908 (9th Cir. 1975) (reliance requirement in a 10b-5 securities case was "redundant [because] the same causal nexus can be adequately established indirectly, by proof of materiality coupled with the common sense that a stock purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock."). For the presumption to apply, Plaintiffs' claim must "primarily" involve omissions and the omissions must be material. <u>See</u> <u>Affiliated Ute Citizens</u>, 408 U.S. at 153 ("Under the circumstances of this case, involving primarily a failure to disclose . . . [a]ll that is necessary is that the facts withheld be material . . .").

      i.  Does Plaintiffs' class "primarily" allege omissions?

     The Court must determine whether Plaintiffs' allegations center on material omissions or affirmative misrepresentations. <u>See</u> <u>Grays Harbor</u>, 242 F.R.D. at 573. There is a fine,

---

[4] <u>Schnall</u> relies heavily on <u>Picket v. Holland America Line-Westours, Inc.</u>, 101 Wn. App. 901 (2000) ("<u>Picket I</u>"). The Court recognizes that the Washington Supreme Court has cast doubt on <u>Picket I</u>'s reasoning. <u>See</u> <u>Indoor Billboard</u>, 162 Wn.2d at 81 ("[t]his court subsequently reversed . . . finding <u>Picket I</u>'s analysis of causation suspect. Although we agree the CPA is to be liberally construed, <u>Picket I</u> carries this construction too far.").

perhaps imperceptible, line between what constitutes an affirmative misstatement and a material omission. (See Dkt. No. 326 at 21.) In the securities context, courts have recognized that omissions and misrepresentations are not exclusive categories. Some appear to argue that it is a distinction without substance. In <u>Binder,</u> for instance, Judge Reinhardt noted that "it is equally difficult to establish reliance on a misrepresentation and on an omission." See Binder, 184 F.3d at 1069 (Reinhardt, J., dissenting) (quoting <u>Little v. First California Co.,</u> 532 F.2d 1302, 1304 n.4 (9th Cir. 1976) ("All misrepresentations are also nondisclosures, at least to the extent that there is a failure to disclose which facts in the representation are not true."));[5] <u>see also</u> Jennifer Rust Murray, Comment, <u>Proving Cause in Fact Under Washington's Consumer Protection Act: The Case for a Rebuttable Presumption of Reliance,</u> 80 Wash. L. Rev. 245, 246 (2005) (arguing that courts should apply a presumption of reliance in cases involving affirmative misrepresentations). Nevertheless, the weight of authority favors applying the presumption only in cases that primarily allege omissions. See Binder, 184 F.3d at 1064. In "mixed case" instances where plaintiffs complain of both omissions and misrepresentations,

---

[5] The <u>Little</u> court also offered the following insight:

There is a true dilemma presented in a case in which there has been a general representation from which material facts are omitted and there is no independent alternative ground, such as an "open market" situation, that justifies dispensing with a requirement that plaintiffs show individual reliance. On the one hand, if individual proof of reliance is required of plaintiffs who have in fact relied to their detriment, but whose claims are not large enough to support the costs of such proof, then these plaintiffs will go uncompensated. On the other hand, if proof of reliance is not required, defendants are forced either to compensate plaintiffs who have not relied and whose harm defendants did not cause or to attempt the difficult, and perhaps impossible, task of rebutting plaintiffs' demonstration of causation by attempting to show no reliance. It is not clear to us that one horn of the dilemma is clearly preferable to the other. But in any event, we feel the conceptual problem should be explicitly recognized as one in which there is no completely just solution.

532 F.2d at 1304, n.4 (internal citations omitted); <u>but see</u> Martin H. Redish & Clifford W. Berlow, <u>The Class Action as Political Theory</u>, 85 Wash. U. L. Rev. 753, 811-12 (2007) (arguing that class treatment for certain types of nominal value classes creates the risk that a procedural rule, Rule 23, could trump substantive law).

ORDER DENYING PLAINTIFFS' MOTION
FOR NARROWED CLASS CERTIFICATION - 14

courts have declined to abide by the presumption of reliance. See Poulos v. Caesars World, Inc., 379 F.3d 654, 666 (9th Cir. 2004) (civil RICO claims alleging a mix of omissions and misrepresentations were not entitled to a presumption).

In Grays Harbor, Judge Leighton certified a CPA class of purchasers of furnaces who alleged that the manufacturer concealed a known design defect. 242 F.R.D. at 573. Because the Grays Harbor allegations were "primarily" based on omissions, the court applied a presumption of reliance. Id. Plaintiffs analogize to Grays Harbor and argue that disclosure of the WDDM requirement was a material omission because Microsoft failed to tell purchasers that it had originally planned on requiring WDDM compatibility. (See Dkt. No. 330 at 11.) Defendant asserts that, even if Microsoft's failure to disclose WDDM is an omission, it is only an omission given the affirmative statement presented by the "Windows Vista Capable" sticker.   (Dkt. No. 326 at 21.)

Plaintiffs' characterization of their proposed class is instructive. They ask the Court to certify a class of individuals "who purchased a personal computer that was **certified by Microsoft** as 'Windows Vista Capable,' but lacked the ability to support" the WDDM driver. (Dkt. No. 319 at 10 (emphasis added).)   Microsoft's alleged omission arises only in the context of its decision to label certain PCs as "Vista Capable." If Plaintiffs' central complaint is that the computers were not truly "Vista Capable" because they could not operate the WDDM driver, then their complaint is essentially that the label was false. In other words, the crux of Plaintiffs' allegation is the "Vista Capable" affirmative misrepresentation.

Plaintiffs offer a laundry list of omissions related to WDDM in an attempt to demonstrate that this is case primarily about omissions. (Dkt. No. 330 at 8.) The Court believes the primacy issue cannot be decided simply by comparing the number of alleged

1   omissions to the number of alleged misrepresentations. An appropriate analysis must look to

2   the "best" characterization of the claims. See Poulos, 379 F.3d at 666. Here, they all center

3   on the claim that computers lacking WDDM compatibility cannot achieve full Vista Basic

4   functionality. This is only potentially deceptive in the context of Microsoft's "Vista

5   Capable" label. Without the label, there is nothing deceptive or unfair about selling non-

6   WDDM compatible computers. Because the fulcrum of Plaintiffs' claim is the label and

7   because the label is must accurately characterized as an affirmative representation, Plaintiffs

8   case does not "primarily" allege omissions. See Binder, 184 F.3d at 1064. It would therefore

9

10  be inappropriate to apply a rebuttable presumption of reliance.

11           ii.  Is WDDM a material requirement?

12           Even if the WDDM class could fairly be characterized as one "primarily" asserting

13  omissions, Plaintiffs have not established that a failure to disclose the WDDM decision was a

14  material omission. In securities cases, a plaintiff is only entitled to the presumption after it

15  establishes the materiality of the omission. See 4 Thomas L. Hazen, Treatise on the Law of

16  Securities Regulation § 12.10[4] (4th ed. 2009). The Court cannot presume that a computer's

17  inability to run the WDDM driver is a material concern for the entire proposed class.

18

19           The problem can most accurately be described as a question of scope. Plaintiffs

20  propose a class of individuals who purchased "Vista Capable" computers lacking WDDM

21  compatibility without distinction between those who have actually upgraded to Vista and

22  those who have not. (See Dkt. No. 326 at 16.) Those consumers who purchased Vista

23  Capable PCs, but continue to run Windows XP have suffered no loss of functionality in the

24  absence of WDDM capability. Computers running Windows XP run the XPDM model, not

25  the WDDM driver. (Wallent Decl. ¶ 8.) Plaintiff Dianne Kelley, the only named party for the

26

27

ORDER DENYING PLAINTIFFS' MOTION
FOR NARROWED CLASS CERTIFICATION - 16

proposed class, claims she has suffered harm identical to other class members: she purchased "a so-called 'Vista Capable' PC that lacked the material benefits of WDDM." (Dkt. No. 319 at 18.) There is no evidence in the record that she ever upgraded to Basic. Plaintiff Kelley's loss related to WDDM can only be characterized as a hypothetical future loss if she ever chooses to upgrade. For those Plaintiffs, like Ms. Kelley, who did not upgrade, the WDDM requirement is simply immaterial.

Plaintiffs' argument that common issues predominate for the proposed WDDM class rests entirely upon the presumption of reliance. (See Dkt. No. 319 at 15-16.) The presumption is inappropriate in this case because the WDDM class does not "primarily" allege omissions and because Plaintiffs have not demonstrated that WDDM was a material issue for the proposed class members. Plaintiffs cannot demonstrate predominance for their proposed CPA class because an individualized analysis is necessary to determine what role the various omissions and misstatements had in each member's purchasing decision. See Kelley, 251 F.R.D. at 558. Likewise, individualized questions predominate on the unjust enrichment claim because any inequity depends on whether Microsoft actually deceived individual consumers.

III.    Certification of Questions

After oral argument, Plaintiffs filed proposed questions the Court could certify to the Washington Supreme Court. (Dkt. No. 352 at 2.) The Court agrees with Defendant that it would be futile to ask the Washington Supreme Court whether the presumption applied in Affiliated Ute and its progeny would apply under Washington's CPA. (Dkt. No. 353 at 2.) The Court has already determined that, even if the presumption should be applied in the CPA context, Plaintiffs could not rely on it because their WDDM claim does not "primarily" allege

ORDER DENYING PLAINTIFFS'MOTION
FOR NARROWED CLASS CERTIFICATION - 17

omissions.  The Court declines to certify a question.

**Conclusion**

The Court recognizes that Washington's CPA presents an odd dichotomy.  On one hand, the Washington Supreme Court noted that "[c]lass actions are vital where the damage to any individual consumer is nominal," because "[w]ithout class actions, many meritorious claims would never be brought.  <u>Scott v. Cingular Wireless</u>, 160 Wn.2d 843, 853 (2007); <u>see also</u> RCW 19.86.920 (". . . this act shall be liberally construed that its beneficial purposes may be served.")  On the other hand, <u>Indoor Billboard</u>'s proximate causation requirement casts doubt on the ability of consumer plaintiffs to ever demonstrate class-wide causation.  162 Wn.2d at 83-84.  Until the Washington Supreme Court speaks more precisely on the issue, this Court is bound by <u>Indoor Billboard</u>.  Plaintiffs have failed to demonstrate how, under <u>Indoor Billboard</u>, either the Express Upgrade or WDDM class could satisfy the predominance requirement of Fed. R. Civ. P. 23(b)(3).  Moreover, common issues do not predominate on the proposed classes' unjust enrichment claims.  The Court therefore DENIES Plaintiffs' motion for narrowed certification.  (Dkt. No. 319.)  The parties are directed to meet and confer on whether they wish to reset a trial date for the remaining individual claims or if they wish to file for leave to appeal.  The Court asks the parties to respond within ten (10) days of this Order.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

Dated this 10th day of April, 2009.

_Marsha J. Pechman_
Marsha J. Pechman
United States District Judge

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIANNE L. KELLEY, et al.,                    )
                                             )
                           Plaintiffs,       )    No. C07-0475 MJP
                                             )
        v.                                   )    REPRESENTATION STATEMENT
                                             )
MICROSOFT CORPORATION, a Washington )
Corporation,                                 )
                                             )
                           Defendant.        )
_____)

Pursuant to Fed. R. App. 12(b) and Circuit Rule 3-2, counsel for the plaintiffs submit the

following Representation Statement in connection with the plaintiffs' appeal of the above-

referenced matter:

**<u>Counsel for Plaintiffs Dianne Kelley, Russell Hall, Kenneth Hansen, Matt Morales, Don Schroder and Jim Walters:</u>**

Mr. Jeffrey I. Tilden
Mr. Jeffrey M. Thomas
Mr. Mark Wilner
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
jthomas@gordon.tilden.com
jtilden@gordontilden.com
mwilner@gordontilden.com

REPRESENTATION STATEMENT
(C07-0475 MJP) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\27673\1\PLEADINGS\REPRESENTATION.LIST.DOC

1
2  Mr. William C. Smart
   Mr. Ian S. Birk
3  Keller Rohrback L.L.P.
   1201 Third Avenue, Suite 3200
4  Seattle, WA 98101
   Business      (206) 623-1900
5  Fax           (206) 623-3384
   wsmart@kellerrohrback.com
6  ibirk@kellerrohrback.com

7

8  **<u>Counsel for Defendant Microsoft Corporation:</u>**

9  Mr. Stephen M. Rummage, WSBA #11168
   Ms. Cassandra L. Kinkead, WSBA #22845
10 Mr. Charles S. Wright, WSBA #31940
   Davis Wright Tremaine LLP
11 1201 Third Avenue Suite 2200
   Seattle, Washington 98101-3045
12 steverummage@dwt.com
   cassandrakinkead@dwt.com
13 charleswright@dwt.com

14

15 Mr. Charles B. Casper
   Montgomery, McCracken, Walker & Rhoads
16 123 South Broad Street
   Philadelphia, PA 19109
17 ccasper@mmwr.com

18

19

20

21

22

23

24

25

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   DATED this 30th day of July, 2009.

2                                    KELLER ROHRBACK L.L.P.

3

4
                                     By /s/ Ian S. Birk
5                                         William C. Smart, WSBA #8192
                                          Ian S. Birk, WSBA #31431
6                                         Attorneys for Plaintiff

7                                    GORDON TILDEN THOMAS & CORDELL
8                                    L.L.P.

9

10                                   By /s/ Ian S. Birk for
11                                        Jeffrey I. Tilden, WSBA #12219
                                          Jeffrey M. Thomas, WSBA #21175
12                                        Mark A. Wilner, WSBA #31550
                                          Attorneys for Plaintiff
13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPRESENTATION STATEMENT
(C07-0475 MJP) Page - 3

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\27673\1\PLEADINGS\REPRESENTATION.LIST.DOC

1

## CERTIFICATE OF SERVICE

2

   I hereby certify that on July 30, 2009, I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system, which will send notification of such filing to the

following.

4

Counsel for Defendant Microsoft Corporation

5

Stephen M. Rummage, WSBA #11168

6

Cassandra L. Kinkead, WSBA #22845
Charles S. Wright, WSBA #31940

7

Davis Wright Tremaine LLP
1201 Third Avenue Suite 2200

8

Seattle, Washington 98101-3045
steverummage@dwt.com

9

cassandrakinkead@dwt.com
charleswright@dwt.com

10

Counsel for Defendant Microsoft Corporation
– Admitted Pro Hac Vice

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA 19109
ccasper@mmwr.com

11

12

13

   By   *Shannon K. McKeon*

14

Shannon McKeon

15

16

17

18

19

20

21

22

23

24

25

26

REPRESENTATION STATEMENT
(C07-0475 MJP) Page - 4

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\27673\1\PLEADINGS\REPRESENTATION.LIST.DOC